

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NB:JAM/MEM
F. #2017R00509

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 30, 2021

<u>By Email and ECF</u>

Michael O. Hueston, Esq.
*mhueston@nyc.rr.com*

Mark DeMarco, Esq.
*msdlaw@aol.com*

John A. Diaz, Esq.
*johnadiazlaw@gmail.com*

Monica Nejathaim, Esq.
*mnejathaim@fischettilaw.com*

> Re: United States v. Karl Jordan, Jr., et al.
> Criminal Docket No. 20-305 (S-1) (LDH)

Dear Counsel:

      We write in response to your three discovery demands, ECF Docket Nos. 46, 47 and 49 (collectively "the discovery demands"), which seek various materials and disclosures pursuant to Federal Rules of Criminal Procedure 7 and 16, 18 U.S.C. § 3592, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and its progeny. These discovery demands include disclosures for, <u>inter</u> <u>alia</u>, specified Rule 16 discovery (ECF Docket No. 46 pp 1-3); a list of government witnesses (<u>id</u>. at p. 3); search warrants and supporting affidavits (<u>id</u>. at pp. 6-7, ECF No. 47); <u>Giglio</u> material and trial exhibits (<u>id</u>. at pp. 3-4); information regarding grand jury proceedings (<u>id</u>. at pp. 10-11); various information that constitutes 18 U.S.C. § 3500 or impeachment material, including co-conspirator statements and cooperation agreements (<u>id</u>. at pp. 3-12); evidence pursuant to Federal Rule of Evidence 404(b); and a bill of particulars (<u>id</u>. at 13).

      The government is aware of and will continue to meet its discovery and other disclosure obligations. However, the instant discovery demands are largely overbroad, premature or otherwise improper.

I.      The Offense Conduct and Indictments

On August 17, 2020, the above-captioned indictment was unsealed, charging defendants Karl Jordan, Jr. and Ronald Washington with one count of murder while engaged in narcotics trafficking, in violation of Title 21, United States Code, Section 848(e)(1)(A), and one count of firearm-related murder, in violation of Title 18, United States Code, Sections 924(j)(1), for the October 30, 2002 murder of Jason Mizell, also known as "Jam Master Jay." Jordan was also charged with one count of conspiracy to distribute cocaine and seven counts of cocaine distribution, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), respectively.

As set forth in the indictment and in the government's motion in support of a permanent order of detention for each defendant, ECF Docket No. 9, the charges relate to a narcotics dispute involving the defendants and Mizell. Specifically, in or about July 2002, Mizell acquired approximately ten kilograms of cocaine on consignment from a supplier in the Midwest. The cocaine was intended to be distributed in Maryland by the defendants and other co-conspirators. A dispute between Washington and one of the co-conspirators resulted in Mizell telling Washington that he would be cut out of the Maryland transaction. Washington and Jordan then conspired to murder Mizell.

On Wednesday, October 30, 2002, Mizell and several others were present at his recording studio, 24/7 Studio, located on Merrick Boulevard in Queens, New York. At approximately 7:30 p.m., Washington and Jordan, armed with firearms, entered the studio. Each brandished a firearm. Washington pointed his firearm at one of the individuals located inside the studio and demanded that the person lay on the floor. Jordan approached Mizell, pointed his firearm at him, and fired two shots at close range. One of those shots struck Mizell in the head, killing him. The second shot struck another individual in the leg.

During the arraignment hearing, the Honorable Lois Bloom, United States Magistrate Judge for the Eastern District of New York, entered permanent orders of detention for both defendants. See ECF Docket Nos. 7, 13.

On March 4, 2021, the grand jury returned a superseding indictment, which charged Jordan with an additional narcotics conspiracy charge and a firearms charge pursuant to 18 U.S.C. 924(c). As charged in the indictment, between March 2016 and his arrest in August 2020, Jordan, together with others, distributed cocaine and cocaine base in excess of 280 grams, and to have carried a firearm while doing so. Specifically, Jordan regularly sold cocaine and cocaine base to numerous individuals, including an undercover member of law enforcement on several occasions in 2017. The sales that Jordan made to law enforcement were recorded using both audio and video recording devices. No additional charges were added against Washington in the superseding indictment.

