```
                                                                  1

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,    :   20-CR-305(LDH)

        Plaintiff ,          :
                                 United States Courthouse
    -against-                :   Brooklyn, New York

KARL JORDAN,                 :
                                 March 3, 2022
        Defendant.           :   1:00 p.m.

- - - - - - - - - - - - - - X


                TRANSCRIPT OF BAIL APPLICATION
         BEFORE THE HONORABLE LASHANN DEARCY HALL
                UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:        JACQUELYN M. KASULIS
                           United States Attorney
                           BY: MARK MISOREK,
                           Assistant United States Attorney
                           271 Cadman Plaza East
                           Brooklyn, New York


For the Defendant:         MICHAEL O. HUESTON, ESQ.
                           MARK S. DEMARCO, ESQ.
                           MONICA NEJATHAIM, ESQ.



Court Reporter:            Andronikh M. Barna
                           225 Cadman Plaza East
                           Brooklyn, New York
                           (718) 613-2178

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.
```

Andronikh M. Barna, Official Court Reporter, RPR, CRR

2

1          THE LAW CLERK:  Criminal cause for bail application,
2 United States v. Jordan, 20-CR-305.
3          Counsel, please state your name for the record.
4          MR. MISOREK:  Mark Misorek for the United States.
5 I'm accompanied by Robert Long from Pretrial Services.
6          Good afternoon, Your Honor.
7          THE COURT:  Good afternoon.
8          MS. LONG:  Good afternoon, Your Honor.
9          MR. HUESTON:  Good afternoon, Your Honor.
10          Michael Hueston for Mr. Jordan, along with
11 Mark DeMarco and Monica Nejathaim.
12          THE COURT:  Good afternoon.
13          MR. DEMARCO:  Hello, Your Honor.
14          THE COURT:  Good to see you, Mr. DeMarco.  It has
15 been a while.
16          MR. HUESTON:  Same, Your Honor.
17          How are you?
18          THE COURT:  I am well.  Thank you.  Hanging in.
19          MR. DEMARCO:  Yes, same here.
20          THE COURT:  Yes.
21          All right.  You all may be seated.
22          All right, folks.  We are here today for a
23 continuation of the bail hearing that the Court held -- I
24 don't know what date that was, whatever it was -- two days ago
25 and for the Court to render its determination.

Andronikh M. Barna, Official Court Reporter, RPR, CRR

1    　　　　　Now, under the Bail Reform Act, rebuttable
2    presumption both of flight and dangerousness arises when there
3    is probable cause to believe a defendant committed a drug
4    offense carrying a maximum sentence of ten years or more, a
5    firearms offense under 18 U.S.C. Section 924(c) or a violation
6    of the Controlled Substances Act for which the maximum penalty
7    is life imprisonment or death.
8    　　　　　Now, the grand jury indictments establish probable
9    cause.  In this case, the grand jury returned indictments
10   charging the defendant with 11 separate counts, including four
11   separate offenses that carry a presumption:  One count of
12   murder while engaged in narcotics trafficking, in violation of
13   Title 21 of the United States Code, Section 848(e)(1)(A); one
14   count of a firearm related to murder, in violation of
15   Title 18 U.S.C. Section 924(j)(1); one count of conspiracy to
16   distribute 280 grams or more of cocaine base, in violation of
17   21 U.S.C. Sections 846, 841(b)(1)(A)(iii), 841(b)(1)(C); and
18   one count of use of firearms in connection with a drug
19   trafficking crime, in violation of 18 U.S.C. Section
20   924(c)(1)(A)(i).
21   　　　　　Now, the defendant's responsibility or burden
22   seeking bail was to come forward with evidence to rebut the
23   presumption of flight and dangerousness.  Now, when a
24   presumption of detention is applicable, the defendant bears
25   the burden of rebutting that presumption by coming forth with

1  evidence that contradicts notions of flight and risk of
2  dangerousness.  Now, as the defendant correctly noted in his
3  letter submission before this Court, the defendant bears only
4  a limited burden of production, not a burden of persuasion to
5  rebut that presumption by coming forward with evidence that he
6  does not pose a danger to the community or risk of flight.  If
7  and when a defendant meets his burden of production on these
8  two factors, the presumption favoring detention does not
9  disappear entirely but remains a factor to be considered among
10 those weighed by the District Court.  The government retains
11 the ultimate burden of persuasion by clear and convincing
12 evidence that the defendant presents a danger to the
13 community.  The government retains the ultimate burden of
14 persuasion by the lesser standard of a preponderance of the
15 evidence that the defendant presents a risk of flight.
16         Here, both the defense and the government offered
17 evidence by way of attorney proffer.  Now, it's well
18 established in this Circuit that proffers are permissible both
19 in bail determination and bail revocation context.  However,
20 neither the government nor the defense was limited to
21 proceeding by proffer.
22         Here, even assuming that the defendant met his
23 burden of production with respect to flight, the Court cannot
24 find that the defendant has met his burden with respect to
25 dangerousness.  And again, even if he met his burden with

respect to both flight and dangerousness, as set forth by the Second Circuit in *United States v. Mercedes*, that presumption remains a factor to be considered among those set forth in the Bail Reform Act. Those factors are the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant and the seriousness of the danger posed by the defendant's release. I will address them in turn.

