UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

UNITED STATES OF AMERICA,

                                                        20 Cr. 305 (LDH)

                             -against-

KARL JORDAN, JR., et al.,

                                         Defendants.

----------------------------------------------------------------------- x


**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT
KARL JORDAN, JR.'S
PRETRIAL MOTIONS**


                              MICHAEL HUESTON
                              MARK DEMARCO
                              JOHN DIAZ
                              MONICA NEJATHAIM
                              *Counsel for Defendant Karl Jordan, Jr.*


Dated:  April 11, 2022

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................1

Background ..............................................................................................................................1

Argument .................................................................................................................................3

I.     Due Process Requires Dismissal of Counts One and Two of the Superseding Indictment Given the Extraordinary and Unwarranted Pre-Indictment Delay and the Prejudice to a Fair Trial Caused by the Delay ...................................................3

     A. Introduction ................................................................................................................3

     B. Government's Delay ....................................................................................................4

     C. Analysis ......................................................................................................................5

          1. The Delay Has Substantially Prejudiced Mr. Jordan ....................................5

          2. Compelling Mr. Jordan to Stand Trial Violates Notions of Fundamental Fairness and the Government's Delay Constitutes a Reckless Disregard for Mr. Jordan's Ability to Defend Himself ..................................................................6

          3. Counts One and Two Should be Dismissed ...............................................10

II.    Counts One And Two ("2002 Mizell Murder Counts") Should Be Severed From Counts Three Through Eleven ("Trafficking Counts") ..........................................10

     A. Introduction ..............................................................................................................10

     B. Fed. R. Crim. P. 8(a) ................................................................................................11

     C. Fed. R. Crim. P. 14(a) ..............................................................................................13

III.   Mr. Jordan Seeks A Severance Pursuant To Federal Rule Of Criminal Procedure 14 Based on Co-Defendant Washington's Alleged Statements that Place Mr. Jordan at the Scene of the Murder ....................................................................15

Conclusion .............................................................................................................................19

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page**

*Bruton v. United States,*
    391 U.S. 123 (1968) ...........................................................................................1, 16, 17

*Caplin & Drysdale, Chartered v. United States,*
    491 U.S. 617 (1989) ...........................................................................................18

*Crawford v. Washington,*
    541 U.S. 64 (2004) ...........................................................................................1, 16, 17

*Cruz v. New York,*
    481 U.S. 186 (1987) ...........................................................................................17

*Denis v. Upstate Correctional Facility,*
    361 F.3d 759 (2d Cir. 2004) ...........................................................................................8

*Donahue v. Griffin,*
    No. 12-CV-0752-MJR,
    2016 U.S. Dist. LEXIS 133494, (W.D.N.Y. Sep. 27, 2016) ...........................5

*Schurman v. Leonardo,*
    768 F.Supp. 993, 998 (S.D.N.Y. 1991) ...........................................................5

*Strickland v. Washington,*
    466 U.S. 668 (1984) ...........................................................................................18

*United States v. Amato,*
    15 F.3d 230 (2d Cir. 1994) ...........................................................................................11

*United States v. Birney,*
    686 F.2d 102, 105-06 (2d Cir.1982) ...........................................................5

*United States v. Blakney,*
    941 F.2d 114 (2d Cir. 1991) ...........................................................................................11, 12

*United States v. Carpentier,*
    689 F.2d 21 (2d Cir. 1982)
    cert denied 459 U.S. 1108 (1983) ...........................................................18

*United States v. Casamento,*
    887 F.2d 1141 (2d Cir. 1989) ...........................................................................................14

*United States v. Cornielle,*
    171 F.3d 748 (2d Cir.1999) ...........................................................................................8

*United States v. Crawford,*
    581 F.2d 489 (5th Cir. 1978) ............................................................16

*United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S.*
    *Currency,*
    461 U.S. 555 (1983) ............................................................8

*United States v. Elsbery,*
    602 F.2d 1054 (2d Cir. 1979) ............................................................9

*United States v. Feyrer,*
    333 F.3d 110 (2d Cir. 2003) ............................................................16

*United States v. Figueroa,*
    618 F.2d 934 (2d Cir.1980) ............................................................17

*United States v. Gallo,*
    668 F. Supp. 736 (E.D.N.Y. 1987) ............................................................17

*United States v. Gouveia,*
    467 U.S. 180 (1984) ............................................................7

*United States v. Halper,*
    590 F.2d 422 (2d Cir. 1978) ............................................................15

*United States v. Harrison,*
    764 F. Supp. 29 (S.D.N.Y. 1991) ............................................................5

*United States v. Jass,*
    569 F.3d 47 (2d Cir. 2009) ............................................................17

