UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

UNITED STATES OF AMERICA,

                                                    20 Cr. 305 (LDH)

                        -against-

KARL JORDAN, JR., et al.,

                                    Defendants.

-------------------------------------------------------------------- x


**REPLY MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT
KARL JORDAN, JR.'S
PRETRIAL MOTIONS**


MICHAEL HUESTON
MARK DEMARCO
JOHN DIAZ
MONICA NEJATHAIM
*Counsel for Defendant Karl Jordan, Jr.*


Dated:  May 16, 2022

## **TABLE OF CONTENTS**

**Page**

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................. ii

Preliminary Statement ..........................................................................................1

Argument ................................................................................................................1

    I.  Pre-Indictment Delay ...............................................................................1

    II. Misjoinder of Mizell Homicide with
       Jordan's Other Counts .............................................................................3

    III. Severance Based on Washington's
        Alleged Statements .................................................................................7

Conclusion ...........................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                     **Page**

*Bruton v. United States,*
    391 U.S. 123 (1968) ........................................................................................7, 8

*Cruz v. New York,*
    481 U.S. 186 (1987) ...........................................................................................7

*Gray v. Maryland,*
    523 U.S. 185 (1998) ...........................................................................................9

*United States v. Alvarado,*
    882 F. 2d 645 (2d Cir. 1989) ............................................................................10

*United States v. Attanasio,*
    870 F.2d 809 (2d Cir. 1989) ..............................................................................7

*United States v. Botti,*
    711 F.3d 299 (2d Cir. 2013) ..............................................................................1

*United States v. Castro,*
    813 F.2d 571 (2d Cir. 1987) ..............................................................................9

*United States v. Coppa (In re United States),*
    267 F.3d 132 (2d Cir 2001) ...............................................................................2

*United States v. Crawford,*
    581 F.2d 489 (5th Cir. 1978) .............................................................................7

*United States v. Feyrer,*
    333 F.3d 110 (2d Cir. 2003) ...........................................................................3, 4

*United States v. Halper,*
    590 F.2d 422 (2d Cir. 1978) ..............................................................................4

*United States v. Jass,*
    569 F.3d 47 (2d Cir. 2009) .............................................................................8, 9

*United States v. Kouzmine,*
    921 F. Supp. 1131 (S.D.N.Y. 1996) ..................................................................7

*United States v. Lech,*
    161 F.R.D. 255 (S.D.N.Y. 1995) .......................................................................5

*United States v. Lovasco,*
    431 U.S. 783 (1977) ...........................................................................................2

*United States v. Marion,*
404 U.S. 307 (197l) ............................................................................2

*United States v. Mussaleen,*
35 F.3d 692 (2d Cir. 1994) ...............................................................10

*United States v. Nerlinger,*
862 F.2d 967 (2d Cir. 1988) ...............................................................4

*United States v. Ohle,*
678 F. Supp. 2d 215 (S.D.N.Y. 2010) ............................................4, 6

*United States v. Pirk,*
2018 US Dist LEXIS 27918, W.D.N.Y.
Feb. 21, 2018, No. 1:15-CR-00142 EAW ...........................................2

*United States v. Rajaratnam,*
753 F. Supp. 2d 299 (S.D.N.Y. 2010) ............................................6, 7

*United States v. Rittweger,*
524 F.3d 171 (2d Cir. 2008) ........................................................3, 4, 7

*United States v. Turoff,*
853 F.2d 1037 (2d Cir. 1988) ......................................................3, 4, 6

*United States v. Williams,*
936 F.2d 698 (2d Cir. 1991) ...............................................................9

*United States v. Yaron,*
No. S2-10-CR-363 (GBD), 2011 US Dist LEXIS 84109,
2011 WL 3279054, at *1 (S.D.N.Y. July 28, 2011) .........................5, 7

## Federal Rules

Fed. R. Crim. P. 8 ...............................................................................3

Fed. R. Evid. 106 ...........................................................................9, 10

## PRELIMINARY STATEMENT

In opposition, the government wrongly claims the defense's motions are "baseless", "inaccurate", "unsupported by relevant precedent" and "misleading".[1]  The government's hyperbole should be rejected.

