UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>KARL JORDAN, JR., and<br>RONALD WASHINGTON,<br><br>Defendants. | 20 Cr. 305 (LDH) |

# RONALD WASHINGTON'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS

Susan G. Kellman
Ezra Spilke
Jacqueline Elaine Cistaro

*Counsel for Ronald Washington*

- i -

## TABLE OF CONTENTS

**DISCUSSION**..................................................................................................................1

I.   The Government's Generic Justification for the PreTrial Delay Underscores the Need for a Hearing to Determine Why It Could Not Seek an Indictment in 2007, When It Claimed to Be Able to Prove the Murder "Above and Beyond a Preponderance"...................................................1

II.  The Authorities that the Government Cites to Justify the Eighteen-Year Delay between the Murder and the Indictment Are Distinguishable...............................................................3

III. Joinder of the 2002 Mizell Murder Charges with Drug Trafficking Charges Gives the Government an Unduly Prejudicial & a Tactical Advantage & Washington Joins Jordan's Severance Motion...........................................................................................................3

# DISCUSSION

**I. The Government's Generic Justification for Its Delay Underscores the Need For a Hearing to Determine Why It Could Not Seek an Indictment in 2007, When It Claimed to Be Able to Prove the Murder "Above and Beyond a Preponderance"**

In his opening brief, Ronald Washington argued that the government has not given any reason for the delay or identified any new evidence that has come to light since 2007 when AUSA Sean Haran asserted that the government could prove Washington's involvement in Jason Mizell's murder "above and beyond a preponderance." Washington Br. at 10-11; *see* Washington Br., Ex. C at 1.[1] The government now states that "within the five years prior to the instant prosecution," the government has done the following:

> identified and interviewed multiple individuals that had not previously been interviewed; issued hundreds of grand jury subpoenas; applied for and executed numerous search warrants; conducted dozens of interviews throughout the country; obtained the cooperation of witnesses necessary to prove the defendants' guilt at trial beyond a reasonable doubt; recanvassed for physical evidence; and conducted additional ballistics and DNA testing.

Gov't Br. at 13-14. This explanation raises more questions than it answers and begs the question what did the government learn after 2007 and when did it learn it.

First, and critically without explanation, the government suggests that it ramped up a dormant investigation within the five years prior to the indictment. The government thus waited approximately seventeen years after Lydia High identified Washington as an accomplice in the shooting and thirteen years after it represented in open court that Washington "very well may be" prosecuted, Washington Br., Ex. D at 16, because it possessed proof "above and beyond a

---

[1] The government concedes that AUSA Haran made this representation *as to* the Mizell murder. Gov't Br. at 13. Yet, oddly, it claims that Washington and Jordan "misstate[d]" the record. *Id.* at 12. To the contrary, both defendants accurately quoted the record, and the government should be given an opportunity to retract that assertion.

preponderance" to indict him. That fact alone demonstrates the government's reckless disregard of the prejudicial impact on Washington's ability to defend against the charges. *See Lovasco*, 431 U.S. at 795 n.17.[2]

Second, and equally unpersuasive, is that the government's explanation is too general to permit the Court to consider the questions raised by its delay on the merits. The government does not explain whether or how any of its recent investigative steps were critical to its decision to indict, nearly twenty years after Mizell was murdered. Indeed, the government failed not even disclose how many new potential witnesses it interviewed or how many, if any, of those potential witnesses are critical to the development of its case. Similarly, the government does not even attempt to show which of its other investigative steps – issuing grand jury subpoenas, applying for search warrants, canvassing for physical evidence and testing for ballistics and DNA evidence – bore fruit. Finally, the government fails to explain why it did not take those investigative steps much earlier.

In an analogous case in which the government waited twenty-two years to indict the defendants for murder, the Honorable George B. Daniels ordered a series of evidentiary hearings. Hr'g Tr. at 38-50, *United States v. Delroy Walker*, No. 17 Cr. 220 (S.D.N.Y. Apr. 4, 2019) (cooperating witness testified that he told the government, sometime between 1998 and 2000, about a murder that happened in 1995 and the government waited until 2017 to charge it); *see also* Hr'g Tr., *United States v. Delroy Walker*, No. 17 Cr. 220 (S.D.N.Y. Aug. 1, 2018). As a result of the hearings, the government dropped the murder charges as to each defendant in

---

[2] The government points to its many *Brady* disclosures to refute suggestions of government malfeasance. Gov't Br. at 14 n.3. But recent scrupulousness does not cure prior recklessness or intentional attempts to gain a tactical advantage. Because of the length of the delay, the fault for the delay – or at least not all of it – cannot be laid exclusively at this trial team's feet. But that does not alter the responsibility of the Office in general.

exchange for pleas to Hobbs Act robbery and a narcotics conspiracy.

