UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA,

                                                          20 Cr. 305 (LDH)

                    -against-

KARL JORDAN, JR., et al.,

                                        Defendants.

------------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT
KARL JORDAN, JR.'S
PRETRIAL MOTIONS**

MICHAEL HUESTON
MARK DEMARCO
JOHN DIAZ
MONICA NEJATHAIM
*Counsel for Defendant Karl Jordan, Jr.*

Dated:  June 17, 2022

# TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................... ii

Preliminary Statement ................................................................................. 1

Background ................................................................................................... 1

    A. The 8/26/20 and 9/24/20 Search Warrants ........................................... 1

    B. Mr. Jordan's August 16, 2020 post-arrest statement ............................ 3

Argument ...................................................................................................... 4

I.     The September 24, 2020 Warrant to Search the Subject Devices was
      unconstitutional as it lacked probable cause and the Court Should
      suppress the materials Seized ............................................................... 4

    A. Legal Background ............................................................................ 5

    B. The government's attempt to cure the initial failed search warrant
    affidavit with the inclusion of ▮▮▮▮▮▮▮▮ proffer constitutes a
    "reckless disregard for the truth." ...................................................... 6

II.    Suppression of Mr. Jordan's post-arrest statement ............................. 9

Conclusion ................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**                                                                          **Page**

*Colorado v. Connelly,*
  479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ...................... 10

*Dickerson v. United States,*
  530 U.S. 428 (2000) ................................................................... 10-11

*Dunaway v. New York,*
  442 U.S. 200 (1979) ......................................................................... 10

*Franks v. Delaware,*
  438 U.S. 154 (1978) .................................................................... 4-7, 9

*Illinois v. Gates,*
  462 U.S. 213 (1983) ........................................................................... 5

*McNeil v. Wisconsin,*
  501 U.S. 171 (1991) ......................................................................... 11

*Miranda v. Arizona*
  384 U.S. 436 (1966) ...................................................................... 9-11

*Michigan v. Tucker,*
  417 U.S. 433 (1974) ......................................................................... 10

*New York v. Quarles,*
  467 U.S. 649 (1984) ......................................................................... 10

*Oregon v. Elstad*
  470 U.S. 298 (1985) ......................................................................... 10

*Rhode Island v. Innis,*
  446 U.S. 291 (1980) .................................................................... 10, 12

*Rivera v. United States,*
  928 F.2d 592 (2d Cir. 1991) ............................................................ 6-7

*Schneckloth v. Bustamonte,*
  412 U.S. 218 (1973) ........................................................................... 5

*Tankleff v. Senkowski,*
    135 F.3d 235 (2d Cir. 1998) ............................................................. 11

*United States v. Awadallah,*
    349 F.3d 42 (2d Cir. 2003) ................................................................. 5

*United States v. Benacquista,*
    2009 WL 1651458 (W.D.N.Y. June 8, 2009) ..................................... 9

*United States v. Canfield,*
    212 F.3d 713 (2d Cir. 2000) ............................................................... 8

*United States v. Carter,*
    489 F.3d 528 (2d Cir.2007) .............................................................. 10

*United States v. Castellanos,*
    820 F. Supp. 80 (S.D.N.Y. 1993) ...................................................... 9

*United States v. Chesher,*
    678 F.2d 1353 (9th Cir. 1982) ........................................................... 9

*United States v. Falso,*
    544 F.3d 110 (2d Cir. 2008) ............................................................... 5

*United States v. Ferguson,*
    758 F.2d 843 (2d Cir. 1985) ............................................................... 8

*United States v. Koschtschuk,*
    2011 WL 867569 (W.D.N.Y. Mar. 10, 2011) ................................... 9

*United States v. Lahey,*
    967 F. Supp. 2d 698 (S.D.N.Y. 2013) (Karas, J.) ........................... 8-9

*United States v. Leon,*
    468 U.S. 897 (1984) ........................................................................... 6

*United States v. Levasseur*,
    816 F.2d 37 (2d Cir. 1987) ................................................................. 6

*United States v. Padilla,*
    986 F. Supp. 163 (S.D.N.Y. 1997) .................................................... 9

*United States v. Plugh,*
    648 F.3d 118 (2d Cir. 2011), cert. denied, — U.S. —, 132 S.Ct.
    1610, 182 L.Ed.2d 222 (2012) ........................................................... 10

*United States v. Rajaratnam*,
    719 F.3d 139 (2d Cir. 2013)........................................................... 6, 8-9

*United States v. Raymonda,*
    780 F.3d 105 (2d Cir. 2015) ................................................................. 5

