UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                              Government,

                    v.

KARL JORDAN, JR., and RONALD
WASHINGTON,

                              Defendants.

---

**MEMORANDUM AND ORDER**

20-CR-305 (LDH)

LᴀSHANN DᴇARCY HALL, United States District Judge:

Karl Jordan, Jr. and Ronald Washington ("Defendants") are charged in a superseding indictment (the "Indictment") with murder while engaged in narcotics trafficking and firearm related murder (Counts One and Two, respectively).  (March 4, 2021 Indictment, ECF No. 45.) Jordan is additionally charged with conspiracy to distribute and possess with intent to distribute cocaine and seven counts of cocaine distribution (Counts Three and Five through Eleven), and use of a firearm in connection with a drug trafficking crime (Count Four).  Defendants move pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure to dismiss Counts One and Two as violative of the Fifth Amendment Due Process Clause; to sever Counts One and Two from Counts Three through Eleven pursuant to Rule 8 of the Federal Rules of Criminal Procedure; and to sever their trials pursuant to Rule 14 of the Federal Rules of Criminal Procedure.

## BACKGROUND

The Government alleges that, sometime between July 2002 and October 30, 2002, Defendants conspired to murder Jason Mizell following a dispute regarding Mizell's alleged decision to cut Washington out of a cocaine distribution deal.  (Gov't Opp'n at 2, ECF No. 86.)

According to the Government, on October 30, 2002, Defendants entered Mizell's recording studio armed with firearms. (*Id.*) Washington pointed his firearm at one of the individuals in the studio and demanded that the individual lay on the floor. (*Id.*) Jordan pointed his firearm at Mizell and fired two shots at close range. (*Id.*) One of the shots struck another individual in the leg, but the other struck Mizell in the head, killing him. (*Id.*)

After his alleged participation in the murder in 2002, the Government claims that Jordan was involved in narcotics trafficking and firearms offenses until his arrest in 2020. (*Id.* at 3.) Specifically, the Government asserts that Jordan would "typically sell cocaine and cocaine base to a variety of buyers on a weekly basis," and that he possessed a firearm while doing so. (*Id.*) Jordan was arrested on four separate occasions between February 2003 and December 2004 as a result of his possession and use of firearms and narcotics. (*Id.*) Jordan was not arrested again until August 16, 2020. He was charged in an indictment dated August 13, 2020 with the Mizell murder and the cocaine trafficking conspiracy that allegedly occurred between March 2016 and August 2020. (*Id.* at 4; Aug. 13, 2020 Arrest Warrant, ECF No. 2.)

Washington was arrested on June 22, 2006, after having been identified as a suspect in a string of armed robberies in the Eastern District of New York. (Gov. Opp'n at 4.) Washington was convicted on April 5, 2007, following a jury trial, and sentenced to 210 months' imprisonment on April 23, 2008. (*Id.*) After the trial, the Government asked the sentencing court to consider Washington's alleged involvement in Mizell's murder, arguing that it could prove his involvement "above and beyond a preponderance." (*Id.*; *see also* Gov.'s 2008 Sentencing Mem., Ex. C, Washington's Mot. ("Washington Mot.") at 1, ECF No. 82-3.) The Government's request was denied. (Sentencing Tr. at 14:22–15:3, Ex. D, Washington Mot., ECF No. 82-4.)

Since Mizell's murder, Washington is alleged to have made statements implicating Jordan in the murder of Mizell.  (Gov't Opp'n at 4–5.)  Three of those statements were to law enforcement officers, and the other to Playboy Magazine.  (*Id.* at 5.)

