UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA,

                                                        20 Cr. 305 (LDH)

                        -against-

KARL JORDAN, JR., et al.,

                                        Defendants.

------------------------------------------------------------------------ x


**DEFENDANT KARL JORDAN, JR.'S
MEMORANDUM OF LAW IN
OPPOSITION TO THE
GOVERNMENT'S MOTION IN
LIMINE**


                                MICHAEL HUESTON
                                MARK DEMARCO
                                JOHN DIAZ
                                MONICA NEJATHAIM
                                *Counsel for Defendant Karl Jordan, Jr.*


Dated:  November 9, 2022

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................... ii

Preliminary Statement ............................................................................................1

Argument ................................................................................................................1

I.  The Alleged Defendant Admissions and Coconspirator Statements Should Be
Precluded ..........................................................................................................1

II.  Evidence of Uncharged Acts as Direct Evidence or Pursuant to Federal Rules
of Evidence 404(b) Should Be Precluded ........................................................2

1.  Introducing Evidence of the Uncharged Acts Risks Eclipsing the Evidence
of the One Charged Incident, Unduly Prejudicing Mr. Jordan .......................4

2.  Per the Second Circuit's Admonition, the Jury Will Likely Disregard
a Limiting Instruction in the Face of Such Graphic Evidence of
Uncharged Acts ...............................................................................................6

3.  The Uncharged Evidence is not Admissible for a Proper Non-Propensity
Purpose ............................................................................................................8

III.  The Government Should Be Precluded from Introducing So-called Evidence
of Defendants' Witness Intimidation and Tampering .....................................10

IV.  The Government Should Be Precluded from Introducing Prison Phone Calls
of So-called Admissions of a Party Opponent ................................................16

V.  The Government Should Be Precluded from Admitting Jordan's Interview
Videos and Selected Rap Lyrics ....................................................................19

VI.  The Government Should Be Precluded from Admitting Certain Documents as
Past Recollection Recorded  ..........................................................................23

VII.  Evidence that Third Parties Committed the Charged Crime is Crucial to Mr.
Jordan's Constitutional Right to Present a Complete Defense ........................24

Conclusion ...........................................................................................................28

## TABLE OF AUTHORITIES

**CASES** **Page**

*Anderson v. United States,*
    411 U.S. 211 (1946) .......................................................................18

*Bourjaily v. United States,*
    483 U.S. 171 (1987) .......................................................................17

*Boyd v. City & County of San Francisco.,*
    576 F.3d 938 (9th Cir. 2009) .......................................................21

*Crawford v. Washington,*
    541 U.S. 36 (2004) .........................................................................18

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) .........................................................................2

*Henry v. Wyeth Pharms., Inc.,*
    616 F.3d 134 (2d Cir. 2010) ...........................................................2

*Holmes v. South Carolina,*
    547 U.S. 319 (2006) .......................................................................24

*Sprint/United Management Co. v. Mendelsohn,*
    552 U.S. 379 (2008) .......................................................................11

*United States v. Afjehei,*
    869 F.2d 670 (2d Cir. 1989) ...........................................................9

*United States v. Al-Sadawi,*
    432 F.3d 419 (2d Cir. 2005) .................................................... 18-19

*United States v. Amuso,*
    21 F.3d 1251 (2d Cir. 1994) .........................................................19

*United States v. Arrington,*
    867 F.2d 122 (2d Cir. 1989) .........................................................17

*United States v. Beech-Nut Nutrition Corp.,*
    871 F.2d 1181 (2d Cir. 1989) .......................................................17

*United States v. Benedetti,*
    433 F.3d 111 (1st Cir. 2005) .........................................................18

*United States v. Borelli,*
    336 F. 2d 376 (2d Cir. 1964) .............................................................18

*United States v. Carboni,*
    204 F.3d 39 (2d Cir. 2000) ..................................................................1

*United States v. Check,*
    582 F.2d 668, 685 (2d Cir. 1978) .......................................................12

*United States v. Colombo,*
    909 F.2d 711 (2d Cir. 1990) .............................................................6-8

*United States v. Colon,*
    880 F.2d 650 (2d Cir. 1989) .................................................................3

*United States v. Curley,*
    639 F.3d 50 (2d Cir. 2011) ...................................................................3

*United States v. Cummings,*
    858 F.3d 763 (2d Cir. 2017) ...............................................................13

*United States v. Davis,*
    767 F.2d 1025 (2d Cir. 1985) .............................................................23

*United States v. DeLillo,* 620 F.2d 939, 946 (2d Cir.), cert. denied,
    449 U.S. 835, 101 S.Ct. 107, 108, 66 L.Ed.2d 41 (1980) ...................11

*United States v. Figueroa,*
    618 F.2d 934 (2d Cir. 1980) .........................................................12-13

*United States v. Foster,*
    939 F.2d 445 (7th Cir. 1991) .............................................................20

*United States v. Gamory,*
    635 F.3d 480 (11th Cir. 2011) ...........................................................21

*United States v. Gilmore,*
    2021 U.S. Dist. LEXIS 173393 (S.D.N.Y. Sep. 13, 2021) ............24-27

*United States v. Gordon,*
    987 F.2d 902 (2d Cir. 1993) .................................................................9

*United States v. Hatfield,*
    685 F. Supp. 2d 320 (E.D.N.Y. 2010) ................................................10

*United States v. Johnson*,
  529 F.3d 493 (2d Cir. 2008) ................................................................................25

*United States v. Jones*,
  No. 05-CR-322 (NAM), 2007 U.S. Dist. LEXIS 34772,
  *aff'd sub nom. United States v. Applins*, 637 F.3d 59 (2d Cir. 2011) ..................20

*United States v. Livoti*,
  196 F.3d 322 (2d Cir. 1999) ................................................................................20

*United States v. Lopez*,
  No. 09-CR-525 (JFK), 2010 WL 3452380 (S.D.N.Y. Sept. 1, 2010) ..................3

*United States v. Mahaffy*,
  477 F.Supp.2d 560 (E.D.N.Y. 2007) ....................................................................8

*United States v. Marin*,
  669 F.2d 73 (2d Cir. 1982) ..................................................................................19

*United States v. Martoma*,
  No. 12-CR-973(PGG), 2014 WL 31191 (S.D.N.Y. Jan. 6, 2014) ........................8

*United States v. McCallum*,
  584 F.3d 471 (2d Cir. 2009) ..................................................................12, 16, 18

*United States v. Mickens*,
  926 F.2d 1323 (2d Cir. 1991) ..............................................................................11

*United States v. Mohel*,
  604 F.2d 748 (2d Cir. 1979) ..................................................................................5

*United States v. Morgan*,
  786 F.3d 227 (2d Cir. 2015) ......................................................................12-13, 16

*United States v. Nachamie*,
  101 F. Supp. 2d 134 (S.D.N.Y. 2000) ................................................................4, 5

*United States v. Newton*,
  No. 01-CR-635 (CSH), 2002 WL 230964 (S.D.N.Y. Feb. 14, 2002) ................10

*United States v. Old Chief*,
  519 U.S. 172 (1997) ......................................................................................12, 20

*United States v. Panebianco*,
  543 F.2d 447, 455 (2d Cir. 1976) ........................................................................12

