UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

       -against-

KARL JORDAN, JR., and
RONALD WASHINGTON,

             Defendants.

20 Cr. 305 (LDH)

**RONALD WASHINGTON'S MEMORANDUM OF LAW
IN OPPOSITION TO
THE GOVERNMENT'S MOTIONS *IN LIMINE***

Susan G. Kellman
Ezra Spilke
Jacqueline Elaine Cistaro

*Counsel for Ronald Washington*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii

BACKGROUND .............................................................................................1

DISCUSSION.................................................................................................2

I.   The Government Discloses neither the Particular Co-conspirator Statements It Seeks to Offer nor the Foundation for Their Admission ................................................2

II.  The Government Seeks to Offer Impermissible Reputation Evidence and Does Not Comply with the Disclosure Requirements of Rule 404(b) .....................................2

   A.  Legal Principles .................................................................................2

   B.  General Reputation Evidence Is Patently Inadmissible ...................................4

   C.  The Government's Disclosure as to the Alleged August 9, 2002, Armed Robbery Fails to Articulate a Permissible, Non-Propensity Purpose and Is, Thus, Unreviewable ...............7

III. The Government's Motion to Offer Mr. Washington's Jail Calls Should Be Denied in Part and the Government Should Be Directed to Confer with the Defense to Designate Portions of the Calls for the Sake of Completeness.........................................8

   A.  The Government Should Not Be Permitted to Mislead the Jury by Offering Incomplete, Out-of-Context Recordings ........................................................8

   B.  Certain, Specific Admissions or Alleged Admissions Designated by the Government Are Irrelevant or Lack Foundation .......................................................9

   C.  The Government Should Be Prevented from Disclosing to the Jury that Mr. Washington Is Incarcerated ...............................................................11

IV.  The Court Should Decline the Government's Invitation to Abridge Mr. Washington's Due Process Right to Present a Complete Defense .................................13

V.   Mr. Washington Joins in the Arguments Made by Mr. Jordan in Mr. Jordan's Opposition to the Government's Motions in Limine .......................................16

# TABLE OF AUTHORITIES

## Cases

*Crane v. Kentucky*, 476 U.S. 683 (1986) ........................................................................ 15

*Estelle v. Williams*, 425 U.S. 501 (1976) ................................................................. 11, 12

*Old Chief v. United States*, 519 U.S. 172 (1997) ........................................................ 4, 6

*People v. Jenkins*, 670 N.E.2d 441 (N.Y. 1996) .............................................................. 12

*Taylor v. Illinois*, 484 U.S. 400 (1988) ......................................................................... 15

*United States v. Abu-Jihaad*, No. 3:07CR57 (MRK), 2008 WL 282368 (D. Conn. Jan. 31, 2008) 9

*United States v. Bifield*, 702 F.2d 342 (2d Cir. 1983) .................................................... 14

*United States v. Castro*, 813 F.2d 571 (2d Cir. 1987) ..................................................... 8

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) .................................................. 3, 4

*United States v. Deandrade*, 600 F.3d 115 (2d Cir. 2010) ............................................. 12

*United States v. Dhinsa*, 243 F.3d 635, 658-59 (2d Cir. 2001) ..................................... 10

*United States v. Downing*, 297 F.3d 52 (2d Cir. 2002) .................................................... 3

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) .................................................. 4

*United States v. Gordon*, 987 F.2d 902 (2d Cir. 1993) .................................................... 3

*United States v. Green*, 694 F. Supp. 107 (E.D. Pa. 1988) .............................................. 8

*United States v. McCallum*, 584 F.3d 471 (2d Cir. 2009) ............................................... 4

*United States v. Nektalov*, 325 F. Supp. 2d 367 (S.D.N.Y. 2004) .................................... 3

*United States v. Nixon*, 418 U. S. 683 (1974) ............................................................... 15

*United States v. Ray*, No. 20-CR-110 (LJL), 2021 WL 5493839 (S.D.N.Y. Nov. 22, 2021) ....... 14

