1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          : 20-CR-00305(LDH)
                                   :
                                   :
        -against-                  : United States Courthouse
                                   : Brooklyn, New York
                                   :
                                   : Friday, September 16, 2022
JORDAN, et al.,                    : 9:00 a.m.
                                   :
          Defendants.              :
                                   :

- - - - - - - - - - - - - - - - - X


        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE LaSHANN DeARCY HALL
                UNITED STATES DISTRICT JUDGE



                    A P P E A R A N C E S:

For the Government:  BREON S. PEACE, ESQ.
                     United States Attorney
                     Eastern District of New York
                     271 Cadman Plaza East
                     Brooklyn, New York 11201
                  BY:  ARTIE McCONNELL, ESQ.
                       Assistant United States Attorney

                     United States Attorney
                     Eastern District of New York
                     610 Federal Plaza
                     Central Islip, New York 11722
                  BY:  MARK E. MISOREK, ESQ.

2

1    For Defendant 1:     MICHAEL O. HUESTON
                        16 Court Street
2                       35th Floor
                       Brooklyn, New York 11241
3                       BY:  MICHAEL O. HUESTON, ESQ.

4    For Defendant 2:     SUSAN G. KELLMAN ESQ.
                       25 Eighth Avenue
5                       Brooklyn, New York 11217
                       BY:  SUSAN GAIL KELLMAN, ESQ.

6

7

8

9

10

11

12    Court Reporter:  Stacy A. Mace, RMR, CRR, RPR, CCR
                   Official Court Reporter
                   E-mail:  SMaceRPR@gmail.com
13   Proceedings recorded by computerized stenography.  Transcript
    produced by Computer-aided Transcription.

14

15

16

17

18

19

20

21

22

23

24

25

```
                        Proceedings                        3
```

1                      (In open court.)

2             THE COURTROOM DEPUTY:  All rise.

3             (Judge LaSHANN DeARCY HALL entered the courtroom.)

4             THE COURTROOM DEPUTY:  Criminal cause for a status

5    conference in the United States versus Jordan, et al., case

6    number 20-CR-305.

7             Counsel, please state your appearances for the

8    record.

9             MR. McCONNELL:  Your Honor, good morning.

10            Artie McConnell and Mark Misorek for the United

11   States.

12            THE COURT:  Good morning.

13            MR. HUESTON:  Good morning, Your Honor.

14            Michael Hueston for Karl Jordan.  Mr. Jordan is

15   here.

16            (Defendant entered courtroom.)

17            THE COURT:  Good morning.

18            MS. KELLMAN:  Good morning, Your Honor.

19            Susan Kellman and my client is present on the

20   monitor.

21            THE COURT:  All right, good morning.

22            You all can be seated.

23            All right, so before we start with dealing with the

24   substance of this proceeding, Ms. Kellman, as you noted, your

25   client is present on the monitor, which I allowed based on the

Proceedings                                               4

1   representations in your letter.  But, quite candidly, I am not
2   altogether clear why your client is on the monitor and not
3   present, and whether this is an ongoing issue that I am going
4   to need to explore more fully because, as you might imagine,
5   it shouldn't be the expectation that this is how we're going
6   to proceed in the normal course.
7            MS. KELLMAN:  Of course.
8            THE COURT:  So, if you want to speak to that, I'll
9   hear from you.  I am just trying to get a sense of, and I know
10  this sounds crazy, but is there a way, Jordan, I don't want to
11  look at myself this whole time.  Can we set that screen off?
12  Just get rid of it, minimize it, just minimize the whole
13  thing.  It's a little distracting.  Thank you.
14           Ms. Kellman, please.  Thank you.
15           MS. KELLMAN:  Yes, Your Honor.
16           I would say, Your Honor might have a better idea of
17  what's happening if we could really see my client.  But he has
18  lost, I would say, 40, 50 pounds.  His waist to me looks like
19  it's a 27.
20           THE COURT:  Has he sought and received medical
21  attention?
22           MS. KELLMAN:  Sought, yes.
23           THE COURT:  He has not received any medical
24  attention?
25           MS. KELLMAN:  That's what he says.  Now, he

