JAM/MEM
F. #2018R00082

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

KARL JORDAN, JR.,
    also known as "Little D"
    and "Noid," and
RONALD WASHINGTON,
    also known as "Tinard,"

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 20-CR-305 (S-1) (LDH)

REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTIONS *IN LIMINE*

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Artie McConnell
Mark E. Misorek
Assistant U.S. Attorneys
    (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

    The Proposed Uncharged Acts Evidence is Admissible Under a Variety of Lawful Theories................................................................................................................................... 2

    The Proffered Evidence of Witness Intimidation and Tampering is Probative and Shows Consciousness of Guilt................................................................................................ 5

    Recorded Prison Calls and Statements in Interviews and Videos Are Admissible as Admissions of a Party Opponent ........................................................................................... 6

    Speculative "Alternative Perpetrator" Theories Must Be Precluded ....................................... 7

CONCLUSION................................................................................................................................ 9

PRELIMINARY STATEMENT

The government submits this reply to the defendants' opposition to the government's motions in limine, ECF Docket Nos. 121 (the "Jordan Memorandum") and 123 (the "Washington Memorandum").[1]  As described in the government's motion, ECF Docket No. 113, the government respectfully moves this Court to permit the government to introduce at trial: (1) coconspirator statements, including statements of the decedent; (2) certain acts committed by the defendants as direct proof of the charged crimes or, in the alternative, as "other crimes, wrongs or acts" pursuant to Rule 404(b); (3) evidence of witness intimidation and tampering; (4) recorded prison calls as admissions of a party opponent; (5) Jordan's relevant statements in selected interviews and lyrics; (6) certain documents as offered as past recollection recorded; and (7) to treat certain materials as subject to the September 17, 2020 Protective Order.  The government also moves to preclude evidence of, or argument purporting to show, an "alternative perpetrator" that does not have a sufficient nexus to the crimes charged.  For the reasons stated herein and in the government's original memorandum, the motions should be provisionally granted.  See United States v. Medina, 17-CR-390 (RJD), ECF Docket No. 701 (noting in order on pretrial motions that "as is always the case with pretrial rulings on motions in limine, these are tentative rulings subject to change should the unfolding trial so require or justify."); United States v. Jackson, 20-CR-476 (EK), February 20, 2022 Order, ECF Docket No. 87 (conditionally granting evidence of defendant's gang membership and uncharged marijuana sales in a felon in possession of a firearm trial, so long as government could meet the requirements of Rule 801(d)(2)(A)); United States v.

---

[1]  The government does not respond to each of the defendants' arguments in this reply, and unless expressly consented to herein, the government denies the factual allegations made in the defendants' respective motions.

1

Labate, S100-CR-632, 2001 WL 533714, at *21 (S.D.N.Y. 2001) (conditionally granting Rule 802(d)(2)(E) motion).

The government also requests to be heard at oral argument regarding the pending motions at a time convenient to the Court.

The Proposed Uncharged Acts Evidence is Admissible Under a Variety of Lawful Theories

As described in the government's motion, the government will move to admit at trial: (a) evidence regarding the relationship between Jordan and Washington, including their narcotics activity and access to firearms; (b) the August 9, 2022 gunpoint robbery and discharge of a .40 caliber firearm committed by Washington; (c) the conspirators connection to the ▉▉▉ ▉▉▉ address; (d) Jordan's possession and use of a .40 caliber firearm and .40 caliber ammunition on February 3, 2003; (e) Jordan shooting Mizell's nephew with a .40 caliber firearm on May 14, 2003; and (f) the recovery of firearms, ammunition and narcotics trafficking paraphernalia from Jordan's residence pursuant to a search warrant. This evidence will be critical to proving the defendants' identity as the gunmen and their participation in the underlying narcotics conspiracy.

