# Law Offices of Ezra Spilke

1825 Foster Avenue, Suite 1K
Brooklyn, New York 11230
t: (718) 783-3682
e: ezra@spilkelaw.com
www.spilkelaw.com

January 12, 2023

**By ECF**
The Honorable LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 10007

Re:     *United States v. Karl Jordan* et al., No. 20 Cr. 305 (LDH)

Dear Judge DeArcy Hall:

On behalf of Ronald Washington, we write to respond briefly to the government's letter filed earlier today, Dkt. 135, and supplement to its motions *in limine* filed yesterday, Dkt. 134.

Expert Notice

Although it is not clear whether the government is making a motion to preclude Dr. Loftus's anticipated testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),[1] the testimony easily satisfies *Daubert* and Rule 702 of the Federal Rules of Evidence. Dr. Loftus is a "widely-published and globally-recognized expert in the field of human perception and memory," *People v. Lerma*, 2016 IL 118496, ¶ 14, 47 N.E.3d 985, 990 (Sup. Ct. Ill. 2016). He is a "qualified and highly respected expert in this field." *Id.* ¶ 28; *see also United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001) ("[T]he government acknowledges that Dr. Loftus is a properly qualified expert and that his methods, principles, and data are of a sufficiently reliable scientific character."). He has testified more than 400 times in state and federal courts about memory, perception, and how the science and psychology of human memory and perception impact the reliability of eyewitness testimony.

---

[1] Although the government cites *Daubert* for the proposition that this Court has broad discretion to determine the reliability of expert testimony, it does not specify in which way it believes Dr. Loftus's anticipated testimony to be unreliable. The defense cannot be expected to respond to mere citation to a standard without any application of facts to law. Nor should the Court decide issues that the government failed to articulate. "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir.1988) (internal quotation marks omitted).

Citing circuit precedent from the 1980s and 90s, the government states that "the Second Circuit generally takes an unfavorable view of . . . [expert] testimony [that explains the science of human perception and memory, the reliability of eyewitness identifications, and the dependability of eyewitness identification procedures] and is disinclined to sanction its admission." It is unclear whether the government is making a general relevance or Rule 403 objection here.[2] But, in any event, the government overlooks the fact that the study of eyewitness identification and human memory and its acceptance in the courts has evolved considerably over the past forty years.

In *this* century, the Second Circuit has changed its tune, to the point that it now *advocates in favor of* the use of eyewitness and memory experts and has held that defense counsel's failure to hire such an expert was ineffective assistance. The court began its opinion in *United States v. Nolan* with the following frank observation: "Eyewitness identification testimony is notoriously prone to error." *United States v. Nolan*, 956 F.3d 71, 75 (2020).

In that case, there were four separate people who identified the defendant. Each of the four identifications presented "impairing factors":

> The perpetrators were wearing disguises that partially obscured their facial features; one robber was wearing a "half ski mask" and the other was wearing a "skully." They were armed, thus suggesting the widely-recognized phenomenon known as "weapon focus," by which the presence of a weapon at the crime scene tends to draw the eyewitnesses' attention, distracting them from the face of the perpetrator. The aggressive behavior of the robbers toward their victims plainly placed the latter under stress, and, as the Supreme Court of New Jersey pointed out in revising its eyewitness procedures, research has shown that "an eyewitness under high stress is less likely to make a reliable identification of the perpetrator."

*Id.* at 80. The court observed that "the eyewitness testimony was sufficiently unreliable in ways not readily apparent to a lay jury" and held that it was ineffective assistance of counsel not to consult an expert on eyewitness identifications. *Id.* at 81-82. The court further noted that, had counsel moved to dismiss the identifications and lost, "they would have educated the judge as to the frailty of the identifications and would, of course, still have been free to fully impeach the eyewitnesses at trial." *Id.* at 81.

Subject to the government's proof at trial in this case, we anticipate that each of the aforementioned reliability issues in *Nolan* will be a factor here. The testimony is thus relevant and helpful to the trier of fact, *see* Fed. R. Evid. 702(a) ("[T]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to dete1mine a fact in issue.").

It is patently incorrect, as the government asserts without support, that Dr. Loftus's anticipated testimony is "common knowledge," Dkt. 135 at 3. Sixty-nine percent of the DNA

---

[2] Again, the Court should not read into the government's letter arguments that the government failed to make.

Hon. LaShann DeArcy Hall                                                                  January 12, 2023
Re: 20 Cr. 305                                                                                      Page 3 of 5

exonerations tracked by The Innocence Project involved eyewitness misidentification.[3] If the frailty of human memory and perception were common knowledge, eyewitness ID would not have such a high error rate.

As Mr. Washington noted in his motion to dismiss for pre-indictment delay, misconceptions about human perception and memory stubbornly persist. Among the corrected misconceptions cited by Mr. Washington in his pre-indictment-delay motion were the following:

- Memory is not like videotape, faithfully recording events without much deterioration or corruption. Rather, attention and memory are quite selective;

- The amount of attention one pays to specific aspects of an event affects the initial encoding of the memory of that event and environmental factors, like "weapon focus" or high stress, affect an observer's attention greatly;

- Memory is easily tainted, and once contaminated, cannot be "untainted";

- Vivid memories are "just as prone to errors" as less vivid memories;

- Emotional memories are often both more vivid and more inaccurate; and

- Ironically, because of their vividness, emotional memories "are frequently held with high confidence."

