```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------x
                                        20-CR-305(LDH)
 3   UNITED STATES OF AMERICA,
                                        United States Courthouse
 4                                      Brooklyn, New York

 5           -versus-                   February 16, 2023
                                        12:30 p.m.
 6   KARL JORDAN AND RONALD
     WASHINGTON,
 7
             Defendants.
 8
     ------------------------------x
 9
                 TRANSCRIPT OF CRIMINAL CAUSE FOR PROCEEDINGS
10                BEFORE THE HONORABLE LASHANN DEARCY HALL
                        UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES

13   For the Government:       UNITED STATES ATTORNEY'S OFFICE
                               Eastern District of New York
14                             271 Cadman Plaza East
                               Brooklyn, New York 11201
15                             BY:  ARTIE MCCONNELL, ESQ.
                                    MARK MISOREK, ESQ.
16                                  MIRANDA GONZALEZ, ESQ.
                               Assistant United States Attorneys
17
     For Defendant Jordan:     BY:  JOHN DIAZ, ESQ.
18                                  MICHAEL HUESTON, ESQ.
                                    MONICA NEJATHAIM, ESQ.
19
     For Defendant Washington:BY:  SUSAN KELLMAN, ESQ.
20

21
     Court Reporter:           Rivka Teich, CSR, RPR, RMR, FCRR
22                             Phone:  718-613-2268
                               Email:  RivkaTeich@gmail.com
23
     Proceedings recorded by mechanical stenography.  Transcript
24   produced by computer-aided transcription.

25
```

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

PROCEEDINGS

1                    (In open court.)

2          THE COURTROOM DEPUTY:  Good afternoon.  This is a

3    criminal cause for a hearing in the matter of U.S.A. versus

4    Carl Jordan and Ronald Washington, docket number 20-CR-305.

5          Can counsel state their appearance for the record

6    beginning with the Government.

7          MR. MC CONNELL:  Good afternoon, your Honor.  Artie

8    McConnell, Mark Misorek and Miranda Gonzalez; and we are

9    joined by Anna November.

10         MS. KELLMAN:  Susan Kellman for Mr. Washington, my

11   client is present.

12         MR. DIAZ:  John Diaz, Michael Houston, and Monica

13   Nejathaim for the defendant Karl Jordan, who is standing to my

14   right.

15         THE COURT:  You all may be seated.

16         Folks, so we are convened today to discuss the

17   letter that was filed by the Government on many on February 8,

18   2023.  In the Court's minute entry and order, after our last

19   status conference I directed the parties, quite simply, quite

20   straightforwardly, to write to the Court in a joint submission

21   to advise to the Court as to the parties' availability for

22   trial beginning January 29, 2024.

23         That is all that I asked for.  That is what I got

24   from the defendants.  It is not what I got from the

25   Government.

PROCEEDINGS

1          So before I get to the letter, I want to go back,

2     because it appears to me that the Government needs a history

3     lesson; I'm going to give it to you today.

4          As we all know Mr. Jason Mizell was tragically

5     killed October 30, 2002.  Some 18 years later, the Government

6     filed an Indictment in this matter in August of 2020.  That

7     Indictment was sealed and it was subsequently unsealed after

8     the arrest of the individuals that are before me today.  A

9     Superseding Indictment followed in March of 2021.

10          After the parties engaged in discovery and having

11     been alerted by the parties that both the Government and the

12     defendants were ready to proceed to trial, the Court

13     endeavored to set a trial date.  And on February 17, 2022, the

14     Court set a November 23, 2022 trial date.  I also ordered,

15     after consultation with the parties, that any motion to

16     dismiss or motion to sever be filed by April 11, 2022.  And

17     that any suppression or other pretrial motions, not including

18     motions in limine, be filed by June 17, 2022.

19          I'm going to say that part again:  I also ordered

20     that any other motions, putting aside motions in limine, be

21     filed by June 17, 2022.

22          Did you hear what I just said?

23          MR. MC CONNELL:  Yes, Judge.

24          THE COURT:  I also ordered that motions in limine be

25     filed no later than October 19, 2022.

PROCEEDINGS

1          Now, on February 25, 2022, at the request of

2    Mr. Jordan and with the Government's consent as well as that

3    of Mr. Washington, the Court adjourned the trial date that was

4    scheduled for November 2022 and set the trial date for

5    February 20, 2023.

6          That date had to be moved up to the 13th because the

7    jury return date was changed by the court.  I did, however,

8    leave unchanged the briefing schedule that had been set by the

9    Court back in February, on February 17, 2022.  The Court did

10   receive a suppression motions by the defendants.  The Court

11   also received motions to sever.

