JAM/MEM/MG
F. #2017R00509

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -                                20-CR-305 (S-1) (LDH)

KARL JORDAN, JR.,
     also known as "Little D"
     and "Noid," and
RONALD WASHINGTON,
     also known as "Tinard,"

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO PRECLUDE THE EXPERT TESTIMONY OF DR. GEOFFREY LOFTUS OFFERED BY DEFENDANT RONALD WASHINGTON

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Artie McConnell
Mark E. Misorek
Miranda Gonzalez
Assistant U.S. Attorneys
    (Of Counsel)

TABLE OF AUTHORITIES

Federal Cases

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579 (1993) ............................................................................................................... 2

Nimely v. City of New York,
414 F.3d 381 (2d Cir. 2005) ............................................................................................... 1, 2

Rosario v. City of New York,
No. 18-CV-4023 (LGS), 2021 WL 1930293 (S.D.N.Y. May 13, 2021) ...................................... 6

Salem v. U.S. Lines Co.,
370 U.S. 31 (1962) ................................................................................................................. 3

Spagnuolo v. Howell,
814 F. App'x 614 (2d Cir. 2020) ............................................................................................. 6

United States v. Bilzerian,
926 F.2d 1285 (2d Cir. 1991) ................................................................................................. 1

United States v. Burrous,
934 F.Supp 525 (E.D.N.Y. 1996) ............................................................................................ 2

United States v. Carter,
410 F.3d 942 (7th Cir. 2005) .................................................................................................. 6

United States v. Duncan,
42 F.3d 97 (2d Cir. 1994) ....................................................................................................... 1

United States v. Little,
No. 22-CR-260 (PAE), 2022 WL 16924577 (S.D.N.Y. Nov. 10, 2022) ..................................... 5

United States v. Lumpkin,
192 F.3d 280 (2d Cir. 1999) ................................................................................................... 2

United States v. Mohamed
157 F. Supp. 3d 268 (E.D.N.Y. 2016) ..................................................................................... 3

United States v. Nolan
956 F.3d 71 (2d Cir. 2020) ........................................................................................... 3, 4, 5, 6

United States v. Rincon,
28 F.3d 921 (9th Cir. 1994) ................................................................................................. 6, 7

United States v. Smith,
156 F.3d 1046 (10th Cir. 1998) .............................................................................................. 6

United States v. Wyche,
No. 18-CR-561 (DLI), 2022 WL 2199140 (E.D.N.Y. June 20, 2022) ..................................... 4, 5

Wills v. Amerada Hess Corp.,
379 F.3d 32 (2d Cir. 2004) ..................................................................................................... 2

Federal Rules

Fed. R. Evid. 401 ........................................................................................................................ 2
Fed. R. Evid. 403 ........................................................................................................................ 2
Fed. R. Evid. 702 ........................................................................................................................ 1

PRELIMINARY STATEMENT

The government formally moves, pursuant to Rule 702(a) and Rule 403, to preclude the expert testimony of Dr. Geoffrey Loftus, who has been noticed as an expert by the defendant Ronald Washington.[1]  According to the notice provided by the defendant to the government, dated January 11, 2023, and the defendant's supplemental letter filed February 27, 2023 (ECF No. 140), Dr. Loftus is an experimental psychologist with expertise in human memory, visual perception, and eyewitness identification, and who, in substance, intends to challenge eyewitness identifications based on weapon focus, high stress triggered by aggressive behavior, a long delay between the event and identification and co-witness feedback.  For the reasons stated herein, the proffered testimony should be precluded on the grounds that it is irrelevant and would "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994) (quoting United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991)).

LEGAL STANDARD

A district court may admit the testimony of an expert only if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a); see Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005) (Rule 702 focuses on, inter alia, "whether the expert's testimony (as to a particular matter) will assist the trier of fact").  District courts serve a "gatekeeping" function and must ensure that an expert's testimony "is relevant to the task at

---

[1] The government's motion and memorandum in support thereof are submitted pursuant to the Court's Individual Rules of Practice, Rule VI.C.

hand."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993).  See also Wills v. Amerada Hess Corp., 379 F.3d 32, 48 (2d Cir. 2004).

