UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v.-                                                    20 Cr. 305 (LDH)

KARL JORDAN, JR., and
RONALD WASHINGTON,

　　　　　　　　Defendants.

**RONALD WASHINGTON'S MEMORANDUM OF LAW
IN OPPOSITION TO THE GOVERNMENT'S MOTION TO EXCLUDE
THE EXPERT TESTIMONY OF DR. GEOFFREY LOFTUS**

Date of Service:                                    Susan G. Kellman
April 17, 2023                                      Ezra Spilke
                                                    Jacqueline Elaine Cistaro

                                                    *Counsel for Ronald Washington*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

DISCUSSION ...................................................................................................................... 1

I.    The Government's Late *Daubert* Challenge Should Be Denied as Waived or, in the Alternative, on the Merits ............................................................................................. 1

    A.   The government waived the present *Daubert* challenge. .................................. 1

    B.   As numerous federal courts around the country have found, Dr. Loftus's proposed testimony is admissible under Rule 702 and *Daubert*. .......................................... 5

II.   The Government Abandoned Its Relevancy Objection, but, Nonetheless, Dr. Loftus's Proposed Testimony Is Patently Relevant .................................................................... 15

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

<u>Cases</u>

*Alto v. Sun Pharm. Indus., Inc.*, No. 19 Civ. 9758 (GHW), 2021 WL 4803582, (S.D.N.Y. Oct. 13, 2021)...................................................................................................................... 6

*Blackmon v. City of Chicago*, No. 19 C 767, 2022 WL 3908593, (N.D. Ill. Aug. 30, 2022)......... 6

*Brown v. State*, No. A-8586, 2006 WL 2198064, (Alaska Ct. App. Aug. 2, 2006) ...................... 6

*Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110 (S.D.N.Y. 2015) ............................. 6

*Doe v. Yale Univ.*, 564 F. Supp. 3d 11 (D. Conn. 2021)............................................................... 15

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ............................................................. 3

*People v. Lerma*, 2016 IL 118496, 47 N.E.3d 985, 990 (Sup. Ct. Ill. 2016)....................... 6, 9, 10

*Robertson v. Dorn*, No. 2:21-CV-00064-SAB, 2022 WL 480673, (E.D. Wash. Feb. 16, 2022) ... 6

*Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4398011, (N.D. Ill. Aug. 18, 2016)...................................................................................................................................... 6

*Smith v. Smith*, No. 02 Civ. 7308 (WHP) (JCF), 2003 WL 22290984, (S.D.N.Y. Sept. 29, 2003) 5

*Spagnuolo v. Howell*, 814 F. App'x 614 (2d Cir. 2020).............................................................. 15

*State v. Holmes*, 2012 WL 4097296,  (Del. Super. Ct. Sept. 19, 2012)......................................... 6

*State v. Taylor*, 50 Wash. App. 481, 749 P.2d 181 (1988) ........................................................... 7

*United States v. Al-Moayad,* 545 F.3d 139 (2d Cir. 2008) ......................................................... 15

*United States v. Burrous*, 934 F. Supp. 525  (E.D.N.Y. 1996)...................................................... 3

*United States v. Carter*, 410 F.3d 942 (7th Cir. 2005).................................................................. 3

*United States v. Carter*, No. 01 CR 783, 2003 WL 22682360, (N.D. Ill. Nov. 12, 2003) ............ 7

*United States v. Duncan*, 42 F.3d 97 (2d Cir. 1994)................................................................... 13

*United States v. Harper*, No. 22-CR-170-JFH, 2023 WL 253155, (N.D. Okla. Jan. 18, 2023)..... 7

*United States v. Lumpkin*, 192 F.3d 280 (2d Cir. 1999) ............................................................... 3

*United States v. Mathis*, 264 F.3d 321 (3d Cir. 2001) ......................................................... 6, 7, 12

*United States v. Nolan*, 956 F.3d 71 (2d Cir. 2020)........................................................... 2, 5, 14

*United States v. Olano*, 507 U.S. 725 (1993)............................................................................... 1

*United States v. Rincon*, 28 F.3d 921 (9th Cir. 1994).................................................................. 3

*United States v. Sloman*, 909 F.2d 176 (6th Cir. 1990)................................................................ 4

*United States v. Smith*, 156 F.3d 1046 (10th Cir. 1998)............................................................... 3

*United States v. White*, 692 F.3d 235 (2d Cir. 2012) ................................................................. 15

*United States v. Wyche*, No. 18-CR-561 (DLI), 2022 WL 2199140 (E.D.N.Y. June 20, 2022) .. 10

*Washington v. Schriver*, 255 F.3d 45 (2d Cir. 2001) .................................................................... 7

