

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NB:JAM/MEM/MG
F.#2017R00509

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 30, 2023

<u>By ECF</u>

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Karl Jordan, Jr., et al.
                 Criminal Docket No. 20-CR-305 (S-2) (LDH)

Dear Judge DeArcy Hall:

      The government respectfully submits this letter in support of its motion for a permanent order of detention for defendant Jay Bryant, also known as "Bradshaw Dewitt, "Jason Robinson," "Morgan Bryant," "Deshawn Sadler," "Jay Sadler," and "Big Jay." Bryant is charged in the above-captioned superseding indictment with the 2002 narcotics-related murder of Jason Mizell, along with the previously charged defendants Ronald Washington, also known as "Tinard," and Karl Jordan Jr., also known as "Little D" and "Noid."

      Bryant is currently being held pending trial under indictment No. 22-CR-415 (E.D.N.Y) (BMC), an unrelated case charging him with violations of Title 21, United States Code, Section 846, 841(b)(1)(A)(ii) and (iii) (distributing five kilograms of cocaine and 280 grams of crack cocaine) and Title 18, United States Code, Section 924(c)(1)(A)(i) (use of firearms in connection with a drug trafficking crime). See 22-CR-415 (BMC).[1]

---

[1]     In connection with this case, Bryant was first arraigned on a complaint in the Eastern District of Pennsylvania. See No. 22-MJ-1059 (E.D. Pa.). The Honorable Carol Sandra Moore Wells, Magistrate Judge for the Eastern District of Pennsylvania, entered a permanent order of detention, finding that Bryant was a flight risk and posed a danger to the community. Bryant was later arraigned on an indictment in the Eastern District of New York, and the government submitted a letter in support of its motion to continue the permanent order of detention. See No. 22-CR-415 (E.D.N.Y. Oct. 29, 2022), ECF No. 4.

For the reasons set forth below, the government respectfully requests that the Court enter a permanent order of detention in the instant case.[2]

I.   Factual Background and the Instant Offense[3]

The instant indictment arises from an investigation of Mizell's murder conducted by the New York City Police Department ("NYPD"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office for the Eastern District of New York. Mizell was a member of the influential hip hop group Run-D.M.C. Mizell, Washington and Jordan are all from Hollis, Queens. Bryant is from Jamaica, Queens.

On Wednesday, October 30, 2002, Mizell was present at his recording studio located on Merrick Boulevard in Queens, New York. At approximately 7:30 p.m., Washington, Jordan and Bryant entered the building. Washington pointed his firearm at one of the individuals located inside the studio and demanded that the person lay on the floor. Jordan approached Mizell, pointed his firearm at him, and fired two shots at close range. One of those shots hit Mizell in the head, killing him. The second shot struck another individual in the leg. All three defendants fled the crime scene.

Bryant was observed entering the building immediately before the shooting and an article of clothing left at the crime scene contained Bryant's DNA. He later admitted to participating in the murder, claiming to one associate that he was in fact the shooter.[4]

---

[2]   Bryant's arraignment has not been scheduled. At the Court's direction, the government can produce Bryant for arraignment before the duty magistrate, or the arraignment can take place during the status conference scheduled for this Thursday, June 1, 2023, or at another time convenient to the Court.

[3]   Detailed herein are a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendants. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings). This proffer of facts is not a complete statement of all facts and evidence of which the government is aware or that it will seek to introduce at a detention hearing or trial.

[4]   The evidence does not support Bryant's claim that he was the shooter, and the evidence at trial will prove that Jordan was the individual that shot Mizell.

II.       Prior Criminal History

Bryant is a convicted felon with a criminal history spanning over two decades in multiple states. During that time, he has used over half a dozen aliases, failed to appear for court dates and absconded from release on bail and other forms of court supervision.

Bryant's earliest known arrest is from 1993, when he was arrested for Criminal Possession of a Weapon in the Fourth Degree, a Class A misdemeanor, in violation of New York State Penal Law Section 265.01(2). During that case, he used the name "Deshawn Jason Sadler." A bench warrant was issued in that case and the ultimate disposition is unknown. In 1995, now using the name "Bradshaw Dewitt," Bryant was arrested and indicted for Criminal Possession of a Controlled Substance in the Third Degree, Possession of Narcotics with Intent to Sell, in violation of New York State Penal Law Section 220.16(1). While on probation for that offense, in 1996, Bryant was arrested when police responded to reports of possible shots being fired in the 103rd Precinct in Queens, New York. Bryant struck one of the responding officers and attempted to flee. He was ultimately arrested and found to be wearing a bulletproof vest. That case was ultimately dismissed. Then, in 1997, Bryant was arrested for Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York State Penal Law Section 220.39(1), providing the name "Morgan Bryant." His probation was revoked, and he was sentenced to an indeterminate sentence of 1 to 3 years imprisonment to cover both cases.