II.  Discovery Productions to Date

To date, the government has made six discovery productions to each defendant, See ECF Docket Nos. 24, 25, 32, 34, 40 and 48, including, inter alia, the following materials:

- New York City Police Department ("NYPD") Crime Scene Unit reports, photographs, invoices and other documents;
- reports from the NYPD's latent print section, firearms analysis section, and forensic laboratories;
- photo arrays and recorded statements pertaining to both defendants;
- search warrants and supporting affidavits for the crime scene and other locations;
- 911 and Sprint records;
- certified autopsy and DNA testing reports and underlying files from the Office of the Chief Medical Examiner;
- a forensic extraction report from the victim's phone and various other phone records; and
- numerous Brady disclosures, including DD5 complaint follow up reports, interview notes and other primary source materials.

Defendant Jordan has received additional materials, including:

- documents and records from his prior arrests and criminal cases;
- audio and video recordings of his narcotics sales to an undercover law enforcement agent;
- text message exchanges and other phone records between Jordan and an undercover member of law enforcement; and
- extractions of two cellular telephones, which contain evidence of his narcotics trafficking activity during the charged period, including communications, photographs and videos.

Many of these disclosures go beyond the government's required discovery obligations – certainly at this phase of the case – and have been provided with minimal to no redactions to allow the defense to fully exploit them in their mitigation investigations and trial preparation. At present, the government continues to gather and produce discovery.

The government has also requested reciprocal discovery from the defendants, including notice of any alibi defense pursuant to Fed. R. Crim. P. 12.1(a). To date, the government has not received any reciprocal discovery or alibi notice.

III.  Response to the Defendant's Discovery Demands

The broad array of materials contemplated by the discovery demands go well beyond the proper scope and function of the law governing discovery. In particular, several of the demands ask for or implicate the identity and contact information of informants,

3

cooperating witnesses, and other witnesses. Such demands are untimely or otherwise inappropriate, especially given the concerns regarding witness tampering and intimidation attendant to the case.

Responses to specific demands are as follows:

A. Demand for a Bill of Particulars

Plainly, a bill of particulars is not warranted. Under Rule 7(f), a bill of particulars is only appropriate where an indictment fails to set forth a "plain, concise and definite written statement of the essential facts constituting the offense." Fed. R. Crim. P. 7(c), 7(f). A bill of particulars is only intended to avoid unfair surprise, inform the defendant of the nature of the charges against him and permit him to assess any double jeopardy defenses. See United States v. Bortnovsky, 850 F.2d 572, 574 (2d Cir. 1987). These are "the only legitimate purposes for a bill of particulars." United States v. Sindone, No. 01-CR-517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("[T]he device of a bill of particulars was not created to help the defendant investigate the charges in the indictment. Rather, it is designed to avoid unfair surprise to the defendant at trial, and to permit the defendant to invoke the defense of double jeopardy"). Thus, the Second Circuit has repeatedly held that, if a defendant has received adequate notice of the charges against him in the indictment or in some other pretrial disclosure, including discovery, a bill of particulars is not warranted. United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990). As particularly relevant here, the case law is clear that a bill of particulars is distinctly not a "discovery device" or a "general investigative tool for the defense." United States v. Perryman, 881 F. Supp. 2d 427, 430-31 (E.D.N.Y. 2012) (Spatt, J.); see also Torres, 901 F.2d at 234; United States v. Bortnovsky, 850 F.2d 572, 574 (2d Cir. 1987). "It is not the function of a bill of particulars to obtain a preview of, and to proscribe, the government's evidence before trial." United States v. Kyongja Kang, No. 04 CR 87 (ILG), 2004 U.S. Dist. LEXIS 29885, *3-4 (E.D.N.Y. Dec. 22, 2004) (Glasser, J). The defendant bears the burden of showing that denial of the requested particulars will result in "prejudicial surprise at trial or will adversely affect his rights." United States v. Maneti, 781 F. Supp. 169, 186 (W.D.N.Y. 1991).

Contrary to the defendant's contention, this is not a case where the defendant is without sufficient information to understand the pending charges. The charges are clearly articulated in the indictment and in other filings, including the instant letter. The voluminous, indexed discovery provided by the government to date further offers the defendant ample notice of the nature of the charges and evidence against him. Notably, and as described more fully below, the requests for co-conspirator and witness information are improper. United States v. Urso, 369 F. Supp. 2d 254, 271 (E.D.N.Y. 2005) ("[a]s a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars."); see also United States v. Barret, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) ("[T]he court is mindful that it cannot compel the government to disclose, through a bill of particulars, the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories") (quotations and citations omitted); United States v. Ianniello,

621 F. Supp. 1455, 1478 (S.D.N.Y. 1985) ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars."); United States v. Albunio, No. 91-CR-0403, 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established.").