Now, tellingly, the defense did not address the nature and circumstances of the charged homicide offense or any other offense in his written submission. The government rightly argues that the seriousness of the charged homicide cannot be overstated and that the inherent dangerousness of homicide is self-evident. Moreover, at the bail hearing, the government argued that the narcotics offenses, too, are sufficiently serious to weigh in favor of continued detention.

Now, the grand jury returned an indictment charging the defendant with the involvement in a major narcotics conspiracy that involved the use of a firearm. Moreover, the charged conduct, including participation in a narcotics conspiracy and the distribution of narcotics, occurred over a period of nearly 20 years.

With respect to the weight of the evidence, the defendant primarily attacks the strength of the government's

1  case as to Counts One and Two, and that is with respect to the
2  homicide of Mr. Mizell.
3          The defendant, by way of attorney proffer, made
4  vague references to alibi witnesses, of course without
5  offering any testimony to that effect.
6          Now, the defendant argues that the alibi witnesses,
7  one of whom is a former corrections officer, will testify that
8  the defendant was at their home at the time of the alleged
9  murder.  That the defendant has alibi witnesses who are
10 expected to testify that the defendant was at their home the
11 night of Mr. Mizell's homicide is unhelpful here where there
12 is no testimony offered as to the specifics of that testimony.
13 Contrast that to the case of *United States v. Jones*, which is
14 a case I will refer you to at 566 F. Supp 2d 288 where alibi
15 witnesses actually testified at the detention hearing.
16         Now, while the Court declines to go as far as the
17 government urged at the hearing to find that the alibi
18 witnesses proffered by the defense have a motivation to lie, I
19 have no basis to make that determination without having heard
20 from them or seen from them, have any information about them.
21         There are other considerations in assessing the
22 strength of an alibi witness's testimony, such as, where were
23 the alibi witnesses at the time of the offense in relationship
24 to the defendant?  The defendant proffers that they were in a
25 home together.  Were the alibi witnesses asleep?  Were they

otherwise engaged? Does the house have a back door? Does it have a basement? Where was everybody at the time throughout the time period relevant to this case? Because the Court was given no opportunity to assess the substance of the alibi, the proffered alibi testimony, I cannot find that their expected testimony operates to undermine the strength of the government's case or the presumption of detention.

The defense also referred to numerous Brady disclosures made by the government, including DNA evidence of others, but not the defendant, found on a hat at the scene of the murder. Now, the defendant suggests that the DNA undermines the government's case. In the defendant's submission, I will note that the defendant did not offer where the DNA was found. According to the government, as I referred to, the DNA was found on a hat at the scene, perhaps near the body of Mr. Mizell. This does not suggest as the defendant urges that the weight of the government's case is undermined.

Indeed, there is no basis for the Court to be able to draw that conclusion. As the Court understands it, as represented by the government, the crime took place in a location frequented by the public or at least numerous people. The defendant does not argue that the DNA was found on an item such as the murder weapon, on the victim's person, or in some other location that might be plainly exculpatory. And as the government correctly points out, the defendant does not argue

8

or even mention the other charges against them where the proof is significantly high, or the weight of the evidence rather.

Now, at the hearing, the defendant's argument on the other charges boiled down to the fact that the government did not arrest the defendant on the earliest date the criminal conduct was detected. This simply does not undermine the strength of the government's case. Despite the delay, the government obtained a grand jury indictment on those offenses establishing probable cause.

The defense also argues that the government's decision not to pursue the death penalty undermines the strength of the government's case. I cannot reject this argument in stronger terms. In essence, the defense asked the Court to find that unless the government seeks the death penalty where available, it is a sign, a signal that the government lacks confidence in its case. Indeed, the defense invites the government to seek the death penalty as a means to telegraph its view of the defendant's culpability. As counsel is undoubtedly aware or should be, a determination to seek the death penalty is based on numerous considerations, including, in many situations, mitigation evidence offered and adduced by the defense. Were the government to adopt the policy consistent with the logic of defendant's argument, its other considerations and the information often provided by mitigation specialists would be abandoned in favor of a policy