*United States v. Jones,*
    16 F.3d 487 (2d Cir. 1994) ............................................................13-15

*United States v. Kon Yu-Leung,*
    910 F.2d 33 (2d Cir. 1990) ............................................................18

*United States v. Lovasco,*
    431 U.S. 783 (1977) ............................................................5-8, 10

*United States v. Love,*
    534 F.2d 87 (6th Cir. 1976) ............................................................18

*United States v. Marion,*
    404 U.S. 307 (197l) ............................................................5, 7, 8

*United States v. Martinez,*
    1993 U.S. Dist. LEXIS 11565,
    (S.D.N.Y. Aug. 19, 1993) (Kram, J.) ...................................................12

*United States v. Potamitis,*
    739 F.2d 784 (2d Cir. 1984) ...........................................................18

*United States v. Ruggiero,*
    726 F.2d 913 (2d Cir.1984) ...............................................................9

*United States v. Sampson,*
    383 F.3d 183 (2d Cir. 2004) ...........................................................13

*United States v. Santiago,*
    987 F. Supp. 2d 465 (S.D.N.Y. 2013) ...............................5, 6, 8, 10

*United States v. Scarpa,*
    913 F.2d 993 (2d Cir.1990) ...............................................................9

*United States v. Tubol,*
    191 F. 3d 88 (2d Cir. 1999) ........................................................12, 13

*United States v. Tutino,*
    883 F.2d 1125 (2d Cir. 1989) .........................................................18

*United States v. Werner,*
    620 F.2d 922 (2d Cir. 1980) ......................................................13, 14

*Zafiro v. United States,*
    506 U.S. 534 (1993) .........................................................................16

**STATUTES**

18 U.S.C. § 2 ...................................................................................1, 2

18 U.S.C. § 924 ..............................................................................1-3

21 U.S.C. § 841 ...............................................................................1, 2

21 U.S.C. § 846 ...............................................................................1, 2

21 U.S.C. § 848 ...............................................................................1, 3

F.R.C.P. 8 ...............................................................................1, 11, 13

F.R.C.P. 12 ...........................................................................1, 3, 12

F.R.C.P. 14 ..................................................................................passim

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the motions filed on behalf of defendant Karl Jordan, Jr.  Mr. Jordan seeks orders:

1) dismissing Counts One, 21 U.S.C. § 848(e)(1)(A), and 18 U.S.C. § 2; and Count Two, 18 U.S.C. §§ 924(j)(1) and 2, because of the government's undue delay in bringing these charges against him, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A);

2) severing the above-mentioned Counts One and Two from Counts Three, 21 U.S.C. §§ 846, 841(b)(1)(A)(iii) and 841(b)(1)(C) and 18 U.S.C. § 2, Four, 18 U.S.C § 924(c)(1)(A)(i) and 18 U.S.C. § 2, and Five through Eleven, 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2, pursuant to Federal Rules of Criminal Procedure 8(a), 12(3)(A),  and 14(a); and

3) severing Mr. Jordan's trial from that of his co-defendant Ronald Washington, pursuant to Federal Rules of Criminal Procedure 12(3)(A) and 14; and *Bruton v. United States*, 391 U.S. 123 (1968), and *Crawford v. Washington,* 541 U.S. 64, 67 (2004).

Mr. Jordan also requests leave to join in his co-defendant's motions to the extent they are beneficial to his defense and such other and further relief as the Court may deem just and proper.

The Court is respectfully referred to the accompanying declaration of Michael Hueston, Esq., dated April 11, 2022 ("Hueston Decl."), and the exhibits attached thereto.

## BACKGROUND

Karl Jordan, Jr. is charged in a superseding indictment in Count One with the October 30, 2002 murder of Jason Mizell, also known as "Jam Master Jay", while engaged in narcotics trafficking, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; in Count Two with the same firearm-related murder in violation of 18 U.S.C. § 924(j)(1) and 2; in Count Three with conspiring to distribute 280 grams or more of cocaine base and cocaine from March 2016

through August 2020 in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(iii) and 841(b)(1)(C) and 18

U.S.C. § 2; in Count Four with use of firearms in connection with a drug trafficking crime from

March 2016 through August 2020, in violation of 18 U.S.C § 924(c)(1)(A)(i) and 18 U.S.C. § 2;

and in Counts Five through Eleven with substantive acts of cocaine distribution in April, May

and June 2017, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2.[1]

According to the government, the instant indictment arises from an investigation of

Mizell's murder conducted by the New York City Police Department ("NYPD"), the Bureau of

Alcohol, Tobacco, Firearms and Explosives ("ATF"), and the United States Attorney's Office

for the Eastern District of New York ("the government").[2]  According to the government, the

investigation revealed that, before his murder, Mizell sought to exclude Mr. Jordan's co-

defendant Ronald Washington from a multi-kilogram narcotics transaction, and in retaliation,