## ARGUMENT

### I.     Pre-Indictment Delay

To counter the defense's claim of actual prejudice the government argues that it is the defense's fault that the case took so long to investigate and that if anyone has been prejudiced, it is the government.  In doing so, in what has now become a predictable pattern, the government first claims that it: "is aware of at least four separate witnesses that the defendants have endeavored to identify and silence through threats and coercion."[2]  This broad statement does not state which defendant is alleged to have tried to "silence" witnesses, who these witnesses are, what they said or did.  However, by delivering it in a footnote, it suggests the government is not truly certain of the allegation.  *Cf. United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) (noting that settled appellate rule that issues adverted to in perfunctory manner are deemed waived applies with "particular force" to argument made "only in a footnote").

The government also argues that it is prejudiced by any missing phone records and that Jordan, at 18-years-old, would have, in any event, been "savvy" enough to avoid detection.[3]  But cell site phone data – in tandem with Jordan's alibi – would utterly break the government's case. The data would also further discredit Washington's misguided attempt to implicate Jordan.  The

---

[1]*See* Gov't Opposition, Doc. No. 86, at 1, 2 n. 1.

[2]*Id.* at  4, note 2.

[3]*Id.* at 9.

government also argues – without any authority – that the indictment is somehow dispositive.[4] But an indictment is not evidence of guilt, *United States v. Pirk*, 2018 US Dist LEXIS 27918, W.D.N.Y. Feb. 21, 2018, No. 1:15-CR-00142 EAW, at *12 ("…the Indictment is not evidence and is not proof of Defendants' guilt[]"), and, thus, cannot foreclose this motion.

As for the stale *Brady* disclosures and the missing witness, we point out that courts routinely recognize that timeliness is critical in criminal investigations. *Cf. United States v. Coppa (In re United States)*, 267 F.3d 132, 142, n. 7 (2d Cir 2001) (Discussing timely disclosures of evidence.). Accordingly, the loss of evidence has actually prejudiced Jordan. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977); *United States v. Marion*, 404 U.S. 307 (197l).

Lastly, the improper tactical advantage the government has sought is the misjoinder of Counts One and Two with Counts Three through Eleven. The adverse effect of the misjoinder is discussed in Point II, both here and in our opening memorandum. In its opposition, we finally gain insight into the government's motive and method of prosecuting its case against Jordan, where it states: "some of the evidence relating to Jordan's involvement in Mizell's homicide includes Jordan's narcotics trafficking, firearms use and statements after October 30, 2002. The government also expects significant overlap of witness [sic] as a result. Indeed, many of the witnesses, including Jordan's co-conspirators, as well as individuals who purchased narcotics from Jordan, knew and were involved with Jordan well before 2015."[5] Thus, the government delayed the Mizell prosecution to work up its narcotics case against Jordan. The government now has the tactical advantage of possibly trying the two misjoined cases together. The tactical advantage is obvious, especially, given the lack of evidence linking Jordan to Mizell's murder.

---

[4]*Id.* at 16.
[5]*Id.* at 28.

## II.     Misjoinder of Mizell Homicide with Jordan's Other Counts

Mr. Jordan is not requesting that this Court conduct three separate trials.   He simply asks that this Court conduct two fair trials by severing Counts One and Two from Counts Three through Eleven.  The Indictment, in this case, sets forth two distinct cases.  The first case – Counts One and Two – the Indictment alleges that in or about October 2002, the defendants participated in a conspiracy to distribute cocaine and that in furtherance of this conspiracy, Jordan and Washington caused the shooting death of Mr. Mizell.

The second case – Counts Three through Eleven – charges only Jordan.  Count Three charges that Jordan participated in a conspiracy to distribute controlled substances from March 2016 through August 2020.  Count Four charges Jordan with use of firearms in connection with a drug trafficking crime.  Counts Five through Eleven charge him with separate substantive cocaine sales from April 2017, through June 2017.