## II. The Authorities That the Government Cites to Justify the Eighteen-Year Delay between the 2002 Murder and the Indictment Are All Distinguishable

The government cites multiple cases for the proposition that lengthy pre-indictment delays do not prejudice the defendant or that the government did not delay indictment to gain a tactical advantage. But the delay in this case is longer than the delay in any of the cases cited by the government. *United States v. Lovasco*, 431 U.S. 780, 784 (1977) (18 months); *United States v. Marion*, 404 U.S. 307, 313 (1971) (3 years); *United States v. Scala*, 388 F. Supp. 2d 396, 398 (S.D.N.Y. 2005) (4 years); *United States v. Carbonaro*, Cr. No. 02-743 (RCC), 2004 WL 2222145, at *1 (S.D.N.Y. Sept. 30, 2004) (14 years); *United States v. Silberstein*, Cr. No. 02-800 (SWK), 2003 WL 21488024, at *2 (S.D.N.Y. June 27, 2003) (7 years); *United States v. Cornielle*, 171 F.3d 748, 751 (2d. Cir. 1999) (4 years); *United States v. Birney*, 686 F.2d 102, 104 (2d Cir. 1982) (3 years); *United States v. Lawson*, 683 F.2d 688, 689 (2d Cir. 1982) (15 months); *United States v. Synder*, 668 F.2d 686, 689 (2d Cir. 1982) (3 years); Appellant Br. at 34, *United States v. Scarpa*, Cr. Nos. 99-1312, 99-1366, 2000 WL 34002911, (2d Cir. Aug. 16, 2000) (7 years). Whereas the delay in this case was eighteen years, the longest delay in the authorities cited by the government was fourteen years.

Notably, not one of the cases that the government cites had a prosecutor previously state in open court that it possessed proof "above and beyond a preponderance" and that the defendant "very well may be" prosecuted for the crime that he was later charged with. This is the rare – likely unprecedented – case in which those facts are present.

## III. The Gives the Government an Unduly Prejudicial and a Tactical Advantage and Washington Joins Jordan's Severance Motion

The government asserts that "the defendants fail to explain what tactical advantage the government could have possibly sought to gain by delaying the instant prosecution." Gov't Br. at

- 3 -

13. The prejudicial effects of the government's failure to prosecute are multitude and compound. Merely one of them is that the delay has allowed the government to join the 2002 Mizell murder counts (Counts One and Two) with the drug trafficking counts (Counts Three through Eleven). For substantially the same reasons that Karl Jordan, Jr., cited in his severance motion, Jordan Br. at 10-15, ECF No. 84, the government's unjustified delay prejudices Washington, and Washington joins Jordan's motions. In particular, Washington is charged with murdering Mizell while engaged in narcotics trafficking and with murdering Mizell in the course of a firearm crime related to that narcotics trafficking. Prior to the present indictment, the government possessed no corroboration for Washington's participation in the charged narcotics conspiracy (with or without Jordan). The addition of the trafficking counts is an attempt to provide the corroboration for the nexus between the murder and narcotics trafficking. By permitting that corroboration, the government's unjustified delay has demonstrably prejudiced Washington.

Dated: Brooklyn, New York
       May 16, 2021

Respectfully submitted,

*Susan G. Kellman*

Susan G. Kellman
Jacqueline E. Cistaro, Of Counsel
25 Eighth Avenue
Brooklyn, New York 11217
(718) 783-8200
sgk@kellmanesq.com

  /s/ EMS
Ezra Spilke
Law Offices of Ezra Spilke, PLLC
1825 Foster Ave., Ste. 1K
Brooklyn, New York 11230
(718) 783-3682
ezra@spilkelaw.com

- 5 -

TO:    Breon Peace, Esq.
         United States Attorney
         Eastern District of New York
Attn:  Artie McConnell, Mark E. Misorek
         Assistant United States Attorneys