*United States v. Reilly,*
    76 F.3d 1271 (2d Cir. l996)............................................................... 6, 8

*United States v. Roman,*
    311 F. Supp. 3d 427 (D. Mass. 2018)  .................................................. 8

*United States v. Vilar,*
    2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007)........................................ 6

*United States v. Westover,*
    812 F. Supp. 38 (D. Vt. 1993) ............................................................. 9

*Varnish v. Best Medium Pub. Co.,*
    405 F.2d 608 (2d Cir. 1968)................................................................. 6

*Wong Sun v. United States,*
    371 U.S. 471 (1963) ............................................................................. 9

*Young v. Conway,*
    698 F.3d 69 (2d Cir. 2012).................................................................. 9

## STATUTES

U.S. Const. amend. IV ................................................................................ 5

U.S. Const. amend. V ........................................................................ passim

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the motions filed on behalf of defendant Karl Jordan, Jr.  Mr. Jordan seeks orders:

1) suppressing all data obtained from Mr. Jordan's phones and all fruits of the poisonous tree regarding the government's investigation; and

2) suppressing Mr. Jordan's post-arrest statement.

Mr. Jordan also requests leave to join in his co-defendant's motions to the extent they are beneficial to his defense and such other and further relief as the Court may deem just and proper.

The Court is respectfully referred to the accompanying declaration of Michael Hueston, Esq., dated June 17, 2022 ("Hueston Decl."), and the exhibits attached thereto.

## BACKGROUND

We respectfully refer the Court to Jordan's April 11, 2022 memorandum of law for an overview of the case, *see* Doc. No. 84 at pp. 6-8, and add the following.

A.      **The 8/26/20 and 9/24/20 Search Warrants**

On August 26, 2020, Alcohol, Tobacco, Firearms and Explosive ("ATF") Special Agent Justin Quinn applied for search a warrant for the following devices belonging to Mr. Jordan, listed as "Subject Telephones": (1) One Black LG, Model XM—320TA ("Device #1"); and (2) One White iPhone ("Device #2"). ████████████████████████████████████████

████████████████████████████████████████ The seven dates of the undercover purchases, which cover approximately one and a half months in 2017, are as follows:

████████████████████████████████████████████████████

████.[1]  The application also cites a post-arrest statement made by Mr. Jordan, stating:

---

[1] *See* 8/26/2020 Search Warrant Application attached Hueston Decl. attached as Exhibit A, at ¶¶ 5-11.



Upon review of the 8/26/2020 application, Magistrate Judge Steven M. Gold found the search warrant application lacked probable cause and did not sign it.  Specifically, Judge Gold "believed the initial application did not provide enough clear, unambiguous evidence that JORDAN was distributing narcotics past 2017."[3]

When, on September 24, 2020, the government returned to Magistrate Judge Gold with a new warrant, it was essentially identical to the 8/26/2020 warrant, except for the addition of the following paragraph:

---

[2]*See Id.* at ¶ 13.

[3]*See* 9/24/2020 Search Warrant Application attached to Hueston Decl. as Exhibit A, at ¶ 2.

[4]This date seems to be in error as it post-dates the date of the affidavit.



Magistrate Judge Gold signed the 9/24/2020 Search Warrant for Mr. Jordan's two phones.[6]

So the government, having failed to secure its initial search warrant for Mr. Jordan's two phones, then flew to ▮▮▮ to find and interview ▮▮▮▮▮▮▮▮▮▮▮ who was facing serious charges and in jail. ▮▮▮ initially told the government in this interview that Mr. Jordan sold drugs since the time he was fourteen years old through 2017. The government did not like that answer; they needed to support a finding of probable cause to show that Mr. Jordan continued to sell drugs through 2020 in order to secure a search warrant and seize his two cell phones, which is why the summary continues that "during the course of the proffer" ▮▮▮ then "admitted" that Jordan dealt drugs until "January 2020" – the exact statement that Magistrate Judge Gold informed the government was lacking in the initial August 26, 2020 search warrant application.

**B.    Mr. Jordan's August 16, 2020 post-arrest statement**

On August 16, 2020, Mr. Jordan was arrested in this case. Upon his arrest, agents interviewed him and advised of him of his *Miranda* rights, which he purportedly waived.[7] Only

---

[5]*Id.* at ¶ 14 (footnote omitted).

[6]*Id.* at p .15.

[7]*See* Hueston, Decl., Video/Tape Recording, at Exhibit B (filed under seal).

after extensively questioning Mr. Jordan about his narcotics charges, did the agents tell Mr. Jordan that he had also been indicted for the murder of Jason Mizell.