## DISCUSSION

### I.    Motion to Dismiss Counts One and Two

Defendants move to dismiss the Indictment for pre-indictment delay, and they carry a "heavy burden" to succeed.  *United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990).  The Due Process Clause is concerned here with only whether requiring the Defendants to stand trial after a pre-indictment delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, . . . and which define the community's sense of fair play and decency."  *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (internal quotation marks omitted).  To meet their burden, Defendants must establish that the delay "cause[d] 'substantial prejudice' to [their] ability to present [their] defense[s] and 'the delay was an intentional device to gain [a] tactical advantage over the accused.'"  *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999) (quoting *United States v. Marion*, 404 U.S. 307, 324 (1971)).

As a threshold matter, an indictment brought within the statute of limitations "has a strong presumption of validity."  *Cornielle,* 171 F.3d at 752.  As such, Defendants must make a specific, particularized showing of substantial prejudice to overcome this presumption.  *See id.* The possibility of faded memories, unavailable witnesses, and loss of evidence, by itself, is insufficient.  *See Marion*, 404 U.S. at 325–26.  Instead, such lost evidence or unavailable witnesses must be key to the defense.  *See Cornielle*, 171 F.3d at 752; *see also United States v. Santiago*, 987 F. Supp. 2d 465, 485–86 (S.D.N.Y. 2013) (defendant substantially prejudiced where witness who "would utterly undermine the prosecution's theory of the case" was

3

unavailable due to pre-indictment delay); *United States v. Snyder*, 668 F.2d 686, 689 (2d Cir. 1982) (affirming denial of motion to dismiss because defendant failed to show actual prejudice where absent witness, if present, would not have supported the defense case); *United States v. Scala*, 388 F. Supp. 2d 396, 399–400 (S.D.N.Y. 2005) (defendant failed to demonstrate prejudice resulting from the unavailability of two witnesses because he failed to show beyond speculation what their testimony would have been and how he was prejudiced without it).  Even if Defendants can surmount this hurdle, their burden requires more.  That is, Defendants must also produce evidence demonstrating the Government's delay was intentional or reckless.  *See Santiago*, 987 F. Supp. 2d at 492.[1]  Where a defendant can demonstrate the Government made a "series of deliberate (not inadvertent) decisions," recklessness can be found.  *Id.*  But, an "[i]nvestigative delay," the delay caused by a prosecutor waiting until she "is completely satisfied that [she] should prosecute and will be able promptly to establish guilt beyond a reasonable doubt," will not suffice.  *Lovasco*, 431 U.S. at 795.

Against this backdrop, Defendants argue that the 18-year delay between the murder and the Indictment has impaired their ability to gather exculpatory evidence, caused the Government's *Brady* disclosures to go "stale," and caused the "contamination" and otherwise lack of reliability of witnesses' memories.  (*See* Jordan Mem. at 5–6, ECF No. 84; Washington Mem. at 3–9.)  Defendants further argue the Government's delay in pursuing an indictment was reckless because the Government had previously represented that it could prove Washington's involvement in the murder "beyond a preponderance" as early as January 9, 2008, but waited until 2020 to bring charges.  (*See* Jordan Mem. at 9–10; Washington Mem. at 9–11.)  This delay, Defendants maintain, was part of an effort by the Government to gain a tactical advantage

---

[1] It is true that the Second Circuit has not specifically blessed the "reckless disregard" standard, but neither has it declined to follow it.  *United States v. Santiago*, 987 F. Supp. 2d 465, 490 (S.D.N.Y. 2013).

because it "allowed the government to join the 2002 Mizell murder counts . . . with the [later] drug trafficking counts[.]"  (Washington's Reply Mem. L. Further Supp. ("Washington's Reply") at 4, ECF No. 90; *see also* Jordan's Reply Mem. L. Further Supp. ("Jordan's Reply") at 2, ECF No. 89.)  Defendants have not met their burden.