*United States v. Perrone,*
    936 F.2d 1403 (2d Cir. 1991) ............................................................8

*United States v. Pierce,*
    785 F.3d 832 (2d Cir. 2015) ........................................................20, 23

*United States v. Pitre,*
    960 F.2d 1112 (2d Cir. 1992) ..........................................................20

*United States v. Prousalis,*
    No. 03-CR-1509 (DLC), 2004 WL 1203150 (S.D.N.Y. June 2, 2004) .................4

*United States v. Puco,*
    453 F.2d 539 (2d Cir. 1971) .............................................................5

*United States v. Qamar,*
    671 F.2d 732 (2d Cir. 1982) ........................................................ 11-12

*United States v. Sampson,*
    385 F.3d 183 (2d Cir. 2004) .............................................................2

*United States v. Sanchez,*
    790 F.2d 245 (2d Cir. 1986) ..........................................................18

*United States v. Scott,*
    677 F.3d 72 (2d Cir. 2012) ........................................................... 4-6

*United States v. Serrano,*
    192 F. Supp. 3d 407 (S.D.N.Y. 2016) ...............................................26

*United States v. Skronowski,*
    968 F.2d 242 (2d Cir. 1992) .............................................................9

*United States v. Stevens,*
    935 F.2d 1380 (3d Cir. 1991) ..........................................................26

*United States v. Stuckey,*
    253 Fed.Appx. 468 (6th Cir. 2007) ...................................................20

*United States v. Tropeano,*
    252 F.3d 653 (2d Cir. 2001) ..........................................................18

*United States v. White,*
    692 F.3d 235 (2d Cir. 2012) ..........................................................25

*United States v. Williams,*
    585 F.3d 703 (2d Cir. 2009) ............................................................................. 6-7

*United States v. Williams,*
    596 F.2d 44 (2d Cir.), cert. denied, 442 U.S. 946 (1979) .............................. 11-12

*United States v. Wilson,*
    493 F. Supp. 2d 484 (E.D.N.Y. 2006) ...................................................................19

## STATUTES & SECONDARY SOURCES

2 Jack B. Weinstein & Margaret A. Berger,
*Weinstein's Federal Evidence*, § 401.08 (2d ed. 1997) ...........................................11, 20

AB – 2799 Evidence: Admissibility of Creative Expressions (Oct. 3, 2022) ..................22

Fed. R. Evid. 104 .......................................................................................................19

Fed. R. Evid. 106 .......................................................................................................19

Fed. R. Evid. 401 .................................................................................................1, 19, 24

Fed. R. Evid. 402 ....................................................................................................1, 19

Fed. R. Evid. 403 ................................................................................................. passim

Fed. R. Evid. 404 .................................................................................................4-6, 16

Fed. R. Evid. 801 ...................................................................................................17, 23

Fed. R. Evid. 804 .......................................................................................................2

## PRELIMINARY STATEMENT

This memorandum replies to the government's motions *in limine*.

## ARGUMENT

**I.      The Alleged Defendant Admissions and Coconspirator Statements Should Be Precluded**

The government seeks to introduce the defendant's alleged admissions, statements against interest as well as third-party coconspirator statements, including those of the decedent, Jason Mizell.  The government states that it will "lay the appropriate foundation at trial", *see* Government Motion ("Gov't Mot.") at 7, so a substantive analysis must wait.  However, it bears stating now that fundamental fairness requires that evidence must be relevant to be admissible. Fed. R. Evid. 401. If it does not tend to prove a material fact, it is irrelevant.  Fed. R. Evid. 402.

Further, for relevant evidence to be admissible, its probative value must outweigh any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  In making this determination, a court must assess the probative value of the proffered item as well as the harmful consequences specified in Rule 403 that might flow from the admission.  A court must also be on guard against so-called evidence that pre-or-post dates the period charged in the indictment. *Cf. United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (The Second Circuit's decision in *Carboni* focused upon the timing sequence of the intrinsic evidence and permitted testimony that pre-dated the indictment because the events "occurred at or about the same time" as the charged conduct).  So, respectfully, this Court should reject the government's improper attempt to expand the time frame of the charged conduct, which the Grand Jury has stated occurred "on or about October 30, 2002."  *See* Superseding Indictment, Doc. 45.

Additionally, so-called background evidence must aid the court in determining the probative evidence offered to affect the probability of the existence of a consequential fact. A court should not let in so-called evidence that is too remote or attenuated to be introduced at trial. The probative value of such evidence is often substantially outweighed by the danger of substantial prejudice to suggest propensity, or cause a waste of time, speculation, or confusion, warranting exclusion under Fed. R. Evid. 403. *See Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 150 (2d Cir. 2010) (comment "so sue me" was allegedly made years before events at issue and was unrelated to decision-making process); *United States v. Sampson,* 385 F.3d 183, 192 (2d Cir. 2004) (evidence of defendant's later drug trafficking crimes, offered to prove his identity in prosecution for earlier narcotics offenses, was inadmissible under Rule 404(b)).

Finally, preliminary questions concerning the admissibility of evidence, including statements against interest, "should be established by a preponderance of proof," *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n.10 (1993), and must satisfy the requirements of Fed. R. Evid. 804(b)(3).

## II.   Evidence of Uncharged Acts as Direct Evidence or Pursuant to Federal Rules of Evidence 404(b) Should Be Precluded

As relevant for this motion, the indictment charges Mr. Jordan and Mr. Washington with two counts: the murder of Jason Mizell while engaged in narcotics trafficking (Count One) and causing Mr. Mizell's death through the use of a firearm (Count Two). These charges reference one discrete incident of violence: the October 30, 2002 murder of Jason Mizell. No other incidents are mentioned in the indictment's charges regarding Mr. Jordan.

While the charges cover just one incident, the government seeks to introduce numerous additional alleged violent incidents or attempts, as well as unrelated narcotics activity and possession of and access to illegal firearms  as "other acts evidence." *See* Gov't Mot. at 7-26.

Specifically, the government intends to introduce the following additional evidence and alleged incidents: (1) that Mr. Jordan was involved in narcotics trafficking and firearms offenses at the time of Mr. Mizell's murder, selling cocaine on a daily basis, frequently carrying a firearm and having access to a .40 caliber pistol; (2) that Mr. Jordan and Mr. Washington had a "mutual associate" who resided at a residence in Queens County which they had access to and which was used "by neighborhood narcotics traffickers as a hang out and as a location to exchange firearms;" (3) that on February 3, 2003, Mr. Jordan possessed and fired a .40 caliber pistol; (4) that on May 14, 2003, Mr. Jordan shot Mr. Mizell's nephew with a .40 caliber firearm, and; (5) that on December 15, 2004, firearms, ammunition and narcotics paraphernalia were recovered from Mr. Jordan's residence.

## A.    Analysis

"'[W]here it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b).'" *United States v. Lopez*, No. 09-CR-525 (JFK), 2010 WL 3452380, at *2 (S.D.N.Y. Sept. 1, 2010) (quoting *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004)).  Although Rule 404(b) permits the introduction of other uncharged acts for non-propensity purposes, "district courts ***should not presume*** that such evidence is relevant or admissible." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (emphasis added).  Rather, "district courts must exercise great care to ensure that juries are not permitted to conclude that because a defendant has committed a similar crime before, he or she therefore has a criminal propensity sufficient to justify conviction in the case at hand." *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989) (reversing conviction based on the admission of uncharged acts evidence).  "The Government bears the burden of demonstrating

3

the admissibility of evidence under Rule 404(b)." *United States v. Nachamie*, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000).