*United States v. Townsend*, No. S1 06 CR. 34 (JFK), 2007 WL 1288597, at *6 (S.D.N.Y. May 1, 2007) .......................................................................................................................... 7

*United States v. Vayner*, 769 F.3d 125 (2d Cir. 2014) .................................................. 10

*United States v. Villabona-Garnica*, 63 F.3d 1051 (11th Cir. 1995) .............................. 12

*United States v. Williams*, 585 F.3d 703 (2d Cir. 2009) ................................................ 12

*United States v. Williams*, 930 F.3d 44 (2d Cir. 2019) ................................................... 8

## Other Authorities

Robert N. Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials*, 9 Ind. L. Rev. 711 (1976) ........................................................... 16

## Rules

Fed. R. Evid. 106 .......................................................................................................... 1, 8

Fed. R. Evid. 403 .............................................................................................................. 4

Fed. R. Evid. 404(a) advisory committee's note ................................................................ 5

Fed. R. Evid. 404(a) advisory committee's note to 2006 amendment .................................. 5

Fed. R. Evid. 404(a)(1) ...................................................................................................... 2

Fed. R. Evid. 404(b) advisory committee's note to 2020 amendment ................................. 6

Fed. R. Evid. 404(b)(1) ...................................................................................................... 2

Fed. R. Evid. 404(b)(2) ................................................................................................2

Fed. R. Evid. 404(b)(3) ....................................................................................... 3, 5, 6, 7

Fed. R. Evid. 602 advisory committee's note ...............................................................5

Fed. R. Evid. 611(a) advisory committee's note ..........................................................2

Fed. R. Evid. 611(a)(1) .................................................................................................8

Fed. R. Evid. 701 advisory committee's note to 2000 amendment ...............................5

Fed. R. Evid. 901(a) ...................................................................................................10

# BACKGROUND

Ronald Washington files this opposition to the government's October 19, 2022, motions *in limine*. He also joins in the arguments advanced by Karl Jordan in his opposition brief. Like its motion for discovery, which failed to comply both with the Court's deadlines and with the Local Rule requiring the parties to confer, the government's *in limine* motions suffer from numerous procedural defects. By relying on procedural rules, we do not seek to elevate form over function. Rather, the procedural rules are intrinsic to notions of fairness and due process. One potent example is the government's failure to give adequate notice under Rule 404(b)(3) of the Federal Rules of Evidence. Not only must the government provide notice as to specific acts it seeks to prove, it must articulate a permissible, non-propensity purpose for its admission. The government's failure to abide by the deadline set by the Court demonstrates its disrespect for this Court's authority and Mr. Washington's constitutional rights at best – and gamesmanship at worst. For the following reasons, the government's motions should be denied where indicated or, in the alternative, deferred.

Mr. Washington also asks that this Court direct the government to immediately: (1) designate what co-conspirator statements it seeks to introduce; and (2) *specify* all "other acts" it seeks to offer and articulate a "non-propensity" purpose for their admission. In addition, sufficiently in advance of trial, the government should be directed to (1)  designate the jail calls it seeks to offer; (2) enumerate all redactions it proposes that will ensure that the jury will not learn that the defendants' are incarcerated; and (3) confer with the defense about designating portions of recordings that may be offered by the defense under the Rule of Completeness, Fed. R. Evid. 106.

**DISCUSSION**

I.   **The Government Discloses neither the Particular Co-conspirator Statements It Seeks to Offer nor the Foundation for Their Admission**