1  explained to me, Judge, that the last time we were here Your

2  Honor said that you were going to reach out to the facility.

3  And he thinks that as a result of your reaching out, he began

4  to get medical care, but --

5         THE COURT:  Okay, that's a good thing.

6         MS. KELLMAN:  Yes, that's a good thing.

7         But everybody seemed to agree, at least so he's told

8  me, they won't talk to me about it, but everybody seemed to

9  agree that he needed an MRI.

10         THE COURT:  Okay.

11         MS. KELLMAN:  And he says they've scheduled it

12 several times, but canceled it every time.

13         THE COURT:  All right.

14         MS. KELLMAN:  And just to see him physically, he has

15 so much difficulty walking.

16         THE COURT:  Okay, well, clearly, we need to get to

17 the bottom of this.  And what my preference would be is to

18 have court intervention in advance, so that if there was a

19 problem with the MRIs, because the full import of any order or

20 any directive from me is that he actually receive all of the

21 medical attention that he needs, not simply an assessment of

22 the medical attention.

23         So, I am going to issue another order and I am going

24 to expect that the Government is going to serve as a liaison

25 so that I can get whatever information I need.  Principally,

Proceedings                                                6

1    and first and foremost, he needs to get medical attention.  If

2    an MRI is needed, we need to figure out what's wrong and make

3    sure that he gets the treatment that he needs.  And then once

4    that happens, we can have, not that this is disruptive, but

5    it's not my preference, we can then proceed --

6               MS. KELLMAN:  Of course, Judge, it's not my

7    preference either.

8               THE COURT:  Right.

9               MS. KELLMAN:  I'd much rather have my client sitting

10   next to me.

11              THE COURT:  So, prepare an order for me.

12              MS. KELLMAN:  I will do that.

13              THE COURT:  For me to sign.  I started to say to

14   counsel, because there are a number of orders like this that I

15   have had to issue, unfortunately, of late, as you can imagine.

16              MS. KELLMAN:  I drafted three in the last month,

17   Judge.

18              THE COURT:  Right.  Make sure you keep any hyperbole

19   out.  My order is not a basis for a 1983 claim.

20              MS. KELLMAN:  I understand, Judge.

21              THE COURT:  All right, thank you.

22              All right, now let's move on to the matters at hand.

23              As the parties are aware, there are pending motions

24   before this Court.  I had promised you all an opinion with

25   respect to the motion to dismiss and motion to sever, which I

                            Sidebar                        7

1  have not posted to the docket.

2           The opinion is drafted.  I am going to tell you now

3  the conclusions that the Court has drawn.  Then I am going to

4  ask counsel to approach for a sidebar.

5           Fair enough?

6           MS. KELLMAN:  Yes, Judge.

7           THE COURT:  With respect to the motion to dismiss,

8  it is denied.

9           With respect to the motion to sever, Counts One and

10 Two from Counts Three through Eleven, it is granted.

11          The motion to sever defendants as to Count One and

12 Two is denied.

13          Counsel, approach.

14          (Sidebar held.)

15          (The following sidebar took place outside the

16 hearing of the public.)

17          THE COURT:  So, the reason why this is has not been

18 posted to the docket is because there is a section of the

19 opinion which I have highlighted.

20          If you all could turn to pages 6 and 7 of the

21 opinion.

22          So, you'll see pages 6 and 7 address specifically

23 certain issues concerning certain witnesses in this case.

24 There was some discussion in the -- one of the defendant's

25 submissions that talked a little bit more generally about

Sidebar                                                                8

1  these witnesses, and my question is before I post it, if you

2  all feel it's necessary for this section to be redacted.