Such evidence is routinely admitted by courts in this Circuit, both as direct evidence and pursuant to Rule 404(b). All of the foregoing evidence is direct proof of the crimes charged, or completes the story of—and provides essential background to—the charged crimes. Even assuming arguendo that it constitutes "crime[s], wrong[s], or other act[s]" subject to Rule 404(b), the proffered evidence is admissible to show knowledge, intent, motive, plan, identity, absence of mistake and lack of accident, and for other permissible purposes, including to explain the relationships of trust amongst the defendants and the decedent—who, before his murder, was a coconspirator in the underlying drug conspiracy with the defendants and others—and to corroborate the testimony of other witnesses. Finally, all of the evidence identified above

passes Rule 403's balancing test.

In response, the defendants make largely conclusory arguments unsupported by applicable caselaw. While claiming the indictment is limited to "one discrete incident of violence: the October 30, 2002 murder of Jason Mizell," Jordan Memorandum at p. 2, the defendants ignore that both of the charges require proof of an underlying narcotics trafficking conspiracy. This necessarily expands the domain of admissible evidence under either a direct evidence theory or Rule 404(b). See, e.g., United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994) (in conspiracy cases, "uncharged acts may be admissible as direct evidence of the conspiracy itself"); United States v. Diaz, 176 F.3d 52, 80 (2d Cir. 1999) (other bad acts evidence admitted to show how "drug conspirac[y] evolved, and how illegal relationships and mutual trust developed between coconspirators."). In the instant case, the government must prove not only the narcotics conspiracy, but how the murder conspiracy—and ultimately the murder itself—was initiated, developed and carried out. Within this context, there are a variety of non-propensity bases to introduce the proffered evidence that the defendants cannot adequately rebut.

As discussed in the government's motion, courts in the Second Circuit regularly admit evidence where it bears on a relevant relationship between a defendant and another individual or where the evidence furthers a jury's understanding of how the charged crime came about and the defendant and others' role in it. Here, the proffered testimony regarding the nature of Jordan and Washington's relationship, including their connection to the ▮▮▮▮▮ location, provides critical context and background for the conspiracy charged in the indictment. This evidence will serve to inform the jury of the background of the narcotics conspiracy charged, how the murder conspiracy formed and how the relationships between the defendants and others originated and was structured. Such testimony is necessary, direct evidence to demonstrate the

3

development and criminal nature of the relationships between the defendants and Coconspirator 1, as well as to establish plan, intent, knowledge and absence of mistake with regard to the specific conduct comprising the charged crimes. See ECF Docket No. 113, pp. 13-15 (collecting cases); see also United States v. Cadet, No. 08-CR-458 (NGG), 2009 U.S. Dist. LEXIS 82957, at *9 (E.D.N.Y. Sept. 11, 2009) ("Cadet I"), aff'd, 664 F.3d 27, 32 (2d Cir. 2011) ("Cadet II").

Certainly, Jordan and Washington's repeated access to and use of .40 caliber firearms and ammunition of the same type used in the murder and within close temporal proximity to the murder is undeniably direct, probative evidence. This includes, most significantly, Jordan's February 3, 2003 possession and use of .40 caliber ammunition from the same manufacturer as that used in Mizell's killing, a mere three months after the murder. Indeed, as cited in the government's motion, courts in this Circuit have admitted evidence of firearms possession up to six months before and up to seven months after the charged crime under the same theory and for the same non-propensity purpose. See ECF Docket No. 113, pp. 15-17, 21-23 (collecting cases); see also United States v. Danzey, 594 F.2d 905, 912 (2d Cir. 1979) (discussing the "doctrine of chances" underlying the admission of similar act evidence).