Dkt. 81 at 6-8. The Court cannot presume that the average juror is aware of all, or indeed any, of these features of perception and memory. *Cf. Nolan*, 956 F.3d at 82 ("[T]he eyewitness testimony was sufficiently unreliable in ways not readily apparent to a lay jury."). Dr. Loftus's testimony is thus helpful to the jury.

As to notice, the government objects to it as untimely. But Mr. Washington has complied with Rule 16(b)(1)(C). That rule, as amended in November 2022, provides:

> The court, by order or local rule, must set a time for the defendant to make the defendant's disclosures.  The time must be sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence.

Fed. R. Crim. P. 16(b)(1)(C)(ii).

Due to the recency of the rule, there is no such order or local rule here. Nonetheless, there can be no doubt that the government has received "a fair opportunity for the government to meet the defendant's evidence." *Id.* The type of testimony anticipated here is not novel in eyewitness cases. A seminal Second Circuit case on the use of an expert in this field is over fifteen years old. *Bell v. Miller*, 500 F.3d 149, 154 (2d Cir. 2007). Counter-experts, should the government seek to

---

[3] The Innocence Project, *DNA Exonerations in the United States*, https://innocenceproject.org/dna-exonerations-in-the-united-states/ (last viewed Jan. 12, 2023).

Hon. LaShann DeArcy Hall                                                January 12, 2023
Re: 20 Cr. 305                                                              Page 4 of 5

hire one, abound. Dr. Loftus, to provide the example at hand, has been testifying in federal courts as an expert in this area since 1989.

The government requested expert notice in October 2022. But Mr. Washington did not have anything to disclose at that time. We first contacted Dr. Loftus in November 2022 and were still debating whether to call Dr. Loftus until recently. Dr. Loftus educated us in his area of expertise, and we applied what we learned to the facts of the case, weighing whether his testimony would truly be helpful in this case. We also had to work with Dr. Loftus, who keeps a busy schedule, on the contours of his testimony. We then had to draft and collect the notification materials necessary to comply with the new rule. We served expert notice on the government at our earliest opportunity.

The government itself complied with the new rule only last week. Given that Mr. Washington's case will not begin until after the government's, which is expected to last two weeks, Mr. Washington has arguably given comparatively *more* notice than the government has.[4] The government's objection to the timeliness of Mr. Washington's expert notice should be overruled.

The Government's Late Rule 404(b) Notice

Keeping with the topic of timeliness, the government inexplicably waited until yesterday to give notice that it will seek to offer an instance of "other act" evidence that could not be more inflammatory. Yesterday, the government notified the Court and the parties that it will seek to offer evidence that Mr. Washington murdered his cousin in Baltimore. Gov't Supplemental Motion in Limine at 3.

If the government seeks to offer "other act" evidence, it must first "provide reasonable notice of . . . evidence [of any other crime, wrong, or act] that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it" and "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(A), (B). Even at this late date, the government has failed to specify when and where the alleged murder took place. *See* Fed. R. Evid. 404(b) advisory committee's note to 2020 amendment. Neither has the government articulated a non-propensity purpose for this evidence. "Without a more detailed proffer, it is impossible for the Court to determine whether the evidence of other [acts or crimes] is relevant." *United States v. Townsend*, No. S1 06 CR. 34 (JFK), 2007 WL 1288597, at *6 (S.D.N.Y. May 1, 2007), *aff'd sub nom. United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009). And, of course, without adequate

---

[4] The government, in its recent amended notice, maintained that it had previously provided reports. But the government's disclosures predated the amended rule, and the defense is still ascertaining whether those reports give us adequate notice. Mr. Washington, on the other hand, provided the government with a fulsome disclosure of Dr. Loftus's opinions and the bases of those opinions. Notably, apart from whatever, nebulous objection the government may have to the content of Dr. Loftus's testimony, the government's only complaint to the Court about Mr. Washington's *notice* is on the basis of timeliness.

Hon. LaShann DeArcy Hall                                                    January 12, 2023
Re: 20 Cr. 305                                                             Page 5 of 5

specificity, the defense is robbed of its ability to investigate any such allegation or prepare to
address it at trial.

        But, regardless of whatever purpose the government may conjure at some point in the
future, the evidence could not be more inflammatory. The defense has been preparing to meet the
allegations that Mr. Washington was a confederate of Mr. Mizell's in his drug-dealing operation
and participated in Mizell's murder because of that association. The new, proffered evidence
would threaten to create a separate trial from the trial that we have all been preparing for. The
evidence must be precluded. Thank you for your attention to this matter.

                        Respectfully submitted,

                        Susan G. Kellman
                        Ezra Spilke
                    Jacqueline E. Cistaro

encl.`