12         Now on October 12 of 2022, with respect to the

13   motions in limine, the Government filed a request that it be

14   permitted to exceed the Court's established page limit.  The

15   Court granted the Government's request and allowed the

16   Government to file 45 pages of motions in limine.  Those

17   motions in limine were filed on October 19, 2022.

18         Now, the June 17, 2022 deadline came and went

19   without any motions by the Government with respect to an

20   anonymous jury.  So to did the October 19 filing of motions in

21   limine come without any reference to a motion for an anonymous

22   jury.  Indeed the Government waited until January 3, 2023,

23   that would be six months, seven months after the June 17, 2022

24   deadlines for motions, other than motions in limine, to be

25   filed, and some two months after the motion in limine

PROCEEDINGS

1   deadline.  June 3rd, 2023 also happened to fall approximately

2   five weeks before the start of this trial.

3          Now, despite the Government's failure to comply with

4   the Court's orders with respect to the filing of motions and

5   instead of rejecting the Government's motion outright as

6   untimely, as I could have, what I did instead was endeavor to

7   expedite a decision on your motion.  I required the defendants

8   to respond to your motion within one week.  I coordinated with

9   the jury department to determine whether, if I decided to

10  proceed with an anonymous jury, whether it was feasible to

11  convene an anonymous jury in the time frame that I was forced

12  into by the Government's dilatory conduct.  I could only do

13  so, according to the jury department, if indeed I responded to

14  the Government's motion in a single day, which I did.

15         As I indicated, I only gave the defendants one week

16  to respond to the Government's motion.  And in that

17  opposition, which it was an opposition, the defendants

18  indicated that if the Court were to grant the Government's

19  motion that I also grant the defendants' request that I

20  adjourn the trial.  I was not surprised by the request given

21  the fact that preparing for an anonymous jury is an

22  undertaking which requires the parties and the Court to engage

23  in an iterative process regarding proposed voir dire

24  questionnaire.  And lead counsel for Mr. Washington was

25  committed on a trial before Judge Garaufis that both

PROCEEDINGS

1  Mr. Jordan's counsel and the Government were full aware of

2  before the Government's untimely motion.

3          Now, on January 13 the Court convened a status

4  conference where I made a determination that I would grant the

5  Government's request for an anonymous jury.  And before

6  deciding on the defendants' request to adjourn, I engaged in a

7  discussion with defense counsel.  I alerted the parties that

8  if indeed I were to grant the defendants' request for an

9  adjournment, that it would result in a significant delay;

10  because not only is my trial calendar particularly full, the

11  trial calendar of the parties is also particularly full.  I

12  did, however, offer up an April trial date as I had recently a

13  case that resolved without the necessity of a trial which

14  allowed me to have an April availability.  That date, however,

15  was not available for the many counsel that sit around the

16  defense table.  So April was not an available date.

17          What I was told by the defense counsel is that they

18  convened and quoting Mr. De Marco, who is not here, but

19  quoting Mr.De Marco it was indicated that November was the

20  date that they were all available.  The Court, however, was

21  not available as of November.  Instead the Court endeavored to

22  find a date that it was next available, which would require

23  the Court to set a date in January of 2024, approximately 60

24  days later than the date offered up by the defense counsel.

25          Now, the Government had an opportunity to speak at

PROCEEDINGS

1   the status conference.  And at that status conference it

2   bemoaned the notion that the Court would set the trial date

3   out to January 2024.  Again, responding to the request of the

4   defendants and as a result, directly, of the dilatory conduct

5   by the Government.

6          Indeed, Mr. Mc Connell suggested that defense in

7   this case prioritize this case over some of their other cases,

8   couldn't understand why that wasn't possible.  "My question,

9   he says, "and request would be that the other conflicts, the

10  other trial cases that are conflicts for defense counsel be

11  moved so that this case can be tried."

12         I'm just curious, did you speak to all the other

13  attorneys in your office that have trials with defendants, did

14  you ask all of them if they wanted all of their trials moved

15  to accommodate your dilatory conduct?