The Federal Rules of Evidence define "relevant evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  As with all evidence, expert testimony may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; see Nimely, 414 F.3d at 397 ("Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations.").  Accordingly, a district court may preclude a proposed expert's testimony if the testimony is irrelevant to the issues at trial, or if its probative value would be outweighed by a danger of confusing the issues or misleading the jury.

Courts in the Second Circuit have generally taken the view that absent suggestive identification procedures, the proffered expert testimony tends to usurp the jury's role in assessing witness credibility.  In United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999), the Second Circuit upheld the exclusion of similar expert testimony, finding that there is little correlation between a witness's confidence and the accuracy of his identification and thus that the expert's "proposed testimony and explication of the scientific studies would have confused the jury's assessment of the officers' credibility" and "intrude[d] too much on the traditional province of the jury to assess witness credibility."  Additionally, in United States v. Burrous, 934 F.Supp 525, 530 (E.D.N.Y. 1996), the Honorable Edward R. Korman held that where there is corroboration of the eyewitness's testimony, the probative value of expert testimony is substantially outweighed by the risk that the expert testimony would confuse or distract the jury.

2

See also United States v. Mohamed, 157 F. Supp. 3d 268, 271-72 (E.D.N.Y. 2016) ("[E]xpert witnesses are unnecessary when the factfinder is as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training" and "cross-examination is sufficient to achieve the same effect as the proposed testimony") (quoting Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962)).

ARGUMENT

As set forth below, the defendant has failed to identify the "unusual circumstances" regarding the reliability of eyewitness identifications that were present in United States v. Nolan, 956 F.3d 71, 82 (2d Cir. 2020), nor is there any real assertion by the defendant that the identification procedure—a confirmatory photo array—itself was suggestive or tainted, as it was in Nolan. Significantly, defendant Washington was already known to the individual named in the defense motion ("Eyewitness 1") at the time of Mizell's murder, and at the time of the identification, making the photo array merely confirmatory.

The defendant offers Dr. Loftus to "testify that [Eyewitness 1's] acquaintance with Mr. Washington made it natural and easy for [Eyewitness 1] to subsequently zero in on him in an identification procedure and rule out all the fillers, which would likewise touch on the identification-procedure factor from Nolan." ECF No. 140 at 2-3. But that was not the problem with the identification procedure in Nolan.

In Nolan, one of the victims did not know the defendant and did not identify him as one of the robbers until she saw his photo in a photo array one month after the crime. 956 F.3d at 75. During the identification, she did not firmly identify the defendant until law enforcement allowed her to speak with a second victim who did not know the defendant and had identified him. The two victims then viewed photos of the defendant on Facebook together, and the first victim confirmed her identification. On the same day, the first victim discussed their

3

identification with two additional victims and showed them the defendant's Facebook photographs; those two victims were subsequently asked to identify the defendant from a photo array and did so, adding that they had recognized him from their old neighborhood. Id. at 75-76.

There is no claim by Washington that Eyewitness 1 was subject to or engaged in any similarly suggestive identification procedure. And unlike in Nolan, where the evidence against the defendant beyond those eyewitness identifications was "limited," id. at 78, here there is substantial corroboration of Washington's participation in Mizell's murder, including his own statements. See, e.g., ECF No. 134 at 2-4 (filed under seal).

Nonetheless, the defendant speculates that Jencks Act disclosures may reveal co-witness feedback issues based on the "twenty years that have passed since Mr. Mizell's death and the close-knit nature of the Hollis community." ECF No. 140 at 2 n.2. But disclosure of that material would not change the analysis here, due to a critical factual difference between the eyewitness identification in this case and in Nolan—which the defendant's motion relies on exclusively. In Nolan, two of the eyewitnesses did not know the defendant, and the two other eyewitnesses merely recognized him from their old neighborhood. Here, Eyewitness 1 knew Washington for years. Even if Eyewitness 1 discussed the perpetrators after Mizell's murder, Eyewitness 1 already knew and had a prior relationship with Washington. As such, the defendant's motion fails to consider that Eyewitness 1 was not being asked to identify an individual seen only momentarily or on a few occasions; Eyewitness 1 had known the defendant for numerous years prior to the crime. This takes the instant situation far outside the ambit of Nolan and makes the proffered expert testimony of Dr. Loftus irrelevant.