*Yates v. Am. Republics Corp.*, 163 F.2d 178 (10th Cir. 1947)...................................................... 2

*Young v. Conway*, 698 F.3d 69  (2d Cir. 2012) ..................................................................... 13, 14

<u>Other Authorities</u>

Fed. R. Crim. P. 16(b)(1)(C)(i)..................................................................................................... 4

Fed. R. Evid. 104 ........................................................................................................................ 8

Geoffrey R. Loftus, *Eye fixations and recognition memory for pictures*, Cognitive Psychology, 3, 525-551 (1972) ................................................................................................ 12

George Mandler and Wayne J. Boeck, *Retrieval processes in recognition*, Memory & Cognition. 2 (4): 613–615 (1974) ..................................................................................... 12

George Mandler, *Recognizing: The judgment of previous occurrence*, Psychological Review 87(3): 252–271 (1980) .......................................................................................... 12

Herbert James Clark, *Random shape recognition of brief exposure durations*, Psychonomic Science, 12, 245-246 (1968) ......................................................................... 12

Herbert James Clark, *Recognition memory for random shapes as a function of complexity, association value and delay*, Journal of Experimental Psychology 69, 590-595 (1965) .......... 12

J.F. Mackworth, *Presentation rate and immediate memory*, Canadian Journal of Psychology 16, 4247 (1962) ................................................................................................. 12

Jan C. Rabinowitz and Arthur C. Graesser II, *Word recognition as a function of retrieval processes*, Bulletin of the Psychonomic Society 7: 75–77 (1976) ............................. 12

John T. Wixted, *Dual-Process theory and Signal Detection Theory of Recognition Memory*, Psychological Review 114 (1): 152–176 (2007) ...................................................... 12

Roger N. Shepard, *Recognition memory for words, sentences, and pictures*. Journal of Verbal Learning & Verbal Behavior 6, 156-163 (1967) ...................................................... 12

William P. Banks, *Signal Detection Theory and Human Memory*, Psychological Bulletin. 74 (2): 81–99 (1970) ..................................................................................................... 12

## INTRODUCTION

On behalf of Ronald Washington, we write to respond to the government's motion dated April 10, 2023, to preclude the testimony of Geoffrey Loftus, Ph. D., Dkt. 146. Because the government's objection is waived, meritless and untimely, its motion should be denied.

## DISCUSSION

### I.   The Government's Late *Daubert* Challenge Should Be Denied as Waived or, in the Alternative, on the Merits

#### A.  The government waived the present *Daubert* challenge.

For the first time on April 10, 2023, three months after receiving fulsome expert notice compliant with the new Rule 16 (January 11), six weeks after receiving supplemental notice pursuant to the Court's order (February 27), twelve days after another round of *in-limine* briefing concluded (March 29) and one week after declaring in open court that it was making a relevancy objection to Dr. Loftus's proposed testimony (April 3), the government, for the first time, has decided to try a *Daubert* challenge to that evidence. *See* Dkt. 146 at 1 ("The government formally moves, pursuant to Rule 702(a) and Rule 403, to preclude the expert testimony of Dr. Geoffrey Loftus, who has been noticed as an expert by the defendant Ronald Washington."). The government's late motion should be denied as untimely and waived.

As of the April 3 status conference, the government has waived or at least forfeited a *Daubert* challenge. A party forfeits an objection when it is untimely. *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 733 (1993). On the other hand, waiver is "the 'intentional relinquishment or abandonment of a known right.'" *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, (1938)). Waiver may be explicit or implied. "[T]o constitute implied waiver, there must be unequivocal and decisive acts or conduct of the party clearly evincing an intent to waive, or acts or conduct amounting to an estoppel on [its] part." *Yates v. Am. Republics Corp.*, 163 F.2d 178, 180 (10th

Cir. 1947). By focusing exclusively on relevancy in its statements in open court, tthe government implicitly waived the present *Daubert* challenge.

By way of background, at the January 13 status conference, the following exchange between the government and the Court took place regarding the government's motion *in limine*, Dkt. 135:

> THE COURT: . . . I do not believe it was a *Daubert* motion, but a relevance motion, but I could be wrong.
>
> MR. McCONNELL: We had very limited time to review the submission, so I don't know that we want to take a position on that until we have looked at it and briefed it fully.
>
> THE COURT: But relevance was a component of it? Your colleague is nodding yes.
>
> MR. McCONNELL: Yes, and Ms. Gonzalez --
>
> MS. GONZALEZ: Yes, Your Honor, that's correct.
>
> THE COURT: All right. I mean I viewed the objection by the Government through the lens of a relevancy objection.

Status Conf. Tr. at 74-75 (Jan. 13, 2023).