In addition to his New York state record, Bryant has prior contacts with the criminal justice system in Pennsylvania and Connecticut. After completing the aforementioned 1 to 3 year sentence in New York and while on parole supervision, Bryant absconded. He was arrested in Pennsylvania in March 1998 and used the name "Jay Bryant." Only through a fingerprint match was the New York warrant revealed.

Also, in 1997, Bryant was arrested and charged with Robbery in the First Degree with a firearm in Connecticut under the name "Jason Robinson Jr." Although a $20,000 bond was set, Bryant fled the jurisdiction during the pendency of that case, and an arrest warrant was issued. Pursuant to a November 2007 car stop in Pennsylvania, Bryant produced a North Carolina license with the name "Bradshaw Dewitt." Further investigation revealed the active warrant from Connecticut, and Bryant was extradited and ultimately sentenced to three years imprisonment for Failure to Appear in the First Degree.

III.      Legal Standard

    A.       The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the

3

person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). Similarly, a defendant should be detained if the court finds that release on bail would pose a danger, 18 U.S.C. § 3142(e), though detention based on dangerousness must "be supported by clear and convincing evidence," 18 U.S.C. § 3142(f).

The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

B. Presumption Cases

In cases such as this one, a rebuttable presumption both of flight and dangerousness arises when there is probable cause to believe the defendant committed a drug offense carrying a maximum sentence of ten years or more, or a firearms offense under 18 U.S.C. § 924(c). 18 U.S.C. § 3142(e)(3)(A), (B); 18 U.S.C. § 924(j) (murder "in the course of a violation of subsection (c)"); 21 U.S.C. § 848(e)(1)(A) (conviction is punishable by "any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death."). Probable cause may be established by an indictment, such that there is no need for an independent judicial probable cause determination. United States v. Contreras, 776 F.2d 51, 55 (2d Cir. 1985). The presumption requires the Court to initially assume there are "no conditions or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(3).

When a presumption of detention is applicable, the defendant bears the burden of rebutting that presumption by coming forward with evidence "that contradicts notions of flight risk or dangerousness." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). To be released, a defendant facing this presumption must come "forward with evidence that he does not pose a danger to the community or a risk of flight," though the government must ultimately persuade the court that detention is warranted. Mercedes, 254 F.3d at 436. Even if the defendant were to meet his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id. A bail package sufficient to overcome a presumption of flight may not be enough to overcome a presumption of dangerousness. United States v. Rodriguez, 950 F.2d 85, 89 (2d Cir. 1991).

4

C. Dangerousness

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history); United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985). This includes "the harm to society caused by [the likelihood of continued] narcotics trafficking." United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985).

IV. Argument

Bryant cannot overcome the legal presumption in favor of detention. While there is a presumption in favor of detention, even absent that presumption, consideration of the applicable factors discussed below overwhelmingly warrant detention in this case.

Bryant's significant criminal history demonstrates that he presents an acute danger to potential witnesses in the instant case, a significant danger to the community at large and a substantial risk of flight if released on bond. Notably, when arrested in Pennsylvania on his other pending indictment in this District, Bryant volunteered that if he was released, he would flee to Cuba, stating in substance, "I'll be gone and you'll never see me again." Notably, also recovered from Bryant's apartment were three drivers' licenses from two different states and in two different names, as well as various debit cards and other forms of identification documentation for Bryant in different names. Thus, given Bryant's significant history of absconding and his prolific use of aliases, he presents an irremediable flight risk.

Additionally, the seriousness of the charges is obvious and there is compelling evidence of Bryant's guilt, including witness testimony, DNA evidence and the defendant's own statements to third parties where he admits, inter alia, to his relationship with his codefendants and his participation in Mizell's murder.

Finally, if convicted, the defendant faces significant sentencing exposure. Even if the Attorney General does not direct the United States Attorney's Office to seek the death penalty, [5] Bryant faces a statutory mandatory minimum term of imprisonment of 20 years. The defendants' sentencing exposure weighs in favor of detention, as it provides motive and incentive to flee the jurisdiction. See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant faced a

---

[5] The government has moved for expedited review of Bryant's case by the Capital Case Section and expects a decision shortly, as the Attorney General has previously authorized the government to not seek the death penalty with respect to the codefendants.

5

presumption against release, and a mandatory minimum sentence that incentivized fleeing); United States v. Henderson, 57 F. App'x 470, 471 (2d Cir. 2003) (citing 18 U.S.C. § 3142(a) and holding that, "[i]n this case, the presumption regarding flight risk has changed because [the defendant] now faces a ten-year mandatory minimum sentence"); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

V.      Conclusion

For the foregoing reasons, the government submits that no condition or combination of conditions will reasonably assure the safety of the community, the defendant's return to court, or his compliance with the Court's orders.  The government therefore respectfully requests that the defendant be detained pending trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Artie McConnell
Mark E. Misorek
Miranda Gonzalez
Assistant U.S. Attorneys
(718) 254-7000


Cc:     Clerk of Court (LDH) (by ECF)
        Counsel for Defendant (by Email)