    B. <u>Demand for Witness Information</u>

The defendant requests not only the identity of government witnesses, co-conspirators and other third parties, but their contact information. See ECF. Docket No. 46, p. 2 ("[t]he defendant requests a designation by the government of those persons it intends to call as witnesses at the trial of this indictment and the addresses of such parties."); p. 12 ("Provide counsel with a list of the names, aliases, and addresses of each and every unindicted co-conspirator known to the government."). This request is wholly improper. See, e.g., United States v. Guerrero, No. 09-CR-339, 2009 WL 3762117, at *10 (S.D.N.Y. Nov. 10, 2009) (rejecting a request for a bill of particulars and related discovery demands calling for the identities of co-conspirators because "it would identify potential cooperating witnesses, exposing them and their families to intimidation or retaliation, and potentially compromising the Government's ongoing investigation of as-yet unidentified co-conspirators."); United States v. Robertson, No. 07-CR-944 (LTS), 2008 WL 220283, at *2 (denying motion and noting government's proffer that "disclosure of the names of unindicted co-conspirators and potential informants could jeopardize the Government's investigation, as well as endanger any potential witnesses to the criminal activity"). Rule 16 does not require the government to furnish the identities of its witnesses in general. See United States v. Bejasa, 904 F.2d 137, 139 (2d Cir. 1990). Nor does any other rule or statute. Indeed, "the prosecution [is] under no obligation to give [a defendant] advance warning of the witnesses who [will] testify against him." United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980).

    C. <u>Demand for *Giglio* Material</u>

The government understands and will continue to comply with its obligation to produce any exculpatory material as defined by Brady and its progeny. Indeed, the government has already made several disclosures towards that end.

However, the defendant's request for any material discoverable under Giglio v. United States, 405 U.S. 150 (1972) is premature. A defendant has no constitutional right to receive Giglio material at a specified time prior to trial. United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 (2d Cir. 1974). "Provided that the defendant has sufficient time after receipt of Giglio material to use it effectively at trial, there is no violation of the defendant's rights from deferring production of this material until closer to the time of the witnesses' testimony." United States v. Frank, 11 F. Supp. 2d 322, 325 (S.D.N.Y. 1998); see also Grant v. Alldredge, 498 F.2d 376, 382, 383 n.7 (2d Cir. 1974). Indeed, courts have approved disclosure of Giglio material on the day that a witness testifies. See, e.g., United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983); United States v. Aguirre-Parra, 763 F. Supp.

5

1208, 1216 (S.D.N.Y. 1991) (Giglio material to be produced with 3500 material).  Certainly, disclosure of Giglio material at this stage would necessarily identify government witnesses, which, as described herein, is improper.

    D.   Demand for Disclosure of Section 3500 Material

While not explicitly requesting it as such, several of the defendant's discovery demands seek disclosure of the functional equivalent of Section 3500 material.  ECF No. 46 at p. 2 ("any and all records, statements, notes of interviews [etc.],,,attributed to or taken from…alleged co-conspirators statements") and p. 12 ("witness statements").  Title 18, United Sates Code, Section 3500(a) provides that " no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  Put simply, the defendant is not entitled to these materials at this point in time.

    E.   Demand for 404(b) Evidence

The government will provide notice of any evidence it intends to introduce under Federal Rule of Evidence 404(b) in advance of trial.  As you know, the government has already provided the defendant with documents and records related to his prior contacts with the criminal justice system.

    F.   Demand for Materials Related to the Buccal Swab Warrant

On or about November 20, 2020, search warrants were issued to obtain buccal swabs from both defendants.  Copies of the warrants were provided to each respective defense counsel.

As to defendant Washington, the government was unable to effect timely execution of the warrant due to a COVID-19 restriction in Washington's housing unit at the Metropolitan Detention Center.  With respect to defendant Jordan, at the government's invitation, defense counsel was present when the warrant was executed and the swab was taken.  To date, the government has provided both defendants certified copies of all testing conducted by the OCME in connection with this case, which includes testing and comparison of Jordan's buccal swab with other evidence.

The government intends to re-apply for authorization to obtain a buccal swab from defendant Washington.  As soon as that warrant has been issued and executed, the government will provide both defendants with a copy of the underlying affidavit, with appropriate redactions to protect the identity of witnesses and third parties.

IV.     Conclusion

The government will continue to meet its discovery and disclosure obligations promptly and per applicable law. If there are particular items of discovery or other issues to discuss, we remain available to do so at your convenience.

Very truly yours,

MARK J. LESKO
Acting United States Attorney

By:     /s/ Artie McConnell
       Artie McConnell
       Mark E. Misorek
       Assistant U.S. Attorneys
       (718) 254-7000

cc:     Clerk of the Court (LDH) (by ECF)