1  driven by a potential win/loss notion.  This logic is not only
2  flawed, it is dangerous.  Incredibly, defendant's arguments
3  concerning the death penalty go further.  The defendant
4  suggests that the government's decision not to pursue death
5  penalty is evidence that the defendant does not pose a danger
6  to the community.  I don't believe that that argument really
7  warrants much discussion by the Court but to simply say I
8  reject it.
9             Now, the government presented that its case was
10 primarily on eyewitnesses and coconspirator testimony.  Again,
11 the grand jury has returned an indictment based in part on
12 such testimony.  As mentioned, the defendant has alibi
13 witnesses who are expected to testify that the defendant was
14 at their home on the night of the Mizell homicide is not
15 particularly helpful, again, when the witnesses have offered
16 no sworn testimony as to this fact, did not testify at the
17 bail hearing to provide any specifics as to that alibi
18 testimony.  So because the Court has been given no opportunity
19 to assess this testimony, it is of no use to me here.
20            Further, the defense has not raised any issues with
21 the sufficiency of the evidence against the defendant in
22 relation to the narcotics trafficking conspiracy offense,
23 which also carries the presumption.  For the seven
24 distribution charges which the Court acknowledges does not
25 trigger the presumption, the government has surveillance

1  recordings of the sales made to undercover law enforcement
2  agents.  Here, the weight of the evidence factor weighs
3  strongly in favor of a continued pretrial detention.
4         Next, the Court turns to the history and
5  characteristics of the defendant.
6         The defendant notes that the criminal history here
7  consists only of one juvenile adjudication and one adult
8  Queens County arrest which resulted in two disorderly conduct
9  discharges and again no adult criminal convictions and no
10 crimes of violence.
11        The Court recognizes that the defendant has offered
12 his good character.  And this is in part based on his, I
13 think, which is a plain and obvious devotion to his mother.  I
14 do not know many people who would do what you did for your mom
15 and I recognize that and it is legitimately and I think
16 undoubtedly suggest that you, like many people, are made of
17 many parts and many things and one is a loving son.  You also
18 have four daughters that I understand you are also devoted to
19 and that you help support.  The Court recognizes that.  I find
20 that what was represented in that regard is persuasive and it
21 is genuine.
22        But there is more.  A district court, as you all
23 know, may consider both charged and uncharged conduct in
24 making a bail determination.  For this point, the Court need
25 only look to, for example, *United States v. Barone*, where the

Second Circuit affirmed an order of detention based in part on uncharged conduct.

Furthermore, in *United States v. Rodriguez*, the Second Circuit held that in considering the dangerousness of a defendant for the purposes of bail, there is no requirement that the Court consider only conduct related to the charged offenses. Here, the government proffers that the defendant has been involved in a narcotics conspiracy that spanned for a period of over four years which overlaps with evidence of seven separate occasions captured on video of the defendant selling cocaine and cocaine base to undercover agents. These facts suggest to the Court repeated activity, the dangerousness of which warrants consideration in this factor.

On this point, I refer you to *United States v. English*. That is not to mention, by the way, that the government has also proffered that the defendant was often carrying a firearm and represented at the hearing that witnesses observed the defendant sell drugs on occasion with his daughter in tow.

The government also describes four separate instances where the defendant used or was in possession of a firearm. One witness described the type and color of defendant's firearm that he kept either in the driver's side door pocket or the center console of his car while making narcotics sales.

1              I will note, as I did at the last hearing, that I
2    will not consider the defendant's rap lyrics or other forms of
3    artistic expression as evidence of the defendant's criminality
4    or dangerousness.  This is, again, a genre of music that
5    encourages and promotes violent language and lyrics for the
6    profit of the artist, but also the music executives.  This
7    Court will not punish individuals merely for being
8    participants in an industry that incentivize the use of such
9    language.
10             But I will note that the defendant was found in
11   possession of a contraband cell phone in his cell, which I
12   also believe suggests a propensity for noncompliance with
13   conditions of release, as it is evidence that the defendant
14   has not been compliant with the requirements placed on him in
15   custody.
16             So despite the defendant's lack of a criminal
17   history, the defendant's history and characteristics here
18   again weigh in favor of a continued pretrial detention.
19             Turning to the seriousness of the danger posed by
20   the defendant's release.  The defense raises the same
21   arguments in relation to the defendant's dangerousness as
22   raised in support of other factors; namely, that the defendant
23   has alibi witnesses, that the Brady evidence -- or a number of
24   Brady disclosures were made by the government and, as well,
25   the government's delay in arresting the defendant, which again

the defendant contends undermines the strength of the government's case and that the defendant is not a danger because the government elected not to pursue the death penalty and that his proposed bond and conditions of release weigh, in total, against dangerousness.

Now, the government proffers that there is a significant risk that the defendant would seek to threaten or otherwise tamper with witnesses if released, given that the government is aware of four separate witnesses that the defendant has endeavored to identify and silence through threats and coercion and has enlisted others to do so on his behalf, including, I will note, one of the proposed suretors in this case. The government further responds that the inherent dangerousness of the underlying offenses also weighs in favor of continued detention. This factor, too, does indeed weigh in favor of detention.