Washington and Mr. Jordan conspired to murder and ultimately killed Mizell.[3]  Also, according

to the government, after Mizell's murder, Mr. Jordan was involved in narcotics and firearms

offenses until his arrest in 2020.[4]

On August 13, 2020, a grand jury in the Eastern District of New York returned an

indictment charging both Washington and Mr. Jordan with the Mizell homicide, and separate

narcotics offenses involving Mr. Jordan; and on March 4, 2021, the grand jury returned a

superseding indictment with additional narcotics and firearms charges against Mr. Jordan.[5]

---

[1] *See* Superseding Indictment, Doc. No. 45.

[2] *See* Government's February 22, 2022 letter to the Honorable LaShann DeArcy Hall in opposition to Mr. Jordan's motion for bond at 2-3, Doc. No. 74.

[3] *Id.*

[4] *Id.* at 3.

[5] *See* Indictment and Superseding Indictment, Doc. Nos. 1 and 45.

The government has made numerous discovery productions, none of which contain any evidence establishing Mr. Jordan's involvement in the murder of Mr. Mizell, nor his participation in the overall conspiracy that led to the murder.  In addition to this lack of Rule 16 evidence, the government has also made an unprecedented number of *Brady* disclosures, some of which corroborate Mr. Jordan's alibi, as well as a DNA hit, identifying another suspect, from a hat found at the crime scene.  Furthermore, pursuant to a search warrant for Mr. Jordan's DNA authorized by the Court on December 11, 2020, Mr. Jordan was excluded as a contributor to the DNA recovered from the scene of the murder.[6]

On December 20, 2021, the defense filed an alibi notice with this Court establishing that Mr. Jordan is innocent of Mizell's murder.[7]

The trial is scheduled for February 13, 2023.

## ARGUMENT

I.     **Due Process Requires Dismissal of Counts One and Two of the Superseding Indictment Given the Extraordinary and Unwarranted Pre-Indictment Delay and the Prejudice to a Fair Trial Caused by the Delay**

A.     **Introduction**

Mr. Jordan is charged, along with his co-defendant Ronald Washington, in Counts One and Two with the October 30, 2002 murder of Jason Mizell in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 924(j)(1).

Pursuant to Rule 12(b)(3)(A) of the Federal Rules of Criminal Procedure, Mr. Jordan moves to dismiss these counts because of the delay between when the government knew about

---

[6]*See* Mr. Jordan's February 15, 2022 letter to the Honorable LaShann DeArcy Hall for bond, at 3, Doc. No. 73.

[7]*See* Alibi Notice, Doc. No. 67.

Mr. Jordan's supposed involvement in the homicide and when the indictment was filed against him violates his rights under the Due Process Clause of the Fifth Amendment.

In the alternative, Mr. Jordan requests a hearing on the factual issues raised here.

## B.    Government's Delay

The ATF entered the Mizell homicide investigation, by at least April 2006, when it requested access from the NYPD for ballistics from the crime scene, which the government soon joined by subpoenaing the NYPD for ballistics reports and related material and information in July 2006.

Notably, Ronald Washington was previously indicted in this district on various charges at 05 Cr. 558 unrelated to this case or Mr. Jordan.  During that case, the government made the following assertion against Washington in an April 2007 letter to the Honorable Nina Gershon: "On October 30, 2002, the defendant and an associate entered a music studio in Hollis, Queens, and the defendant pointed his gun at those present in the studio, ordered them to get on the ground, and provided cover for his associate to shoot and kill Jason Mizell."[8]  The parties continued to argue about the relevance of the Mizell homicide at Washington's sentencing before Judge Gershon,[9] with the government stating, "We are also prepared to provide the evidence to the Probation Department."[10]

From our review of the discovery, the earliest specific reference to the NYPD investigating Mr. Jordan regarding the Mizell homicide occurred in an October 2016 photo array.

[8] *See* Government's April 2, 2007 letter to the Honorable Nina Gershon, 05 Cr. 558, Doc. No. 63, also available at Hueston, Decl. at Exhibit A.

[9] *See* Government's January 9, 2008 letter to the Honorable Nina Gershon and Ronald Washington's April 2, 2008 letter to the Honorable Nina Gershon, Doc. Nos. 84, 87, also available at Hueston, Decl. at Exhibits B and C.

[10] *See* Government's  January 9, 2008 letter to the Honorable Nina Gershon at p. 2, fn. 1.