While it is well established that "[f]or reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials", *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003), unless the standards set out in Rule 8(b) are met, a motion for severance should be granted even absent a showing of prejudice.  *Id.* at 113.  Under Rule 8(b) joinder is proper where two or more persons' criminal acts are (1) "unified by some substantial identity of facts or participants," or (2) "arise out of a common plan or scheme."  *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (*quoting United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990)).  To determine if there is a "substantial identity of facts or participants," the Second Circuit has looked to whether "a reasonable person would easily recognize the common factual elements that permit joinder." *United States v. Turoff*, 853 F.2d 1037, 1044 (2d Cir. 1988).   For example, joinder is proper where if there were two separate trials, "the evidence at one trial would essentially duplicate the

3

evidence at the other," *Feyrer*, 333 F.3d at 114, or where "proof of one scheme is indispensable for a full understanding of the other," *Turoff*, 853 F.2d at 1044.  Conversely, joinder is improper where, as here, "[c]ommission of one of the offenses neither depended upon nor necessarily led to the commission of the other" and "proof of the one act neither constituted nor depended upon proof of the other." *United States v. Halper*, 590 F.2d 422, 429 (2d Cir. 1978).

A "common plan or scheme" generally exists where there is "a non-frivolous conspiracy charge." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988).   However, where, as here, there are multiple counts of conspiracy charged whether joinder "is warranted must be determined on a case-by-case basis." *Rittweger*, 524 F.3d at 178.  For example, joinder is proper where "one scheme stemmed from the other" such that one scheme is "part and parcel" of the other. *Turoff*, 853 F.2d at 1044.  This is so because "there is a key link between the two offenses … and that link provides a sound basis for joinder under Rule 8(b)." *Id*.  Knowledge of the other conspiracy is at least one "indicator of whether or not there is a common scheme or purpose." *United States v. Ohle*, 678 F. Supp. 2d 215, 225 (S.D.N.Y. 2010).  As the Second Circuit has noted, "choosing the definitional frame of reference dictates whether joinder is proper in a given case." *Turoff*, 853 F.2d at 1039.

Joinder of Counts One and Two with the remaining counts is improper because the Indictment presents wholly disparate and distinct cases and conspiracies, each of which employed dissimilar techniques, were separated by roughly 14 years, and involved various participants, many of whom are unknown to each other.   Indeed, unlike joinder of offenses under Rule 8(a), Rule 8(b) does not permit joinder solely on the basis that the charged offenses of "the same or similar character." *Turoff*, 853 F.2d at 1042 - 43.  While the two charged

conspiracies are united by the common purpose of cocaine distribution, courts in this Circuit have required a greater connection to justify joinder.

For example, in *United States v. Yaron*, No. S2-10-CR-363 (GBD), 2011 US Dist LEXIS 84109, 2011 WL 3279054, at *1 (S.D.N.Y. July 28, 2011), two hospital executives were charged in a single indictment for their roles in two separate schemes to defraud their employer by accepting kickbacks in return for awarding separate contracts, one of which was a construction contract and one of which was a heating, ventilation, and air conditioning (HVAC) contract. Although both of the conspiracies involved the same two hospital executives who each "used their positions within the New York Presbyterian Hospital system to award work contracts for personal gain," occurred during the same time period, and victimized the same hospital, the court held that the "similarities between the two conspiracies are not enough, however, to satisfy the requirements of joinder under Rule 8(b)." *Id.* at 8.

The two defendants involved in the construction conspiracy who sought severance were "not even mentioned in relation to the HVAC Conspiracy," there was no allegation that they "knew of or actively sought to involve themselves in the HVAC Conspiracy, which weighs heavily in favor of severance," and the two conspiracies "operated very differently" in how they funneled the kickbacks. *Id.*  Additionally, trying the two cases separately would not require substantial duplication of the evidence presented and there was no allegation of a "key link" between the two conspiracies, *i.e.*, that one flowed from the other.  *Id.*; *see also United States v. Lech*, 161 F.R.D. 255, 257 (S.D.N.Y. 1995) (Sotomayor, J.) (joinder of three schemes to defraud an employer was improper where one of the defendants "had very little, if any, knowledge of the other schemes, and did not participate in them[]").