Mr. Jordan denied any involvement in Mizell's murder, informing the agents of his innocence, and his alibi, and the interrogation ended.

I.     **The September 24, 2020 Warrant to Search the Subject Devices was unconstitutional as it lacked probable cause and the Court Should suppress the materials Seized**

The Court should find that the September 24, 2020 search warrant was unconstitutional because, just as Magistrate Gold found the first, August 26, 2020 search warrant to be lacking probable cause, the second, September 24, 2020 search warrant also lacked probable cause, and was based on purposely solicited information from ███████████████████ who initially told the government that Mr. Jordan sold drugs up and until 2017.  The government did not have any basis to assert that Mr. Jordan sold drugs past 2017 (when the undercover buys were recorded) or that information would have been in the original August search warrant – but they wanted his phones anyway, so they found a witness and got him to say what they needed. The warrants, almost identical, were overbroad and unparticular.  For those reasons, the Court should suppress the evidence from Mr. Jordan's two cell phones – the Subject Telephones. Alternatively, the Court should order an evidentiary hearing.

██████████, the sole named source in the September 24, 2020 search warrant, is not credible.  It is clear that, unsatisfied with ████ first response, the government pushed him to say what it wanted: that Jordan's activity continued until 2020.  Without that extra assertion, the application would not have been granted.  This type of government interference necessitates suppression, or the Court should order a *Franks* hearing.  *See Franks v. Delaware*, 438 U.S. 154, 154 (1978) ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is

set to one side, there remains sufficient content in the warrant affidavit to support a finding of

probable cause, no hearing is required, but if the remaining content is insufficient, the defendant

is entitled under the Fourth and Fourteenth Amendments to a hearing.").

### A.  Legal Background

The Fourth Amendment guarantees the "right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

"[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized." *Id.* Any

governmental intrusion or search of a private area without a warrant supported by probable cause

is presumptively unreasonable. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

For a warrant to issue, a neutral and detached magistrate must make a "practical, common-sense

decision whether, given all the circumstances set forth in the affidavit . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *Illinois v.

Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir.

2015).

Obtaining a warrant, however, does not insulate a search made pursuant to a warrant from

Fourth Amendment scrutiny.  A defendant is entitled to a hearing under *Franks* if he makes a

"'substantial preliminary showing' that a deliberate falsehood or a statement made with reckless

disregard for the truth was included in the warrant affidavit and the statement was necessary to

the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008)

(quoting Franks, 438 U.S. at 155–56).  *Franks* protects against misleading omissions as well as

affirmative misstatements.  *See United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003);

*Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991) ("Intentional or reckless omissions of

5

material information, like false statements, may serve as the basis for a Franks challenge.”);

*United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987).

An agent “recklessly disregards” the truth in the *Franks* context when he or she “makes allegations while entertaining serious doubts about the[ir] accuracy,” see *United States v. Vilar*, 2007 WL 1075041, at *26 (S.D.N.Y. Apr. 4, 2007) (collecting authorities), or while “aware of a high probability” that the allegations “might be false.” *Varnish v. Best Medium Pub. Co.*, 405 F.2d 608, 623 (2d Cir. 1968).  An omission satisfies the Franks standard if it was “‘designed to mislead,’ or … was ‘made in reckless disregard of whether [it] would mislead’ the magistrate.” *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (quoting *Awadallah*, 349 F.3d at 68).  The defense should make an “offer of proof,” “point out specifically the portion of the warrant affidavit that is claimed to be false,” and provide “a statement of supporting reasons.” *Franks*, 438 U.S. at 171. “Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.” *Id.*

If the hearing demonstrates that the warrant affidavit included misleading omissions and that, “with the affidavit’s false material set to one side, the affidavit’s remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.” *Id.* at 156; *see also Rajaratnam*, 719 F.3d at 146.  If a search warrant is void under *Franks*, the good-faith exception to the exclusionary rule does not apply.  *See United States v. Leon*, 468 U.S. 897, 923 (1984); *United States v. Reilly*, 76 F.3d 1271, 1280-81 (2d Cir. l996).

**B. The government’s attempt to cure the initial failed search warrant affidavit with the inclusion of ▅▅▅▅▅▅ proffer constitutes a “reckless disregard for the truth.”**

On August 26, 2020, the special agent failed at an attempt to secure a warrant to search and seize Mr. Jordan's cell phones. Magistrate Judge Gold asserted the "application did not provide enough clear, unambiguous evidence that JORDAN was distributing narcotics past 2017" and did not sign the warrant.  Less than a month later, with no probable cause to show Mr. Jordan had any involvement in selling narcotics past 2017, they located ██████████ ████████████████████ in the hopes that he would give them the information needed to establish probable cause.