Jordan's arguments regarding prejudice are speculative, lack clarity, and lack particularity.  Take his argument concerning his inability to obtain "objective evidence."  (Jordan Mem. at 6.)  On this point, Jordan highlights supposed lost cell phone, telephone, and beeper records, which he claims would "support his alibi" or "could help establish the circumstances surrounding Mr. Mizell's murder."  (*Id.* at 6.)  He says nothing more.  Indeed, conspicuously absent from Jordan's argument is any factual support for his claim.  "In the absence of any factual support, the Court has no idea what [Jordan] believes the phone records contain, how they could conceivably contradict [the Government's evidence], and how those contradictions could conceivably demonstrate that [Jordan] did not commit the crime[] charged."  *United States v. Valentin*, No. 14-cr-55, 2016 WL 1296903, at *1 (D. Conn. Mar 30, 2016).  Jordan's argument concerning *Brady* disclosures is equally unconvincing.  According to Jordan, the Government has made many *Brady* disclosures that are now "stale."  (Jordan Mem. at 6.)  Jordan provides absolutely no explanation of which disclosures are "stale," why they should be deemed "stale," or how presumably timely *Brady* disclosures have resulted in prejudice to him.  Absent such a showing, the Court is at a loss.

Finally, Jordan's argument concerning unavailable witnesses similarly falls short of establishing prejudice.  Jordan asserts "the defense has been unable to speak with Witness ▮▮▮▮▮"—a purported eyewitness to the shooting.  (*Id.*)  However, Jordan fails to provide any factual support that might allow the Court to find as he urges.  Instead, Jordan

asserts only that "actual prejudice in the context of *Marion/Lovasco* paradigm generally means the loss of documentary evidence or the availability of a witness." (*Id.* at 6 (quoting *Santiago*, 987 F. Supp. 2d at 485).) True. However, that truism does not obviate a defendant's burden to establish prejudice resulting from the missing witness. Here, Jordan does not even attempt to proffer any details as to how this witness might provide exculpatory evidence, the absence of which would be prejudicial. *See United States v. Gotti,* No. 02-cr-743, 2004 WL 32858, at *4 (S.D.N.Y. Jan. 6, 2004) (denying motion because"[m]oving Defendants [did] not provide any details as to how the witnesses would exculpate them and therefore [did] not offer any particularity as to how they have been prejudiced."); *compare Scala*, 388 F. Supp. 2d at 398–99 (motion denied where defendant failed to identify testimony that two missing witnesses would provide or how it would help his case), *with Santiago*, 987 F. Supp. 2d at 485 (motion granted where defendant made a particularized showing that the missing witness's testimony would almost certainly exonerate him).

Washington's argument concerning witness memory fares no better. Washington asserts that soon after the shooting, ███████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████. (*Id.*) Washington suggests that this man was the shooter. (*Id.* at 6.) Approximately ten months after the shooting, ████████████████████

███████████████████ that night. (Ex. A, 000830.) ████████████████████

████████. (*Id.*) ████████████████████████████████ Mizell when he was killed. (Ex. A, 000402.) Approximately ten months after the shooting, ████████████

███████████████████████. (*Id.*) The accomplice was later ████████████████

████████. (*Id.*)

6

Washington surmises that "[t]he [G]overnment will rely in large part" on ██████

██████ because the Government ████████████████████████████████████

████████████████████. (Washington Mem. at 4.)  Washington further asserts that

████████████████████, and, according to Washington, ████████████████████████

████████████████████.  According to Washington, therefore, ████████████████████

██████████ "seriously cast doubt on ██████ account of the shooting and implicated ████ in

it." (*Id.* at 6.)

Washington argues that although ████████████████████, he is now

prejudiced because ████████████████████████████████████

████████████████████ (*Id.*)  As a threshold matter, Washington mischaracterizes

████████████████████████████████████████████

████████████████████████████ ████████████ That is, ██████████

████████████████████. Indeed, ████████████████

████████████████████████████████████ was in

2003. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████ Therefore, there is no substantial prejudice under these

circumstances because Washington has not established that he can no longer use ███████
███████ .