### 1. Introducing Evidence of the Uncharged Acts Risks Eclipsing the Evidence of the One Charged Incident, Unduly Prejudicing Mr. Jordan

The sheer number of additional incidents that the government seeks to introduce as "other act evidence" – five times as many as are charged in the indictment – should, itself, give the Court pause.   Indeed, prior to admitting material under Rule 404(b), the Court must ensure that "its probative value is substantially outweighed by its prejudicial effect." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (quotation marks and citations omitted).  The government cannot satisfy that requirement here.

Realistically, the very number of additional uncharged incidents will necessarily eclipse the evidence presented at trial directly relevant to the one incident charged in the indictment. Indeed, it appears that based on the Rule 16 material the government has already disclosed, numerous government witnesses' testimonies will relate to the uncharged acts – many of these witnesses will testify *solely* regarding the uncharged conduct.  Whatever their probative value, the sheer volume of this "other acts" evidence renders it inherently improperly prejudicial.  *See, e.g., United States v. Prousalis*, No. 03-CR-1509 (DLC), 2004 WL 1203150, at *2-3 (S.D.N.Y. June 2, 2004) ("the similar act evidence raises a substantial risk if presented on the Government's case in chief of diverting the jury from the issues central to its determinations" where it included "describing six other" incidents).

The proffered "other acts" incidents also extend the timeline of the violent allegations against Mr. Jordan and his codefendant by more than two years.  Whereas the incident referenced in the indictment, and in or about October 30, 2002, the "other acts" evidence propounded by the government extends to December 2004 – more than two years after the

charged murder on October 30, 2002.  The story that the government will seek to present to the jury that occurred more than two years after the charged murder is categorically different than the story the jury will hear if the government's evidence is limited to the charges.

The high risk of undue prejudice to Mr. Jordan is obvious: that the jury will convict as a result of accumulated allegations – the vast majority uncharged – extending more than two years after the charged conduct – rather than actual proof that he is guilty of the charged offenses. *See Scott*, 677 F.3d at 84 ("It stretches credulity to think that a jury would assume that the defendant's lengthy and numerous [uncharged] contacts with the police were not, in some sense, related to his bad character and criminal propensity").  That risk is precisely the improper propensity that Rule 404(b) was designed to prevent. *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971); *accord Nachamie*, 101 F. Supp. 2d at 142 ("evidence is not admissible under Rule 404(b) to prove the character of a person in order to show action in conformity therewith, and introducing evidence that the defendant committed the same act in the past presents a strong temptation for the jury to do just that.") (quotation marks omitted).  *See also United States v. Mohel*, 604 F.2d 748, 751 (2d Cir. 1979) (*citing United States v. DeVaughn*, 601 F.2d 42, 45 (2d Cir. 1979) ("Uncharged-crime" evidence is not admissible to show that a defendant has bad character or propensity to commit the crime in issue).

The government glibly dismisses any prejudice concerns, arguing that "[b]ecause the proffered evidence does not involve conduct any more sensational or disturbing than the offenses charged, there is no risk of unfair prejudice with respect to that evidence."  Gov't Mot. at 25 (quotation marks and citations omitted).  While the one charged act encompasses a very serious allegation of violence, that does not cure the prejudice inherent in presenting the jury with evidence of repeated violent and threatening uncharged acts.  Several of the uncharged allegations

involve frightening evidence of firearms' use, and the uncharged May 2003 alleged shooting of

Mr. Mizell's nephew will likely include gruesome evidence of the victim's injuries and his

physical condition following the uncharged attack.  That additional violent and disturbing

evidence of "brutality" is unduly prejudicial – even if the charges include evidence of violence as

well.  *United States v. Colombo*, 909 F.2d 711, 712-14 (2d Cir. 1990) (vacating conviction based

on improper introduction of uncharged conduct under FRE 404(b), although the defendant was

charged with violent RICO robbery allegedly in conjunction with the Colombo crime family,

evidence of uncharged rape during the course of the robbery was unduly prejudicial).

Finally, any argument that the "other acts" incidents bear some relevance to the charges,

cannot justify their introduction at trial.  The relevance bar may be low, but it cannot justify the

introduction of these separate acts that cumulatively will necessarily overwhelm the direct

evidence of the two incidents charged. *United States v. Williams*, 585 F.3d 703, 708 (2d Cir.

2009) ("undue prejudice . . . can result when the 'minute peg of relevancy is entirely obscured by

the dirty linen hung upon it'") (quoting *United States v. Bradwell*, 388 F.2d 619, 622 (2d Cir.

1968)).  The Court should, accordingly, exclude the evidence of the uncharged acts as unduly

prejudicial.

### 2. Per the Second Circuit's Admonition, the Jury Will Likely Disregard a Limiting Instruction in the Face of Such Graphic Evidence of Uncharged Acts

For other acts evidence to be admissible, the Court must be able to provide an effective

limiting instruction to ensure that such evidence is considered only for a proper non-propensity

purpose under Rule 404(b).  *See Scott*, 677 F.3d at 79.  An effective limiting instruction is,

however, impossible here.

The Second Circuit has been unequivocal "that a jury will likely disregard an instruction

that evidence is merely background in the face of 'shocking' evidence that the Government puts

at the center of the trial." *Williams*, 585 F.3d at 710.  This risk is particularly acute here as the uncharged allegations are not just violent, but far more extensive than the charges themselves. Indeed, the other acts evidence here is orders of magnitude more extreme than the uncharged evidence introduced in *Williams*, which prompted the Second Circuit to vacate the conviction in that case.

In *Williams*, the defendant was charged as a felon in possession, after the defendant was arrested fleeing an apartment where gunshots were fired. In addition to this direct evidence, the district court admitted "other acts" evidence that the defendant had been present in an apartment where the following contraband was found: "four loaded firearms, including a revolver with an attached laser pointer, two bullet proof vests, at least 150 rounds of live ammunition of various types, a metal knuckle knife and machete, quantities of cocaine and marihuana, empty ziplock bags, several scales and over $4,000 in United States currency." *Id.* at 706.  The Second Circuit vacated the conviction on appeal based on the introduction of the evidence of the uncharged conduct, explaining that although the charged conduct involved firearms, still "the parade of guns and photographs that the Government put before [the jury], which was a major focus of the prosecutor's closing arguments," rendered any limiting instruction ineffective. *Id.* at 710.