According to the government, co-conspirator statements and statements against penal interest will form "much of the government's evidence." (Gov't Br. at 7). But, even after twenty years of interviewing witnesses, the government gives the Court *no* basis on which to rule on those statements, asking the Court, instead, to rule on their admissibility on the fly. The government's claim that co-conspirator statements will form "much" of its evidence, demonstrates clearly that it could articulate the substance of such evidence if it chose to. Its failure to do so is gamesmanship. Clearly, the government has made a calculated decision to intentionally deprive the defense of witness statements in an effort to ambush these defendants. Such a tactic threatens the defendants' due process right to a fair trial and will cause protracted delays in the trial. To avoid wasting the jury's time with sidebars or conferences outside of the jury's presence, the Court should require the government to disclose all such statements immediately. *Cf.* Fed. R. Evid. 611(a) advisory committee's note ("The ultimate responsibility for the effective working of the adversary system rests with the judge. . . . Item (2) is addressed to avoidance of needless consumption of time, a matter of daily concern in the disposition of cases. A companion piece is found in the discretion vested in the judge to exclude evidence as a waste of time in Rule 403(b).").

II.  **The Government Seeks to Offer Impermissible Reputation Evidence and Does Not Comply with the Disclosure Requirements of Rule 404(b)**

A.   Legal Principles

The Federal Rules of Evidence prohibit the use of "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Similarly, "[e]vidence of any other crime, wrong, or

act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence may be admissible if offered for a proper purpose. Fed. R. Evid. 404(b)(2). If the government seeks to offer "other act" evidence, it must first "provide reasonable notice of . . . evidence [of any other crime, wrong, or act] that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it" and "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(A), (B).

"[W]here it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004). In order to be admissible under Rule 404(b), "evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial." *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002).

"Other act evidence serves a proper purpose so long as it is not offered to show the defendant's propensity to commit the offense." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011). But "district courts should not presume that such evidence is relevant or admissible." *Id.* at 56.

"To satisfy the relevance inquiry, the evidence must be sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the state of mind inference advocated by the proponent of the evidence." *Id.* at 57 (cleaned up) (quoting *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987)); *see also id.* ("The court abuses its discretion if the evidence is not sufficiently similar to the charged conduct or if the chain of inferences necessary to connect the evidence with the ultimate fact to be proved is unduly long." (quoting Peterson, 808 F.2d at

974)); *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) ("[T]he probative value of the proffered evidence depends largely on whether or not there is a close parallel between the crime charged and the acts shown." (cleaned up) (quoting *United States v. Corey*, 566 F.2d at 431.

Evidence of other acts should not be admitted unless the district court has "carefully conducted" the Rule 403 balancing test. *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009); *see also United States v. Salameh,* 152 F.3d 88, 110 (2d Cir.1998) ("To avoid acting arbitrarily, the district court must make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value."); *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (where there is a risk of prejudice, "Rule 403 requires the trial court to make a conscientious assessment of whether the probative value of the evidence on a disputed issue in the case is substantially outweighed by the prejudicial tendency of the evidence to have some other adverse effect upon the defendant").

Rule 403 of the Federal Rules of Evidence provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A court's evidentiary rulings under Rule 403 should be informed "not only by assessing an evidentiary item's twin tendencies [for probative value and prejudicial risk], but by placing the result of that assessment alongside similar assessments of evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184-85 (1997); *see also Curley*, 639 F.3d at 57 ("The district court abuses its discretion when it admits 'other act' evidence with a high possibility of jury misuse but with only slightly more probative value than other evidence on the same issue.").

B.  General Reputation Evidence Is Patently Inadmissible

The government proposes offering evidence that Mr. Washington was "*feared* in Hollis,

- 4 -

Queens[,] . . . was *known* for possessing firearms, committing armed robberies and engaging in narcotics trafficking, often as an enforcer or security for traffickers" and was respected by younger criminals in the neighborhood because of "his *reputation*." (Gov't Br. at 8 (emphasis added)). Similarly, the government seeks to offer the testimony of Witness 6, who has "expressed a generalized fear of Washington due to his reputation for violence." (*Id.* at 26). These opinions are all impermissible reputation evidence.