3          MR. McCONNELL:  Yes.

4          MR. MISOREK:  Yes.

5          MR. McCONNELL:  We feel very strongly about that,

6  Judge.  Thank you for allowing us to weigh in.

7          THE COURT:  Yes.

8          So, take a look at this.  I think these are kind of

9  proposed redactions.  In essence, it's a lot, but I need you

10 guys to look at pages 6 and 7, make a decision, let me know if

11 you think those are the appropriate redactions before this is

12 posted.

13          (Pause.)

14         MR. McCONNELL:  It's really the witness names that

15 we're most concerned about, and I think you've got it covered.

16         THE COURT:  Okay.

17         I don't see any others, do you?

18         MR. MISOREK:  I think that's good.  I think that's

19 good.

20         MR. McCONNELL:  Yes.

21         THE COURT:  All right.

22         MR. MISOREK:  Thank you.

23         MS. KELLMAN:  Thanks.

24         THE COURT:  All right, you all can have that.

25         MR. HUESTON:  Thanks, Judge.

```
                            Sidebar                    9
1          MS. KELLMAN:  Thank you, Judge.
2          THE COURT:  But I trust that you all will handle
3    that as is appropriate, so that the information is not
4    publicly disseminated, defeating the --
5          MS. KELLMAN:  The purpose.
6          THE COURT:  Thank you.
7          MS. KELLMAN:  No worries, Judge.
8          (Sidebar concluded.)
9          (In open court.)
10         THE COURT:  All right, so expect the Court's opinion
11   to be posted to the docket with respect to the motion to
12   dismiss and the motion to sever today.
13         All right, in addition to the motion to dismiss and
14   the motion to sever, the Court also had under consideration
15   the motions to suppress made by Mr. Jordan.  Specifically,
16   Mr. Jordan sought to suppress data collected from two cellular
17   telephones found on his person, a black LG Model XM320TA and a
18   white iPhone, and the motion is made pursuant to the Fourth
19   Amendment, as well as Mr. Jordan seeks to suppress all post-
20   arrest statements pursuant to the Fifth Amendment.
21         I am going to address each of these arguments and
22   make a determination on the motion to suppress from the bench.
23         Now, the Fourth Amendment protects persons, houses,
24   papers, and effects against unreasonable searches and
25   seizures.  The Government can conduct, however, a search upon
```

Sidebar                                    10

1  probable cause supported by oath or affirmation.  Now,

2  affidavits establishing probable cause in support of a warrant

3  for search enjoy what is called a presumption of validity.

4  Now, upon a motion challenging a warrant for lack of probable

5  cause, the reviewing court must give substantial deference to

6  the magistrate's probable cause determination.

7          Now, critically, the Supreme Court has long held

8  that after-the-fact scrutiny by courts of the sufficiency of

9  an affidavit should not take the form of de novo review.  The

10 defendant seeking an evidentiary hearing to challenge a search

11 warrant affidavit must make a substantial preliminary showing

12 that, one, the claimed inaccuracies or omissions are the

13 result of the affiant's deliberate falsehood or reckless

14 disregard for the truth; and, two, the alleged falsehoods or

15 omissions were necessary to the judge's probable cause

16 finding.

17         The challenger's attack must be more than conclusory

18 and must be supported by more than a mere desire to

19 cross-examine.  Rather, it must be accompanied by an offer of

20 proof, such as affidavits or sworn or otherwise reliable

21 statements of witnesses.  The absence of such statements must

22 be satisfactorily explained.

23         Now, in this case Mr. Jordan argues that the affiant

24 supporting the search warrant displayed a reckless disregard

25 for the truth, which requires him to present credible and

Sidebar                                                            11

1   probative evidence that the purported omission was designed to

2   mislead or was made in reckless disregard of whether it would

3   mislead.