Moreover, the proffered evidence corroborates the expected testimony of the government's witnesses and is admissible for that purpose. See, e.g., United States v. Mejia-Velez, 855 F. Supp. 607, 611 (E.D.N.Y. 1994); United States v. Bourne, No. 08-CR-888 (NGG), 2011 WL 4458846, at *12 (E.D.N.Y. Sept. 23, 2011); United States v. Basciano, No. 03-CR-929 (NGG); United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987); United States v. Guerrero, 882 F. Supp. 2d 463, 492 (S.D.N.Y. 2011); see also ECF Docket No. 113, pp. 23-24 (collecting cases where eliciting criminal activity that involves one or both of the defendants is

4

necessary, as such testimony constitutes impeachment material that witnesses may be cross-examined about by the defense).

Against this backdrop, the defendants make generalized arguments about undue prejudice that are unavailing. First, as noted in the government's motion, the government has narrowly tailored its motion to admit such evidence, either as direct evidence or Rule 404(b) evidence, and is not seeking to admit other, tangentially related criminal acts committed by Washington or Jordan to avoid the possibility of undue prejudice. Second, the proffered evidence does not include anything "gruesome" or involve a "parade of guns and photographs." Jordan Memorandum, p. 14. Third, the defendants' contention that jurors will simply disregard a cautionary instruction is unfounded and at odds with the law's general assumption that juries follow the instructions they are given. Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("a jury is presumed to follow its instructions . . . Similarly, a jury is presumed to understand a judge's answer to its question.); Britt v. Garcia, 457 F.3d 264, 272 (2d Cir.2006); United States v. Agrawal, 726 F.3d 235, 258 (2d Cir. 2013).

As the government explained in its motion, the proffered evidence falls squarely within the ambit of direct evidence or Rule 404(b). As this Court has done in the past, it should follow Second Circuit precedent and allow the government to admit the proffered evidence at trial.

The Proffered Evidence of Witness Intimidation and Tampering is Probative and Shows Consciousness of Guilt

The government has offered several discrete instances of witness tampering and intimidation attributable to either Jordan or Washington or both, or third parties acting at their direction or on their behalf. These efforts have continued through the pendency of the instant case.

Such conduct is admissible. As cited in the government's motions, the Second Circuit has repeatedly held that evidence of such obstructive conduct may be admitted to show

5

consciousness of guilt, as well to explain inconsistencies between a witness's testimony and prior statements.  See ECF Docket No. 113, p. 29-30 (collecting cases).

In response, the defendants offer innocent alternate interpretations of the proffered obstructive conduct.  See Jordan Memorandum, pp. 21-23.  While such arguments are certainly appropriate for counsel to make before the jury, they do not provide a basis for preclusion.  Nor does the case law cited by the defendants support their requested relief—the cases cited by the defendants involve far more graphic and incendiary threats than those presented here.

The proffered evidence is plainly relevant and its admissibility is "eminently logical."  United States v. Cirillo, 468 F.2d 1233, 1240 (2d Cir. 1972) ("[t]he general rule . . . and one that is eminently logical, is that an "impeached witness [who feared retaliation from the defendant] may always endeavor to explain away the effect of [a] supposed inconsistency by relating whatever circumstances would naturally remove it. . . The rule is followed in this Circuit.").  As such, the government's motion should be granted.

### Recorded Prison Calls and Statements in Interviews and Videos Are Admissible as Admissions of a Party Opponent

The defendants challenge the proposed admission of certain recorded phone calls that the defendants have made while incarcerated.  Jordan also challenges admissions made in interviews and in two music videos, arguing that his statements have a "tenuous connection" to the crimes charged, make an "impermissible inference that Mr. Jordan killed [Mizell]," and will "inflame the jury by showing Mr. Jordan at [Mizell's] mural."  Jordan Memorandum pp. 28-30.  These are arguments are meritless.

As a threshold matter, the defendants' statements on recorded phone calls are plainly admissions, and thus do not trigger any issues under the Confrontation Clause.  See ECF Docket No. 113, p. 32-33 (collecting cases where admission of relevant recorded calls from prison

6

facilities are admissible). The government anticipates admitting a small number of these recordings, which the government will identify to the defense and the Court in advance of trial to allow for motions on those particular calls.