16         It was a rhetorical question.

17         MR. MC CONNELL:  No, we did not.

18         THE COURT:  Shocker.

19         In any event, the Court granted both the

20  Government's request for an anonymous jury, finding the motion

21  itself had merit.  And then I granted the defendants' request

22  to adjourn the trial, and scheduled it for the soonest date

23  that this Court had available.

24         I assumed, given the extensive back and forth that

25  we had at the status conference where I entertained the

8

PROCEEDINGS

1  Government's objection to the January 2024 date, that the

2  parties would proceed as I requested and simply speak to their

3  availability.  As I indicated earlier, the defendants complied

4  with the Court's request; the Government did not.

5          And here we are now, where I can now entertain a

6  letter that was sent by the Government concerning the trial

7  date.  So let's get to it.  Let's talk about this letter,

8  Mr. Mc Connell.  I have many thoughts.

9          I was told by Mr. De Marco that November was the

10  month that the defendants had available to them.  You

11  complained that the summer months weren't explored.  They

12  weren't explored, because I was told by the defendants that

13  November was the month that they had available.

14          I'm curious Mr. Mc Connell, do you think the Court

15  does not understand the way in which the calendar works?

16          MR. MC CONNELL:  No, your Honor.  And so --

17          THE COURT:  So you think then that I would

18  understand that the summer months precede the month of

19  November.

20          So when -- assume everything I'm saying to you to is

21  rhetorical, and until I speak you don't have to say a word,

22  but you can stand -- so, when they tell me that they are not

23  available until November and I proceed from there, I am

24  satisfied that I have explored the calendar for the summer

25  months.

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

PROCEEDINGS

1          I don't answer to you.  So the fact that you don't

2     believe that I explored the summer months to your

3     satisfaction, is of no moment.

4          Next, I need to understand.  You indicate that a key

5     witness has passed away during the pendency of this case.  I'm

6     sorry to hear that.  Are you suggesting that this witness died

7     as a result of foul play?  Because that wasn't made clear.

8          MR. MC CONNELL:  No, absolutely not.

9          THE COURT:  When you put it in the same sentence,

10     because it's one sentence, let's read it.  "The Government is

11     also prejudiced by the extended delay as one key witness has

12     passed away during the pendency of the case and witness

13     intimidation and tampering remain a significant concern."  One

14     sentence.

15          Did it not occur to you that that might create the

16     impression, the false impression, that somehow that witness

17     died as a result of conduct by either the defendants or

18     someone acting on their behest?  That somehow this death was

19     the result of foul play?  That didn't occur to you that that

20     sentence, the way you wrote it, wouldn't create that

21     impression?

22          MR. MC CONNELL:  No, it did not, Judge.  That

23     certainly was not the intent.

24          THE COURT:  I don't know if I believe that it was

25     just sloppy.

PROCEEDINGS

1          Pass this down to Mr. Mc Connell, please.  Pass this

2     to the defense, please.

3          Read the headline.  Share with the rest of the

4     class.

5          MR. MC CONNELL:  "Key witness in Jam Master Jay case

6     turns up dead.  Feds seek to expedite trial."

7          THE COURT:  I hold you responsible for that

8     headline, Mr. Mc Connell.

9          MR. MC CONNELL:  Judge --

10          THE COURT:  I hold you responsible for that

11     headline.

12          MR. MC CONNELL:  Okay.

13          THE COURT:  Maybe if you had put a period.  Maybe if

14     you had put an explanation.  Maybe if you had put some context

15     in your letter it wouldn't have resulted in press coverage of

16     this sort.  At a minimum, maybe I wouldn't hold you

17     responsible for it.

18          MR. MC CONNELL:  Okay.

19          THE COURT:  But I have to tell you, with respect to

20     that paragraph in your letter, when the defendants move to

21     dismiss this Indictment in this case they complained that

22     witnesses would be unavailable.  That was one of the reasons,

23     they argued, why the Indictment should be dismissed.  And I

24     rejected their argument.  I denied their motion to dismiss in

25     no uncertain terms.  And I denied it because I believed that

PROCEEDINGS

1    their arguments were not sufficient to carry their burden in

2    that regard.  And you agreed.  In your opposition to the

3    defendants' motion to dismiss the Indictment for the very

4    reason that you complain about in your letter, you say, "even

5    if the witness was truly unavailable, including if they were

6    deceased, this would not constitute actual prejudice."