Familiarity with the defendant was found to defeat an argument about the reliability of eyewitness identification in United States v. Wyche, No. 18-CR-561 (DLI), 2022

4

WL 2199140 (E.D.N.Y. June 20, 2022). In Wyche, the court denied the defendant's motion to suppress a photo identification made by a victim eyewitness two months after her overdose, as well as any in-court identifications. Id. at *4. The court stated that the victim's "prior familiarity with Defendants based on her drug purchases from them over the course of the month leading up to her overdose provides an adequate basis to treat the identification procedure as a confirmatory identification because Jane Doe and Defendants were not strangers" and such that "Jane Doe's prior familiarity with Defendants demonstrates a lack of suggestiveness." Moreover, "[e]ven if the identification procedure was unduly suggestive, the totality of the circumstances, including Jane Doe's various independent dealings with Defendants before and after the identification on multiple dates, make an in-court identification by [the victim] independently reliable." Id.

The defendant fails to demonstrate how Dr. Loftus's expert testimony will assist the jury regarding the remaining factors that the defendant claims are present—weapon focus, high stress, and a timing delay. As Nolan and subsequent decisions have described, the Nolan court was uniquely focused on improper cross-racial identification—not present here—and improper identification procedures.[2] See United States v. Little, No. 22-CR-260 (PAE), 2022 WL 16924577, at *11 (S.D.N.Y. Nov. 10, 2022) (describing Nolan as "criticizing officers' 'highly irregular procedures' of allowing witnesses to discuss defendant's identification and

---

[2] Moreover, the holding in Nolan was not that experts should permitted to testify about eyewitness identification, but rather that counsel can be ineffective for not moving to admit such testimony—or abandoning a motion after it is made, as occurred in Nolan—where there are "unusual circumstances" in the identification such as the ones that were present in Nolan. 956 F.3d at 82. In fact, the Second Circuit discussed the possibility that the defendant's motion to admit could have very well been denied: "[E]ven if defense counsel had lost the motion, they would have educated the judge as to the frailty of the identifications and would, of course, still have been free to fully impeach the eyewitnesses at trial." Id. at 81. Here, defense counsel has made its motion, despite the absence of any "unusual circumstances," and has satisfied the concern in Nolan.

5

view his photos on Facebook" and finding no evidence that officers choreographed identifications in improper way); Spagnuolo v. Howell, 814 F. App'x 614, 619 n.5 (2d Cir. 2020) (describing Nolan as "noting that 'the presence of a weapon' and 'the stress of the situation' and 'the witness's exposure to the defendant through multiple identification procedures' are all factors that have been shown to 'impair the ability of a witness to accurately process what she observed')" and finding no evidence that witness intentionally misled police); Rosario v. City of New York, No. 18-CV-4023 (LGS), 2021 WL 1930293, at *6 (S.D.N.Y. May 13, 2021) (permitting expert testimony opining on the effects of improper suggestive police techniques).

       The defendant's real question here is why Eyewitness 1 identified defendant Washington, months after Mizell's murder, if Eyewitness 1 already knew Washington and did not identify him on the night of the murder when first interviewed.  The answer to that question does not require expert testimony about weapon focus, high stress, timing, or the non-suggestive photo array in this case.  It is a credibility question best explored and tested through cross-examination and/or by impeachment.  See United States v. Carter, 410 F.3d 942, 950 (7th Cir. 2005) (upholding discretionary exclusion of Dr. Loftus's testimony as to credibility of eyewitness testimony, noting that "it influences a critical function of the jury—determining the credibility of witnesses"); United States v. Smith, 156 F.3d 1046, 1053 (10th Cir. 1998) (affirming preclusion of Dr. Loftus's proffered testimony about "various factors that affect eyewitness identification and the circumstances that give rise to inaccurate memories" as they "touche[d] 'on areas of common knowledge'" and "would not assist the trier of fact").  Any concern can be further addressed by a jury instruction on eyewitness identifications.  See United States v. Rincon, 28 F.3d 921, 925 (9th Cir. 1994) (comprehensive jury instruction on eyewitness identification addressed many of the facts about which the expert would have testified).

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motion to preclude the expert testimony of Dr. Geoffrey Loftus.

Dated:     Brooklyn, New York
          April 10, 2023

                                    Respectfully submitted,

                                    BREON PEACE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

            By:          /s/
                                    Artie McConnell
                                    Mark E. Misorek
                                    Miranda Gonzalez
                                    Assistant United States Attorneys
                                    (718) 254-7000