Then the Court addressed the defense, stating: "[I]f you use the *Nolan* case that was submitted by the Defense for the Court to look to, in that case Judge Rakoff identified specific issues related to the reliability of the witness identification testimony. I am going to expect for you to do the same here." *Id.* at 75. Washington complied with the Court's order, filing a supplement to its expert notice on February 27 using as a framework Judge Rakoff's comprehensive analysis of identification testimony in his opinion for the Second Circuit in *United States v. Nolan*, 956 F.3d 71 (2d Cir. 2020). *See* Dkt. 140.[1]

---

[1] The government faults Washington for relying on *Nolan* exclusively in its supplemental expert notice, which the government erroneously refers to as a "motion." Dkt. 146 at 4. But the defense

*In limine* briefing concluded on March 29, when both Jordan and Washington filed responses to the government's February 27th supplemental brief. The government filed nothing in response to Washington's February 27th filing regarding Dr. Loftus.

The Court held a status conference on April 3 regarding the *in limine* motions at which time the Court stated that it was prepared to issue its rulings in writing. At that time, the government requested a briefing schedule for the filing of an objection to Dr. Loftus's proposed testimony on *relevancy* grounds.

Government counsel's in-court statements to the contrary, its recent brief plainly states that the current motion was fashioned as a *Daubert* challenge and not the Rule 401/402 motion it promised in open court on April 3; indeed, the government fails to cite a single case that involved a relevancy challenge to an eyewitness expert. With one exception, every single case that the government cites as to eyewitness experts analyzed the experts' proposed testimony under Rule 702, without even breathing a word about the precepts of relevance. *See United States v. Burrous*, 934 F. Supp. 525, 526-30 (E.D.N.Y. 1996) (after holding a Daubert hearing, discussing the admissibility an eyewitness expert's testimony under Rule 702); *United States v. Carter*, 410 F.3d 942, 950 (7th Cir. 2005) (reviewing the district court's preclusion of Dr. Loftus's testimony for its usefulness under Rule 702); *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (reviewing admissibility of eyewitness expert's testimony under Rule 702); *United States v. Rincon*, 28 F.3d 921, 923-26 (9th Cir. 1994) (same); *United States v. Smith*, 156 F.3d 1046, 1052-54 (10th Cir. 1998) (same); *see also* Dkt. 146 at 1-2 (quoting Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *Nimely v. City of New*

---

merely was following the Court's direction to look at "the specific issues related to the reliability of the witness identification testimony" expounded in *Nolan* and "to do the same here." Status Conf. Tr. at 75 (Jan. 13, 2023).

*York*, 414 F.3d 381, 397 (2d Cir. 2005)). Only one case cited general relevance under Rule 401 in passing but, in truth, analyzed the testimony under Rule 702. *United States v. Mohamed*, 157 F. Supp. 3d 268 (E.D.N.Y. 2016).

Relevancy objection was unambiguously the government's sole ground of opposition to Dr. Loftus's proposed testimony. Yet, it now abandons relevancy and challenges the testimony under Rule 702. The government has waived this ground for preclusion.

Before April 3, indeed as of January 11, government counsel was fully aware that a *Daubert* challenge was available to them. In its January 11th expert notice, Dkt. 140, Ex. A, the defense explicitly stated that it was providing notice pursuant to Rule 16(b)(1)(C), which applies to testimony offered under Rules 702, 703 or 705. Fed. R. Crim. P. 16(b)(1)(C)(i). On January 13, the Court asked counsel for the government point-blank whether it was making a *Daubert* challenge, and the government indicated that it was primarily relying on relevancy grounds. *See United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990) ("An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course."). Again, on April 3, although the government had many opportunities to seek leave to articulate a *Daubert* challenge, counsel for the government unambiguously stated in open court that it was making a relevancy objection. The government thus waived the present *Daubert* challenge.

If the Court finds that the government did not waive its *Daubert* challenge, it would nonetheless be forfeited. Although the time for this objection was February 27 or at the latest March 29, the Court allowed the government to file – and the defense anticipated – a *relevancy* objection. That the government has now shifted the basis of its objection should not be excused. The Court previously entertained at least one of the government's motions well out of time, and

that motion had the effect of delaying trial for nearly a year. *See* Dkt. 129 (requesting an anonymous and partially sequestered jury more than six months past the deadline for the filing of motions other than motions *in limine*). But it appears that instead of prompting the government to scrupulously adhere to the Court's deadlines and orders, it only encouraged the government to ignore them.[2] The motion should be denied as waived or, in the alternative, forfeited.

### B.  As numerous federal courts around the country have found, Dr. Loftus's proposed testimony is admissible under Rule 702 and *Daubert*.