Now, with respect to risk of flight, the defendant made attorney proffers regarding the strength of the bail package and potential conditions of release and the defendant's ties to the community, again referencing his four daughters who live in New York as well as his mother. Now, at the bail hearing, defense counsel also noted that the defendant has no outstanding warrants and indicated that there is no history with respect to any prior charges he failed to appear.

1          All of that may be true.  However, that information
2    must be balanced against the information provided by the
3    government.  The government points to the length of the
4    sentence as a motive for the defendant to flee.  Here, the
5    defendant faces a minimum custodial sentence of 25 years.
6    That the defendant has no outstanding warrants is of no
7    moment.  Certainly the defendant has been charged with serious
8    conduct on prior occasions, but he has never before faced such
9    serious offenses or such a significant amount of time in
10   custody were he to be found guilty of the crimes charged here.
11   According to the government's proffer, this is in part due to
12   the witnesses' reluctances -- and I am referring to the fact
13   that he has not faced the jeopardy that he faces here -- prior
14   witnesses' reluctance to cooperate or testify against the
15   defendant in those other cases because of threats to those
16   witnesses by the defendant.  There was no true jeopardy,
17   therefore, in those cases.  In this case, the defendant faces
18   true jeopardy.  So even where a defendant offers evidence to
19   overcome a presumption of flight, such evidence may not be
20   sufficient to overcome the presumption of dangerousness and
21   here, indeed, it does not.
22          Finally, I want to turn to the arguments that the
23   defendant advanced with respect to the COVID pandemic.  The
24   defendant argues that in light of the COVID-19 pandemic, the
25   defendant's health supports bail.  Here again, the defense has

1  offered no medical evidence to suggest that the defendant has
2  any health issues or faces a particular risk of COVID that is
3  greater than the risk faced by any other healthy 38-year-old
4  man.  And while the defendant may proceed with proffer, that
5  proffer must be based on something.  And other than
6  speculation by the attorney or his -- I think you said your
7  belief that this would pose a danger to Mr. Jordan because of
8  the fact that he lives with one kidney, there truly is no
9  foundation for the proffer.  So I reject the defense counsel's
10 proffers as to any arguments concerning COVID and defendant's
11 life with a single kidney as a basis for the Court to
12 entertain bail in this case.
13         Ultimately, even if the defendant has rebutted the
14 presumption with respect to flight, the defendant has failed
15 to rebut the presumption with respect to dangerousness.  And
16 again, even if the defense rebutted the presumption, the
17 factors set forth in the Bail Reform Act counsel in favor of
18 detention.  The Court finds that the government has met its
19 burden of persuasion by clear and convincing evidence that no
20 condition or combination of conditions will reasonably assure
21 the safety of the community or the defendant's appearance
22 should the defendant be granted bail.  That is the
23 determination of the Court.
24         Yes?
25         MR. HUESTON:  Your Honor, may I have one moment just

16

1  to confer with Mr. Jordan and Mr. DeMarco?

2           THE COURT:  Certainly.  When you say can you have a

3  moment, would you like a brief recess or do you just want --

4           MR. HUESTON:  A brief recess, Your Honor.

5           THE COURT:  That is fine.  What do you want?

6           MR. HUESTON:  I think five minutes will do,

7  Your Honor.

8           THE COURT:  All right.  We will recess for

9  five minutes.

10          MR. MISOREK:  Thank you, Your Honor.

11          (Recess taken.)

12          THE COURT:  All right, folks, you can be seated.

13          Mr. Hueston, did you want to address the Court.

14          MR. HUESTON:  Your Honor, I appreciate you giving us

15  the time to speak with Mr. Jordan.  I really do appreciate

16  that.

17          At this time, we have nothing further to say, and

18  thank you for your patience in letting us discuss the matter

19  with our client.

20          THE COURT:  Absolutely.

21          You know, look, at the end of the day there IS

22  usually at least one party that disagrees with the outcome of

23  my determinations, but in this courtroom, everyone will always

24  have an opportunity to be heard and everyone will also have an

25  opportunity to consult as necessary so that they may make a

Andronikh M. Barna, Official Court Reporter, RPR, CRR

17

1   fulsome presentation to me.  So I appreciate your thanks, but
2   I hope that you will grow to expect that of me.
3              MR. HUESTON:  Thank you, Your Honor.  You have a
4   good afternoon.
5              THE COURT:  You as well.
6              MR. MISOREK:  Thank you, Your Honor.
7              THE COURT:  We are adjourned.
8              (Matter concluded.)
9
10                     *     *     *     *     *
11
12  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
13
14     /s/ Andronikh M. Barna                March 3, 2022
15       ANDRONIKH M. BARNA                  DATE

Andronikh M. Barna, Official Court Reporter, RPR, CRR