4

C.       Analysis

1.       The Delay Has Substantially Prejudiced Mr. Jordan

The Due Process Clause of the Fifth Amendment protects persons against "oppressive delay" in beginning a criminal prosecution. *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *United States v. Marion*, 404 U.S. 307 (197l) (Due process Clause requires dismissal of an indictment if pre-indictment delay causes substantial prejudice to a defendant's right to a fair trial and the delay was for an improper purpose). This protection is grounded in "'fundamental conceptions of justice which lie at the base of our civic and political institutions' … and which define 'the community's sense of fair play and decency.'" *Schurman v. Leonardo*, 768 F.Supp. 993, 998 (S.D.N.Y. 1991), *quoting Lovasco*, 431 U.S. at 789-90.

For a case to be dismissed for unwarranted pre-indictment delay, a defendant must generally establish two things. First, he must show that the delay has caused him actual prejudice; and, second, he must demonstrate that the delay happened either as part of a deliberate effort to gain an unfair tactical advantage over the accused or that the investigatory delay was made in reckless disregard of the probable prejudicial impact on the defendant's ability to defend against the charges. *See discussion United States v. Santiago*, 987 F. Supp. 2d 465, 484-85 (S.D.N.Y. 2013); *see also Donahue v. Griffin*, No. 12-CV-0752-MJR, 2016 U.S. Dist. LEXIS 133494, at *28 (W.D.N.Y. Sep. 27, 2016) ("The standard for demonstrating 'actual prejudice' is fairly stringent, as '[t]he dimming of memories with the passage of time, without more, does not create actual substantial prejudice to the right to a fair trial which would warrant dismissal of a case for pre-indictment delay.' *United States v. Harrison*, 764 F. Supp. 29, 32 (S.D.N.Y. 1991). 'Proof of actual prejudice must be definite and specific.' *United States v. Scala*, 388 F. Supp. 2d 396, 399 (S.D.N.Y. 2005) (citing *United States v. Birney*, 686 F.2d 102, 105-06 (2d Cir.1982).").

5

For the following reasons, Mr. Jordan has established both actual prejudice and a delay motivated by improper tactical purposes and with a reckless disregard for his ability to obtain a fair trial.

First, the delay has deprived Mr. Jordan of the opportunity to employ traditional investigative techniques that would refute the government's claim that he shot Mr. Mizell.  For instance, he cannot obtain objective evidence such as cell phone records that would support his alibi, or telephone and beeper records, which could help establish the circumstances surrounding Mr. Mizell's murder.  Second, the government has made numerous *Brady* disclosures, but many of them are stale.  These disclosures, nevertheless, show that the government's theory is flawed.  And third, the defense has been unable to speak with witness Michael Rapley, an eyewitness to the shooting, despite numerous attempts to locate him.  "Actual prejudice in the context of the *Marion/Lovasco* paradigm generally means the loss of documentary evidence or the unavailability of a key witness." *Santiago*, 987 F.Supp. 2d at 485.  Here, as in *Lovasco*, this Court should assume that the defendant is actually prejudiced by the absence of the witness.  *See Lovasco* 431 U.S. at 789.

Accordingly, Mr. Jordan has shown actual prejudice.

> ### 2.   Compelling Mr. Jordan to Stand Trial Violates Notions of Fundamental Fairness and the Government's Delay Constitutes a Reckless Disregard for Mr. Jordan's Ability to Defend Himself

Mr. Jordan has certainly been severely prejudiced by the extreme delay in bringing the federal charges about the Mizell homicide.  To obtain a dismissal of these counts, however, Mr. Jordan must also show that forcing him to face trial in federal court for a crime that the federal government knew about for almost 20 years would offend traditional notions of justice, fair play, and decency. *United States v. Lovasco*, 431 U.S. at 790.

In *Marion,* the Court "noted with approval" the government's concession that a "tactical" delay causing actual prejudice to a defendant would violate the Due Process Clause. *Lovasco,* 431 U.S. at 795 n. 17. A tactical delay is one that the Government causes to gain a tactical advantage over the accused – a "deliberate device to gain an advantage over [the defendant]." *United States v. Gouveia,* 467 U.S. 180, 192 (1984). In *Lovasco,* by contrast, the Court held that prosecuting a defendant following a second and separate type of delay – investigative delay"– would not automatically deprive him of due process, "even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 796. The defendant in *Lovasco* had lost two potential witnesses while the government investigated the involvement of others in the crime of which he stood charged. The Court assumed that he was prejudiced by the delay, but found no due process violation:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," [] precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt.

*Id*. at 795 (quoting *Marion,* 404 U.S. at 324). But in a footnote, the Court added the following critically important caveat:

> In *Marion* we noted with approval that the Government conceded that a "tactical" delay would violate the Due Process Clause. The Government renews that concession here and expands it somewhat by stating: "A due process violation might also be made out upon a showing of prosecutorial delay incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense."