While the government argues there is overlap in participants, goals and methods to justify joinder, which is highly unlikely given the 14-year time span, this Court must also analyze joinder from the perspective of Washington who is only charged in Counts One and Two, and therefore the similarities between Counts are besides the point. *See United States v. Rajaratnam*, 753 F. Supp. 2d 299, 309 n.4 (S.D.N.Y. 2010) ("[T]he Court will follow the numerous other decisions in this Circuit that have analyzed the relationship between the offenses in which a defendant is charged with a co-defendant and the offenses with which only the co-defendant is charged.").

A reasonable person would not be able to "easily recognize" the common factual elements that would permit joinder of the distinct conspiracies charged in Counts One and Two and the rest of the Indictment. *Turoff*, 853 F.2d at 1044. Counts One and Two charge a murder in furtherance of a drug conspiracy that transpired in October 2002 and involved Jordan, Washington and others. Counts Three through Eleven commenced fourteen years after the 2002 conspiracy ended, involved only Jordan and others, and had a substantially different *modus operandi*: street level drug sales to undercover agents. Accordingly, the government's contention that all counts of the indictment involve overlapping witnesses is meritless.

Nor can the 2016 conspiracy charged in Counts Three, and the substantive counts, be said to have arisen from a "common plan or scheme" that links it with the 2002 drug conspiracy underlying Counts One and Two. *Turoff*, 853 F.2d at 1044. While both conspiracies charge Jordan, there is no allegation that Washington was aware of or participated in the 2016 conspiracy. While such knowledge is not required to join the offenses, it is an important consideration that militates against joinder. *See Ohle*, 678 F. Supp. 2d at 225 ("Knowledge of the other conspiracy is not required, but it is an indicator of whether or not there is a common

6

scheme or purpose."); *United States v. Kouzmine*, 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996)
(Courts "in this circuit have concluded that the joinder of distinct conspiracies . . . is improper
notwithstanding the presence of a common defendant and similar objects, because there was no
suggestion that the moving defendant knew of or participated in the schemes other than the one
with which he was charged.").

      Jordan's involvement in both charged conspiracies stands apart from *Rittweger*, relied
upon by the government, in which the two charged conspiracies involved a common plan or
scheme, because both centered around efforts to induce investments into the same Ponzi scheme.
524 F.3d at 175.   Likewise, in *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989),
joinder of two distinct conspiracies was held to have been proper, because both were a part of a
series of acts that shared a common purpose: to conceal and launder a defendant's income
derived from a single source of gambling and loansharking.  While both conspiracies involve
Jordan, this amounts to little more than that he separately conspired 14 years apart to commit the
same offense. *See Rajaratnam*, 753 F. Supp. 2d at 311; *see also Yaron*, 2011 US Dist LEXIS
84109, 2011 WL 3279054 at *8 (allegation that in two conspiracies hospital executives used
their positions "to award contracts for person gain" was insufficient to justify joinder).

### III.    Severance Based on Washington's Alleged Statements

      Jordan argued that no clearer example of prejudice exists than the situation where a
statement of an individual joined for trial implicates another co-defendant.  Absent Washington
testifying at the trial, Jordan is effectively precluded from confronting his "accuser." *United
States v. Crawford,* 581 F.2d 489 (5th Cir. 1978); *Bruton v. United States,* 391 U.S. 123 (1968).
Additionally, under *Bruton* a limiting instruction is insufficient to protect a non-declarant
defendant and a jury is presumed to be incapable of following a limiting instruction. *See Cruz v.*

*New York*, 481 U.S. 186, 190 (1987) (citing *Bruton*, 391 U.S. at 135-36). In that situation, if the government wishes to make use of the statement, then the non-declarants must be severed from the declarant-defendant. *United States v. Jass*, 569 F.3d 47, 56 n. 5 (2d Cir. 2009).