The government knew that ████████ was not reliable and that there was a lack of probable cause in both affidavits, yet neglected to include any reference to his credibility in its warrant affidavits.  This omission constitutes a "reckless disregard for the truth" in a statement necessary for the magistrate judge's probable cause finding, requiring suppression of evidence seized pursuant to the search warrants. *See Franks v. Delaware*, 438 U.S. 154, 154 (1978); *see also Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991) ("Recklessness may be inferred where the omitted information was "clearly critical" to the probable cause determination.").

The government presented the initial application for a search warrant with a complete lack of probable cause that Mr. Jordan engaged in narcotics sales past the 2017 undercover buys. The government had no witness and no evidence.  They found out ██████████████████ was being held in a jail in ██████ awaiting trial on serious charges.  Upon proffering ████████ he purportedly told the government Mr. Jordan was engaged in narcotics sales up until 2017.  Then, ████████ purportedly, during his proffer, changed his statement to say that Mr. Jordan sold drugs up until 2020.  While it is unclear what was said to ████████ the length of the proffer, or the context; one thing is clear – ████████ was in jail awaiting serious charges and facing many years in prison.

7

"[R]ecklessness may be inferred" where false or omitted information was "'clearly critical' to assessing the legality of a search." *Reilly*, 76 F.3d at 1280 (internal citation omitted). The agent could not have omitted the wealth of information showing to be incredible through mere carelessness. *See United States v. Roman*, 311 F. Supp. 3d 427, 429 (D. Mass. 2018) (finding "the Government committed a series of easily avoidable errors which, combined with the admittedly high risk of the harm … amounted to a reckless disregard for the truth"). Assuming the agent failed to seek that publicly-available testimony and "provide all potentially adverse information" before drafting the affidavit, her actions were reckless. See Reilly, 76 F.3d at 1280; *United States v. Lahey*, 967 F. Supp. 2d 698, 723 (S.D.N.Y. 2013) (Karas, J.) (inferring recklessness under Franks where a series of related omissions "dr[o]ve in the same direction" of buttressing probable cause).

Further, the government did not offer any information to the magistrate judge to corroborate what ██████████ purportedly said about Mr. Jordan sealing drugs to 2020.  Had the agent included information implicating his lack of credibility – including that what actually led ████████ to change his statement from the beginning of the proffer as to the timing of the narcotics activity – the portion of the affidavits referencing his statements would fail.

"The ultimate inquiry is whether, after putting aside erroneous information and material omissions, 'there remains a residue of independent and lawful information sufficient to support probable cause.'" *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000), *citing United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985); *see also Rajaratnam*, 719 F.3d at 146.  In this case, the answer is no.  Disclosing the truth would have fatally weakened the warrant application.  *Contra Rajaratnam*, 719 F.3d at 155.  *See Lahey*, 967 F. Supp. 2d at 723.  Without ████████ tainted statements, the only information remaining to support probable cause for the

8

search warrant was the same information the magistrate deemed insufficient.  The Court should

conclude that the agent acted at least recklessly in failing to include this information in the

affidavit, and suppress the resulting evidence.  Further, the Court should suppress all evidence

that was obtained, directly or indirectly, as a result of the search warrant relying on the

statements. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963); *Young v. Conway*, 698

F.3d 69, 77 (2d Cir. 2012).

      In the alternative, because Mr. Jordan has made a "substantial preliminary showing"

sufficient to require an evidentiary hearing, the Court should order a *Franks* hearing.  *See, e.g.,*

*United States v. Koschtschuk*, 2011 WL 867569, at *5 (W.D.N.Y. Mar. 10, 2011); *United States*

*v. Benacquista*, 2009 WL 1651458, at *7 (W.D.N.Y. June 8, 2009); *United States v. Westover*,

812 F. Supp. 38, 39 (D. Vt. 1993); *Big Apple Bag Co.*, 317 F. Supp. 2d at 181; *United States v.*

*Castellanos*, 820 F. Supp. 80, 82 (S.D.N.Y. 1993).  "Clear proof is not required [to obtain a

*Franks* hearing]—for it is at the evidentiary hearing itself that the defendant, aided by live

testimony and cross-examination, must prove actual recklessness or deliberate falsity." *United*

*States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982); *see also United States v. Padilla*, 986 F.