Washington's remaining arguments regarding the general fallibility of memory similarly

fall short. That "memories will dim, witnesses become [in]accessible, and evidence be lost. . . .

are not in themselves enough to demonstrate that [defendants] cannot receive a fair trial."

*Marion*, 404 U.S. at 326. While Washington goes on at length regarding errors in memory, he

ignores that those are also problems for the Government. *See United States v. Harrison*, 764 F.

Supp. 29, 32 (S.D.N.Y. 1991) (rejecting defendant's argument that witnesses' impaired

memories is sufficient to establish prejudice because "[t]he same fact . . . also handicaps the

government in that any prosecution witness who testifies . . . is vulnerable to challenge because

of the time elapsed since the events at issue"). Washington's arguments, which will undoubtedly

give the jury much to consider when deciding whether the Government has met its burden of

proof at trial, are insufficient to demonstrate substantial prejudice.

Defendants likewise fail to meet their burden to establish recklessness or intentionality,

and a hearing on the issue is unwarranted. Defendants make much of the fact that the

Government represented in 2008 that it had "proof above and beyond a preponderance" of

Washington's involvement in the murder. (*See* Jordan Mem. at 9–10; Washington Mem. at 9–

11.) And, as Defendants' argument goes, the Government was obligated to bring charges then.

But, that the Government had proof beyond a preponderance of the evidence in 2008, does not

mean it had proof beyond a reasonable doubt at that time. And, it is "obvious that prosecutors

are under no duty to file charges . . . before they are satisfied they will be able to establish the

suspect's guilt beyond a reasonable doubt." *Lovasco*, 431 U.S. at 791 (quoting *United States v.*

*Ewell*, 383 U.S. 116, 120 (1966)).[2]  Moreover, Defendants' allegation that the Government deliberately delayed charging Counts One and Two so that the charges could be brought with Counts Three through Eleven is speculative.  (Jordan Reply at 2; Washington Reply at 4.) Indeed, Defendants point to no evidence that comes close to suggesting that is what occurred.  It seems contrary to reason that the Government would delay an indictment on a murder charge against Jordan and Washington—risking loss of witnesses and other evidence—on the hope that it might 12 years later bring additional charges against Jordan.  To be sure, Defendants have urged the Court to hold an evidentiary hearing so that they may probe these questions.  (*See* Jordan Mem. at 4, 9; Washington Mem. at 2, 11.)  However, because the Court has already determined that Defendants have not established substantial prejudice resulting from the purported delay, a hearing to give Defendants an opportunity to establish reckless or intentional conduct on the part of the Government would be of no legal consequence even if successful.  *See Lovasco*, 431 U.S. at 790 ("[P]roof of prejudice is generally a necessary . . . element of a due process claim[.]").  Defendants have not met their burden.

Defendants' motions to dismiss Counts One and Two are denied.

## II.    Severance Motion

Defendants maintain that Counts One and Two are misjoined with Counts Three through Eleven, and that they should be tried separately, but the briefing is not clear as to the relief they seek.[3]  Defendants argue that Counts One and Two should be severed from Counts Three

---

[2] Washington contends that "[t]he passage of time alone . . . is conclusive evidence of bad faith[,]" but provides no legal authority for this assertion.  (Washington Mem. at 10.)  While it is certainly probative of the question, it is not the end of the Court's inquiry, which, as Washington acknowledges, is fact specific.  (*See Id.* at 3 (citing *Santiago*, 987 F. Supp. 2d at 489).)

[3] Initially, only Jordan moved to sever the counts and trial.  Later, in reply, Washington joined Jordan's motion. (*See* Washington Reply at 4, ECF No. 90.)

through Eleven pursuant to Federal Rules of Criminal Procedure 8(a) and 14 as improperly

joined and unfairly prejudicial.  (Jordan Mem. at 11–12.)  They further seek be tried separately

pursuant to Rule 14 because Washington has made statements that, if admitted at Jordan's trial,

would violate Jordan's Confrontation right under the Sixth Amendment.  (*Id.* at 15–19.)  Of

course, this would necessitate three separate trials:  two trials for Jordan and one for Washington.