That risk is even greater here than in *Williams*.   Because the voluminous "other acts" evidence that the government seeks to introduce is exceptionally graphic, threatening, and violent, realistically, the jury will be unable to follow a judicial instruction to cabin its consideration of the uncharged conduct to the limited purpose permissible under Rule 404(b). Instead, "there is an 'overwhelming probability' that the jury [will be] unable to consider dispassionately the evidence of such a violent crime simply as background for the surrounding events.  By its very shocking nature, it becomes the centerpiece of the trial." *Colombo*, 909 F.2d

at 715 (vacating RICO gang robbery conviction where evidence of uncharged violence was

introduced); *accord United States v. Perrone*, 936 F.2d 1403, 1410 (2d Cir. 1991) (where

cooperator's testimony regarding other acts evidence "forcefully implicated" the defendant, the

Second Circuit found "it unlikely that the jury was able to comply with the Judge's instruction"

to consider the evidence for the credibility of the cooperator "and not as substantive evidence of

[the defendant's] guilt").  The Court should exclude the evidence of the proffered uncharged acts

on this basis as well.

### 3.  The Uncharged Evidence is not Admissible for a Proper Non-Propensity Purpose

The uncharged incidents are neither inextricably intertwined with nor do they complete

the story of the crimes on trial.  *See* Gov't Mot. at 15-16.  In deciding whether uncharged

conduct is 'inextricably intertwined' with charged conduct – and thus admissible as direct

evidence – courts have considered whether '[the] details of the uncharged transaction are

necessary to understand the charged transaction.'" *United States v. Martoma*, No. 12-CR-

973(PGG), 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014) (quoting *United States v. Stein*, 521 F.

Supp.2d 266, 271 (S.D.N.Y. 2007)).  Crucially, "[c]ourts have not found charged and uncharged

conduct inextricably intertwined where the charged crimes are straightforward and may be fully

understood without reference to the uncharged conduct." *Martoma*, 2014 WL 31191, at *3

(quotation marks, citations and modifications omitted).

The uncharged acts the government seeks to introduce are "separate, discrete offense[s]"

that have little probative value to elements of the charged offenses. *United States v. Mahaffy*, 477

F.Supp.2d 560, 566 (E.D.N.Y. 2007) (an uncharged act is not "inextricably intertwined" with the

charged crimes if it is a "separate, discrete offense that may be conceptually segregated from the

charged offenses").  The Second Circuit has indicated that the government may seek admission of

other act evidence to furnish an explanation of the understanding or intent with which the

charged acts were performed. *United States v. Skronowski*, 968 F.2d 242 (2d Cir. 1992).

However, there must be a definitive correlation between the other act evidence and the charges

for which the defendant is on trial before it can be introduced:

> Evidence of another act should not be admitted to show knowledge
> unless the other act is sufficiently similar to the conduct at issue to
> permit the jury reasonably to draw from that act the knowledge
> inference advocated by the proponent of the evidence. Similarity,
> being a matter of relevancy, is judged by the degree to which the
> proper act approaches near identity with the elements of the offense
> charged. There is no necessity for synonymity but there must be
> substantial relevancy.

*United States v. Affehei*, 869 F.2d 670, 674 (2d Cir. 1989); *United States v. Gordon*, 987 F.2d

902, 908-09 (2d Cir. 1993). The government argues that the proffered uncharged acts are

admissible as they complete the story of, and provide essential background for the October 30,

2002 murder, including proving the relationship of trust between the defendants and co-

conspirators. The government also contends that the uncharged "evidence of the defendants'

possession, use of, and ready access to firearms while engaged in narcotics distribution is

probative of opportunity, and the absence of mistake or accident with respect to the charged

murder." *See* Gov't Mot. at 21. Not so. The evidence surrounding the charged incident itself is

more than sufficient to provide the jury with evidence of the nature of the relationships and the

alleged planning of the October 30 incident.

The government contends that between 1996 and 2002, Mizell was involved in

transporting kilogram-quantities of cocaine for retail sale. As proffered, in or about July 2002,

Mizell acquired approximately ten kilograms of cocaine on consignment to be distributed in

Maryland by Washington, Jordan, and others. A dispute between Washington and one of the co-

conspirators resulted in Mizell cutting Washington out of the Maryland deal. Following

Washington's dispute with Mizell, as proffered, Washington and Jordan conspired to murder

Mizell. *See* Govt's August 17, 2020, Detention Letter at 2, and February 22, 20022 Opposition

of Bail at 2, Doc. Nos. 9 and 74.

The clarity with which the indictment, and the government's motions detail the

allegations against Mr. Jordan regarding the charged incidents similarly refutes any claim that it

is "inextricably intertwined" with the charged crimes. *See United States v. Hatfield*, 685 F. Supp.

2d 320, 323 (E.D.N.Y. 2010) ("the Indictment itself refutes the Government's 'inextricably

intertwined' claims, as it tells a compelling complete and detailed story without mentioning the

Defendants' alleged fraudulent statements to NASDAQ."). For this reason, courts have excluded

other act evidence, as the Court should here. *See id.* at 323-25 (excluding uncharged "insider

trading evidence as direct evidence" as it "involved 'separate, discrete incidents of alleged fraud

or deceit,' not conduct that was 'inextricably intertwined' with the indictment's charges or

necessary to complete the Indictment's story"); *United States v. Newton,* No. 01-CR-

635 (CSH), 2002 WL 230964, at *3 (S.D.N.Y. Feb. 14, 2002) (excluding uncharged "similar

fraudulent acts" in fraudulent visa case, as "while the activity was similar, these were separate

visa referrals").

Because the government has not demonstrated a proper purpose for admission of the

uncharged "other acts," the uncharged acts pose a severe risk of undue prejudice, and the nature

and volume of the uncharged conduct raises a likelihood that the jury will disregard any limiting

instruction, the Court should exclude the "other acts" evidence in its entirety.

### III.   The Government Should Be Precluded from Introducing So-called Evidence of Defendants' Witness Intimidation and Tampering

The government seeks to admit evidence of alleged witness intimidation and tampering

against Mr. Jordan. The government's strained efforts to dirty Mr. Jordan's reputation and

character with propensity evidence should not be permitted.  Indeed, these so-called "threats" and strained efforts to make Mr. Jordan look bad have already had the real effect of injecting the potential jury pool with prejudice against Mr. Jordan by the government's public filing of the allegations.[1]  The Court should deny the government's motion.

"Relevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad per se rules." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).  The Court must engage in "a fact-intensive, context-specific inquiry." *Id.*

Evidence of a party's consciousness of guilt may be relevant only if reasonable inferences can be drawn from it and if the evidence is probative of guilt.  *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 401.08 (2d ed. 1997).  Such evidence is only admissible if the court: (1) determines that the evidence is offered for a purpose other than to prove the defendant's bad character or criminal propensity, (2) decides that the evidence is relevant and satisfies Rule 403, and (3) provides an appropriate instruction to the jury as to the limited purposes for which the evidence is introduced if a limiting instruction is requested.  *See United States v. Mickens*, 926 F.2d 1323, 1328-29 (2d Cir. 1991).

"[T]he central issue when threat testimony is sought to be introduced is the balance of probativeness and prejudice required by Fed. R. Evid. 403."  *United States v. DeLillo,* 620 F.2d 939, 946 (2d Cir.), cert. denied, 449 U.S. 835, 101 S.Ct. 107, 108, 66 L.Ed.2d 41 (1980); *United States v. Qamar*, 671 F.2d 732, 735 (2d Cir. 1982).  *See also United States v.*

---

[1] The government's October 19, 2022 Memorandum in Support of its Motions *in Limine* has been cited in numerous press articles, including the following examples: "EXCLUSIVE: Prosecutors Claim Jam Master Jay's Alleged Killer Admitted Guilt, Shot JMJ's Nephew", https://www.vladtv.com/article/288176/prosecutors-claim-jam-master-jays-alleged-killer-admitted-guilt-shot); "EXCLUSIVE: Prosecutors Say Man Charged With Killing Jam Master Jay Admitted To The Murder", https://allhiphop.com/news/prosecutors-say-man-charged-with-killing-jam-master-jay-admitted-to-the-murder/.