As the Advisory Committee noted, character evidence has no place in a criminal trial with few limited exceptions, none of which include the use proposed by the government here. Fed. R. Evid. 404(a) advisory committee's note. Indeed, if there is a generalized license for the use of character traits at trial it is the other way around: "the so-called 'mercy rule' permits a criminal defendant [not the government] to introduce evidence of pertinent character traits of the defendant and the victim." Fed. R. Evid. 404(a) advisory committee's note to 2006 amendment. "[T]hat is because the accused, whose liberty is at stake, may need 'a counterweight against the strong investigative and prosecutorial resources of the government.'" *Id.* (quoting C. Mueller & L. Kirkpatrick, *Evidence: Practice Under the Rules*, pp. 264–5 (2d ed. 1999)). [1]

The government has failed to articulate a permitted purpose for the "other acts" evidence. *See* Fed. R. Evid. 404(b)(3)(B). The government's proffered purpose for the evidence is to show

---

[1] Testimony that Washington and Jordan were not "cool" after Mizell's murder based on Witness 2's observations of the two of them together, (Gov't Br. at 9), although not reputation or character evidence, is inadmissible for different reasons. It lacks a proper foundation as it is outside of the witness's personal knowledge. The government seeks to offer Witness 2's conclusions as to what was privately occurring in the minds of other people, which cannot be "perceived by the senses." *See* Fed. R. Evid. 602 advisory committee's note. For that reason, the testimony is also irrelevant, lay-opinion evidence. *See* Fed. R. Evid. 701 advisory committee's note to 2000 amendment (prototypical examples of permissible lay opinions are testimony about "the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences").

that Mr. Washington had a violent reputation, which is patently improper. It is difficult to imagine a proper purpose for evidence that would show that Mr. Washington was generally feared, known as an enforcer, had a reputation for violence and respected for that reputation, or generally known to possess firearms. Relatedly, this evidence is also unfairly prejudicial in that it has the distinct capacity "to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180.

The government's proffer is also far too vague, providing the Court with insufficient information upon which to base any ruling. Rule 404(b) imposes a duty on the government to "provide reasonable notice of . . . evidence [of any other crime, wrong, or act] that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A). Prior to 2020, some courts had misinterpreted the notice requirement to allow the government to satisfy it by making general disclosures. In 2020, the notice provision of Rule 404(b) was amended to clarify that vague disclosures do not fulfill the government's obligation. The Advisory Committee advises:

> The prosecution must not only identify the evidence that it intends to offer pursuant to the rule but also articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose. The earlier requirement that the prosecution provide notice of only the "general nature" of the evidence was understood by some courts to permit the government to satisfy the notice obligation without describing the specific act that the evidence would tend to prove, and without explaining the relevance of the evidence for a non-propensity purpose. This amendment makes clear what notice is required.

Fed. R. Evid. 404(b) advisory committee's note to 2020 amendment.

The government's proffer falls far short of the required reasonable notice. For example, the government does not specify when and where the alleged armed robberies or narcotics trafficking occurred or any accomplices. The only arguable specifics the government provided was that Mr. Washington allegedly served as an enforcer or security for traffickers, but again the

government fails to cite specific acts it will seek to prove. "Without a more detailed proffer, it is impossible for the Court to determine whether the evidence of other [acts or crimes] is relevant." *United States v. Townsend*, No. S1 06 CR. 34 (JFK), 2007 WL 1288597, at *6 (S.D.N.Y. May 1, 2007), *aff'd sub nom. United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009). And, of course, without adequate specificity, the defense is robbed of its ability to investigate any such allegation or prepare to address the same at trial.

C. The Government's Disclosure as to the Alleged August 9, 2002, Armed Robbery Fails to <u>Articulate a Permissible, Non-Propensity Purpose and Is, Thus, Unreviewable</u>