4          Now, Mr. Jordan must demonstrate that the affiant

5   entertained serious doubts as to the truth of his or her

6   allegations.  Now, proving reckless disregard for the truth

7   based on an omission, again as Jordan seeks to do here, is

8   less likely to justify suppression than claims of

9   intentionally or recklessly false assertions.  And that is

10  because an affiant cannot be expected to include in an

11  affidavit every piece of information gathered in the course of

12  an investigation.

13         An omission is material only if the omitted facts

14  cast doubt on the existence of probable cause, which is

15  determined by considering the omitted information and the

16  information in the affidavit as a whole.

17         The ultimate inquiry is whether after correcting

18  material omissions there remains a residue of independent and

19  lawful information sufficient to support a finding of probable

20  cause or necessity.

21         Now, against this backdrop Mr. Jordan argues that

22  the cell phone data in this case should be expressed or the

23  Court should hold a *Franks* hearing because the affiant knew a

24  witness relied upon for probable cause was not reliable, but

25  neglected to include any references to the witness's

SAM      OCR      RMR      CRR      RPR

Sidebar                                    12

1    credibility in the warrant affidavits.  Jordan contends that

2    the affiant did not offer any information to the magistrate

3    judge to corroborate the witness's testimony, and had the

4    affiant included information implicating the witness's lack of

5    credibility, including what led to the witness's change in the

6    witness's statement during the course of the interview, the

7    portion of the affidavits referencing the witness's statements

8    would fail.

9        The Court finds that Jordan has failed to make a

10   substantial preliminary showing that the affiant in this case

11   omitted information material to the probable cause

12   determination or that the affiant entertained serious doubts

13   about the accuracy of the affidavit in light of the alleged

14   omission.  In fact, I find that Mr. Jordan makes no showing at

15   all.  His application to this Court was completely unsupported

16   and it does not offer any sort of proffer.

17       I will note that in nearly every case that

18   Mr. Jordan cited to the Court, the defendant, in fact,

19   presented evidence other than the warrant affidavits to

20   support the factual allegations.  And in the one case where

21   the defendant did not provide evidence to the Court in those

22   cased cited by Mr. Jordan, the Government had conceded the

23   falsity of the information at issue.

24       So, here what I have is simply conclusions that are

25   made by Mr. Jordan concerning, one, the credibility of the

SAM      OCR      RMR      CRR      RPR

Sidebar                                         13

1   witness; and, as well, the affiant's purported belief that the

2   witness lacked credibility.

3          Rather than identify with specificity what the

4   affiant omitted and explain how it was material, Mr. Jordan

5   asserts instead that the affiant omitted what actually led the

6   witness to change their statement as to the timing of the

7   narcotics activity.  He provides no legal authority

8   demonstrating that the information is material, such that --

9   or per se material, such that in all circumstances it must be

10  included in a warrant affidavit.

11         Now, certainly Mr. Jordan contends that recklessness

12  may be inferred when omitted information was clearly critical

13  to assessing the legality of a search, but he fails to

14  establish the circumstances that led the witness to changing

15  their story is clearly critical.  Mr. Jordan claims that the

16  affiant failed to offer information to corroborate what the

17  witness said about Jordan's involvement in the sale and

18  distribution of drugs through 2020, but he ignores that this

19  information is not required because the witness's voracity was

20  corroborated in material respects, such that the entire

21  account may be credited, including parts without

22  corroboration.

23         The affiant described the strong basis for the

24  witness's knowledge and how the affiant vetted and found

25  corroboration for that knowledge.

Sidebar                                                  14

1          Ultimately, in the absence of any evidence proffered

2     by Mr. Jordan in this case, he has failed to establish a

3     Fourth Amendment violation, or the need for a suppression

4     hearing.  Mr. Jordan's motion to suppress the cell phone data,

5     or in the alternative for the Court to hold a hearing, is

6     denied.