With respect to the four items the government seeks to admit that relate to Jordan, which include two interviews and two music videos, this evidence is also admissible. Regarding the music videos, to the extent either depicts imagery or other lyrics that are of marginal relevance or unnecessarily inflammatory, the government agrees that redaction or editing is appropriate. However, the statements regarding the manner and means of Jordan's narcotics activity—which Jordan acknowledges are based on his "real life experiences" and his "reality"—are plainly relevant to the narcotics-related murder conspiracy charged, and exceeds the threshold typically applied to such evidence. With respect to the second interview video, Jordan professes his motto is "aim for the head, no body shots" and that he does not respect others who shoot people in the legs or stomach. This is undoubtedly a veiled reference to his killing of Mizell, which was openly suspected in Hollis, Queens for years. Indeed, the evidence at trial will show that Jordan returned to the murder scene the same night, and the government will argue that his frequent videos and social media postings in front of Mizell's mural and his "aim for the head" mantra were designed to intimidate witnesses and present himself as untouchable.

Notably, and as the Court is aware from the February 28, 2022 bail application and hearing, the government has narrowly tailored its motion to only a small number of the most probative recordings that are relevant to specific facts at issue. This limited evidence should be admitted with an appropriate limiting instruction.

### Speculative "Alternative Perpetrator" Theories Must Be Precluded

The government moves to preclude the defendants from introducing evidence or eliciting testimony in support of alternate perpetrator theories unless he first establishes a

7

sufficient nexus to the charged crimes, since "allowing a defendant to present a speculative theory of an alternative perpetrator may result in jurors becoming distracted by irrelevant testimony." Wade v. Mantello, 333 F.3d 51, 61 (2d Cir. 2003). As discussed in the government's motion, while other presently uncharged members of the narcotics and murder conspiracy have asserted their Fifth Amendment right against self-incrimination—including Coconspirator 1, Coconspirator 2 and the cocaine supplier for the Baltimore narcotics transaction—their participation is separate and distinct from that of the charged defendants.

However, upon review of the defendants' memoranda and in consideration of the applicable case law, the government concedes that Coconspirator 1 properly meets this standard. As such, the government agrees that the defendants have a sufficient basis to argue that Coconspirator 1 is the perpetrator. Yet other speculative and unsupported theories must be rejected without further inquiry, an evidentiary proffer or a hearing. Though the defendants argue that there is "substantial evidence that others had motive and perpetrated the attack on Jason Mizell," Jordan Memorandum at p. 32, this argument is inapposite. See ECF Docket No. 113, pp. 41-43 (collecting cases and citing Wade, 333 F.3d at 61, that motive to commit the crime is insufficient to meet the nexus requirement). The Second Circuit has explained that the purpose of requiring a sufficient nexus before offering alternative perpetrator evidence is to respond to the "grave risk of jury confusion" posed by such evidence. Wade, 333 F.3d at 61-62.

While the defendants claim their investigations are ongoing, to the extent either defendant seeks to proffer credible evidence of an alternative perpetrator, the government respectfully asks the Court to decide its admissibility before trial.[2] This does not impose any

---

[2] The government categorically rejects the contention that it has "only recently" provided Brady material on this subject or the insinuation that the defendants have somehow

8

additional burden or heightened standard on the defendants, but rather is necessary to ensure an orderly and fair trial.

CONCLUSION

The government reiterates the arguments made in its motion in limine, respectfully requests the opportunity to be heard at oral argument at a time convenient to the Court and that the Court grant the motions in their entirety.

Dated: Brooklyn, New York
November 16, 2022

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By: _____/s/_____
Artie McConnell
Mark Misorek
Assistant United States Attorney
(718) 254-7000

---

been prejudiced by untimely disclosures. See Jordan Memorandum at p. 34. As the Court is aware, the government provided material regarding the numerous alternative perpetrator theories that have been posited since the murder over two years ago in its September 21, 2020 discovery disclosure.

9