7          But lo and behold in a letter that you write to me

8    concerning an adjournment that was caused by you, you

9    repeatedly refer to purported prejudice that the Government is

10   suffering as a result of the unavailability of witnesses, the

11   first of whom that you reference not the result of conduct

12   that can be traced to these defendants.

13         What did that pour soul die of?

14         MR. MC CONNELL:  Medical issue, your Honor.

15         THE COURT:  Interesting.

16         I am curious, because it is not clear to me, in your

17   letter, I think it's the final paragraph, you say that you and

18   counsel for the defendant Washington also request a status

19   conference as soon as possible so that Mr. Washington can have

20   the opportunity to consent on the record to exclusion of

21   additional time from the speedy trial clock.

22         Now, Ms. Kellman wrote a letter in response to

23   yours.  Her first point of business was to state, first,

24   Mr. Washington's consent to the exclusion of time is made

25   knowingly with the benefit of the advice of his lawyers.

PROCEEDINGS

1    Though the Government's concern that the defendant -- I can

2    stop there.

3              I'm perplexed by this paragraph.

4              MR. MC CONNELL:  Well, your Honor, we felt it was

5    important to come to court --

6              THE COURT:  No, no, no.  That's not what I'm

7    perplexed by.  I'm perplexed by the fact you write:  You, the

8    Government, and defendant for counsel Washington.

9              Didn't seem like counsel for defendant Washington --

10             MR. MC CONNELL:  -- well.

11             THE COURT:  Well what?

12             MR. MC CONNELL:  There were conversations, e-mails,

13   off the record in anticipation of our filing date where this

14   was --

15             THE COURT:  Are you telling me that this was indeed

16   a joint request by Ms. Kellman that she said that she believed

17   that -- we need to have a, quote, "a status conference as soon

18   as possible so that Washington can have an opportunity to

19   consent on the record to the exclusion of additional time."

20             Are you suggesting to me that contrary to at least,

21   what it seems that her letter suggests, she seemed to be that

22   that had been taken care of.  That she indeed was requesting a

23   status conference for that purpose?

24             MR. MC CONNELL:  I'm not saying that.

25             THE COURT:  Why did you write it?

PROCEEDINGS

1          MR. MC CONNELL:  We felt that it was important --

2          THE COURT:  Then you should have said "you felt it."

3          You wrote that you and Washington's counsel felt it,

4   which means that you made a demonstrative false representation

5   to this Court.  I don't take that lightly either.

6          MR. MC CONNELL:  Judge, if I can clarify.  That's

7   obviously --

8          THE COURT:  I don't need you to clarify.  I have the

9   document in from of me.

10          MR. MC CONNELL:  I'd like to make a record.

11          THE COURT:  I'm certain you want to do a lot of

12   things, you will do them when I say you do.

13          MR. MC CONNELL:  I would like to --

14          THE COURT:  You made a misrepresentation to the

15   Court --

16          MR. MC CONNELL:  And I would like to respond.

17          THE COURT:  And you will wait until I am done.

18          MR. MC CONNELL:  Okay.

19          THE COURT:  Finally, I resent, I resent the

20   implication by your letter that the delay in proceeding to

21   this trial is the result of anything that this Court has done.

22          This Court has stood at the ready to try this case.

23   This Court has jumped through hoops to ensure that it could

24   proceed in a timely fashion.  And you wrote in a letter, that

25   you filed on the public docket, that suggested that this Court

PROCEEDINGS

1   somehow lacks concern for the victim's family.  That that

2   could be further from the truth.

3          Again, I jumped through hoops to accommodate your

4   dilatory filing.  To suggest that this Court lacks empathy for

5   the fact that the defendants in this case remain in custody,

6   is further from the truth.

7          I have at all times, and remain ready, to proceed to

8   trial when it is feasible.  And the fact that you believe it's

9   feasible on an earlier date is of no consequence.

10          Go ahead.

11          MR. MC CONNELL:  Judge, first, that's certainly not

12   the import of the letter.  It certainly was not the intent

13   that we had when we drafted it.

14          I completely agree, the Court has been extremely

15   accommodating.  Your Honor has gone through extensive motion

16   practice on multiple fronts with us.  You've been willing to

17   come to court to hear that out.  That implication -- I don't

18   read the letter like that.  I didn't draft it that way.

19          THE COURT:  I do.

20          MR. MC CONNELL:  I apologize.  That's certainly not

21   our intention.  I'm glad I had the opportunity to clear that

22   up for the Court.