Should the Court find that the government did not waive or forfeit the present *Daubert* challenge, the objection is meritless. "Eyewitness identification testimony is notoriously prone to error." *Nolan*, 956 F.3d at 75. "The results [of mistaken identifications] can be devastating." *Id.* But eyewitness testimony can be unreliable "in ways not readily apparent to a lay jury." *Id.* at 81. For these reasons, courts in the Second Circuit routinely admit testimony by experts like Dr. Loftus on the reliability of eyewitness identifications like the ones here at issue. *See, e.g.*, *United States v. Shoendale Jarrett*, 19 Cr. 670 (LGS) (S.D.N.Y. April 27, 2021) (expert testimony of Dr. Margaret Bull Kovera admitted to contextualize identification of defendant by two parole officers who knew him, without objection from the government).

Such experts are often called upon not only to discuss mistaken identifications of strangers, but also mistaken identifications of persons known to or previously encountered by witnesses—situations in which witnesses with a weak memory of certain details fill those gaps with details of persons known from other contexts. *See id.*; *Smith v. Smith*, No. 02 Civ. 7308

---

[2] The government's late and unanticipated motions also prejudice the defense, taking counsel away from preparing for Mr. Washington's trial. Although the trial is currently scheduled for January 2024, we are in a state of constant readiness in light of the Court's message that the trial will begin earlier than January should a mutually convenient date become available. The government's *Daubert* challenge threatens again to divert defense resources away from necessary trial preparation.

(WHP) (JCF), 2003 WL 22290984, at *12 (S.D.N.Y. Sept. 29, 2003).

More generally, courts in the Second Circuit adhere to the "liberal admissibility standards of the Federal Rules of Evidence." *Alto v. Sun Pharm. Indus., Inc.*, No. 19 Civ. 9758 (GHW), 2021 WL 4803582, at *3 (S.D.N.Y. Oct. 13, 2021). And "[t]here is a presumption that expert evidence is admissible." *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 115 (S.D.N.Y. 2015), *objections overruled*, 325 F.R.D. 55 (S.D.N.Y. 2018).

The government's arguments to preclude or limit Dr. Loftus's testimony are unpersuasive. Although the government makes no claim that Dr. Loftus is not "qualified as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702, as such a claim would be frivolous, it should be noted that Dr. Loftus is a "widely-published and globally-recognized expert in the field of human perception and memory," *People v. Lerma*, 2016 IL 118496, ¶ 14, 47 N.E.3d 985, 990 (Sup. Ct. Ill. 2016). He is a "qualified and highly respected expert in this field." *Id.* ¶ 28; *see also United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001) ("[T]he government acknowledges that Dr. Loftus is a properly qualified expert and that his methods, principles, and data are of a sufficiently reliable scientific character.").

He has testified more than 400 times in state and federal courts about memory, perception, and how the science and psychology of human memory and perception impact the reliability of eyewitness testimony. *See* Dkt. 140 (Ex. A). He has published research on these subjects and stayed current with the scholarship of others in his field. *See id.*

Numerous state and federal courts have denied *Daubert* and *Frye* motions which sought to exclude his testimony.[3] Dr. Loftus's testimony about the nature of human memory and

---

[3] *E.g.*, *Blackmon v. City of Chicago*, No. 19 C 767, 2022 WL 3908593, at *4 (N.D. Ill. Aug. 30, 2022); *Robertson v. Dorn*, No. 2:21-CV-00064-SAB, 2022 WL 480673, at *6 (E.D. Wash. Feb. 16, 2022); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4398011, at *1 (N.D.

perception as well as environmental factors and post-event information that can impact human memory and perception will help the jury contextualize eyewitness testimony elicited during the government's case.

The government attempts to distinguish *Nolan* on the ground that in that case there was "limited" evidence against the defendant beyond the eyewitness identifications at issue, whereas here there is "substantial corroboration." Dkt. 146 at 4. This is not true. The only person placing Washington in the studio at the time of the murder was Eyewitness-1, who neglected to mention Washington for months after the murder notwithstanding being the prime eyewitness to the murder and even though, according to the government, she "knew Washington for years" and had "a prior relationship" with him.