*Id*. at 795 n. 17 (internal citation to brief omitted).

7

In *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency,* 461 U.S. 555, 563 (1983), the Court described *Lovasco* as holding that Due Process claims of prejudicial pre-indictment delay "can prevail only upon a showing that the Government delayed seeking an indictment in a deliberate attempt to gain an unfair tactical advantage over the defendant *or in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges.*" (emphasis added).

Both *Marion* and *Lovasco* recognize that Due Process determinations are fact-specific inquiries that will turn on the particular circumstances of a case. *See Marion,* 404 U.S. at 324–25; *Lovasco,* 431 U.S. at 797.  In both cases, the Court expressly declined to determine "in the abstract the circumstances in which pre-accusation delay would require dismissing prosecutions." *Id.* at 796; *see also Marion,* 404 U.S. at 324–25.  Accordingly, when the government defends against a charge that prejudicial pre-indictment delay rises to the level of a Due Process violation by relying on investigative delay, it will win unless the investigatory delay amounted to what the Court, in *Eight Thousand Eight Hundred and Fifty Dollars,* called "unfair conduct" – that is, delay incurred in a deliberate effort to gain an unfair tactical advantage over an accused, *or* in reckless disregard of its probable prejudicial impact on the defendant's ability to defend against the charges.  *See United States v. Santiago*, supra. at 484-85**.**

While the Second Circuit has never specifically declined to follow *Lovasco's* "reckless disregard of circumstances" language, the Court has used a variety of formulations to describe, in general terms, what sort of conduct would cause prejudicial pre-indictment delay to violate the Due Process Clause.  In *United States v. Cornielle,* 171 F.3d 748, 752 (2d Cir.1999), the Court used the phrase "an intentional device to gain [a] tactical advantage over the accused." *See also Denis v. Upstate Correctional Facility,* 361 F.3d 759, 760 (2d Cir.2004).  However, the Court in

8

*United States v. Scarpa,* 913 F.2d 993 (2d Cir.1990), relying on *Marion,* held that the defendant needed to establish that prejudicial prosecutorial delay was "so unfair as to violate fundamental concepts of fair play and decency." *United States v. Scarpa,* 913 F.2d at 1014.

Moreover, in *United States v. Ruggiero,* 726 F.2d 913, 925 (2d Cir.1984), the Court stated that a defendant need only show "unjustifiable government conduct" to prevail on a due process challenge. *See also United States v. Elsbery,* 602 F.2d 1054, 1059 (2d Cir. 1979).

While this may not be a case where the government made a conscious decision to hold off on prosecuting Mr. Jordan to maximize the chances that the witnesses who could give favorable testimony for the him might disappear, neither is it a case where the imperatives of investigation delayed the bringing of an indictment. The government would be hard-pressed to contend that the indictment was delayed for legitimate investigative reasons. The witnesses were known and available to the government.

Critically, as already mentioned, in its January 9, 2008 sentencing submission regarding Washington, the government stated, in support of the Mizell homicide being used to enhance Washington's sentence that, "We are also prepared to provide the evidence to the Probation Department."[11] So the available evidence (which could be further augmented at a hearing) indicates that the delay in prosecuting Mr. Jordan, which has resulted in indisputable prejudice to him, stems from a deliberate decision to delay processing the case by the government. In 2008, the government "was prepared to provide the evidence" of the Mizell murder to enhance Washington's sentence. So this is not a cold case where the government has just identified the

---

[11]*See* Government's  January 9, 2008 letter to the Honorable Nina Gershon at p. 2, fn. 1, also at Hueston, Decl. at Exhibits B.

perpetrator of an old crime.  Instead, this is an instance where the government unfairly delayed the timing of its charging decision in a reckless disregard for Mr. Jordan's rights.

In sum, the government's decision to wait until 2020 to charge Mr. Jordan with the Mizell homicide was motivated by improper reasons and a reckless disregard for the delays that certainly impact his opportunity for a fair trial.

### 3.   Counts One and Two Should Be Dismissed

Ultimately, the Court's decision whether to dismiss the indictment must be guided by traditional notions of justice, fair play, and decency.  *United States v. Santiago*, supra.  The government's unjustified failure to timely prosecute Mr. Jordan violates "'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency'" *United States v. Lovasco*, 431 U.S. at 790 (citations omitted).  Karl Jordan, Jr. has due process rights that must be respected and enforced and hauling him into court and forcing him to defend himself against a murder that happened decades ago is neither fair nor just.

The counts should be dismissed.

## II.   Counts One And Two ("2002 Mizell Murder Counts") Should Be Severed From Counts Three Through Eleven ("Trafficking Counts")

### A.   Introduction

Karl Jordan, Jr. is charged in an eleven-count superseding indictment.  Counts One and Two charge that Mr. Jordan, while engaged in a narcotics trafficking crime, used a firearm to murder Jason Mizell on October 30, 2002, in Queens County, New York ("2002 Mizell murder counts").