When employing redaction to avoid Confrontation Clause concerns identified in *Bruton*, the Second Circuit recognizes two acceptable types of redactions: (1) redactions eliminating altogether any reference to a co-defendant's existence; and (2) redactions replacing a co-defendant's name with neutral pronouns so that the statement, standing alone, does not refer to the co-defendant.  *United States v. Jass*, 569 F.3d 47, 56 (2d Cir. 2009) (noting that *Bruton* concerns are alleviated where a limiting instruction is coupled with the admission of co-defendant statements which have been redacted "'to eliminate not only the defendant's name, but any reference to his or her existence'" and which are only inferentially incriminating to a co-defendant "'when linked with evidence introduced later at trial." (quoting *Richardson v. Marsh*, 481 U.S. 200, 208, 211 (1987)); *id*. (holding that "'a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect codefendants to the crimes, may be admitted without violating a co-defendant's Bruton rights.'" (quoting *United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989)).

The Second Circuit has made clear, however, that it is always preferable to use the first method of redaction, *i.e*. eliminating any reference to the existence of a co-defendant, so as "to eliminate completely from a confession any mention of a non-declarant defendant's existence." *Id*.at 56 n. 5.  Thus, the second method of redaction, which employs neutral pronouns, should be employed "only" as a last resort, "when complete redaction would distort the confession, for example, by exclud[ing] substantially exculpatory information, or chang[ing]

8

the tenor of the utterance as a whole." *Id.* (internal quotation marks and citation omitted).

Moreover, the Supreme Court has warned that clumsy redactions that "simply replace a name

with an obvious blank space or a word such as 'deleted . . . or other similarly obvious indications

of alteration" do not suffice to eliminate *Bruton* concerns and in fact, "so closely resemble

*Bruton's* unredacted statements" that the law requires the same result.  *Gray v. Maryland*, 523

U.S. 185, 192 (1998).

When courts do employ redactions involving neutral pronouns, the Second Circuit

instructs that the propriety of the redactions should be analyzed with reference to two questions:

"(1) did the redacted statement give any 'indication to the jury that the original statement

contained actual names,' and (2) did 'the statement standing alone … otherwise connect co-

defendants to the crimes.'" *Jass*, 569 F.3d at 58 (quoting *Tutino*, 883 F.2d at 1135). Thus, in

analyzing these issues, a court reviewing the admissibility of a redacted statement which

employs neutral pronouns must "view the redacted confession in isolation from the other

evidence introduced at trial" in order to insure that "the confession, when so viewed, does not

incriminate the defendant." *United States v. Williams*, 936 F.2d 698, 700-01 (2d Cir. 1991). If a

redacted statement utilizing neutral pronouns passes this test, "it may be admitted with a proper

limiting instruction even though other evidence in the case indicates that the neutral pronoun is

in fact a reference to the defendant."  *Id*.

Redactions of co-defendant statements, moreover, cannot violate the rule of completeness

under the Federal Rule of Evidence 106.  Rule 106 requires "the omitted portion of a statement

[to] be placed in evidence if necessary to explain the admitted portion, to place the admitted

portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of

the admitted portion." *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987).

Federal Rule of Evidence 106 is violated "only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant." *United States v. Alvarado*, 882 F. 2d 645, 651 (2d Cir. 1989).  Courts evaluating claims under this Rule must "balance [] the interest in protecting a co-defendant's confrontation right against the judicial economy promoted by conducting a joint trial." *United States v. Mussaleen*, 35 F.3d 692, 696 (2d Cir. 1994) (citing *Castro*, 813 F.2d at 576).

Here, after a review of the four statements made by Washington cited by the government in its response, it does not appear that any redaction will eliminate the risk of prejudice to Jordan. With the exception of the fourth statement made by Washington cited by the Government, attempting to replace Jordan's name with a "blank" or neutral pronoun will not eliminate the risk of prejudice.   After carefully reviewing the first three statements made by Washington cited by the government, it appears that any combination of redactions or omissions to the statements will likely indicate to a jury that the redacted statement contained an actual name and that it referred to a crime committed by the co-defendant.  This is particularly prejudicial in light of the facts of this case, in which the allegations are that two-armed gunman were responsible for the murder of a musical icon.

## **CONCLUSION**

Mr. Jordan's motions should be granted.

Dated:          Brooklyn, New York
                May 16, 2022

Respectfully submitted,

_____/s/_____
MICHAEL HUESTON, ESQ.
MARK DEMARCO, ESQ.
JOHN DIAZ, ESQ.
MONICA NEJATHAIM, ESQ.

10