Supp. 163, 168-69 (S.D.N.Y. 1997) (Franks hearing required where there was "a strong

likelihood that this complaint failed to establish probable cause in the absence of the false

material").

## II.    Suppression of Mr. Jordan's post-arrest statement

      Statements made by a defendant during the course of a custodial interrogation are

inadmissible unless the questioning was preceded by "procedural safeguards effective to secure

the privilege against self-incrimination."  *Miranda v. Arizona,* 384 U.S. 436, 444 (1966).  Such

safeguards, commonly known as "*Miranda* warnings" are devised to "ensure that the person in

custody has sufficient knowledge of his or her constitutional rights relating to the interrogation and that any waiver of such rights is knowing, intelligent, and voluntary." *United States v. Carter,* 489 F.3d 528, 534 (2d Cir.2007).  Courts look at the totality of the circumstances surrounding a *Miranda* waiver and any subsequent statements to determine knowledge and voluntariness.  *See Oregon v. Elstad,* 470 U.S. 298, 309 (1985). In that context, "knowing" means with full awareness of the nature of the right being abandoned and the consequences of abandoning it, and "voluntary" means by deliberate choice free from intimidation, coercion, or deception. *United States v. Plugh,* 648 F.3d 118, 127 (2d Cir. 2011), *cert. denied,* ⸺ U.S. ⸺, 132 S.Ct. 1610, 182 L.Ed.2d 222 (2012).  The government bears the burden of proof.  *Colorado v. Connelly,* 479 U.S. 157, 168-69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

Statements obtained in violation of *Miranda* are subject to suppression.  *See Dickerson v. United States*, 530 U.S. 428, 443-44 (2000).  Interrogation in this context does not consist only of explicit questioning. The Supreme Court has defined an interrogation as "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980).  "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444 (footnote omitted); *see also New York v. Quarles,* 467 U.S. 649, 655 (1984); *Dunaway v. New York,* 442 U.S. 200, 215 (1979).

The Court has said that these safeguards are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected."  *Michigan v. Tucker*, 417 U.S. 433, 444 (1974).  Further, "[t]he prophylactic rule of *Miranda* sweeps more broadly than the Fifth Amendment itself … requires

10

the suppression of some confessions that, while perhaps not actually involuntary, were obtained in the presumptively coercive environment of police custody." *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1998).

In *McNeil v. Wisconsin,* the Court explained that the purpose of the right to counsel under the Fifth Amendment is to "counteract the inherently compelling pressures of custodial interrogation." 501 U.S. 171, 176 (1991) (citing *Miranda,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694). This right can, however, be waived.  Statements made during an interrogation are admissible if the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *McNeil,* 501 U.S. at 176, 111 S.Ct. at 2208 (quoting *Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628).

At the time that Mr. Jordan was interviewed following his arrest, he was aware that he had been indicted on the drug charges.  When he was informed on his *Miranda* rights, and subsequently waived those rights, he was under the impression that he would only be questioned about the drug charges.  At no point during his waiver of his *Miranda* rights was Mr. Jordan aware that he had been indicted for and would be questioned regarding the alleged murder of Jam Master Jay.  In fact, upon review of the post-arrest statement video recording, it is clear that when agents began questioning Mr. Jordan regarding the murder, he was stunned and caught off guard.  Agents purposefully withheld the fact that Mr. Jordan was indicted for the murder of Jason Mizell prior to questioning him.  As a result, Mr. Jordan's waiver of his rights was not made knowingly and intelligently, and therefore, his statement should be suppressed.

Statements obtained in violation of *Miranda* are subject to suppression. *See Dickerson v. United States*, 530 U.S. 428, 443-44 (2000). Interrogation in this context does not consist only of explicit questioning. The Supreme Court has defined an interrogation as "words or actions on the

11

part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980).  Agents had not fully informed Mr. Jordan of the charges against him prior to obtaining his *Miranda* waiver.  The subsequent questioning regarding the murder was a tactic that agents knew was reasonably likely to elicit an incriminating response.  Agents attempted to catch Mr. Jordan off guard in the hopes that he would incriminate himself with respect to the murder.  Because Mr. Jordan's waiver was not made knowingly, as he was not fully informed of the charges against him, his statement should be suppressed in violation of his *Miranda* rights.

## <u>CONCLUSION</u>

For the reasons set forth herein, Mr. Jordan's motions should be granted.

Dated:          Brooklyn, New York
                    June 17, 2022

Respectfully submitted,

_____/s/_____
MICHAEL HUESTON, ESQ.
MARK DEMARCO, ESQ.
JOHN DIAZ, ESQ.
MONICA NEJATHAIM, ESQ

12