In Reply, however, they disclaim any request for the Court to "conduct three separate trials,"

(Jordan Reply at 3.), but continue to argue for severance of both the Counts pursuant to Rule

8(b)[4] and of the Defendants pursuant to Rule 14.  (*Id.*)  The Court therefore considers both

whether joinder of offenses is proper pursuant to Rule 8(b), and whether joinder of the

Defendants is unfairly prejudicial pursuant to Rule 14.

### A.  Joinder of Counts One and Two with Counts Three through Eleven Pursuant to Rule 8(b)

Rule 8(b) of the Federal Rules of Criminal Procedure permits multiple defendants to "be

charged with and tried for multiple offenses . . . only if the charged acts are part of a 'series of

acts or transactions constituting . . . offenses.'"  *United States v. Turoff*, 853 F.2d 1037, 1043 (2d

Cir. 1988) (quoting Fed. R. Crim. P. 8(b)).  "[A] non-frivolous conspiracy charge is sufficient to

support joinder of defendants[.]"  *United States v. Nerlinger,* 862 F.2d 967, 973 (2d Cir. 1988)

(joinder of defendants proper despite lack of chronological overlap where the substantive charges

were in furtherance of a common conspiracy).  But, in all cases, the alleged criminal acts must be

---

[4] In opposition to Defendants' argument that the counts are misjoined pursuant to Rule 8(a), which governs joinder of offenses, the Government asserts that only Rule 8(b), which governs joinder of defendants, is applicable because the indictment includes multiple defendants and offenses.  (Gov't Opp'n at 16, ECF No. 86 (citing *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988)).  The question of which subsection of Rule 8 applies under these circumstances, however, is "not well-settled" in this circuit.  *See United States v. Shellef*, 507 F.3d 82, 97 n.12 (2d Cir. 2007) (citing *United States v. Biaggi*, 909 F.2d 662, 675–78 (2d Cir. 1990)).  In any event, because the Government defends joinder based only upon Rule 8(b), (Gov't Opp'n at 21), and Defendants responded to those arguments, (Jordan Reply at 3–7), the Court will conduct its analysis pursuant to that subsection.

"'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'" *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quoting *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990)).  Critically, the "decision to join parties turns on what is alleged in the indictment." *Id*. at 178 (quotation marks omitted).

Counts One and Two allege Jordan and Washington's use of a firearm to commit the murder of Mizell while they were engaged in a conspiracy to distribute cocaine in 2002.  Counts Three through Eleven allege Jordan's participation in a conspiracy to distribute cocaine between 2016 and 2020, distribution of cocaine, and use of a firearm during that conspiracy.  Defendants argue that Counts Three through Eleven must be severed from Counts One and Two because the Indictment "presents wholly disparate and distinct cases and conspiracies."  (Jordan Reply at 4.) The Court agrees.  The Indictment is devoid of any facts underlying the charges, let alone any allegations connecting the 2002 murder with the 2016 conspiracy.  And, differences between the alleged conspiracies are apparent.  The 2002 conduct involves both Jordan and Washington, whereas the 2016 conduct involves only Jordan.  Indeed, the Indictment lacks any allegation that might suggest that Washington was even aware of the 2016-20 conspiracy.  *See United States v. Giraldo*, 859 F. Supp. 52, 54 (E.D.N.Y. 1994) (severing cocaine trafficking conspiracy charge from earlier cocaine trafficking conspiracy charge because the "Government ha[d] not alleged that the two conspiracies shared a common plan" or that other defendants "knew of or were involved in any overall scheme" (quoting *United States v. Castiglia*, No. CR-85-93E, 1986 WL 6873, at *11 (W.D.N.Y. June 18, 1986))); *United States v. Ohle*, 678 F. Supp. 2d 215, 225–27 (S.D.N.Y. 2010) (severing conspiracy charge from multi-conspiracy, multi-defendant indictment in part because the indictment did not allege one co-defendant was aware of separate conspiracy).  Moreover, the alleged object of the 2002 conspiracy in Count One was to distribute