*Williams*, 596 F.2d 44, 50 (2d Cir.), *cert. denied*, 442 U.S. 946 (1979) ("District judges must carefully scrutinize both the basis for the claimed relevance of [other crimes] evidence and the balance between its probative value and prejudicial effect.  The key to a fair trial in such cases is careful determination by the trial judge of both issues, particularly the latter.").

The Second Circuit stated in *Qamar*, 671 F.2d at 736: "the potential prejudice from death threats may be great."  Because its potential for causing unfair prejudice usually outweighs its probative value with respect to a defendant's guilt, "[o]rdinarily, unrelated death threat testimony is kept from a jury."  *United States v. Panebianco*, 543 F.2d 447, 455 (2d Cir. 1976).  A court undertaking Rule 403 balancing not only must take into account the "severe prejudice" that can result from the use of death threat testimony on one side, but also must carefully consider the government's need for the evidence on the other.  *United States v. Check*, 582 F.2d 668, 685 (2d Cir. 1978).

To account for the undue prejudice, the Second Circuit has "carefully limited" the use of death threat evidence to situations where the prosecution has a clear need for it. *Id.*; accord *United States v. Qamar*, 671 F.2d at 736 ("the government must have an important purpose for the evidence in order to satisfy the Rule 403 balancing test. Trial courts applying standard Rule 403 analysis may, therefore, exclude death threats more frequently than other evidence.").  *See also United States v. Old Chief*, 519 U.S. 172, 184-185 (1997); *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009) (*McCallum* cautions that a court should not admit such evidence unless the court has carefully conducted the required Rule 403 balancing, including, in particular, an assessment of evidentiary alternatives to avoid a situation "the District Court received the convictions as propensity evidence in sheep's clothing and did so with insufficient regard for the unfair prejudice that surely would result from their admission."); *see also United States v.*

*Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (a limiting instruction "may lessen but does not invariably eliminate the risk of prejudice notwithstanding the instruction. Rule 403 balancing must therefore take into account the likelihood that the limiting instruction will be observed.").

For instance, in *United States v. Morgan*, 786 F.3d 227 (2d Cir. 2015), the defendant was convicted of possession of a firearm in furtherance of drug-trafficking crime, being a felon in possession of a firearm, and other crimes.  At trial, the government introduced evidence through the testimony of the defendant's girlfriend to whom the defendant sent letters from prison seeking her assistance in the murder of the government's informant, where he stated that killing the government's witness was the "only way he was gonna see the light of day again." *Id.* at 229. The district court agreed with the defense that the evidence was extremely prejudicial and offered to give a limiting instruction, adding the caveat: "if I start talking about consciousness of guilt and inferences, it's gonna be like holdin' up a red flag in front of 'em." *Id.* at 325.  The court further agreed with the defense that a limiting instruction was unlikely to cure the prejudice of the death threat evidence.  *Id.* at 230.  Ultimately, no limiting instruction was proposed or given and the motions for a mistrial or to strike were denied.  *Id.*  On appeal, the Court of Appeals for the Second Circuit vacated the conviction and remanded for a new trial, holding:

> [T]he alleged death threats here bore no relation to the offenses for which Morgan was being tried.  *See United States v. Lord*, 565 F.2d 831, 836–37 (2d Cir.1977) ("The attempt on [the witness's] life is the type of evidence that, even if relevant, might have to be excluded because of its potential for creating unfair prejudice.").  Moreover, the death threat evidence admitted during Williams's direct examination had substantial "capacity ... to lure the [jury] into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Massino*, 546 F.3d 123, 132 (2d Cir.2008) (quoting *Old Chief v. United States*, 519 U.S. [at 172]).
>
> It cannot be said that the evidence of death threats had no tendency to demonstrate consciousness of guilt.  *See* Fed. R. Evid. 401(a).  At the same time, the government was required to demonstrate that it had an "important purpose" for the introduction of the death threat evidence during

> Williams's direct examination. *Qamar*, 671 F.2d at 736. Plainly, it is no
> such purpose to "induc[e] decision on a purely emotional basis." Fed. R.
> Evid. 403 advisory committee's note.
>
> \*   \*   \*
>
> As the district court and defense counsel agreed, no limiting instruction
> would likely mitigate the prejudicial effect of the death threat
> evidence, *i.e.,* the likelihood that the jury would substitute the death threat
> evidence for consideration of the elements of the charged
> crimes. *Cf. United States v. Robinson,* 560 F.2d 507, 513–14 (2d
> Cir.1977) ("Absent counterbalancing probative value, evidence having a
> strong emotional or inflammatory impact ... may pose a risk of unfair
> prejudice because it tends to distract the jury from the issues in the case and
> permits the trier of fact to reward the good man and to punish the bad man
> because of their respective characters despite what the evidence in the case
> shows actually happened.... The effect in such a case might be to arouse the
> jury's passions to a point where they would act irrationally in reaching a
> verdict." (internal quotation marks and citations omitted)).

*Id.* at 232-233. *See also United States v. Cummings*, 858 F.3d 763 (2d Cir. 2017) (On appeal, the

Second Circuit vacated the conviction and remanded the case, holding that that the district court

erred by admitting hearsay evidence of a death threat the defendant allegedly made against a

government witness, finding such error was not harmless.) *Id.* at 766.

Here, the government moves to introduce five items of "witness testimony, recorded

telephone calls and other evidence of witness intimidation and tampering". Govt' Mot. at 26-

28.[2]

As to the first, it is unclear who would testify to this since the government proclaims that

Witness 6 refuses to speak with law enforcement. Either way, this testimony does not allege Mr.

Jordan did anything. It alleges that Mr. Jordan's father spoke to an individual who was present

in the studio during the shooting and that individual interpreted it as threatening. This is highly

inflammatory and prejudicial and does not directly implicate Mr. Jordan in any wrongdoing, and

should not be admitted.

---

[2]There is an additional item that relates to Mr. Washington we do not analyze.

As to the second, it is unclear what, if any, probative value comes from allowing this testimony.  A potentially innocent question from a close family friend of Mr. Mizell's at his funeral has been allegedly interpreted as a threat.  The danger of prejudice in allowing this statement at Mr. Jordan's trial is far too high and it should be kept out.

As to the third, an alleged statement, again by Mr. Jordan's father, serves to prejudice Mr. Jordan before a jury.  The prejudice far outweighs any probative value in allowing this statement in at trial against Mr. Jordan.

As to the fourth, here the government attempts to distort jail calls of a man who has been held in a federal jail for two years, awaiting trial.  While the government attempts to destroy Mr. Jordan's character, these calls show a man who is trying to figure out what will happen at his trial, who may testify against him, and stating that he is going to "pray on it and that its going to fix itself" because he is innocent and believes the jury will see that at his trial.  The attempt to distort these alleged calls is highly prejudicial evidence against Mr. Jordan and should be kept out of the trial.