The government seeks to offer evidence relating to Mr. Washington's alleged involvement in an armed robbery on August 9, 2002, in the vicinity of 204-19 Hollis Avenue in Queens. Yet, the government fails to comply with the rule's requirement to explain the relevance of the evidence for a non-propensity purpose. *See* Fed. R. Evid. 404(b)(3)(B). One purpose for that requirement is to save the defense from wasting time and resources guessing the government's intended purpose and arguing against itself. Without more, there is insufficient information for the defense to discern whether there is any similarity between the charged conduct and the alleged robbery. The government has alleged from that inception of this case (and, indeed, as far back as 2007) that Mr. Washington participated in the murder of Mizell but not as the shooter. And, critically, according to its October 20, 2020, *Brady* disclosure, the government has done a ballistics comparison between the shell casings recovered from the scene of Mizell's murder and from the August 9 alleged robbery and has concluded that they do not match. (Bates 000623). If the government is insinuating that Mr. Washington had a propensity to favor 40 caliber firearms, that purpose is patently impermissible and evidence as to this act is unfairly prejudicial. That said, we reiterate that it is impossible to respond to the government's motion as to this act without the government's proffer of its permissible purpose.

- 7 -

III.    **The Government's Motion to Offer Mr. Washington's Jail Calls Should Be Denied in Part and the Government Should Be Directed to Confer with the Defense to Designate Portions of the Calls for the Sake of Completeness**

A.    The Government Should Not Be Permitted to Mislead the Jury by Offering Incomplete, <u>Out-of-Context Recordings</u>

The government seeks to offer recorded prison calls and at the same time preclude Mr. Washington, on hearsay grounds, from offering recordings or portions of recordings even if they would supply the jury with necessary context. (Gov't Br. at 34). The government's approach has been explicitly rejected by the Second Circuit:

> With respect to the government's suggestion that evidence proffered under the rule of completeness may be excluded whenever not independently admissible due to the hearsay rule, this is simply not correct. . . . [W]hen the omitted portion of a statement is *properly* introduced to correct a misleading impression or place in context that portion already admitted, it is *for this very reason* admissible for a valid, *nonhearsay* purpose: to explain and ensure the fair understanding of the evidence that has already been introduced. As we have said before, "even though a statement may be hearsay," it nevertheless "must be placed in evidence if necessary to explain the admitted portion [of this statement], to place the admitted portion in context, to avoid misleading the jury, or to ensure the fair and impartial understanding of the admitted portion." Indeed, the doctrine "can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously."

*United States v. Williams*, 930 F.3d 44, 60 (2d Cir. 2019) (internal citation omitted); *see* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of *any other part — or any other writing or recorded statement* — that in fairness ought to be considered at the same time." (emphasis added)).[2]

---

[2] Rule 611(a)(1) also lends support to notion that the Court should actively ensure that the jury is presented a complete picture. That rule states: "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to make those procedures effective for determining the truth." Fed. R. Evid. 611(a)(1); *see United States v. Castro*, 813 F.2d 571, 575–76 (2d Cir. 1987); *United States v. Green*, 694 F. Supp. 107, 110 (E.D. Pa. 1988), aff'd, 875 F.2d 312 (3d Cir. 1989).

The defense proposes a collaborative approach to cross-designating recordings. In the first instance, the government should be directed to designate which recordings or portions of recordings it seeks to offer. Counsel for Mr. Washington and Mr. Jordan will then designate recordings or portions of recordings, if any, that "in fairness ought to be considered at the same time." "If counsel are unable to agree on the contents of the conversations to be introduced into evidence, they may raise any issues with the Court before trial." *United States v. Abu-Jihaad*, No. 3:07CR57 (MRK), 2008 WL 282368, at *3 (D. Conn. Jan. 31, 2008).

B. Certain, Specific Admissions or Alleged Admissions Designated by the Government Are Irrelevant or Lack Foundation

The government seeks to offer threats that Mr. Washington allegedly made to Witness 1. In particular, the government cites two categories of "threats": (1) a fifteen-year-old letter addressed to Witness 1 reading "Happy Birthday. I Never Stopped Loving You. Strength and Honor" and (2) more recent contacts over the telephone and Facebook. (Gov't Br. at 27).

As to the "Happy Birthday" letter, it is unclear how the message is meant as a threat. Witness 1's impression of it as a threat is irrelevant and would be based on speculation. The government provides no further corroboration for Witness 1's supposed "feeling" that the letter was intended to threaten or intimidate Witness 1. The letter is also irrelevant because, in the event that the government proved that the "Happy Birthday" letter was a threat, it related to the allegations made against Mr. Washington in the 2005 indictment and not the current charges. The letter would thus be irrelevant on that basis as well.