7          Turning to the post-arrest statements.  Mr. Jordan

8     seeks to suppress statements made after his arrest on

9     August 6th, 2020.  Now, statements made during a custodial

10    interrogation are inadmissible at trial unless the prosecution

11    can establish that the accused, in fact, knowingly and

12    voluntarily waived his or her *Miranda* rights when making the

13    statements.  Now a *Miranda* waiver is made knowingly and

14    intelligently when it is made with a full awareness of both

15    the nature of the right being abandoned and the consequences

16    of the decision to abandon it.

17         That is, the defendant must understand that he had

18    the right to remain silent and that anything he said could be

19    used as evidence against him.

20         Again, I am going to articulate what the right is,

21    that he understand that he had the right to remain silent and

22    that anything he said could be used as evidence against him.

23         Now, a *Miranda* waiver is made voluntarily when it is

24    the product of a free and deliberate choice, rather than

25    intimidation, coercion, or deception.

Sidebar                                                  15

1        Now, to establish deception, as Mr. Jordan attempts

2   to do here, defendant must produce clear and convincing

3   evidence that the agents affirmatively misled him as to the

4   true nature of their investigation.  That is, the agents must

5   have made clear they were engaged in a criminal inquiry and

6   cannot have otherwise made affirmative misrepresentations

7   concerning the purpose of that inquiry.

8        Of course, a valid waiver does not require that an

9   individual be informed of all information useful in making his

10  decision or all information that might affect his decision to

11  confess.  And that is citing Supreme Court decision, and it's

12  Colorado v. Spring, 479 U.S. 564.

13       Now, the Supreme Court has never read the

14  Constitution to require that the police supply a suspect with

15  a flow of information to help him calibrate his self-interest

16  in deciding whether to speak or stand by his rights, and a

17  suspect's awareness of all the possible subjects of

18  questioning in advance of interrogation is not relevant to

19  determining whether a suspect voluntarily, knowingly and

20  intelligently waived his Fifth Amendment privilege.

21       Here , Mr. Jordan argues that he didn't knowingly

22  and intelligently waive his *Miranda* rights because the ATF

23  agents who interviewed him did not tell him that he had been

24  charged with Mr. Mizell's murder prior to the waiver.  This

25  argument fails.  While knowledge of the charges might affect

1  the wisdom of a *Miranda* waiver, it could not affect

2  Mr. Jordan's understanding of his right to remain silent and

3  that anything he said could be used as evidence against him.

4  Indeed, the interview reflects this because as Mr. Jordan,

5  himself, notes, he ended the interview soon after the agents

6  advised him of those charges.

7         Moreover, the agents did not limit their *Miranda*

8  warning to Mr. Jordan's statements that they could only be

9  used against him in a trial concerning his drug charges.

10  Instead, the *Miranda* warnings that were given to Mr. Jordan

11  were rightfully unqualified.

12         Mr. Jordan answered the questions about Mr. Mizell's

13  murder and he was aware that his responses at the time could

14  be used against him, as well as the fact that he could remain

15  silent.

16         Mr. Jordan also argues in his reply that his waiver

17  was involuntary due to the agent's failure to advise him of

18  the murder charge, but he ignores that the agents were under

19  no obligation to affirmatively disclose the subject of the

20  interrogation.  He makes no showing that the ATF agents had a

21  legal or moral duty to speak or their silence was misleading.

22         Mr. Jordan makes a kind of passing assertion

23  concerning a Sixth Amendment entitlement to the knowledge of

24  all the charges prior to waiving his Fifth Amendment rights,

25  but he provides no legal authority to support his

1   interpretation of the law in that way with respect to the

2   Constitution.  And the Court is not aware of any authority

3   that might support Mr. Jordan's interpretation as it relates

4   to his Sixth Amendment assertion.

5            Mr. Jordan attempts to distinguish Colorado v.

6   Spring by arguing that the ATF agents there withheld a central

7   point of the agent's orchestrated interrogation and that the

8   information was, quote, central to guilt or innocence, but

9   this misunderstands the waiver inquiry.  The Supreme Court in

10  Colorado v. Spring focused not on whether the information

11  withheld was central to the interrogation or the defendant's

12  guilt or innocence, but rather on whether the agent's silence

13  as to the interrogation topics affected the defendant's

14  ability to understand his right to remain silent and whether

15  the conduct amounted to the defendant's will being overborne

16  or his capacity for self-determination impaired.  The Court

17  found neither.