23          Going in order.  With respect to the need for

24   Mr. Washington to appear and waive time.  As there always are,

25   there are conversations amongst counsel in anticipation of

PROCEEDINGS

1   filings, in anticipation of court dates; I was not privy to

2   all of them.  But members of my office were in consultation

3   with the defense team.  We made it clear to the defense that

4   we believed it was necessary for Mr. Washington to appear to

5   waive his speedy trial rights on the record, given the length

6   of the delay.

7          We completely accept the waiver was valid.  We

8   completely accept Ms. Kellman's representations in her letter.

9          These are thorny appellate issues.  They are the

10  responsibility of the Government, and something that -- an

11  issue that could be easily obviated by a quick court

12  appearance.

13         THE COURT:  Nobody is in disagreement about that.

14  And I don't take issue with that.  I take issue with the fact

15  that you indicated that this was a joint request, and it was

16  not.  Period.

17         All you had to say was, your Honor, the Government

18  believes that it would be appropriate to have Mr. Washington

19  to come in as, Ms. Kellman did in her letter where she said,

20  "Your Honor, we believe that the waiver was knowing and

21  voluntary and made with the advice of counsel.  But certainly

22  should the Court wish to inquire."

23         That's not what you did.

24         MR. MC CONNELL:  I take responsibility for it.  I

25  just want to be clear, that is a mistake.  It is an error.  It

PROCEEDINGS

1   is certainly not an intentional misrepresentation at all.

2   That was sort of the instinct that we needed to come back to

3   court shortly to help resolve what the Government believed

4   could be an issue.

5           THE COURT:  It was something that could be dealt

6   with on April 3rd, we had a status conference that was set for

7   April 3rd.  Certainly it wasn't going to be a thorny appellate

8   issue between February 8 and April 3rd.

9           MR. MC CONNELL:  I understand, Judge.  April 3rd was

10  still I think somewhere in the neighborhood of 70 days after

11  the last appearance.  We may be wrong.  But we felt it was

12  important to come to court to have Mr. Washington present and

13  to --

14          THE COURT:  And he's here.

15          MR. MC CONNELL:  So we're fine with that.

16          With respect to our request to reconsider an earlier

17  trial date.  First, I am in no way asking for special

18  treatment for this case.  I'm well aware of --

19          THE COURT:  But you are, because I read it to you.

20          Let's be clear.  This is just reading.  That being

21  said, I don't know if there is any way for defense counsel to

22  prioritize this case over some of their other cases.  These

23  defendants have been in custody for over two years.  You go

24  on, "My request would be that the other conflicts, the other

25  trial cases that are conflicts for defense counsel, be moved

PROCEEDINGS

1    so that this case can be tried."

2                Do you know want me to read it again?

3                MR. MC CONNELL:  No, I understand it.

4                It's a great example of why I'm not the most

5    articulate speaker.  I think the import of what I was trying

6    to say is that the trial calendar, while packed both for the

7    Court and for counsel, is fluid.  Cases resolve themselves.

8                It's been over a month since we last appeared

9    before, your Honor.  One thing that I personally had not been

10   aware of is that the prior restrictions regarding the number

11   of trials that can be taking place in the courthouse

12   simultaneously has been lifted.

13               THE COURT:  How about this.  This is going to serve

14   you well moving forward.  Why don't you assume I know how to

15   manage my own docket.  Why don't you assume that I wear of

16   robe and you don't.  Why don't you assume that I've been doing

17   this for a while.  I don't need you to explain to me how it

18   works.  Why don't you assume that.

19               MR. MC CONNELL:  I do assume that.  I know it,

20   Judge.

21               THE COURT:  No, you don't.

22               MR. MC CONNELL:  I mention that comment because it's

23   not something that I had fully explored.

24               THE COURT:  There is a lot that you haven't fully

25   explored; but your failings are not mine.

PROCEEDINGS

1          MR. MC CONNELL:  Back to the issue of requesting

2   special treatment.  If that's how it came across at the status

3   conference or in a letter, I apologize.  We, as an office, are

4   endeavoring to move cases as quickly as possible to trial.

5   We're doing that in this case.  We're doing that in every

6   case.  That has been our directive from our leadership.  It's

7   something that I and other attorneys in this case do

8   personally in our other matters.  And so we are simply

9   exploring whether or not that is possible.  And something --

10          THE COURT:  That's not what your letter said, that's

11   not how you proceeded at all.  If that's what you wanted to

12   do, you failed.  That is not what you have done.