Mr. Washington denies participating in the shooting death of Jason Mizell, to whom he refers as a dear friend. He has pleaded not guilty, and the case is going to trial. He has a

---

Ill. Aug. 18, 2016); *State v. Holmes*, 2012 WL 4097296, at *2 (Del. Super. Ct. Sept. 19, 2012); *Brown v. State*, No. A-8586, 2006 WL 2198064, at *16 (Alaska Ct. App. Aug. 2, 2006) ("Judge Steinkruger held a four-hour hearing at which Dr. Loftus submitted to questioning by both parties. Based on the testimony presented at this hearing, Judge Steinkruger ruled that Dr. Loftus's testimony was admissible in part."); *see Mathis*, 264 F.3d 321 (discussing at length the district court's error in disallowing Dr. Loftus's testimony but determining the error to be harmless in light of the testimony of a cooperating witness who placed the defendant at the scene); *State v. Taylor*, 50 Wash. App. 481, 490, 749 P.2d 181, 185 (1988) (reversing because it was an abuse of discretion to exclude Dr. Loftus' testimony). *But see United States v. Harper*, No. 22-CR-170-JFH, 2023 WL 253155, at *2 (N.D. Okla. Jan. 18, 2023) (excluding Dr. Loftus because in the Tenth Circuit "psychological expert witness testimony on identification is appropriately admitted only in 'narrow' and 'limited circumstances,' such as 'cross-racial identification, identification after a long delay, identification after observation under stress, and such psychological phenomena as the feedback factor and unconscious transference'"); *United States v. Carter*, No. 01 CR 783, 2003 WL 22682360, at *6 (N.D. Ill. Nov. 12, 2003), *aff'd*, 410 F.3d 942 (7th Cir. 2005) (excluding Dr. Loftus's testimony). In *Carter*, there was much stronger corroboration placing the defendant at the scene including DNA evidence than there is here, to wit, a single eyewitness. *Id.* at *6 n.1. As to *Harper*, there is no such limitation in this circuit. *See*, *infra*, discussion on *Young v. Conway* and *United States v. Nolan*. As to *Mathis*, the only witness placing Mr. Washington at the scene of the crime is Eyewitness-1.

- 7 -

constitutional right to call witnesses and present a meaningful defense. *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001) ("The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment."). As part of that defense, he will seek to educate the jury about why and how a witness might make a mistaken or false identification, including an identification of a person with whom she was acquainted. Dr. Loftus's testimony on the environmental conditions that can impede a proper witness identification will help explain to the jury how Eyewitness-1 might have been unable to perceive important details about the true gunmen and commit that person's identity to memory.

The government makes much of Washington's purported relationship with Eyewitness-1, stating that she "knew Washington for years" and had "a prior relationship" with him. Washington disputes that characterization. Washington was acquainted with Eyewitness-1 from the neighborhood, but he did not "know" her; nor did he ever have a "a prior relationship" with her. Dkt. 146 at 4. In light of this factual dispute, the government must introduce proof in support of its assertion that Eyewitness-1 had "a prior relationship" with Washington in order for this line of argument to gain any traction. *See* Fed. R. Evid. 104 ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."). Absent sufficient proof, the supposed relationship lasting years cannot bolster the government's objection.

More important, however, is that some degree of acquaintance between a witness and the person she identified does not shield an identification from other distracting factors, like weapon

focus and stress, many of which are present here and can lead to mistaken identification. Dr. Loftus will testify that it *is* as possible for a witness to mistakenly identify a stranger as it is to so identify an acquaintance. He will explain that factors at the time of an event or crime—including attention, weapon focus, duration, and stress—can limit the amount of information available to an eyewitness as they attempt to ascertain the identity of the person they are witnessing.

Dr. Loftus will testify that when "conscious experience information" is limited in this way, witnesses may misidentify a stranger as a known person or fail to make any initial identification and later reach a conclusion or construct a memory—based on post-event information—about the identity of the person they have seen. His testimony will be based on accepted research and understanding about human memory and perception conducted by Dr. Loftus and many others.

The government's attempt to discount the applicability of Dr. Loftus's testimony simply because it does not buttress its own theory of the case is unavailing. The Supreme Court of Illinois denounced an identical effort by state prosecutors, specifically with respect to testimony by Dr. Loftus, in *People v. Lerma*, *supra*.[4]

At a murder trial during which the State introduced testimony about identifications of the defendant by two eyewitnesses with prior knowledge of him, the defendant sought to call Dr.

---

[4] In *Lerma*, the defendant initially sought to introduce testimony by another expert witness, Dr. Solomon Fulero, on the topic of memory and eyewitness identification. *Lerma*, 47 N.E.3d at 988. The trial court excluded Dr. Fulero's testimony, emphasizing that the case was distinguishable from other identification cases because the eyewitnesses knew the defendant prior to the shooting and reasoning that such prior knowledge limited the relevance of testimony about factors that impact the reliability of an eyewitness identification. *Id.* at ¶¶ 9, 10. The defendant moved twice to reconsider the trial court's ruling, once before trial and once during the trial after the State presented its eyewitness testimony. *Id.* at ¶¶ 12-14. By the time of the trial and the second reconsideration motion, Dr. Fulero had passed away, and the defendant tendered a report by Dr. Loftus and sought to call him as an expert witness at trial. *Id.*

Loftus as an expert in human memory and perception and eyewitness identifications. *Id.* The State argued that his testimony did not apply to the case because the defendant was not totally unknown to the eyewitnesses. *Id.* at 3-4, ¶ 9.