While Count Three charges that Mr. Jordan participated in a conspiracy to distribute controlled substances from March 2016 through August 2020; Count Four charges Mr. Jordan with use of firearms in connection with a drug trafficking crime; and Counts Five through Eleven charge him with separate substantive cocaine sales from April 2017, through June 2017 (collectively "trafficking counts" or "trafficking charges").

Since the 2002 Mizell murder counts and the trafficking counts involve unconnected acts committed 14 years apart, are not part of the "same act or transaction," are not part of a common scheme or plan, and will unduly prejudice the defendant if tried together, Mr. Jordan moves for misjoinder and severance pursuant to Fed. R. Crim. P. 8(a) and 14(a) of Counts One and Two ("2002 Mizell murder counts") from Counts Three through Eleven ("trafficking counts") of the indictment.

### B.     Fed. R. Crim. P. 8(a)

Federal Rule of Criminal Procedure 8 governs joinder of offenses and defendants.  Fed. R. Crim. P. 8.  Fed. R. Crim. P. 8(a) provides that "offenses may be joined in a single indictment when they are (1) based on the same act or transaction, or (2) based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or (3) of the same or similar character."

In the Second Circuit, the often-stated rule is that "joinder is proper where the same evidence may be used to prove each count." *United States v. Amato*, 15 F.3d 230, 236 (2d Cir. 1994); *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991).   In *Amato*, the Second Circuit found no error in joining an illegal gun possession count to an indictment against a reputed member of the Colombo crime family charged with loan sharking, substantive RICO and RICO conspiracy counts, and murder, as the evidence offered to prove the gun count served to show

11

membership in the RICO enterprise so that the interests of judicial efficiency justified joinder notwithstanding the additional prejudicial proof.  Similarly, in *Blakney*, where the defendant was charged with both weapons and narcotics offenses, joinder was warranted where the government's case showed the defendant sold both commodities to the same customer and bartered one for another.  *Blakney*, 941 F.2d at 116.

By contrast, the Second Circuit has found error in joining multiple offenses where identifiable differences undermine any claim of "same or similar character" or "common pattern of conduct" under Rule 8(a). *See United States v. Tubol*, 191 F. 3d 88, 94-95 (2d Cir. 1999).   In *Tubol*, the defendant was charged and tried jointly for two robberies and illegal gun possession. The Second Circuit overturned his conviction of the two robberies for misjoinder.  Although a gun was used in both robberies and occurred within a six-week period in close geographic proximity, the *modus operandi* of the two robberies was "distinctly different," including the choice of targets, whether a weapon was brandished, and the reported demeanor of the perpetrator.  *Id.*

Similarly, in *United States v. Martinez*, 1993 U.S. Dist. LEXIS 11565, at *29-32 (S.D.N.Y. Aug. 19, 1993) (Kram, J.), the district court severed a firearms possession count from a drug conspiracy count pre-trial where the gun was seized at a different location four months after the conspiracy ended under unrelated circumstances, there were no allegations that the drug conspiracy involved selling weapons, and there were no causal links between the gun and the drug conspiracy.

Here, the 2002 Mizell murder counts and the trafficking counts are improperly joined and should not be tried together.   They involve acts committed 14 years apart and are not part of the "same act or transaction."   The two separate and distinct groups are not part of any common

scheme or plan.  Neither are they connected in any way.  Lastly, they are not of the "same or similar character."   Whereas the 2002 Mizell murder was an isolated incident involving an alleged drug dispute and occurred in a one-day-period, the alleged trafficking charges occurred 14 years later out of entirely different circumstances.  Evidence for both distinct set of charges will involve entirely different witnesses and, since the charges are not part of the "same act or transaction" or "any common scheme or plan," and are not "the same or similar character," the jury will effectively be presented with evidence on *two* separate and distinct trials.  Accordingly, as in *Tubol*, the charged counts are so "distinctly different" that their joinder is improper.  191 F.3d at 94-95.

Moreover, neither the indictment nor the discovery provided thus far by the government provides any suggestion or inference of an evidentiary connection or "causal link" between the 2002 Mizell murder and the trafficking charges.  Therefore, the 2002 Mizell murder counts should be severed from the trafficking counts under Fed. R. Crim. P. 8(a).