11

five kilograms of cocaine, whereas the object of the later conspiracy was to distribute 280 grams of cocaine.  (*See* Indictment.)  And, there is a 14-year gap between the charges.  *See, e.g.*, *United States v. Rajaratnam*, 753 F. Supp. 2d 299, 311–12 (S.D.N.Y. 2010) (noting that the lack of overlap in time "is further evidence that joinder is improper").  The charges in the Indictment cannot reasonably be described as a "series" permitting joinder pursuant to Rule 8(b), instead they are an "anthology."

In urging the Court to find that joinder is proper, the Government maintains that "all of the crimes charged . . . are infused with narcotics activity and firearms usage" and Jordan's conduct in the conspiracy alleged in Counts One and Two is "the exact same conduct at issue in Counts Three through Eleven." (Gov't Opp'n at 21.)  Perhaps.  But, the fact that the conspiracies involved the same type of conduct demonstrates only that they had similar purposes—not a single, shared purpose.  *See Rajaratnam*, 753 F. Supp. 2d at 312 ("[T]he fact that all three counts charge insider trading conspiracies is not a basis for joinder under Rule 8(b).").  Moreover, the Government's reliance on *United States v. Rittweger* and *United States v. Attanasio* is misplaced.  In *Rittweger*, the alleged conspiracies involved two common defendants who were committing fraud in furtherance of a single, shared scheme overlapping in time.  524 F.3d at 175–77.  And, in *United States v. Attanasio*, the two alleged conspiracies were connected by a shared goal to conceal loansharking and illegal gambling income, also spanning the same time period.  870 F.2d 809, 814–15 (2d Cir. 1989).  Here, however, the Indictment is devoid of any allegation connecting the two alleged conspiracies.

That, as the Government argues, "some of the evidence relating to Jordan's involvement in Mizell's homicide includes Jordan's narcotics trafficking, firearms use and statements after October 30, 2002" and that it "expects significant overlap of witness[es] as a result," is of no

12

consequence here.  (Gov't Opp'n at 21); *see, e.g.*, *Giraldo*, 859 F. Supp. at 54 (severing distinct conspiracy charges even though both involved cocaine sales to a single confidential informant who would need to testify at multiple trials).  While it is true that courts consider whether "joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants" the focus remains on the "factual overlap among charges."  *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007) ("For example, counts might be connected if one of the offenses depends upon or necessarily leads to the commission of the other, or if proof of one act constitutes or depends on proof of the other" (quotation marks and alteration omitted)).

The Government's focus on evidence, rather than the Indictment, disregards all together the longstanding rule that in assessing the propriety of joinder, district courts are to look only at the facts alleged in an indictment.  *See, e.g.*, *Rittweger*, 524 F.3d at 178 ("Under the plain language of Rule 8(b), the decision to join parties turns on what is 'alleged' in the 'indictment.'" (quoting Fed. R. Crim. P. 8(b))); *see also Attanasio*, 870 F.2d at 815 (considering "allegations" against defendants and finding joinder proper).  In other words, district courts are to ignore "what the facts will or are expected to show at trial."  *United States v. Nekritin*, No. 10-cr-491, 2011 WL 1674799, at *3 (E.D.N.Y. May 3, 2011); *United States v. Parrilla*, No. 13-cr-360, 2014 WL 1621487, at *12 (S.D.N.Y. Apr. 22, 2014) ("The Second Circuit has warned that the plain language of Rule 8(b) precludes 'consideration of pre-trial representations not contained in the indictment, just as the language of the Rule does not allow for consideration of evidence at trial.'" (citation omitted)).  The Government's seeming disregard of the requirements of Rule 8 may be explained by its misplaced reliance on virtually all of the cases in its opposition.[5]

---

[5] Oddly, the Government relies upon cases that analyze Rule 8(a) despite its insistence that only Rule 8(b) is applicable to the analysis.  (*See* Gov't Mem. at 22–23 & n.5 (citing *United States v. Ruiz*, 894 F.2d 501 (2d Cir.