As to the fifth, notably, here, there is no allegation of proof that Mr. Jordan actually has anything to do with the State Inmate's communications.  The government brazenly states that this individual is a go-between, with no evidence to corroborate that assertion other than the State Inmate talking about who may testify against Jordan and that Mr. Jordan's participation in the crime is a total lie.

These alleged items, like the assertions that Washington and Jordan have communicated at the Metropolitan Detention Center and that Jordan possessed a contraband form of communication, are hardly evidence of Mr. Jordan's consciousness of guilt.  The government does not claim that Mr. Jordan threatened a cooperating witness against him, nor does the

Government claim that anyone felt threatened by any of the alleged statements or acts by Mr. Jordan. The government goes as far as to have the Court infer that an inmate who has discussed the use of a cell phone in jail should be a concern for witness intimidation or threats.[3]  The government's proffer is simply too scant to be deemed a threat against any witness admissible under 404(b) as evidence of Mr. Jordan's consciousness of guilt.

Because of the inflammatory nature of the evidence the government seeks to admit at trial it should not be admitted. As in *McCallum,* the government knows this is "propensity evidence in sheep's clothing." *McCallum*, 584 F.3d at 476.  Accordingly, any probative value – which, at best, is minimal – is far outweighed by the risk of overwhelming prejudice to Mr. Jordan.  These dubious, unclear allegations of alleged threats or intimidation will only serve as improper propensity evidence.  Finally, if the Court permits such evidence, we believe no limiting instruction will suffice to protect Mr. Jordon as it will be like "holdin' up a red flag in front of 'em." *See Morgan*, 786 F.3d at 230.

## IV.    The Government Should Be Precluded from Introducing Prison Phone Calls of So-called Admissions of a Party Opponent

The government seeks to introduce evidence of recorded phone conversations arguing that they reflect Mr. Jordan's consciousness of guilt and are admissible as statements by a party opponent.  Again, the government states it "will [sometime in the future] identify any recordings that it seeks to introduce to allow for motions on those specific calls[,]" Gov't Mot. at 32, so the issue will have to be addressed then.  However, we have a preview of the substance of the calls as discussed in Point III.

---

[3]It is unclear whether the government seeks to admit this as "evidence" at trial or solely included this in pages 28-29 of its Motions *in limine* to continue to attempt to assassinate Mr. Jordan's character.

As a general matter: "A statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy.  The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it under (E)."  Fed. R. Evid. 801(d)(2)(E).  "[W]hen the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence." *Bourjaily v. United States*, 483 U.S. 171 (1987).  For admissibility under Rule 801(d)(2)(E), a conspiracy "continues until its aim has been achieved, it has been abandoned, or otherwise terminated." *United States v. Arrington*, 867 F.2d 122, 130 (2d Cir. 1989).  A statement is "in furtherance" of a conspiracy if it "promoted, or was intended to promote, the goals of the conspiracy." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989).  The Court of Appeals has elaborated:

> Idle chatter" does not meet the test; nor does a "merely narrative" description by one coconspirator of the acts of another. Coconspirator statements may be found to be "in furtherance" of the conspiracy within the meaning of Rule 801(d)(2)(E) if they "prompt the listener to respond in a way that facilitates the carrying out of criminal activity.

*Id.* (internal citation and alteration punctuation omitted) (quoting *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir.1980); *United States v. Heinemann*, 801 F.2d at 95 and *United States v. Rahme*, 813 F.2d at 35).

It is axiomatic that none of the alleged jail conversations were made during an ongoing conspiracy and were not in furtherance of the conspiracy.  Further, they cannot be interpreted as "prompt[ing] the [cooperator] to respond in a way that facilitates the carrying out of criminal activity." *Beech-Nut Nutrition Corp.*, 871 F.2d at 1199.  *See generally United States v. Tropeano*, 252 F.3d 653, 658-659 (2d Cir. 2001) (admission of co-defendant's statement inculpating defendant was error because the statement may have been an attempt to curry favor

17

with authorities, even though it did not attempt to shift blame); *Anderson v. United States*, 411

U.S. 211, 218 n.6 (1946*); United States v. Borelli*, 336 F. 2d 376, 386 n.4 (2d Cir. 1964).

Importantly, the government does not proffer that in any of the hundreds of jail calls it

has reviewed, did Mr. Jordan ever admit he participated in the murder of Jason Mizell,

participated in a cover-up of the crime, or that he threatened anyone or tampered with a witness.

The Court should also take notice that the use of Jordan's prison calls, in this manner,

may also violate the confrontation clause under the Sixth Amendment.  *Crawford v. Washington*,

541 U.S. 36, 124 (2004) requires the unavailability of the witness and a prior opportunity for

cross-examination.  Further, permitting the jury to hear jail calls may indicate that the speakers

committed serious crimes, resulting in their confinement, which raises a considerable danger of

unfair prejudice because "[s]uch evidence easily lends itself to generalized reasoning about a

defendant's criminal propensity and thereby undermines the presumption of innocence." *United

States v. McCallum*, 584 F.3d at 475.

We stress to the Court that evidence presented to infer a consciousness of guilt is

"controversial and must be handled with care."  *See United States v. Benedetti*, 433 F.3d 111,

116 (1st Cir. 2005).  A jury may infer that a defendant's conduct suggests consciousness of guilt

only when there is "a satisfactory factual predicate" to support that inference.  *See also United

States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005); *United States v. Sanchez*, 790 F.2d 245,

252 (2d Cir. 1986).  It is required that there be "a factual predicate … from which a reasonable

jury can make the required inferences.  [This] "ensures that the evidence is probative in a legal

sense and protects the defendant against the possibility of the jury drawing unsupported

inferences from otherwise innocuous behavior." *United States v. Amuso*, 21 F.3d 1251, 1260 (2d

Cir. 1994) (citation omitted); *accord Al-Sadawi*, 432 F.3d at 424.

There is no factual predicate to support an inference that Mr. Jordan's phone calls are probative of his consciousness of guilt.  And there is an alternative, more reasonable and plausible inference to be drawn from these conversations: He is concerned about his case. Accordingly, the calls have no probative value as to consciousness of guilt, and should be precluded under Fed. R. Evid. 104, 401, and 402.

Finally, contrary to the government's self-serving argument, the rule of completeness may require the introduction of other recordings to put those the government seeks to introduce in evidence in their proper context.  Fed. R. Evid. 106.  As interpreted by the Second Circuit, the doctrine "require[s] that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure a 'fair and impartial understanding of the admitted portion.'" *United States v. Marin*, 669 F.2d 73, 85 (2d Cir. 1982) (citations omitted).