As to the recent contacts that the government attributes to Mr. Washington, the government has not proffered any connection between Mr. Washington and the alleged, attempted contacts such as the "friend requests" on Facebook or the calls from third parties. Counsel was unable to locate the portions of the December 1, 2020, and August 31, 2021, jail

calls in which Mr. Washington instructed a third party to contact Witness 1 and discussed attempts to contact Witness 1. The Court presently has no basis upon which to rule.

With respect to the message containing a photograph of two wolves eating a bloody animal carcass with the message "Hey its Tinard I'd like to talk," there is no foundation to connect Mr. Washington with that communication. *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). "[A] mere assertion of identity by a person . . . is not in itself sufficient to authenticate that person's identity." *United States v. Dhinsa*, 243 F.3d 635, 658-59 (2d Cir. 2001) (in the context of a recorded telephone call).

In *United States v. Vayner*, 769 F.3d 125, 131-35 (2d Cir. 2014), the court rejected the notion that the necessary foundation for the admission of social media material can be found within the social media material itself. In that case, the court, on review for harmless error, reversed a conviction based on a finding that the district judge had erroneously introduced a profile page from the Russian equivalent of Facebook. The basis for that finding was that the government had not offered sufficient evidence that the defendant had created or controlled the profile. *E.g.*, *Vayner*, 769 F.3d at 132. Even though accurate information like the defendant's photograph, name and details about his life appeared on the profile page, "there was no evidence that Zhyltsou himself had created the page or was responsible for its contents." *Id.*

*Vayner* stands for the proposition that, in general, admissibility of social media posts and messages depends on the existence of evidence outside the posts themselves that authenticate whether the defendant was in fact the author or the creator of the posts at issue. That message was conveyed, for example, by the court's criticism that "[o]ther than the page itself, . . . no

evidence in the record suggested" the defendant's ownership of any profile, let alone the profile at issue and that there was no "evidence that identity verification [wa]s necessary to create such a page." *Id.* at 132-33. Without that type of evidence, attribution of social media posts or messages to a specific person is mere speculation. *Id.* at 133.

As with the Russian, social-media site at issue in *Vayner*, anyone can create a Facebook profile on behalf of anyone else, in essence operating in the virtual world in disguise. The government proffers no evidence tending to show that Mr. Washington operated, created, authorized or even knew about the message sent to Witness 1. As *Vayner* and *Dhinsa* unequivocally establish, attribution to Mr. Washington cannot be based on the mere assertion of the identity of the message's author as Mr. Washington. Moreover, the government proffers no evidence that Mr. Washington's family member created or operated the profile from which the message was sent. Even with evidence establishing  a connection to the family member, however, under *Vayner*, the government must still establish Mr. Washington's authorship (direct or indirect) of the message to Witness 1.

C.  The Government Should Be Prevented from Disclosing to the Jury that Mr. Washington Is Incarcerated

The government's intended use of jail calls presents a problem of constitutional dimensions. "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). In *Williams*, the Supreme Court observed that the wearing of prison clothing during trial was a "constant reminder of the accused's condition" and "a continuing influence throughout the trial" that presented an "unacceptable risk" of "impermissible factors coming into play" and corrupting a juror's judgment. *Id.* at 504-05. The Court cautioned that "[t]o implement the presumption [of innocence], courts must be alert to factors that may

- 11 -

undermine the fairness of the factfinding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Id.* at 503.