18           The same is true in Moran v. Burbine, the case

19  relied upon in Spring that Jordan argues is distinguishable.

20  As in Spring, the Court's focus in Burbine was on whether the

21  defendant understood his rights and whether he voluntarily

22  waived them.

23           As in Spring, the Court in Burbine acknowledged that

24  the information withheld might have affected the defendant's

25  decision to confess, but held that the Constitution does not

Sidebar                                                  18

1   require that the police supply a suspect with a flow of

2   information, again, to help him calibrate his self-interest in

3   deciding whether to speak or stand by his rights.

4         As long as Mr. Jordan understood that he had the

5   right to remain silent and that anything he said may be used

6   against him before he spoke, his waiver here was voluntary,

7   intelligent, and knowingly made.  I find it was.  Mr. Jordan's

8   motion to suppress his post-arrest statements is denied.

9         All right, that resolves, I believe, all of the

10  pending motions that the Court has before it.

11        The parties in this case will now have to, I assume,

12  adjust to the Court's determination with respect to the

13  severance.

14        We have a trial date scheduled for February 23rd.

15  My intent is to proceed on the murder trial on February 23rd,

16  with the drug charges to follow in a separate trial at a later

17  date.

18        All right, let me see.  There is currently a

19  briefing schedule, I believe, for motions in limine due

20  October 19th; responses due October 26th; jury materials, et

21  cetera, to follow on October 26th; and a witness list on

22  November 2nd.  And then we will proceed to a final pretrial

23  conference on the 13th.

24        I suspect it would go without saying, but obviously

25  I want you all to limit any motions in limine only to the

1   motions in limine that would pertain to the trial that is now

2   going to go forward in February.  Let's save ourselves some

3   unnecessary work with respect to motions in limine related to

4   the narcotics conspiracy of 2016, I think.

5               That's what I have.  Now, I'd like to hear from you.

6               If I could hear from the Government on any of this,

7   please.

8               MR. McCONNELL:  I think you've covered everything,

9   Judge.

10              In light of the decisions today, we'll obviously be

11  adjusting what we thought our motions in limine would be.

12  We're prepared to stick with the schedule as it stands right

13  now, and we'll continue to confer with defense counsel as we

14  have been through the pendency of the case.

15              THE COURT:  All right.

16              Can I hear from the defense, please?

17              MR. HUESTON:  Yes, Your Honor.

18              I don't really have anything to add, so I'll just be

19  short.

20              The schedule seems fine.

21              I did want to raise a medical issue with respect to

22  my client.  I've been informed today by Mr. Jordan, he's asked

23  me to tell the Court about this.  He has a tear in his right

24  knee.  I'm going to look into it and I'll follow-up with the

25  Court, but I did want to alert you about this issue.  He's

Sidebar                                              20

1   made several copouts and there's been no action.

2            THE COURT:  Forgive me, I don't know your lingo.

3            MR. HUESTON:  Oh, copouts.  The copouts, basically

4   requests to the prison saying give me treatment, give me help.

5   So, that's the copout, Judge.  So he's asked for medical

6   attention.

7            THE COURT:  I'm really curious about the etymology

8   of that word, but okay, thank you.

9            MR. HUESTON:  So, I am going to look into it and,

10  obviously, I'll reach out to the Court and the Government, but

11  I'm going to look into it before I bring the matter to you.

12           THE COURT:  That's fine.

13           Listen, there is no question and I would be

14  disingenuous if I tried to pretend that there hasn't been an

15  issue concerning the provision of medical treatment to those

16  held in custody at the MDC.