13          Yours is not the only case I have with your office.

14   But yours is the only case that I have had to convene a

15   hearing to address the way in which you have fashioned your

16   request to suggest that this Court has somehow acted

17   improperly, to suggest that this Court is somehow delaying

18   unreasonably this trial.  Only you, Mr. Mc Connell, only you.

19          MR. MC CONNELL:  I didn't suggest that, Judge.

20   Respectfully, I don't believe that.  And that's not what I'm

21   suggesting.  What I'm suggesting is --

22          THE COURT:  Then you might want to ask somebody to

23   read over your letters before you submit them.

24          Ms. Gonzalez, I nominate you.

25          MR. MC CONNELL:  It's a good choice.

PROCEEDINGS

1          The point I was trying to make, which apparently was

2    not made, is that when you have a situation where both sides

3    are ready for trial.  You have witnesses who are ready.  You

4    have the Court that is ready.  That we should make sure that

5    we exhaust all options before adjourning the case of this

6    nature for this length of time.

7          THE COURT:  I adjourn.  You didn't adjourn it.  You

8    don't have that authority.  I adjourned it.  You don't have

9    that authority.  I adjourned it, based on the information that

10   I have.

11         And just as I offered up April when I had a trial go

12   away, do you think it wouldn't occur to me to offer up another

13   date should another date become available to this Court?

14         Again, I don't need you to tell me how to do my job.

15         MR. MC CONNELL:  Well, your Honor, I don't have much

16   to add.  We were asking for a second look to see if anything

17   had changed.

18         THE COURT:  That's not what you wrote.

19         All right sit down.

20         MR. MC CONNELL:  Thank you.

21         THE COURT:  Clearly the Court has no intention at

22   this time of altering it's determination with respect to the

23   January 29 trial date.  That trial date is a trial date that

24   is available to all counsel, as confirmed by the letters sent

25   to this Court on February 8.  Should anything change, of

PROCEEDINGS

1    course, the Court would entertain that.  Nothing has changed.

2          With that, I would like to inquire as invited by,

3    you Ms. Kellman, of Mr. Washington.

4          Good afternoon, Mr. Washington.  You can stay

5    seated.  You've heard some back and forth about the trial date

6    in this matter.  What you also heard, and which I'm assuming

7    you're aware of, is that your attorney on your behalf made a

8    motion, a joint motion with Mr. Jordan, to adjourn the trial

9    date from February 13.  Now before I grant it, the request,

10   which I did grant, I made the parties aware that because of

11   the trial calendar that it would be quite sometime before this

12   Court would be able to try this case.  And the date that the

13   Court has arrived at is January 29, 2024.  Were you aware of

14   that fact?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Did you speak with your attorney

17   concerning the request for the adjournment and the potential

18   consequence, meaning that the trial date would you pushed

19   back?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Were you in agreement with your attorney

22   when your attorney on your behalf made the request to adjourn

23   this trial?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Sir, you are aware that you have a right

PROCEEDINGS

1    to a speedy trial, are you aware of that, sir?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Under the constitution and laws of the

4    United States you are to be brought to trial within 70 days

5    within the date of an Indictment.  Are you aware of that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  There are certain periods of excludable

8    delay.  Now in order to accommodate the request for the

9    adjournment and the trial calendar that the Court has, I have

10   had to ask your attorney on your behalf whether you would be

11   consenting to an exclusion of time, meaning the time period

12   between today effectively and January 29, 2024, would not be

13   included in that 70-day time period.

14           THE DEFENDANT:  Yes.

15           THE COURT:  With that knowledge, are you agreeing to

16   the exclusion of time?

17           THE DEFENDANT:  Yes.

18           (Continued on next page.)

19

20

21

22

23

24

25

PROCEEDINGS

1          THE COURT:  Anything else to address?

2          MR. MC CONNELL:  No, your Honor.  Thank you.

3          MR. DIAZ:  No, Judge.

4          MS. KELLMAN:  No, Judge.

5          THE COURT:  All right.  Parties, only write me

6   letters when it's necessary and when I ask for them.

7          (Whereupon, the matter was concluded.)

8                    *    *    *    *    *

9   I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

10

11  */s/ Rivka Teich*
    _____
    Rivka Teich, CSR RPR RMR FCRR

12  Official Court Reporter
    Eastern District of New York

13

14

15

16

17

18

19

20

21

22

23

24

25