But Dr. Loftus's report maintained that it was "not necessarily true" that "if a witness identifies a suspect with whom he or she is acquainted, the witness's identification would likely be accurate," and that circumstances including lighting, duration, weapon focus, and stress might still affect a witness's ability to perceive a perpetrator. *Id.* at 5, ¶ 14. Critically relevant to the facts in this case, Dr. Loftus's report also explained that it would be "natural and easy for the witness to subsequently pick the acquaintance in an identification procedure (because the witness already knows whom she is seeking in a lineup procedure, she could immediately rule out all the fillers, and zero in on the acquaintance/suspect)" and that "the witness could use his or her prior knowledge of the acquaintance's appearance to reconstruct his or her memory of the original events—the crime— such that the in fact poor original memory of the actual criminal is replaced with a stronger and more confidence-evoking memory of the acquaintance." *Id.* at 5-6, ¶ 14. The trial court excluded Dr. Loftus's testimony, the appellate court reversed and remanded, and— when the State appealed—the Illinois Supreme Court agreed that it was an abuse of discretion and not harmless error for the trial court to preclude him from testifying. *Id.* at 6-12, ¶¶ 16-33.

The Court explained that Dr. Loftus's opinion—namely that "the factors impacting the reliability of eyewitness identifications *can* operate even when the witness is previously acquainted with the accused"—was "relevant and probative" and spoke directly to the State's evidence. *Id.* at 9-10, ¶¶ 28, 32. The same reasoning applies here.

The government cites Judge Irizarry's opinion in *United States v. Wyche*, No. 18-CR-561 (DLI), 2022 WL 2199140 (E.D.N.Y. June 20, 2022), for the proposition that prior acquaintance

made the identification in that case only a confirmatory identification and, thus, not suppressible as the product of an unduly suggestive procedure. *See* Dkt. 146 at 4-5 (quoting *Wyche*). But *Wyche* is easily distinguishable. Unlike here, the defense in *Wyche* did not (1) argue the prior familiarity point specifically or (2) call an expert to explain that mistakes can even occur when the witness and the suspect are acquainted. Thus, the subject of Dr. Loftus's proposed testimony – which, based on accepted research, debunks the old belief that prior familiarity fully negated the factors that corrupt accurate eyewitness identification – was not before Judge Irizarry. Neither party cited *Lerma* or any other case showing that "factors impacting the reliability of eyewitness identifications *can* operate even when the witness is previously acquainted with the accused." *Wyche* is thus inapposite.

The government further attempts to distinguish *Nolan* on the ground that, here, there was no problem with the identification procedures the police used. But that, too, is also not the case. The photo array procedure used in this case worked in concert with other factors that may have affected Eyewitness-1's perception of the events. The government completely ignores the critical fact that, for months after the shooting, she had not identified anyone as the person who held her on the ground with a gun – which is totally at odds with the notion that the two were acquainted or had a "prior relationship."

The photo array at issue was a six-pack presented to Eyewitness-1. The six photos presented to the witness included five strangers and one person with whom she was at least acquainted. It is no surprise, and it is consistent with Dr. Loftus's explanation of the relationship between familiarity and memory, that Eyewitness-1 selected the only person she knew from the pack. (The six-pack will be supplied to the Court under separate cover under seal).

Dr. Loftus will testify that a photo array of this type runs the risk of prompting a witness

to a crime to select the one person they recognize, even if they recognize the person from a context other than the crime. Along with his own research on the relationship between familiarity and memory, his opinion is based on the research and scholarship of others in the field.[5] Dr. Loftus's testimony about the relationship between human memory and familiar content will be relevant and helpful to the jury's understanding of the photo array procedure conducted in this case.

In *Mathis*, the Third Circuit found that the district court had erred by excluding similar testimony by Dr. Loftus. 264 F.3d at 336-37. Specifically, Dr. Loftus would have testified about how "a person confronting an image may have a firm memory of having previously viewed the image but may not have a similarly firm memory of when that viewing occurred," and that the witness's prior viewings or encounters with the suspect constitute a form of "potentially inaccurate post-event information." *Id.* Dr. Loftus's proposed testimony was based in part on "studies in which subjects remembered having seen an image, but, upon being asked to associate that image with one of two times they might possibly have seen it, the subjects often