### C.    Fed. R. Crim. P. 14(a)

Even if the joinder of these unrelated counts does not run afoul of Rule 8(a), this Court should order a severance of the counts because Mr. Jordan's defense will be prejudiced by their joinder at trial.  Fed. R. Crim. P. 14(a) authorizes severance of counts "if the joinder of offenses … in an indictment, an information, or a consolidation for trial appears to prejudice a defendant …."  Fed. R. Crim. P. 14(a).  Under this rule, therefore, "even though distinct offenses have been properly joined under Rule 8, the court may order separate trials or grant a severance under Rule 14 if it appears that the defendant is prejudiced by the joinder."  *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980); *accord United States v. Sampson*, 383 F.3d 183, 193 (2d Cir. 2004) (reversing conviction after joint trial of drug offenses from 1998 and 2000 where denial of

13

severance prejudiced defendant's ability to present a defense); *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994) (reversing conviction due to prejudice from proof of felon-in-possession charge joined in bank robbery indictment).

The decision whether to grant Rule 14 severance is "committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989). While severance under Rule 14 should require a showing of "not simply some prejudice but substantial prejudice," *Werner*, 620 F.2d at 928, the Second Circuit has admonished the lower courts that care must be taken to avoid conviction by cumulative evidence:

> While the mere fact that juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one, does not call for relief under Rule 1 trial courts must be alert to the danger that . . . the jury may use the evidence cumulatively; that is, that although so much as would be inadmissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all. When the accused's conduct on several separate occasions can properly be examined in detail, the objection disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury.

*Id.* (internal citations omitted).

In the instant case, Mr. Jordan will be substantially prejudiced if the 2002 Mizell murder counts and the trafficking counts are not severed from each other for trial. There is a significant and undeniable risk that the jury will convict the defendant of at least one, and likely both separate and distinct sets of charges not based on specific evidence presented for the respective counts, but based on the cumulative effect of the evidence presented at trial on the two unrelated crimes. That is, there is too high a risk that the jury will consider the mere fact that the defendant is charged with two separate, unrelated crimes, separated by 14 years, as evidence of his guilt of both. The jury naturally would assume that where there is the proverbial smoke, i.e.

14

charges of two unrelated groups of crimes by a person who has been engaged in criminal activity

for more than a decade, there must be fire, i.e. the defendant must be a murderer, drug dealer, and

life-long criminal.

It is expected that the majority of the trial evidence will be spent proving Counts One and

Two – the 2002 Mizell murder.  After hearing this evidence, the proof of an isolated drug

conspiracy 14 years later involving different witnesses, cannot be divorced in the jury's mind

and objectively weighed.  *See United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978)(a joint

trial on all counts can create a serious risk and danger that the evidence as to each separate count

will "cumulate in the jurors' minds").  Even the strongest limiting instructions will not prevent

the jury from carrying over the 2002 Mizell murder evidence to the trafficking counts and vice

versa.  *See Jones*, 16 F.3d at 493 (presumption that jury will adhere to limiting instructions

evaporates where there is an overwhelming probability that the jury will be unable to follow the

same).

Accordingly, Mr. Jordan submits that the Court should sever the 2002 Mizell murder

counts from the trafficking counts.

## III.    Mr. Jordan Seeks A Severance Pursuant To Federal Rule Of Criminal Procedure 14 Based on Co-Defendant Washington's Alleged Statements that Place Mr. Jordan at the Scene of the Murder

Mr. Jordan seeks a severance pursuant to Federal Rule of Criminal Procedure 14 based

on co-defendant Washington's alleged statements that place Mr. Jordan at the scene of the

murder.  For instance, Ronald Washington's statement in 2003 to a reporter for Playboy

Magazine in which he stated that "Big D" and "Little D" (Darren Jordan and Karl Jordan, Jr.)

were at the stairs of the studio at the time of Mizell murder, that he heard repeated shots, and that

"Little D" told Washington that "My pops wasn't supposed to shoot Jay."[12]  Under Federal Rule

of Criminal Procedure 14(a), a trial court has the discretion to grant a severance or "provide any

other relief justice requires" if "the joinder of offenses or defendants in an indictment ... appears

to prejudice a defendant."  *See, e.g., United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003).

Severance is warranted "if there is a serious risk that a joint trial would compromise a specific

trial right of one of the defendants, or prevent the jury from making a reliable judgment about

guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  A district court "should

grant a severance if jurors in a joint trial may not be able to determine the culpability of a

defendant fairly, impartially and solely on the basis of evidence relevant to the individual

defendant."  *United States v. Crawford*, 581 F.2d 489, 491 (5th Cir. 1978).

Perhaps the most frequent ground justifying severance is the fact that the government has

obtained and may use statements of co-defendants as part of its proof in the case.  *See Bruton v.