Indeed, in nearly all the Rule 8(b) cases cited by the Government, it is clear that determinations of whether joinder was proper were made by reference solely to the allegations in the indictments.  *See*, *Cervone*, 907 F.2d at 341 (applying Rule 8(b) and considering only charges in indictment); *United States v. Uccio*, 917 F.2d 80, 87 (2d Cir. 1990) (applying Rule 8(b) and considering only conduct alleged in indictment).[6]  Tellingly, the Government makes no effort to similarly direct the Court to any specific allegation in the Indictment that might support a finding of a common plan or scheme.  And, the generalized notions of narcotics activity and gun usage offered by the Government are simply not sufficient to satisfy the demands of Rule 8(b).[7]

In sum, the Government has failed to demonstrate that joinder is proper because the two conspiracies as charged do not constitute a "series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  Counts One and Two must be severed from Counts Three through Eleven.[8]

### B. Severance of Jordan and Washington's Trials

---

1990) (applying Rule 8(a)); *United States v. Annamalai*, 939 F.3d 1216, 1223 (11th Cir. 2019) (same); *United States v. Baroum*, 763 F.3d 1321, 1337 (11th Cir. 2014) (same); *United States v. Geddes*, 844 F.3d 983, 988–89 (8th Cir. 2017) (same); ); *United States v. Montiero*, 871 F.3d 99, 107 (1st Cir. 2017) (same); *United States v. Berg*, 714 F.3d 490, 494 (7th Cir. 2013) (same); *United States v. Alexander*, 135 F.3d 470, 475 (7th Cir. 1998) (same); *United States v. Gooch*, 665 F.3d 1318, 1334 (D.C. Cir. 2012) (same).)  These cases are not relevant here.

[6] The Court notes that it is not clear whether the Second Circuit considered only the allegations in the indictment in *United States v. Lee*, 549 F.3d 84 (2d Cir. 2008), which was briefed before *Rittweger* but decided soon after.  The severance analysis is one-paragraph long.  *Id.* at 94–95.  In any event, the text of Rule 8(b) and the Second Circuit's directive in *Rittweger* are clear:  Courts must look to the allegations in the indictment to determine propriety of joinder.

[7] Even if the Court were to consider the Government's proffers, joinder is still improper.  For example, the Government declares that "much of the evidence will be admissible even if severance were granted to complete the story of the crimes on trial," (Gov't Opp'n at 22 (quotations omitted)), but that is far from certain.  It strains credulity to believe that even "much" of the evidence concerning the 2016 conduct would be necessary to "complete the story" of the 2002 murder or vice versa.  *See, e.g.*, *United States v. Cacace*, No. 08-cr-240, 2013 WL 12121327, at *2 (E.D.N.Y. Oct. 9, 2013) (rejecting Government's argument that other uncharged crimes were admissible as background evidence where they occurred after the charged conduct and so were not "necessary to complete the story of the charged murder in-aid-of racketeering").

[8] Defendants argue that severance is proper pursuant to Rule 14 as well, but the Court need not reach this argument because joinder has already been found to be improper under Rule 8(b).

Even where joinder is proper, the Court has discretion to sever a trial where "joinder of . . . defendants in an indictment . . . appears to prejudice a defendant[.]" Fed. R. Crim. P. 14(a). Of course, there is a presumption that defendants should be tried together when joinder is proper and that presumption is even stronger when "the crime charged involves a common scheme or plan." *United States v. Ramos*, 346 F. Supp. 2d 567, 569 (S.D.N.Y. 2004) (citation omitted). Nevertheless, severance may be granted when a defendant has demonstrated that a failure to sever would cause "substantial prejudice in the form of a miscarriage of justice." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (citation omitted).