## V.     The Government Should Be Precluded from Admitting Jordan's Interview Videos and Selected Rap Lyrics

The rap videos and interview clip selected by the government for admittance in their direct case serve no purpose other than to establish evidence of propensity and create the inference before the jury that it is more likely than not that Mr. Jordan engaged in the charged conduct.  The rap videos and interview should be excluded in their entirety.  Courts throughout the country and in this district have only allowed the use of rap lyrics in criminal trials based on the content of the evidence and the issues presented in the case. *See United States v. Wilson,* 493 F. Supp. 2d 484, 488-89 (E.D.N.Y. 2006) (defendant's rap lyrics were relevant because they "describe activity that resembles aspects of the central crime alleged . . . and appear to have been written after that crime was committed"); *United States v. Jones*, No. 05-CR-322 (NAM), 2007 U.S. Dist. LEXIS 34772, *aff'd sub nom., United States v. Applins*, 637 F.3d 59 (2d Cir.

19

2011) (defendant's rap lyrics showed his knowledge of the gang alleged to be responsible for the racketeering activity); *see also United States v. Stuckey*, 253 Fed. Appx. 468, 482 (6th Cir. 2007) (defendant's rap lyrics describing shooting and disposal of bodies in a manner that mirrored the charged crime were relevant); *United States v. Foster*, 939 F.2d 445, 456 (7th Cir. 1991) (defendant's rap lyrics demonstrated his knowledge of the drug trade and certain drug code words).

The Second Circuit has held that "[r]ap lyrics . . . are properly admitted . . . where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice." *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015). In *Pierce*, the court affirmed the admission of rap videos where the videos helped establish a defendant's association with members of an enterprise and the defendant's motive to participate in the charged conduct. *Id.* at 840-41. Relevant evidence may be excluded, of course, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Unfair prejudice is an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief*, 519 U.S. at 180 (quoting Fed. R. Evid. 403 Advisory Comm. Notes). Evidence with the capacity to "arouse[] jurors' sense of horror" or "provoke[] a jury's instinct to punish" can sometimes be considered unfairly prejudicial. *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 403.04[1] (2d ed. 1997). In this circuit, evidence is not unduly prejudicial when it is not "more inflammatory than the charged crime[s]" *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999); *see also United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (noting evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged" (alteration in original)).

However, circuit courts have cautioned and admonished trial judges against admitting rap videos or lyrics with merely a tenuous connection to the defendant or issues in the case. *See*, *e.g.*, *United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011) (rap music video did not feature the defendant nor was evidence introduced that defendant had authored the lyrics or adopted the views expressed in the video); *Boyd v. City & County of San Francisco.*, 576 F.3d 938, 949 (9th Cir. 2009) (in civil suit against police for excessive use of force, failure to exclude a portion of victim's rap lyrics advocating prostitution was error as it was irrelevant to question of his views and actions toward police).

As this Court recognized during Mr. Jordan's bail hearing "this is a genre of music that encourages and promotes violent language in its lyrics.  And this is, in part, for the profit of the artists as well for the music executives, that my personal estimation is they profit greatly off of the encouragement of violence and misogyny, et cetera, in rap music. I'm not going to hold any individual accountable for the lyrics in a rap song . . . that's not part of the total mix for this Court." *See* February 28, 2022 Transcript at 8:21-9:10.  As the Court is aware, Mr. Jordan was an aspiring rap artist.

Additionally, state legislatures, recognizing the harm that would result to our criminal justice system if courts routinely admit evidence of creative expressions during criminal trials, have acted by introducing legislation that would restrict the use of rap lyrics and videos during the guilty phase of a trial. Recently, the state of California has introduced legislation that would require a court to consider specified factors when balancing the probative value of evidence of creative expression against the substantial danger of undue prejudice. The legislation would define "creative expression" as the expression or application of creativity or imagination in the production or arrangement of forms, sounds, words, movements, or symbols, as specified and

would require a court, in balancing the probative value of a creative expression against the

substantial danger of undue prejudice, to first consider that the probative value of the creative

expression for its literal truth is minimal unless that expression meets specified conditions. Most

importantly, the legislation would require a court "to consider, if proffered and relevant to the

issues in the case, credible testimony on the genre of creative expression as to the context of the

expression, research demonstrating that the introduction of a particular type of expression

introduces racial bias into the proceedings, and evidence to rebut such research or testimony."

AB – 2799 Evidence: Admissibility of Creative Expressions (Oct. 3, 2022).

The rap music videos and interview the Government seeks to introduce, *see* Gov't Mot. at

35-36, portray inflammatory, fictional scenes of third-party individuals committing crimes –

including murders, robberies, and comparisons to mobsters – that are neither charged in nor

relevant to this case. Such scenes of violence and misogyny were common among rap artists of

the time, particularly rap artists from New York City.[4]  Additionally, any probative value the

videos may have is greatly outweighed by the unfair prejudice which would result from having

the violent rap videos shown to the jury in the murder trial of a famous rap artist.  And the

government does not explain how the rap videos furthered the alleged conspiracy while invoking

Fed. R. Evid. 801(d)(2)(E) to argue that the statements in these videos should be admitted for

their "truth."  But there is no connection or nexus to the charged conspiracy.  The fact that Mr.

---

[4]The Indictment period covers October 30, 2002, where popular rap artists from New York City, such as Mobb
Deep, Jay Z, and 50 Cent, routinely discussed street violence in graphic detail in their songs. As a result, up and
coming artists would attempt to mimic their "style" to fit into the genre and ultimately increase record sales.  Many
of the artists who achieved such mainstream success in the 2000s, such as Jay-Z, DMX, then 50 Cent and G-Unit,
originated from the gritty 1990s East Coast rap scene and were influenced by hardcore artists such as The Notorious
B.I.G., Wu-Tang Clan and Nas.  Mase and Cam'ron were typical of a more relaxed, casual flow that became the
pop-gangsta norm. By contrast, other rappers like Eminem and DMX enjoyed commercial success in the late 1990s
by rapping about ever-more macabre tales of death and violence, maintaining commercial relevance by attempting
to be controversial and subversive, growing on the Horrorcore rap style born in the late 1980s. *Gangsta Rap*,
Wikipedia, https://en.wikipedia.org/wiki/Gangsta_rap.

Mizell was shot in the head is insufficient to show that the perpetrator used a "signature" of shooting victims in the head because there is only the one victim.  Indeed, Mr. Mizell's murder was not committed using a silencer or any other apparent props that appear in the videos.

Furthermore, it is unclear what the date of production is for the interview and rap videos, with the government estimating that they are from 2008-2009, with the exception of "Silver Spoon," which they believe was produced in 2014. These videos are years after the charged conduct occurred and any probative value has been greatly attenuated by the passage of time and general nature of the lyrics being spoken. Lyrics like: "the motto for 2010 is aim for the head" and "I can speak on real life experiences[,]" and imagery of Mr. Jordan at the mural of Mr. Mizell, is the government's attempt to create an impermissible inference that Mr. Jordan killed him, and to also inflame the jury by showing Mr. Jordan at his mural.  Respectfully, this so-called evidence must not be admitted.  *See Pierce*, 785 F.3d at 841 (holding rap music videos to be admitted only if "they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice."); Fed. R. Evid. 403.

## VI.  The Government Should Be Precluded from Admitting Certain Documents as Past Recollection Recorded

The government moves to admit certain unspecified documents as past recollection recorded.  When those items are identified we will be able to more fully respond.  For now, Mr. Jordan asserts that his rights under the Confrontation Clause must not be abridged.  *See United States v. Davis*, 767 F.2d 1025, 1031-32 (2d Cir. 1985) ("To survive a Confrontation Clause challenge, the statement must bear sufficient indicia of reliability to assure an adequate basis for evaluating the truth of the declaration.  *Id.* (citing *Dutton v. Evans*, 400 U.S. 74, 89, (1970), and *United States v. Oates*, 560 F.2d 45, 81 (2d Cir. 1977)).