Playing any portion of the jail recordings that makes it obvious to the jury that Mr. Washington and Mr. Jordan are incarcerated would be the audio version of prison garb. Revealing that Mr. Washington and Mr. Jordan are behind bars threatens to rob Mr. Washington and Mr. Jordan of the presumption of innocence. Justice Brennan noted, in the context of in-court, prison garb, the corrupting influence the accused's incarceration invites:

> Jurors may speculate that the accused's pretrial incarceration, although often the result of his inability to raise bail, is explained by the fact he poses a danger to the community or has a prior criminal record; a significant danger is thus created of corruption of the factfinding process through mere suspicion. The prejudice may only be subtle and jurors may not even be conscious of its deadly impact, but in a system in which every person is presumed innocent until proved guilty beyond a reasonable doubt, the Due Process Clause forbids toleration of the risk.

*Williams*, 425 U.S. at 518 (Brennan, J., dissenting).

The unfair prejudice that the government invites by way of revealing that Mr. Washington and Mr. Jordan are incarcerated deals a near death blow to the presumption of innocence. The cases that allow evidence of a defendant's incarceration emphasize the brevity and unimportance of the reference. *E.g.*, *United States v. Deandrade*, 600 F.3d 115, 118-19 (2d Cir. 2010) (collecting cases for this proposition); *People v. Jenkins*, 670 N.E.2d 441 (N.Y. 1996); *United States v. Villabona-Garnica*, 63 F.3d 1051, 1058 (11th Cir. 1995) (collecting cases). The evidence of incarceration that the government proffers here is so pervasive that it, like the wearing of prison clothing, would be a "constant reminder" that the Court has deemed the defendants dangerous and would act as a virtual invitation to the jury to conclude that a further period of incarceration would not affect them greatly. Nothing could be further from the truth. The presumption of innocence is sacrosanct, and any dilution of it would amount to a denial of

- 12 -

these men's due process rights under our Constitution. As Mr. Jordan notes in the portion of his opposition brief discussing *United States v. Williams*, 585 F.3d 703 (2d Cir. 2009), any limiting instruction will be ineffective in the face of such unfair prejudice.[3] The better course is to direct the government to designate as soon as possible any portion of the jail calls that may threaten to reveal to the jury that the defendants are in jail and to propose redactions to those recordings.

In addition to the damage that the jail recordings would do to the presumption of innocence, a number of the specific statements the government seeks to offer are irrelevant or unfairly prejudicial. Speculation about potential witnesses or cooperators (*see* Gov't Br. at 27) has little to no probative value. That type of speculation by the accused is equally likely to be idle chatter or involvement with one's defense as consciousness of guilt.

The government does not proffer the relevance of the fact that Washington and Jordan were communicating in jail, especially because their acquaintance is not expected to be questioned at trial. The evidence about Washington and Jordan sending "kites" to each other has the added distinction of employing a term unmistakably associated with incarceration and should thus also be excluded pursuant to *Estelle v. Williams* for the reasons discussed above.

## IV.  The Court Should Decline the Government's Invitation to Abridge Mr. Washington's Due Process Right to Present a Complete Defense

The government seeks to preclude Mr. Washington and Mr. Jordan from advancing a defense that includes the proposition that someone other than either or both of them murdered Mr. Mizell. In an incredible display of its belief in its own infallibility, the government's adherence to the notion that the defendants and their two alleged co-conspirators are the only

---

[3] The constitutional right not to be exposed to the jury as a dangerous detainee under armed guard is clearly the most important basis on which to deny the government's motion. But it suffices to note that evidence of the defendants' incarceration also runs afoul of Rule 403 in that it has no probative value of any kind and is unfairly prejudicial.

possible perpetrators cannot be shaken. (*See* Gov't Br. at 43-44 ) ("[T]he defendants had the motive and opportunity to commit the murder and have been identified by witnesses as the gunmen.")). The government's position is reminiscent of the infamous colloquy in Alice In Wonderland. There, the King insists that the jury be permitted to consider the verdict. The Queen of Hearts' response remains as chilling today as it did when Lewis Carroll wrote the words, "No, No – sentence first – verdict afterwards." The government's position is that the defense "*cannot* proffer any evidence that would create a sufficient nexus between any other particular individual" and the murder of Mizell. (*Id.* at 44 (emphasis added)). The notion that the government's determination of the defendants' guilt could not possibly have been made in error – without the benefit of a trial – is patently ridiculous and would render the Sixth Amendment a nullity. This unprecedented approach must be rejected.