17           So, whatever the Court can do to facilitate ensuring

18  that any defendant before me gets the medical treatment that

19  they need, do not hesitate to contact me.

20           MR. HUESTON:  Thank you, appreciate that.

21           THE COURT:  All right.

22           Ms. Kellman.

23           MS. KELLMAN:  Your Honor, nothing to add.  I will

24  prepare that order and get it to the Court.

25           THE COURT:  All right.

```
                            Sidebar                      21

 1              Let's talk about the next status.  Obviously, you
 2    all are going to be marching towards the preparation of trial.
 3    I don't anticipate that much will come up in advance of
 4    February, but why don't we do this, let's put a placeholder
 5    down for a status conference.  If the parties believe that
 6    that status conference is unnecessary, you all will have the
 7    ability to inform me in advance.  And then we can set up a
 8    date, perhaps, at that point it will just be simply going to
 9    the pretrial conference potentially in February.  So, let's do
10    a placeholder.
11              We are at the end of September; is that right?
12              THE LAW CLERK:  Middle.
13              THE COURT:  We're in the middle of September.
14    Ninety days, folks, it seems to me, instead of making
15    everybody -- unless you all think something is going to come
16    up.
17              MR. HUESTON:  Your Honor, ninety days seems fine to
18    me.
19              MS. KELLMAN:  And we can always reach out to the
20    Court if there's something that we need earlier.
21              THE COURT:  Perfect.
22              MR. McCONNELL:  That's fine for the Government,
23    Judge.
24              THE COURT:  Can I look at your calendar?
25              (Pause.)
```

```
                          Sidebar                    22
```

1        THE COURT:  Folks, I am going to set this down for

2   December 16th at the 9:00 a.m.

3        For those of you who have children who may be on the

4   holiday schedule, I think that just clears it.  I suspect it

5   will be the following week.

6        Is there any obvious conflict from the defense with

7   respect to this schedule?

8        MS. KELLMAN:  No, Your Honor, not on behalf of

9   Mr. Washington.

10        MR. HUESTON:  No, Your Honor.

11        MR. McCONNELL:  It's fine for the Government, Judge.

12        THE COURT:  Do I have an application for an order of

13   excludable delay?

14        MR. McCONNELL:  Yes, Your Honor.

15        We have our in limine motions due roughly a month

16   from now.  In light of that, and in the interest of justice to

17   allow both sides to prepare those motions in light of the

18   Court's decisions today, we would move for an order of

19   excludable delay for the time between now and the December

20   conference.

21        THE COURT:  Is that joined by the defense?

22        MS. KELLMAN:  Yes, Your Honor, on behalf of

23   Mr. Washington.

24        THE COURT:  All right.

25        MR. HUESTON:  We join as well, Your Honor.

```
                          Sidebar                        23

1            THE COURT:  All right.  The Government's

2    application, which is joined by the defense, for an order of

3    excludable delay until December 16th is granted for the

4    reasons set forth by the Government in its application.

5            Is there anything else, folks, that I need to

6    address before we adjourn?

7            MR. McCONNELL:  Not for the Government, Your Honor.

8    Thank you very much.

9            MR. HUESTON:  Nothing for us.  Thank you, Your

10   Honor.

11           MS. KELLMAN:  Nothing; thank you, Judge.

12           THE COURT:  Mr. Washington, can you hear me?

13           DEFENDANT WASHINGTON:  Yes.

14           THE COURT:  As you heard, your attorney is going to

15   submit a proposed order.  I do intend to execute it as you

16   heard.

17           It is my hope, sir, and certainly I will do

18   everything in my authority, which sometimes is pretty

19   significant, to make sure you get the medical attention that

20   you need.

21           The same for you, Mr. Jordan.

22           All right, thank you, all.  We're adjourned.

23           MS. KELLMAN:  Thank you, Judge.

24           (Judge LaSHANN DeARCY HALL exited the courtroom.)

25           (Matter adjourned.)
```