---

[5] *See, e.g.*, George Mandler, *Recognizing: The judgment of previous occurrence*, Psychological Review 87(3): 252–271 (1980) (cited 3,882 times in other academic journals according to Google Scholar); George Mandler and Wayne J. Boeck, *Retrieval processes in recognition*, Memory & Cognition. 2 (4): 613–615 (1974) (cited 132 times); Jan C. Rabinowitz and Arthur C. Graesser II, *Word recognition as a function of retrieval processes*, Bulletin of the Psychonomic Society 7: 75–77 (1976) (cited 5 times); William P. Banks, *Signal Detection Theory and Human Memory*, Psychological Bulletin. 74 (2): 81–99 (1970) (cited 716 times); John T. Wixted, *Dual-Process theory and Signal Detection Theory of Recognition Memory*, Psychological Review 114 (1): 152–176 (2007) (cited 1,133 times); Geoffrey R. Loftus, *Eye fixations and recognition memory for pictures*, Cognitive Psychology, 3, 525-551 (1972) (cited 472 times); Herbert James Clark, *Recognition memory for random shapes as a function of complexity, association value and delay*, Journal of Experimental Psychology 69, 590-595 (1965) (cited 69 times); Herbert James Clark, *Random shape recognition of brief exposure durations*, Psychonomic Science, 12, 245-246 (1968) (cited 26 times); J.F. Mackworth, *Presentation rate and immediate memory*, Canadian Journal of Psychology 16, 4247 (1962) (cited 60 times); Roger N. Shepard, *Recognition memory for words, sentences, and pictures*. Journal of Verbal Learning & Verbal Behavior 6, 156-163 (1967) (cited 2,482 times).

'remembered' inaccurately." *Id.* at 341. This testimony—found by the Third Circuit to have been wrongly excluded under Rule 702—closely relates to Dr. Loftus's anticipated testimony about the photo array procedure in this case.

Moreover, Dr. Loftus's proposed testimony about the photo array should be permitted whether or not the government elicits testimony about it from Eyewitness-1. It is beyond dispute that pre-trial, out-of-court identification procedures bear on the reliability of in-court identifications. *Young v. Conway*, 698 F.3d 69, 77-78 (2d Cir. 2012). Because a witness who already "has picked out the accused" is "not likely to go back on his word later on," such pre-trial identification procedures can be outcome-determinative for the question of identity at trial. *Id.* "Indeed, social science research indicates that false identification rates increase, and accuracy on the whole decreases, when there are multiple identification procedures." *Id.* (citing Ryan D. Godfrey & Steven E. Clark, *Repeated Eyewitness Identification Procedures: Memory, Decision Making, and Probative Value,* 34 Law & Hum. Behav. 241, 241, 256 (2010)). To be sure, even if the government does not elicit testimony about the photo array during direct examination of Eyewitness-1, it is Mr. Washington's right to cross-examine her about it. Dr. Loftus's testimony will help the jury understand her answers.

Citing cases from two other circuit courts, the government asserts that eyewitness identification expert testimony usurps the role of the jury. Dkt. 146 at 6 (citing *Carter*, 410 F.3d at 950 and *Smith*, 156 F.3d at 1053); *see also* Dkt. 146 at 1 (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) for that proposition even though *Duncan* did not concern the type of expertise at issue here).[6] *Carter* and *Smith* concluded that the subject matter of Dr. Loftus's

---

[6] The government's citation of *Duncan* is odd for another reason as well. In that case, the district court *did not* preclude the expert's testimony, and the Second Circuit concluded that the expert

proposed testimony is common knowledge. *E.g.*, *Carter*, 410 F.3d at 950 (opining that jurors understand that memory can be less than perfect and quoting *United States v. Hall*, 165 F.3d 1095, 1101-03 (7th Cir.1999) for the proposition that "the hazards of eyewitness identification are 'well within the ken of most lay jurors'"). But the court of appeals for *this* circuit disagrees.

Specifically, the Second Circuit has observed that many of the factors that can impair the ability of a witness to make a reliable identification—including "the perpetrator's wearing a disguise, the presence of a weapon, the stress of the situation, the cross-racial nature of the crime, the passage of time between observation and identification, and the witness's exposure to defendant through multiple identification procedures —are "counterintuitive and, therefore, not coterminous with 'common sense.'" *Young*, 698 F.3d at 79; *see also id.* at 88. As a result, expert testimony may be necessary to educate juries about highly relevant, generally accepted findings in social science research. *Id.* at 79-80. Engaging with this research with the assistance of expert witnesses is so important to cases involving eyewitness identifications that the Second Circuit has granted habeas petitions based on ineffective assistance of counsel where the defense failed to call or consult such experts. *See Nolan*, 956 F.3d at 75.

Finally, the government mischaracterizes the *Nolan* court as "uniquely focused on improper cross-racial identification . . . and improper identification procedures." Dkt. 146 at 5. But that is simply not the case.