United States,* 391 U.S. at 137.  In *Bruton*, the Supreme Court held that the admission of a non-

testifying co-defendant's confession, naming the defendant as a perpetrator at their joint trial,

violates the named defendant's Sixth Amendment right to cross-examination.  While under

*Crawford v. Washington*, 541 U.S. at 36, the Supreme Court held that any testimonial out of

court statement not in furtherance of a conspiracy which has not been the subject of cross-

examination must be excluded.  Justice Scalia, in his exhaustive historical analysis of the

Confrontation Clause, specifically included co-defendant statements as one of those core

testimonial statements that the Confrontation Clause was meant to exclude.  *Crawford, supra* at

67-71.

---

[12]Owen, Frank, *The Last Days of Jam Master Jay*, Playboy Magazine, Decemeber 2003, available at
https://fxowen.wordpress.com/golden-oldies/.

No clearer example of prejudice exists than the situation where a statement of an individual joined for trial implicates another co-defendant.  Absent this individual testifying, such a co-defendant is effectively precluded from confronting his "accuser." *Crawford, supra*; *Bruton, supra*.  This creates a particularized risk of harm in a multi-defendant trial in which individual defendants have made statements.  Testimonial statements of a "declarant-defendant" can only be admitted against that same defendant, and cannot be admitted against a "non-declarant defendant."  This rule requires the courts to fashion limiting instructions to eliminate *Crawford* error.  Yet, as the Second Circuit has noted, a barrage of instructions can create its own set of problems: "[w]hile the utility of limiting instructions 'is not to be invariably rejected, neither should it be invariably accepted.'" *United States v. Gallo*, 668 F. Supp. 736, 753-53 (E.D.N.Y. 1987) (*quoting United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).

*Bruton* carves out a specific situation in which a limiting instruction is insufficient to protect the non-declarant defendant: when the government introduces statements by a declarant-defendant that directly and obviously incriminate the non-declarants, the jury is presumed incapable of following the limiting instruction.  *See Cruz v. New York*, 481 U.S. 186, 190 (1987) (citing *Bruton*, 391 U.S. at 135-36).  In that situation, if the government wishes to make use of the statement, then the non-declarants must be severed from the declarant-defendant. *United States v. Jass*, 569 F.3d 47, 56 n. 5 (2d Cir. 2009).

It is anticipated that the government will seek to use Washington's statements to prove its case against both men.  There is no question that the statement by Washington accusing Mr. Jordan of being present at the scene of the murder incriminates Mr. Jordan, the non-declarant, which necessitates severance.  Additionally, the statement by Washington is testimonial in nature and without an opportunity to cross-examine Washington, a joint trial and the admission of this

17

statement clearly violates Mr. Jordan's Sixth Amendment right, which –at a minimum– necessitates its exclusion.

Severance is additionally proper when a case presents antagonistic defenses - where the "acceptance of one defendant's defense testimony would cause the defense offered on behalf of the co-defendant to be disbelieved." *United States v. Tutino,* 883 F.2d 1125 (2d Cir. 1989); *see also United States v. Potamitis,* 739 F.2d 784 (2d Cir. 1984); *United States v. Carpentier,* 689 F.2d 21 (2d Cir. 1982) *cert denied* 459 U.S. 1108 (1983).

The prejudice to Mr. Jordan from the evidence against his co-defendant in this case is so severe that denying him a severance from his co-defendant would deny his constitutionally guaranteed right to a fair trial. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 633 (1989)("'[t]he Constitution guarantees a fair trial through the Due Process Clauses … it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment.'") (quoting *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984)); *United States v. Kon Yu-Leung*, 910 F.2d 33, 39 (2d Cir. 1990) ("The Sixth amendment protects a defendant's right to a fair trial."); *United States v. Love*, 534 F.2d 87, 89 (6th Cir. 1976)("Due process does not require perfect trials but it mandates fair ones.").

In the instant case, just as in *Bruton*, the statements attributed to each defendant would create irreconcilable conflicts.  It is the defense's belief that the government will offer these statements at trial for the purposes of bolstering their case while at the same time, relying on conflicting statements of the defendants to undermine the credibility of any proffered defense. Further, a combined trial of Mr. Jordan and Washington will deprive each of them of their Sixth Amendment right to confront witnesses should either chose not the testify.  Accordingly,

18

severance of Mr. Jordan's trial from Washington's trial is the only appropriate remedy to preserve Mr. Jordan's right to a fair trial.

## **CONCLUSION**

For the reasons set forth above and based on the authorities cited herein, it is respectfully requested that the Court enter a judgment of acquittal or, in the alternative, order a new trial in the interests of justice.

Dated:      Brooklyn, New York
             April 11, 2022

                        Respectfully submitted,

                        _____/s/_____
                        MICHAEL HUESTON, ESQ.
                        MARK DEMARCO, ESQ.
                        JOHN DIAZ, ESQ.
                        MONICA NEJATHAIM, ESQ