Defendants argue that their trials should be severed based on Washington's statements implicating Jordan in the alleged murder and their antagonistic defenses. (Jordan Mot. at 17–18.) Specifically, Defendants argue that Jordan's Sixth Amendment right to confrontation will be violated if the statements are put into evidence without his ability to cross examine Washington. (*Id.*) Defendants argue further that it is their "belief that the [G]overnment will offer [their] statements at trial for the purposes of bolstering [its] case while at the same time, relying on conflicting statements of the [D]efendants to undermine the credibility of any proffered defense." (*Id.* at 18.) Accordingly, Defendants argue, severance is warranted. The Court disagrees.

Careful redactions and limiting instructions are sufficient to protect Defendants' Sixth Amendment rights. It is well established that admission of a non-testifying co-defendant's confession that implicates another co-defendant violates the implicated defendant's confrontation right. *See Bruton v. United States*, 391 U.S. 123, 137 (1968). But, it is equally well-established that "a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the

15

statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's *Bruton* rights." *United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989). Indeed, "a redacted confession runs afoul of *Bruton* only if it, 'standing alone, would clearly inculpate [the non-declarant] without introduction of further independent evidence.'" *United States v. Kyles*, 40 F.3d 519, 526 (2d Cir. 1994) (quoting *United States v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir. 1985)). The Government has represented that two of the statements at issue will not be used in its case in chief and that it will provide appropriate redactions (subject to approval by the Court) to those statements it does seek to use. (Gov't Opp'n at 26.) The Court has no reason to believe this is insufficient to protect the Defendants' rights.

Defendants' claim that redacting the statements would not eliminate the risk of prejudice is entirely baseless. (*See* Jordan Reply at 10.) They provide no analysis whatsoever establishing that a redaction would reveal that the statements were "obviously altered to omit the specific identity of [their] confederate." *United States v. Jass*, 569 F.3d 47, 63 (2d Cir. 2009). While it is possible that the jury might infer Jordan's involvement in the murder if they combine the statements with other evidence against the Court's limiting instructions, *Bruton* and its progeny "do not construe the Confrontation Clause to demand further that a confession be redacted so as to permit no incriminating inference against the non-declarant defendant." *Id*. at 60; *see also Kyles*, 40 F.3d at 526 (no violation of Confrontation Clause where redacted statement did not connect defendant to crime, even though "the jury might have inferred from other evidence" that defendant's name was redacted).

In addition, Defendants' "antagonistic" defenses argument appears to be the same as their *Bruton* argument. Antagonistic defenses are found where "the conflict is so irreconcilable that

16

acceptance of one defendant's defense requires that the testimony offered on behalf of a codefendant be disbelieved." *Tutino*, 883 F.2d at 1130 (no severance based on antagonistic defenses where defendants' admissions to crimes did not implicate co-defendants).  Defendants do not put forth what their defenses will be for the Court to assess whether acceptance of one would require the other to be disbelieved.  Instead, they rely on Washington's statements, which if admitted in redacted form, would implicate another person, not Jordan.  While the Court agrees that Jordan may fare better without the introduction of Washington's statements, that is insufficient to demonstrate prejudice.  *See Zafiro v. United States*, 506 U.S. 534, 540 (1993) ("[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials.").  Defendants have failed to show that a violation of the Confrontation Clause, and therefore a miscarriage of justice, will result if they are tried together; thus, their motion to sever their trials is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Counts One and Two are DENIED.  Defendants' motion to sever Counts One and Two from Counts Three through Eleven is GRANTED.  Defendants' motion to be tried separately as to Counts One and Two is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
      September 16, 2022

/s/ LDH
LASHANN DEARCY HALL
United States District Judge