**VII.    Evidence that Third Parties Committed the Charged Crime is Crucial to Mr. Jordan's Constitutional Right to Present a Complete Defense**

The government moves to preclude the defendants from "introducing evidence or eliciting testimony in support of speculative theories of an alternative perpetrator unless he first establishes a sufficient nexus to the charged crimes." Gov't Mot. at 41.   In other words, because the government believes that Mr. Jordan is guilty of the charged crimes, the government assumes his defenses are speculative.  On that basis, the government effectively requests that the Court impose a higher bar for admitting Mr. Jordan's defense evidence than the basic FRE 401 and 403 relevance and prejudice requirements.  The government has it exactly backward.  Its argument comes dangerously close to presuming Mr. Jordan's guilt as a means of excluding his defenses at trial.  The Constitution affords Mr. Jordan far more protections than the government recognizes. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). Thus, "when it comes to the presentation of exculpatory evidence by a criminal defendant, the Constitution <u>requires</u> the admission of certain evidence." *United States v. Gilmore*, 2021 U.S. Dist. LEXIS 173393 (S.D.N.Y. Sep. 13, 2021), at *4.

The stakes of Mr. Jordan's case – life imprisonment without parole in the event of conviction – require scrupulous adherence to these constitutional protections.  Per the government's disclosures in several *Brady* productions, there is substantial evidence that others had motives and perpetrated the attack on Jason Mizell, and thus that Karl Jordan did not.  *See* Defendant's Exhibit A, Government's Brady Letters, dated September 21, 2020, October 20, 2020, November 17, 2020, December 22, 2020, August 9, 2021, August 23, 2021, and October

10, 2022 (filed under seal).  While the government does not credit this evidence, that has no impact on its relevance to the jury's determination of Mr. Jordan's innocence or its admissibility as a crucial part of his trial defense.  Mr. Jordan is charged with the almost unthinkable crime of killing a close, lifelong acquaintance and a person who he considered to be family.  The very nature of the charges will surely immediately color the jury's perception of him, the presumption of innocence notwithstanding.  Defending his innocence to the charges of murder of a family friend depends on his ability to present alternative perpetrator evidence to the jury.  Precluding that evidence would unduly, and perhaps fatally, prejudice Mr. Jordan.  *See, e.g.*, *Gilmore*, 2021 U.S. Dist. LEXIS 173393, at *11 (admitting third-party perpetrator evidence where "there is no indication that Mr. Gilmore has 'equally useful' evidence of third-party culpability; the Government seeks to exclude Mr. Gilmore's best – and perhaps his only – alternative perpetrator evidence."); *United States v. Johnson*, 529 F.3d 493, 500 (2d Cir. 2008) (citation omitted) ("Probative value is also informed by the availability of alternative means to present similar evidence.").

Nor does the law require an immediate nexus to warrant admission.  *See United States v. White*, 692 F.3d 235, 247 (2d Cir. 2012) ("The fact that White's theory requires a chain of complex reasoning, does not mean that it is not relevant.  For, as we have expressly stated: "[t]he length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved ... does not render the evidence irrelevant.") (quoting *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970))(additional quotation marks and citations omitted). Any inferential nexus probative of an alternative perpetrator's commission of the charged crimes is sufficient for admission. *See United States v. Serrano*, 192 F. Supp. 3d 407, 412 n.2 (S.D.N.Y. 2016) (admitting evidence that a third party committed the charged crime where "the

Government has disclosed that the ammunition was found in a gray plastic container of the floor of the closet, underneath a laundry bag that appeared to contain older purses. [The third party's] self-inculpatory statements imply that he used women's purses stored in that closet to transport firearms. Therefore, [the defendant] has demonstrated a nexus between the crime charged and the asserted alternative perpetrator.") (quotation marks, citations and modifications omitted). Mr. Jordan's presentation of evidence consistent with the government's disclosures – that not only identify individuals with motive, but suggest a direct link between them and Mr. Mizell – would easily meet that standard.

Further, while the government argues that its abandonment of third parties as the potential perpetrators of the charged crimes renders this evidence presumptively inadmissible, caselaw supports the opposite conclusion. In *Gilmore*, for example, the defense sought to admit evidence that the perpetrator of an uncharged robbery also committed the robberies with which the defendant was charged. In admitting the evidence of the third party's commission of the uncharged robbery, the court cited law enforcement's previous (abandoned) belief that the third party was responsible for all the robberies, as an indication of nexus. *See Gilmore*, at *10, 11 ("In this case, the nexus between the crimes charged and the alternative perpetrator is far stronger than the nexus in each of the foregoing cases. In an application for a search warrant in connection with this case, a law enforcement officer stated that the Charged Robberies and the Uncharged Robbery were part of a pattern of gunpoint robberies of livery cab drivers, and noted the similarities among all the robberies") (quotation marks omitted); *accord United States v. Stevens*, 935 F.2d 1380, 1383, 1405 (3d Cir. 1991) (reversing a conviction finding that the district court improperly excluded alternative perpetrator evidence, including evidence of the investigating officers' prior belief that two crimes, one of which was committed by a third party

and the other was the subject of the indictment, were related).  The government's motion should be similarly denied.

The Court should also deny the government's request to require Mr. Jordan's defense evidence to face heightened scrutiny through a pretrial hearing. Mr. Jordan's constitutional right to a fair trial depends on his ability to present "evidence of third-party culpability," as "under the facts and circumstances of the individual case, its exclusion would deprive the defendant of a fair trial." *Gilmore*, at *1 (quotation marks citations and modifications omitted). While Mr. Jordan's evidence elicited during cross examination or during his defense case is subject to the Federal Rules of Evidence, it would be improper to heap further requirements on him – requirements to which the government's case is not subject – as he prepares for a trial that will determine his fate.

Finally, because of the government's recent *Brady* disclosures, Mr. Jordan's defense investigation remains ongoing.  In the last several weeks the government provided important *Brady* information regarding third parties' culpability for the charges – although the government has presumably possessed much of that material well in advance of its disclosure.  *See Gilmore*, at *16, 17 ("any evidence linking an individual other than Mr. Gilmore to the pattern of gunpoint robberies that occurred between July 20, 2019 and August 1, 2019 is exculpatory.  Therefore, Mr. Gilmore is entitled to such evidence under *Brady*.").  While the trial is months away, we are still in the process of investigating the government's alternative perpetrator *Brady* evidence.  The government's tardy *Brady* disclosures thus render its request for pretrial hearings all the more inappropriate.  The government's motions *in limine* should be denied in full.

## **CONCLUSION**

For the reasons set forth herein, the government's motions should be denied.

Dated:         Brooklyn, New York
               November 9, 2022


                              Respectfully submitted,

                              _____/s/_____
                              MICHAEL HUESTON, ESQ.
                              MARK DEMARCO, ESQ.
                              JOHN DIAZ, ESQ.
                              MONICA NEJATHAIM, ESQ.