In order to vet the defendants' possible alternative perpetrator(s), the government proposes *a pretrial, evidentiary hearing*. The government cites no authority that would authorize the Court to take hold such an unprecedented hearing. Although it may be fair jury argument to attempt to discredit, even ridicule, the defense's alternative perpetrator arguments, it is, to be sure, a question that can and should be determined only by the trial jury. Essentially, what the government is proposing is a pretrial bench trial.

Among them, defense counsel have over a century of experience trying criminal cases in the Eastern and Southern Districts of New York and can unanimously represent to this Court that no such vetting process has ever been contemplated – no less attempted – outside of the context of a duress defense. *See United States v. Bifield*, 702 F.2d 342, 346-47 (2d Cir. 1983). The only other occasion on which a court in this circuit has even considered holding such a hearing, (1) the defense was advice of counsel and (2) the Court contemplated holding it "after the earlier

of the unequivocal assertion of the privilege by defense or the close of the government's case."
*United States v. Ray*, No. 20-CR-110 (LJL), 2021 WL 5493839, at *7 (S.D.N.Y. Nov. 22, 2021).
*Bifield* and *Ray* are factually inapposite and therefore easily distinguishable. Accordingly, the
suggestion by the government must roundly be denied.

      Should the Court entertain this approach, the government should likewise be directed to
make its trial witnesses available at such a pretrial hearing for the Court to vet the admissibility
of the government's theory that Mr. Washington and Mr. Jordan, acting in concert, killed Mr.
Mizell. As the government argues, "[l]eaving the issue open may later result in a lengthy 'trial
within a trial' to determine whether the [government] can demonstrate the required nexus."
(Gov't Br. at 44). If, as it proposes, judicial economy trumps a trial by jury – what's good for the
goose is good for the gander. The logical extension of the government's proposal is to have a
pretrial, bench trial, prior to the jury trial. What the government proposes will waste considerably
more time and all but obliterate the defendants' right to a fair trial.

      To the reasons advanced by counsel for Mr. Jordan in his opposition brief Mr.
Washington adds that the right of an accused to present a complete defense is constitutional in
scope. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in
the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution
guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"
*Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479,
485 (1984)); *see also Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas*,
388 U.S. 14, 18 (1967)) ("The right of the defendant to present evidence 'stands on no lesser
footing than the other Sixth Amendment rights that we have previously held applicable to the
States.'"); *United States v. Nixon*, 418 U. S. 683, 709 (1974) ("The ends of criminal justice

would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence."). *See generally* Robert N. Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials*, 9 Ind. L. Rev. 711 (1976). Mr. Washington looks forward to a trial at which all parties are given a fair opportunity to present the facts available and favorable to them. In this case, a complete defense centers around reasonable doubt, which can permissibly be created by the possibility of perpetrators other than Mr. Washington.

V.   **Mr. Washington Joins in the Arguments Made by Mr. Jordan in Mr. Jordan's Opposition to the Government's Motions** *in Limine.*

Dated: Brooklyn, New York
         November 9, 2022

                                        Respectfully submitted,

                                        *Susan G. Kellman*
                                        _____
                                        Susan G. Kellman
                                        Jacqueline E. Cistaro, Of Counsel
                                        25 Eighth Avenue
                                        Brooklyn, New York 11217
                                        (718) 783-8200
                                        sgk@kellmanesq.com

                                        _/s/ EMS_____
                                        Ezra Spilke
                                        Law Offices of Ezra Spilke, PLLC
                                        1825 Foster Ave., Ste. 1K
                                        Brooklyn, New York 11230
                                        (718) 783-3682
                                        ezra@spilkelaw.com

TO:   Breon Peace, Esq.
       United States Attorney
       Eastern District of New York
Attn:  Artie McConnell, Mark E. Misorek
       Assistant United States Attorneys