To be sure, cross-racial identification is paradigmatically prone to error. But, as we noted in Mr. Washington's supplemental expert notice, *Nolan* identified a number of "impairing factors" other than cross-racial or -ethnic identifications. Specifically, the defense cited:

---

testimony was *properly admitted*. *Duncan*, 42 F.3d at 101. As here, the expert was not telling the jury what result to reach and thus did not usurp the role of the jury.

- Partial disguise (a half ski mask and a "skully");

- Weapon focus;

- High stress triggered by aggressive behavior;

. . .

- A delay of many weeks between the event and the identifications; and

- Identification procedures susceptible to bias, including co-witness feedback.

Dkt. 140 at 1 (citing *Nolan*, 956 F.3d 71 (2d Cir. 2020) at 80-81 & Dkt. 136 at 2). Indeed, one of the three cases cited by the government in support of this proposition (Dkt. 146 at 6) actually undermines its own point about the limits of *Nolan's* reasoning. That case plainly states that the presence of a weapon and the stress of the situation were also at issue in *Nolan*. *Spagnuolo v. Howell*, 814 F. App'x 614, 619 n.5 (2d Cir. 2020). Thus, the Second Circuit itself has observed that its decision in *Nolan* implicated more than cross-racial identification and sloppy identification procedures.

## II.   The Government Abandoned Its Relevancy Objection, but, Nonetheless, Dr. Loftus's Proposed Testimony Is Patently Relevant

By failing to cite a single case excluding eyewitness expert testimony on relevancy grounds and focusing exclusively on Rule 702, the government appears to have abandoned its relevancy objection. Nonetheless, it is worth noting that the threshold for relevancy is a "very low standard." *United States v. Al-Moayad,* 545 F.3d 139, 176 (2d Cir. 2008); *see also Doe v. Yale Univ.*, 564 F. Supp. 3d 11, 18 (D. Conn. 2021) ("Rule 401 does not set a high bar for characterizing evidence as *relevant*. '[A]ny tendency' to make 'more or less probable' a fact which is of some 'consequence in determining the action' is language of inclusion, not exclusion."). "Unless an exception applies, all relevant evidence is admissible." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012), *as amended* (Sept. 28, 2012) (cleaned up) (quoting Fed.

R. Evid. 402).

Dr. Loftus's proposed testimony is patently relevant. The conditions under which

Eyewitness-1 formed her memories of the events in question and under which she identified Mr.

Washington implicate multiple factors within Dr. Loftus's specialized knowledge. In that regard,

we stated in Washington's supplement to his expert notice as follows:

> These conditions include a likely lack of attention on [Eyewitness-1]'s part to the
> [gunmen's] appearances, along with the high-stress and weapon-focus factors
> identified in *Nolan*.  Dr. Loftus will also testify about the corrupting effects that
> the passage of time and post-event information have on a witness's memory,
> which relate to the delay and identification-procedure factors identified by the
> Second Circuit in *Nolan*. We also expect that Dr. Loftus will testify that
> [Eyewitness-1]'s acquaintance with Mr. Washington made it natural and easy for
> her to subsequently zero in on him in an identification procedure and rule out all
> the fillers, which would likewise touch on the identification-procedure factor from
> *Nolan*.

Dkt. 140 at 2. Dr. Loftus will explain that Eyewitness-1's identification may have been mistaken

based on the presence of such factors as weapon focus; high stress triggered by aggressive

behavior; a long delay between the event and the identification; and co-witness feedback. *See*

Dkt. 140. His testimony easily clears the "very low bar" set by Rules 401 and 402 and should be

admitted.

## CONCLUSION

The government's motion to exclude Dr. Loftus's proposed testimony should be denied.

In the alternative, the Court should hold a hearing under *Daubert*.

Dated: Brooklyn, New York
       April 16, 2023

Respectfully submitted,

/s/ SGK                                         /s/ EMS
Susan G. Kellman                      Ezra Spilke
25 Eighth Avenue                      Law Offices of Ezra Spilke, PLLC
Brooklyn, New York 11217       1825 Foster Ave., Ste. 1K
(718) 783-8200                           Brooklyn, New York 11230

sgk@kellmanesq.com

(718) 783-3682
ezra@spilkelaw.com

/s/ JEC
Jacqueline Elaine Cistaro
Law Offices of Jacqueline E. Cistaro
325 Broadway, Ste. 505
New York, NY 10007
(646) 253-0583
JEC@cistarolawfirm.com

TO:     Breon Peace, Esq.
        United States Attorney
        Eastern District of New York
Attn:   Artie McConnell, Mark E. Misorek, Miranda Gonzalez
        Assistant United States Attorneys