NB:JAM/MEM/MG
F.#2017R00509

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -                       Docket No. 20-CR-305 (S-2) (LDH)

KARL JORDAN, JR.,
          also known as "Little D"
          and "Noid,"
RONALD WASHINGTON,
          also known as "Tinard," and
JAY BRYANT,
          also known as "Bradshaw
          Dewitt," "Jason Robinson,"
          "Morgan Bryant," "Deshawn
          Sadler," "Jay Sadler," and
          "Big Jay,"

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT JAY BRYANT'S MOTION TO SEVER

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Artie McConnell
Mark E. Misorek
Miranda Gonzalez
Assistant U.S. Attorneys
      (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .............................................................................................................. 1

    I.     The Offense Conduct ........................................................................................ 1

    II.    Relevant Procedural History ............................................................................ 2

ARGUMENT ................................................................................................................... 3

    I.     Applicable Law ................................................................................................ 4

         A.     Rule 14(a) and Joint Trials ....................................................................... 4

         B.     Mutually Antagonistic Defenses ............................................................... 7

    II.    Bryant Has Not Established a Legal Basis for Severance ..................................... 8

         A.     Bryant's Failure to Proffer a Defense is Fatal, and Any Anticipated
              Defenses Are Not Mutually Antagonistic ................................................... 8

         B.     Joinder Does Not Subject Bryant to "Double Prosecution" ..................... 14

         C.     Appropriate Limiting Instructions Are Sufficient to Address Any
              Prejudice ............................................................................................... 16

         D.     Judicial Efficiency Weighs Against Severance ......................................... 17

         E.     Counsel's Scheduling Conflicts Do Not Provide a Basis for
              Severance or Adjournment of Trial ......................................................... 20

CONCLUSION............................................................................................................... 23

## TABLE OF AUTHORITIES

Page(s)

Cases

Bruton v. United States,
    391 U.S. 123 (1968)............................................................................... 2, 5, 18

In re Terrorist Bombings of U.S. Embassies in E. Africa,
    552 F.3d 93 (2d Cir. 2008) ........................................................................ 4

Leslie v. Artuz,
    230 F.3d 25 (2d Cir. 2000) ...................................................................... 22

Richardson v. Marsh,
    481 U.S. 200 (1987)............................................................................. 5, 18

United States. v. Marcus Schloss & Co.,
    No. 88 CR 796 (CSH), 1988 WL 140794 (S.D.N.Y. Dec. 20, 1988) ..................................... 21

United States v. Adelekan,
    No. 19-CR-291 (LAP), 2021 WL 4839065 (S.D.N.Y. Oct. 15, 2021)..................................... 13

United States v. Amato,
    15 F.3d 230 (2d. Cir. 1994) ...................................................................... 6

United States v. Aquart,
    No. 06-CR-160 (JBA), 2010 WL 3211074 (D. Conn. Aug. 13, 2010) ..................................... 11

United States v. Attanasio,
    870 F.2d 809 (2d Cir. 1989) ...................................................................... 6

United States v. Barret,
    824 F. Supp. 2d 419 (E.D.N.Y. 2011) ....................................................... 5, 6, 18

United States v. Basciano,
    No. 05-CR-060 (NGG), 2007 WL 3124622 (E.D.N.Y. Oct. 23, 2007) ............................ 14, 15

United States v. Bin Laden,
    109 F. Supp. 2d 211 (S.D.N.Y. 2000) ......................................................... 5

United States v. Cardascia,
    951 F.2d 474 (2d Cir. 1991) ................................................................ 7, 10, 19

United States v. Carpenter,
    689 F.2d 21 (2d Cir. 1982) ................................................................... 7, 10

United States v. Casamento,
   887 F.2d 1141 (2d Cir. 1989) ................................................................ 6, 7

United States v. Chierchio,
   No. 20-CR-306 (NGG), 2022 WL 523603 (E.D.N.Y. Feb. 22, 2022) .................. 11, 13, 16, 19

United States v. Cicale,
   691 F.2d 95 (2d Cir. 1982) ...................................................................... 22

United States v. Copeland,
   336 F. Supp. 2d 223 (E.D.N.Y. 2004) ........................................................ 15

United States v. DeVillio,
   983 F.2d 1185 (2d Cir. 1993) ................................................................... 17

United States v. Ferguson,
   246 F.R.D. 107 (D. Conn. 2007) ............................................................... 21

United States v. Feyrer,
   333 F.3d 110 (2d Cir. 2003) ...................................................................... 4

United States v. Franco,
   No. 13-CR-15 (PKC), 2013 WL 2246917 (S.D.N.Y. May 17, 2013) ................................ 20, 21

United States v. Friedman,
   854 F.2d 535 (2d Cir. 1988) ...................................................................... 6

United States v. Hameedi,
   No. 17-CR-137 (JGK), 2017 WL 5152991 (S.D.N.Y. Nov. 3, 2017) ....................................... 13

United States v. Harwood,
   998 F.2d 91 (2d Cir. 1993) ............................................................... 10, 11, 17

United States v. Haynes,
   16 F.3d 29 (2d Cir. 1994) ....................................................................... 11

United States v. Hendricks,
   921 F.3d 320 (2d Cir. 2019) ..................................................................... 14

United States v. Jackson,
   792 F. App'x 849 (2d Cir. 2019) ............................................................... 11

United States v. Jenkins,
   279 F. Supp. 3d 455 (W.D.N.Y. 2018) .......................................................... 22

United States v. Jimenez,
   824 F. Supp. 351 (S.D.N.Y. 1993) .......................................................... 5, 19

United States v. Lanza,
  790 F.2d 1015 (2d Cir. 1986).................................................................... 19

United States v. Larranga Lopez,
  No. 05-CR-655 (SLT), 2006 WL 1307963 (E.D.N.Y May 11, 2006) .................................. 8, 9

United States v. Lyles,
  593 F.2d 182 (2d Cir. 1979) ................................................................... 5, 18

United States v. Miller,
  116 F.3d 641 (2d Cir. 1997) ...................................................................... 16

United States v. Moore,
  228 F. Supp. 2d 75 (D. Conn. 2002)................................................................ 22

United States v. Nordlicht,
  No. 16-CR-640 (BMC), 2018 WL 1796542 (E.D.N.Y. Apr. 16, 2018)............................. 15, 18

United States v. Novak,
  903 F.2d 883 (2d Cir. 1990) ...................................................................... 22

United States v. Pirro,
  76 F. Supp. 2d 478 (S.D.N.Y. 1999) ................................................................ 6

United States v. Rittweger,
  524 F.3d 171 (2d Cir. 2008) ....................................................................... 6

United States v. Rivera,
  No. 09-CR-619 (SJF), 2011 WL 1429125 (E.D.N.Y. Apr. 13, 2011).................................... 16

United States v. Rucker,
  32 F. Supp. 2d 545 (E.D.N.Y. 1999) ................................................................ 4

United States v. Salameh,
  152 F.3d 88 (2d Cir. 1998) ........................................................................ 5

United States v. Schegel,
  687 F. App'x 26 (2d Cir. 2017) ................................................................... 17

United States v. Scopo,
  861 F.2d 339 (2d Cir. 1988) ...................................................................... 21

United States v. Scott,
  637 F. App'x 10 (2d Cir. 2015) .............................................................. 8, 11, 13

United States v. Serpoosh,
  919 F.2d 835 (2d Cir. 1990) ....................................................................... 7

United States v. Shkreli,
    260 F. Supp. 3d 247 (E.D.N.Y. 2017) ............................................................ 12, 13

United States v. Spinelli,
    352 F.3d 48 (2d Cir. 2003) ............................................................................. 5, 16

United States v. Squitieri,
    No. 05-CR-228 (AKH), 2006 WL 859365 (S.D.N.Y. Mar. 31, 2006)................... 20

United States v. Villegas,
    899 F.2d 1324 (2d Cir. 1990) ......................................................................... 13, 21

United States v. Walker,
    142 F.3d 103 (2d Cir. 1998) ................................................................................. 6

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) ............................................................................. 7, 10

Wheat v. United States,
    486 U.S. 153 (1988)............................................................................................ 20

Zafiro v. United States,
    506 U.S. 534 (1993)..................................................................................... passim

Rules

Federal Rule of Criminal Procedure 8(b)................................................................... 4

Federal Rule of Criminal Procedure 14(a)................................................................. 1

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to defendant Jay Bryant's motion to sever pursuant to Federal Rule of Criminal Procedure 14(a). See ECF No. 177 ("Mot."). The three defendants are charged with the narcotics-related murder of Jason Mizell, also known as "Jam Master Jay," as alleged in Counts One and Two of the second superseding indictment.

As set forth below, Bryant's motion to sever should be denied because his claim that the defendants present mutually antagonistic defenses is conclusory, speculative and unsupported by case law. His purported scheduling concerns are similarly unpersuasive and do not warrant severance when balanced against judicial economy and the other benefits of a joint trial.

BACKGROUND

I.    The Offense Conduct

The instant indictment arises from an investigation of Mizell's murder conducted by the New York City Police Department ("NYPD"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office for the Eastern District of New York. Mizell was a member of the influential hip hop group Run-D.M.C. Mizell, co-defendant Ronald Washington and co-defendant Karl Jordan, Jr. are all from Hollis, Queens. Bryant is from the adjacent neighborhood of Jamaica, Queens.

On Wednesday, October 30, 2002, Mizell was present at his recording studio located on Merrick Boulevard in Hollis, Queens, New York. At approximately 7:30 p.m., Washington, Jordan and Bryant entered the building. Washington pointed a firearm at one of the

individuals located inside the studio and demanded that the person lay on the floor.  Jordan approached Mizell, pointed a firearm at him, and fired two shots at close range.  One of those shots hit Mizell in the head, killing him.  The second shot struck another individual in the leg.  All three defendants fled the crime scene.

Bryant was observed entering the building immediately before the shooting and an article of clothing left at the crime scene contained Bryant's DNA.  He later admitted to participating in the murder, bragging to one associate that he was the shooter.  However, the evidence does not support Bryant's claim that he was in fact the shooter—while the evidence will prove Bryant was present for and participated in the murder, witnesses have identified Washington and Jordan as the gunmen.  Both Washington and Jordan have made statements to third parties about their respective participation in Mizell's murder.[1]

## II.   Relevant Procedural History

On August 13, 2020, a grand jury in the Eastern District of New York returned an indictment charging Jordan and Ronald Washington with one count of murder while engaged in narcotics trafficking, in violation of Title 21, United States Code, Section 848(e)(1)(A) (Count One), and one count of firearm-related murder, in violation of Title 18, United States Code, Sections 924(j)(1) (Count Two), for the October 30, 2002 murder of Mizell.

Jordan was also charged with one count of conspiracy to distribute cocaine and seven counts of cocaine distribution, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C).  On March 4, 2021, the grand jury returned a superseding indictment, which charged

---

[1] The Court has already rejected severance motions from defendants Jordan and Washington based on antagonistic defense arguments and under Bruton v. United States, 391 U.S. 123 (1968).  See ECF No. 107.  Additionally, Bryant's statement regarding his participation in the murder does not reference either of the other defendants and thus does not implicate Bruton.

Jordan with one count of conspiracy to distribute 280 grams or more of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(iii), and one additional count of use of firearms in connection with a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

On May 30, 2023, a grand jury returned a second superseding indictment to add Bryant as a defendant under Counts One and Two for Mizell's murder.[2]

Regarding the defendants' anticipated defenses at trial, on December 20, 2021, defendant Jordan served notice pursuant to Rule 12.1 of his intent to present alibi testimony from two witnesses.  See ECF No. 67.  While the contours of defendant Washington's defense are not known, he has informed the Court that he will not be presenting an alibi defense.  See ECF No. 118 at 2.  Instead, on January 11, 2023, Washington served notice pursuant to Rule 16(b)(1)(C) of his intent to offer expert testimony regarding the unreliability of eyewitness identifications.  See ECF Nos. 135, 136.  Bryant's potential trial defense is unknown, as he fails to proffer one in his severance motion and has, to date, failed to respond to the government's demand for alibi notice.

<u>ARGUMENT</u>

Severance is not warranted in this case.  The government anticipates that it will present virtually identical evidence at trial as to Bryant and his two co-defendants, Jordan and Washington.  This evidence includes testimony by multiple witnesses, including those who have expressed fear of reprisal and those who reside out of the state and country.  Protecting these

---

[2] Bryant is also currently being held pending trial under indictment No. 22-CR-415 (E.D.N.Y) (BMC), an unrelated case charging him with violations of Title 21, United States Code, Section 846, 841(b)(1)(A)(ii) and (iii) (distributing five kilograms of cocaine and 280 grams of crack cocaine) and Title 18, United States Code, Section 924(c)(1)(A)(i) (use of firearms in connection with a drug trafficking crime).

witnesses from the substantial burden of being required to prepare for, appear at, and testify at two trials, as well as the interests of judicial economy, favor a joint trial.

Bryant's articulated grounds for severance are unavailing.  He proffers no defense, and any anticipated defenses will not be mutually antagonistic and do not support severance.  A concern regarding any spillover prejudice is diminished here because the government anticipates that it would put on much of the same evidence against Bryant regardless of whether he is tried independently or jointly with Jordan and Washington.  Further, any tangible concern about such prejudice could be resolved through a limiting instruction.  Finally, defense counsel's purported scheduling conflicts do not warrant severance or adjournment of the trial date, for which he has had almost eight months to prepare.

I.      Applicable Law

      A.      Rule 14(a) and Joint Trials

Federal Rule of Criminal Procedure 8(b) provides that an indictment may charge multiple defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  The "defendants may be charged in one or more counts together or separately."  Id.

Rule 14(a) permits severance "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant."  Fed. R. Crim. P. 14(a).  However, there is a "preference in the federal system for joint trials of defendants who are indicted together" because they promote efficiency and prevent the injustice of inconsistent verdicts.  In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 131 (2d Cir. 2008) (quoting Zafiro v. United States, 506 U.S. 534 (1993)); see also United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (holding that for reasons of economy, convenience and avoiding delay, there is a preference for joint trials).

4

Joint trials "limit inconveniences to witnesses, avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury." United States v. Rucker, 32 F. Supp. 2d 545, 547 (E.D.N.Y. 1999); see also United States v. Barret, 824 F. Supp. 2d 419, 432-33 (E.D.N.Y. 2011). As the Supreme Court has stated:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

Richardson v. Marsh, 481 U.S. 200, 209-10 (1987); see also Bruton, 391 U.S. at 134 (joint trials conserve state funds, diminish inconvenience to witnesses and avoid delays); United States v. Lyles, 593 F.2d 182, 191 (2d Cir. 1979) (joint trials conserve resources, lessen the burden on jurors and avoid repetitive testimony).

The presumption in favor of joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." United States v. Salameh, 152 F.3d 88, 115-116 (2d Cir. 1998). The Second Circuit has emphasized that joint trials are "particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy." United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003); see also United States v. Bin Laden, 109 F. Supp. 2d 211, 214 (S.D.N.Y. 2000) ("When more than one defendant is accused of participating in the same act or transaction or series of acts or transactions, federal law expresses a strong preference for a single, joint trial of all defendants.").

For this analysis, "[t]he risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money and scarce judicial resources that joint trial permits." United States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).  The presumption in favor of a joint trial is especially compelling where, as here, the acts alleged in the indictment are "unified by some substantial identity of facts or participants or arise out of a common scheme or plan," United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989) (internal quotation marks and citations omitted), or where the defendants are all "charged in the same conspiracy," United States v. Pirro, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999) (collecting cases).

Because Rule 8(b) "authorizes some prejudice against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." United States v. Amato, 15 F.3d 230, 237 (2d. Cir. 1994) (internal quotations and citations omitted); see also United States v. Casamento, 887 F.2d 1141, 1149-50 (2d Cir. 1989) (defendant bears an "extremely difficult burden of proving not merely that he would be prejudiced by a joint trial, but that the prejudice would be so great as to deprive him of his right to a fair trial").  Thus, a court should sever defendants only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Rittweger, 524 F.3d 171, 179 (2d Cir. 2008) (quoting Zafiro, 506 U.S. at 539); see also United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988) (defendant must show that a "miscarriage of justice" would result to warrant severance); see also United States v. Walker, 142 F.3d 103, 110 (2d Cir. 1998) (severance is appropriate only if a defendant can establish a risk of prejudice that is "sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials").

6

Ultimately, "the decision whether to sever a trial is committed to the sound discretion of the district court." Barret, 824 F. Supp. 2d at 433.

      B.     <u>Mutually Antagonistic Defenses</u>

      The term "mutually antagonistic" describes a narrow category of adversarial defenses where "accepting one defense requires that the jury must of necessity convict a second defendant." <u>United States v. Yousef</u>, 327 F.3d 56, 151 (2d Cir. 2003); <u>see also</u> <u>Zafiro</u>, 506 U.S. at 542 (Stevens, J., concurring) (describing "mutually antagonistic" defenses as those as to which "acceptance of one . . . necessarily preclude[s] acceptance of the other and acquittal of the codefendant"). The mere fact that defendants advance defenses that are adversarial to one another "clearly does not, alone, require trials to be severed. Were this true, a virtual ban on multi-defendant conspiracy trials would ensue since conspirators raise many different and conflicting defenses." <u>United States v. Cardascia</u>, 951 F.2d 474, 482 (2d Cir. 1991).

      Courts have severed properly joined defendants based on antagonistic defenses only where "the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant." <u>United States v. Carpenter</u>, 689 F.2d 21, 28 (2d Cir. 1982). In other words, the defenses must not only be antagonistic, but "so irreconcilable as to be mutually exclusive." <u>Cardascia</u>, 951 F.2d at 482. As the Second Circuit explained in <u>Cardascia</u>, to secure the remedy of severance, a defendant must demonstrate that "in order to accept the defense of [his codefendants], the jury must of necessity convict [him]," or vice versa, or that "the essence of the [conflicting] defenses [leads the jury to the] infer[ence] that the conflict alone indicate[s] that both defendants [a]re guilty." <u>Id</u>. This is an extremely high threshold to meet, and "mere finger pointing" among codefendants is not sufficient. <u>Casamento</u>, 887 F.2d at 1154. Indeed, courts have recognized that an "adversarial stance by a

codefendant" is the "stuff of normal conspiracy trials," where "co-conspirators raise many different and conflicting defenses." Cardascia, 951 F.2d at 484-85; see also United States v. Serpoosh, 919 F.2d 835, 837 (2d Cir. 1990) ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance.").

Even so, the Supreme Court has held that even "mutually antagonistic defenses are not prejudicial per se," and that severance is not required when defendants adopt antagonistic defenses "even if prejudice is shown." Zafiro, 506 U.S. at 538-39. Rather, when defendants adopt mutually antagonistic defenses, severance is appropriate only if defendants can demonstrate "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539; see also United States v. Scott, 637 F. App'x 10, 13 (2d Cir. 2015) ("It is not enough to demonstrate that separate trials would have increased the chances of the appellant's acquittal . . . the defendant must instead show prejudice so severe that his conviction constituted a miscarriage of justice and amounted to a denial of a constitutionally fair trial.").

II.     Bryant Has Not Established a Legal Basis for Severance

   A.     Bryant's Failure to Proffer a Defense is Fatal, and Any Anticipated Defenses Are
          Not Mutually Antagonistic

Nowhere in Bryant's severance motion does he proffer—or even suggest—what his trial defense might be. Nor has he served the required notice of any alibi defense pursuant to Rule 12.1. Devoid of such essential and critical facts, he similarly has not—and cannot—allege the "specific instances of prejudice" needed to justify severance. Zafiro at 539-40; see also United States v. Larranga Lopez, No. 05-CR-655 (SLT), 2006 WL 1307963, at *6-7 (E.D.N.Y May 11, 2006) (where defendant "avoid[ed] committing himself to a specific defense," he had "not alleged specific instances of prejudice" but "[a]t most, he has merely alleged mutually antagonistic

8

defenses"—an  allegation that "in and of itself, is insufficient to require severance").  Indeed, Bryant "avoids committing himself to a specific defense" while stating in a conclusory fashion that he and his co-defendants will have mutually antagonistic defenses at trial.  Id.  Without an adequate factual basis, the Court must deny the instant motion.

Even putting this fatal defect aside, the defenses likely to be advanced are not mutually antagonistic such that they mandate severance.  To determine if severance is warranted on the ground of antagonistic defenses, the Court must first determine whether the adversarial defenses that Bryant, Jordan, and Washington may advance are in fact "mutually antagonistic," such that acceptance of one defense necessarily precludes acceptance of the other, and that they are not merely "fingerpointing."  Next, the Court must determine whether, if the defenses are in fact "mutually antagonistic," such defenses are "prejudicial" to one or both sets of defendants. Finally, even if the Court determines that one or both sets of defendants might suffer prejudice as a result of a joint trial, the Court must find that there is a serious risk that a "joint trial would compromise a specific trial right" or "prevent the jury from making a reliable judgment" about the defendants' guilt or innocence that cannot be mitigated by measures less drastic than severance, such as limiting instructions.

Bryant claims that severance is required because at trial, "Messrs. Jordan and Washington will argue that their innocence is proven by what they describe as "substantial evidence that others had motives and perpetrated the attack on Jason Mizell," Mot. at 5, and thus, "the jury will be presented with three irreconcilable theories of the case, one in which Mr. Bryant is innocent of any involvement in the murder, one in which he was the shooter and acted independently of Messrs. Jordan and Washington, and one in which he participated in the murder

albeit not as the shooter," id. at 6.   This claim does not present defenses that are mutually antagonistic.

Here, although Bryant's motion implies that Washington and Jordan will allege Bryant is the lone perpetrator at trial, this defense does not meet the legal definition of an antagonistic defense, where "the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant." Carpenter, 689 F.2d at 28.  Jordan has proffered an alibi defense, and Washington's motion for expert testimony on eyewitness identification suggests that he will similarly argue that he was not present at the scene.   Neither of these defenses require the jury to ipso facto convict Bryant, as they are not "so irreconcilable as to be mutually exclusive." Cardascia, 951 F.2d at 482. This is because Jordan's primary defense is alibi-based, with any claim that Bryant is the shooter being a secondary argument.  In other words, the jury could accept Jordan's defense—that he was not present, or that even if he was, he was not the shooter—and still not think that Bryant is the shooter or otherwise guilty.  The reverse is also true: Bryant could claim he was not present or otherwise not culpable, and such defenses would not mean that the jury need accept—much less convict—Jordan as the shooter. Thus, were Jordan and Washington on the one hand and Bryant on the other hand to advance defenses that placed the blame for the murder solely on each other, the defenses still would not be mutually antagonistic because they would not require a jury to find one defendant or set of defendants guilty if the jury accepted the other defense.  Yousef, 327 F.3d at 151.

These potential defenses therefore do not require severance.  See Cardascia at 482. Certainly, Bryant has not shown—or even alleged—the required "specific instance[] of prejudice" or "legally cognizable prejudice" warranting severance.  Zafiro at 539; see United States v.

10

Harwood, 998 F.2d 91, 95-96 (2d Cir. 1993) ("[D]efendants must, at the threshold, articulate instances of 'legally cognizable prejudice.' Even then, severance is not required.") (internal citation omitted); United States v. Jackson, 792 F. App'x 849, 852 (2d Cir. 2019) (citing Cardascia and finding that "antagonism did not rise to the level required for severance: [defendant] attempted to shift the blame to [co-defendant], but [his] defense was not mutually exclusive").

Indeed, the Second Circuit has routinely upheld district courts' denials of severance where antagonism amongst defenses is far more pronounced than here, and "even in extreme cases of mutual antagonism." United States v. Chierchio, No. 20-CR-306 (NGG), 2022 WL 523603, at *5 (E.D.N.Y. Feb. 22, 2022) (citing Harwood, 998 F.2d at 95-96). For example, in United States v. Scott, the district court properly denied severance of two co-defendants, an attorney and his client, where the client advised the district court that he would advance an advice of counsel defense and claim he lacked the intent to commit the crime, while the attorney stated that at trial he would advance a defense that he "unwittingly" acted on his client's instructions. 637 F. App'x at 13. The Second Circuit found that these proposed defenses were not "antagonistic" because "the jury could have accepted both anticipated defenses, finding that neither [defendant] had intent to defraud under the circumstances." Id. In United States v. Harwood, the Second Circuit affirmed the denial of severance where two defendants accused each other of placing narcotics in a vehicle. 998 F.2d at 95-96; see also United States v. Haynes, 16 F.3d 29, 31-32 (2d Cir. 1994) (affirming denial of severance where defendant was directly implicated by co-defendant's testimony); United States v. Aquart, No. 06-CR-160 (JBA), 2010 WL 3211074, at *4-6 (D. Conn. Aug. 13, 2010) (denying severance where defendants were brothers and sought to "emphasiz[e] one another's respective familial roles and roles in the alleged criminal organization and focus[] on indicia that

11

the other [d]efendant is the source of DNA" at the scene of charged homicide because "blame-shifting and fingerpointing" does not constitute mutually antagonistic defenses).

Judge Matsumoto's analysis in United States v. Shkreli, 260 F. Supp. 3d 247, 253-55 (E.D.N.Y. 2017), is instructive.  In Shkreli, both defendants—Shkreli and Greebel, an attorney—moved for severance and claimed that their defenses would be mutually antagonistic. Shkreli's stated defense was that he "lacked intent to defraud because he relied and acted on the advice of counsel, one of whom was Greebel," and Greebel's defense was "that his legal advice was predicated on what he believed to be truthful and complete information provided by Shkreli but which, instead, was untrue." Id. at 254.  Even on those facts, where both defendants had committed to pointing the finger directly at each other and accusing each other of lying, the district court ultimately concluded that the defenses were "not mutually antagonistic because they do not require a jury to find one defendant guilty if that jury accepts the other defendant's defense." Id. (listing scenarios in which jury could accept one defense yet not be required to find that other defendant had the requisite criminal intent to defraud).

Instead, the district court in Shkreli ultimately concluded that severance was appropriate due to "the extraordinary and unique circumstances presented" in that case— circumstances that are not present here. Id. at 257.  In his severance motion, Shkreli indicated he would advance a specific affirmative defense not applicable here, namely, an advice of counsel defense. Id. at 254.  Greebel, in turn, intended to claim at trial that Shkreli did not give him full information, rendering him "a pawn in fraudulent schemes unbeknownst to [him]," which would result in Greebel's counsel acting as a second prosecutor against Shkreli by arguing that Shkreli was in fact guilty of fraud. Id. at 254, 256.  The Shkreli court found that severance was warranted primarily because "Greebel's defense team will act as a second prosecutor against Shkreli, by

12

arguing that Shkreli is guilty" and offering "evidence, even if the government does not, that Shkreli lied to Greebel and other attorneys and investors." Id. at 256.  The court found that this placed Greebel's defense theory and plan of attack against Shkreli in conflict with Shkreli's affirmative defense and, while noting that severing the trial of defendants indicted together is "rare," determined that severance was warranted "in the abundance of caution." Id. at 257.[3]  If Shkreli and Greebel proceeded to trial together, a jury would have first had to determine whether there was fraud at all, and next who, if anyone, was culpable, creating a risk of confusing issues.  See also Chierchio, 2022 WL 523603, at *7 (discussing Shkreli).

Here, if the jury accepts Jordan's alibi defense, there is no risk of confusing issues and "it does not follow that they must find [Bryant] guilty." Shkreli, 260 F. Supp. 3d at 254.  The only issues before the jury will be who took part in the murder of Mizell and in relation to a drug trafficking conspiracy.  Mere blame shifting and fingerpointing does not mandate severance.  See, e.g., United States v. Adelekan, No. 19-CR-291 (LAP), 2021 WL 4839065, at *3 (S.D.N.Y. Oct. 15, 2021) ("Although Adelekan may try to point the finger at his co-defendants and his co-defendants may try to do the same, '[t]he mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance.'") (quoting United States v. Villegas, 899 F.2d 1324, 1346 (2d Cir. 1990)); United States v. Hameedi, No. 17-CR-137 (JGK), 2017 WL 5152991, at *4 (S.D.N.Y. Nov. 3, 2017) ("The Second Circuit Court of Appeals has

---

[3] Notably, the Second Circuit has looked skeptically on severance even in circumstances similar to those in Shkreli.  See, e.g., Scott, 637 F. App'x at 13 (summary order) (finding "unconvincing" the "contention that the anticipated defenses—that [client] lacked intent to defraud because he had relied on [lawyer's] legal advice, while [lawyer] lacked intent to defraud because he had unwittingly acted upon [client's] instructions—were mutually antagonistic, rather than mere 'finger-pointing'").

repeatedly rejected "fingerpointing" arguments of this sort as a basis for severance") (collecting cases)).

B.    Joinder Does Not Subject Bryant to "Double Prosecution"

Bryant next argues that counsel for Jordan and Washington will become "in effect a second prosecutor" and subject Bryant to "double prosecution." Mot. at 10. This contention is based on general comments adduced in defense motions, where Jordan and Washington sought to introduce evidence of alternate perpetrators. See Mot. at 5; ECF No. 121 (Jordan's motion in limine opposition) at 24 ("there is substantial evidence that others had motives and perpetrated the attack on Jason Mizell, and thus that Karl Jordan did not."); and ECF No. 123 (Washington's motion in limine opposition) at 16 ("a complete defense centers around reasonable doubt, which can permissibly be created by the possibility of perpetrators other than Mr. Washington.").[4] This argument is conclusory and meritless.

First, the argument that Bryant will be confronted with a "second prosecutor" ignores the fact that Jordan has affirmatively noticed an alibi defense, and that Washington's role as the second gunman does not implicate Bryant at all. While Jordan certainly may make a secondary argument that evidence suggesting that Bryant is the shooter further creates reasonable doubt and exculpates Jordan, this case is not like those in which defendants have acted as a "second prosecutor" and affirmatively argued that the other committed the charged offense. See e.g., United States v. Basciano, No. 05-CR-060 (NGG), 2007 WL 3124622, at *8 (E.D.N.Y. Oct. 23,

---

[4] Bryant apparently seeks to buttress his argument by noting that the government has conceded in its motions in limine that Bryant—named "Coconspirator 1" in prior filings—meets the standard under United States v. Hendricks, 921 F.3d 320, 331 (2d Cir. 2019) as being "sufficiently connect[ed] . . . to the crime." See ECF No. 125 at 8. This implication is inapposite: the standard and analysis for a defendant to introduce evidence of an uncharged alternate perpetrator is separate and distinct from the instant issue relating to severance predicated on mutually antagonistic defenses.

14

2007) (severing trial because "to the extent that the jury believes [one defendant's] defense that he rescinded the hit on Pizzolo and [the other defendant] reordered it, the defenses are more than merely inconsistent; they are in direct conflict"); United States v. Copeland, 336 F.Supp.2d 223, 224 (E.D.N.Y. 2004) (severing defendants where one defendant argued that "he was not involved in the bank robbery," while the other planned to introduce independent evidence that it was the first defendant who "entered the bank to commit the robbery"). Indeed, Jordan's alibi defense, by definition, precludes this possibility.

Bryant's reliance on United States v. Nordlicht, No. 16-CR-640 (BMC), 2018 WL 1796542, at *2 (E.D.N.Y. Apr. 16, 2018) for this proposition is misplaced. In Nordlicht, multiple defendants were charged with schemes to defraud investors and prospective investors. Several defendants, including Nordlicht, claimed that the frauds charged by the government were not fraud. However, one defendant, Shulse, claimed that they were fraud, but that Shulse was not involved in perpetrating the fraud. Id. at *2-3. The Court severed Shulse's case from that of his co-defendants due to a combination of issues, not solely due to the fact that Shulse claimed to be "an unknowing pawn in [the] alleged frauds [of his codefendants]." Id. at *2. Severing Shulse from his codefendants focused the question in the Nordlicht trial solely on whether or not the conduct was fraudulent. In finding severance appropriate, Judge Cogan reasoned:

> Shulse's strategy, however, presents a situation that is an order of magnitude more severe than routine accusations and blame-shifting between co-defendants. As an example, at oral argument, Shulse's counsel contemplated the possibility of presenting the jury at closing with a display of emails allegedly incriminating Shulse's co-defendants, and pointing out his client's absence from them. His inclusion in a joint trial would essentially make his co-defendants face prosecution on two fronts: one attack brought by the Government, and another leveled by Shulse . . .   even with rigorous limiting instructions, the jury will be confronted with a serious challenge in distinguishing the Government's case against Shulse's

co-defendants from <u>his</u> defense against the Government, which will
entail a virtual case against the other defendants.

<u>Id.</u> at *2-3.

These unique circumstances are simply not present here.  First, Bryant has offered
no insight into his eventual trial defense, which is fatal to his motion.  This dearth of information
makes it impossible for Bryant to meet the heavy burden required for severance, and his arguments
are necessarily conclusory and speculative.  Second, as stated previously, Jordan's alibi defense
and Washington's noticed expert witness necessarily take their defenses out of the ambit of a true
mutual antagonism with Bryant.  As Judge Garaufis reasoned when denying severance and
distinguishing <u>Nordlicht</u> in <u>United States v. Chierchio</u>, "[t]ried together in this case. . . [the co-
defendants] may simply argue that one or the other was responsible.  There are not two issues (the
existence of fraud on one hand, and who committed it on the other) that could confuse the jury.
There is only one: whodunit."  2022 WL 523603, at *6.  Such is the case here, and the concerns
about "double prosecution" in this situation are speculative and unfounded.  Finally, the concerns
in <u>Shkreli</u> are not present here as defendant Jordan has served alibi notice, which does not put his
defense in a direct conflict with Bryant—any argument that Bryant, not Jordan, is the shooter, will
be an ancillary argument, rather than a "mutually exclusive" one.

     C.    <u>Appropriate Limiting Instructions Are Sufficient to Address Any Prejudice</u>

Even assuming, <u>arguendo</u>, that spillover prejudice exists, it can hardly be
characterized as a "miscarriage of justice."  In any event, the Supreme Court has recognized that
"limiting instructions are often sufficient to cure any risk of prejudice."  <u>Zafiro</u>, 506 U.S. at 539;
<u>see also</u> <u>Spinelli</u>, 352 F.3d at 55 (district court's explicit instruction that jury consider defendants
individually remedied spillover prejudice); <u>United States v. Miller</u>, 116 F.3d 641, 679 (2d Cir.
1997) (noting that spillover prejudice may be cured through clear judicial instructions); <u>United</u>

16

States v. Rivera, No. 09-CR-619 (SJF), 2011 WL 1429125, at *6 (E.D.N.Y. Apr. 13, 2011) (noting "defendants may request any appropriate limiting instruction, or other remedial measure, at trial" to avoid spillover prejudice).

To retain the considerable benefits of a joint trial and cure any minimal risk of prejudice, the Court may give a limiting instruction similar to that given by the district court in Zafiro, namely, that the government has the burden of proving beyond a reasonable doubt that each defendant committed the crimes with which he has been charged, and separate consideration should be given to each defendant and each charge based on the evidence applicable to that defendant. See Zafiro, 506 U.S. at 540-41; see also United States v. DeVillio, 983 F.2d 1185, 1192-93 (2d Cir. 1993) (affirming denial of severance where an explicit limiting instruction had been used).

Instead of severance, prophylactic limiting instructions and the Court's jury charge will sufficiently mitigate Bryant's concerns. Zafiro at 537-39 (1993). This has long been the approach in the Second Circuit, and is appropriate in this case. See, e.g., Harwood, 998 F.2d at 96 ("[E]ven if there were some risk of prejudice, the district court carefully instructed the jury that 'guilt is individual, and your verdict of guilty or not guilty must be based solely upon the evidence about each defendant . . . without regard to the guilt or innocence of anyone else.'"); United States v. Schegel, 687 F. App'x 26 (2d Cir. 2017) (denying severance where there is no "legally cognizable prejudice" and antagonistic defenses may be addressed by appropriate limiting and jury instructions).

D.   Judicial Efficiency Weighs Against Severance

Bryant inexplicably argues that judicial efficiency would be increased by granting his motion for severance. See Mot. at 6. This argument is, on its face, illogical.

17

Granting severance "would impair both the efficiency and the fairness of the criminal justice system" by requiring "that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." Richardson, 481 U.S. at 209-10. Witnesses would be required to testify multiple times regarding the traumatic event of the murder of Mizell and possibly various shootings and narcotics trafficking. See ECF Nos. 113, 134, 141 (the government's pending motions in limine). Moreover, and significantly, severance would create a risk of "the scandal and inequity of inconsistent verdicts." Richardson, 481 U.S. at 210; see also Bruton, 391 U.S. at 134 (joint trials conserve state funds, diminish inconvenience to witnesses, and avoid delays). This is another separate and independent reason that joint trials are almost always preferred, and another basis to deny Bryant's motion. Severance in this case would result in two lengthy trials where nearly all of the government's evidence would be re-presented against Bryant.

Bryant further argues that "[s]erious trial management concerns" created by a joint trial weigh in favor of severance because a joint trial will lead to "innumerable objections during openings and witness examinations and cross-examinations, along with frequent sidebars." See Mot. at 6 (quoting Nordlicht, 2018 WL 1796542, at *3. This argument is entirely without merit. It is clear that a joint trial would "conserve[] judicial resources, alleviate[] the burden on citizens serving as jurors, and avoid[] the necessity of having witnesses reiterate testimony in a series of trials." Lyles, 593 F.2d at 191. A joint trial would also "avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury." Barret, 824 F. Supp. 2d at 432.

18

Contrary to Bryant's claims, there is no reason to believe that a joint trial in this case would involve an atypical number of defense objections or sidebars.  Indeed, in the absence of antagonistic defenses, Bryant fails to explain how severance would create significantly fewer sidebars or last-minute briefing on important issues.  In a trial involving multiple witnesses, there are certain to be objections, sidebars, motions and briefing regardless of whether all defendants are tried together or separately.  To the extent that Bryant anticipates any particular issues, he can raise them with the Court in advance of trial through motions in limine.  See Chierchio, 2022 WL 523603, at *8 ("The court is simply not persuaded, given its long history of trying complex and multi-defendant cases, that it cannot effectively dispatch with whatever evidentiary issues may arise at trial (or before, in further motion practice).").

In sum, Bryant simply cannot show that "the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials."  United States v. Lanza, 790 F.2d 1015, 1019 (2d Cir. 1986) (internal quotation marks omitted).  Such a showing is difficult to make because the "risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits."  Jimenez, 824 F. Supp. at 366.  This is another separate and independent reason that joint trials are almost always preferred, and another basis to deny Bryant's motion.  See Cardascia, 951 F.2d at 482-83 ("policy favoring joinder of trials" rests on an "inevitable tolerance of some slight prejudice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials").

E.    Counsel's Scheduling Conflicts Do Not Provide a Basis for Severance or
      Adjournment of Trial

Finally, Bryant repeats the same arguments made in his initial letter motion to

adjourn the trial based on his counsel's scheduling issues.   The government incorporates by

reference its responses to these arguments, which have not changed.  See ECF No. 167.[5]

Bryant has provided no authority for the proposition that a defense counsel's

scheduling conflict is grounds to sever a defendant from trial under Rule 14(a).  The law is to the

contrary.   See United States v. Squitieri, No. 05-CR-228 (AKH), 2006 WL 859365, at *1

(S.D.N.Y. Mar. 31, 2006) (denying motion to sever based on scheduling conflict in 13-defendant

case, stating "the unavailability of [defense counsel] during the trial does not warrant severance"

and "[t]here is no absolute right to representation by counsel of one's choice") (citing Wheat v.

United States, 486 U.S. 153, 158-59 (1988)).   Rather, the properly requested remedy is an

adjournment of the trial for all defendants, but that remedy is not warranted here.

By the time of the trial date on January 29, 2024, Bryant will have had almost eight

months to prepare for trial.  See ECF Nos. 151 (indictment filed May 30, 2023), 159 (government

letter providing discovery to Bryant on June 16, 2023).  Such a lengthy period of time is more than

sufficient to prepare for a defense to a single incident murder with three defendants.  See United

---

[5] Defense counsel primarily relies on the conflict in United States v. Chen, et al., No. 22-
CR-158 (ENV), but notably fails to respond to the government's argument that Judge Vitaliano
scheduled a second trial date in that seven-defendant case for March 25, 2024, and defense
counsel told the court he did not have a conflict with that date.  Moreover, on September 14, 2023, a grand
jury returned a superseding indictment in that case that added three defendants (now a
10-defendant case), and that charged counsel's client with several new counts, including one count
of Hobbs Act robbery conspiracy, eight counts of assault with a dangerous weapon in aid of
racketeering, and three counts of assault with a dangerous weapon resulting in seriously bodily
injury in aid of racketeering.  Given the new defendants and new charges, it is possible that the
trial dates in that case may be adjourned, setting aside the possibility that plea negotiations may
result in a disposition before trial.

States v. Franco, No. 13-CR-15 (PKC), 2013 WL 2246917, at *1 (S.D.N.Y. May 17, 2013) (noting

that trial in a 29-defendant racketeering conspiracy scheduled "more than seven months away"

was "far enough in advance to allow adequate time for trial preparation").

        Moreover, although defense counsel raised his scheduling conflicts shortly after the

second superseding indictment was filed, he was on notice since then that the January 2024 trial

date was still scheduled and would move forward, absent a decision by the Court to sever Bryant.

After hearing the conflicts, the Court continued to instruct defense counsel: "counsel for Mr.

Bryant, I need you to familiarize yourself with the questionnaire, to the extent that [it's] become

applicable to you, and I will address that in the future." July 11, 2023 Status Conf. Tr. 10:11-13,

No. 20-CR-305 (LDH) (E.D.N.Y. July 11, 2023); see United States v. Ferguson, 246 F.R.D. 107,

126-27 (D. Conn. 2007) (denying severance motion based on scheduling conflict because, in

initially selecting the trial date, the court had acknowledged counsel's statements that he would

not be available for that date, which had "reflected a balance of numerous other interests, including

the rights of [the] four co-defendants to an expeditious trial, the public's interest in resolving this

matter at trial, the Court's schedule, and the schedules of all of the other attorneys involved with

the case"); United States v. Scopo, 861 F.2d 339, 344 (2d Cir. 1988) (upholding denial of

continuance based upon scheduling conflicts of one co-defendant's attorney where trial judge

balanced numerous considerations to set trial date several months in advance).[6]

---

[6] Bryant could also maintain his current counsel and seek additional CJA counsel through the Court, as has been offered in another case. See July 27, 2022 Status Conf. Tr. 13:23-14:1, United States v. Garcia Luna, No. 19-CR-576 (BMC) (E.D.N.Y. July 27, 2022) ("Given the magnitude of this case, Mr. De Castro, would it assist you if I authorized under CJA either an additional senior attorney like yourself to be cocounsel or a less experienced attorney to help with document review?"); see also United States. v. Marcus Schloss & Co., No. 88 CR 796 (CSH), 1988 WL 140794, at *3 (S.D.N.Y. Dec. 20, 1988) (finding adequate four months' notice to defendants to secure alternate counsel in multi defendant prosecution for conspiracy and financial crimes).

Just as defendants Jordan and Washington have more than one attorney, Bryant's current representation consists of three noticed attorneys, "seriously undermin[ing] any argument that [counsel]'s unpreparedness for trial will substantially impair the defense." United States v. Jenkins, 279 F. Supp. 3d 455, 461-62 (W.D.N.Y. 2018). Any risk of defense counsel providing ineffective assistance due to his purported inability to adequately prepare for trial in eight months is mitigated by the presence of his colleagues. See United States v. Novak, 903 F.2d 883, 890 (2d Cir. 1990) (where defendant was represented by two persons, one of whom obtained admission to the bar through fraudulent means and had since been disbarred, and another local counsel who was excused from daily attendance at the defendant's trial, the Second Circuit concluded that if the local counsel had been present and provided effective assistance at all critical stages of the proceedings, the defendant's Sixth Amendment right would have been protected); see also Leslie v. Artuz, 230 F.3d 25, 33 (2d Cir. 2000) (finding no violation of the defendant's Sixth Amendment rights when one of the defendant's multiple attorneys provided effective assistance at all critical stages of the proceedings); United States v. Moore, 228 F. Supp. 2d 75, 79 (D. Conn. 2002) ("Because Moore was represented by two attorneys, had [counsel] provided Moore with 'effective assistance at all critical stages, [Moore's] Sixth Amendment rights would have been protected,' regardless of whether [co-counsel]'s conduct satisfied the requirements of the Sixth Amendment."), aff'd, 174 F. App'x 603 (2d Cir. 2006).

Adjournment of the trial date, which has been scheduled one year in advance and carefully selected based on the schedules of the Court, the co-defendants' seven attorneys and the government, would cause serious prejudice to the parties, witnesses, and the Court's own schedule. See United States v. Cicale, 691 F.2d 95, 106-07 (2d Cir. 1982) (no abuse of discretion in denying continuance based upon scheduling conflicts because the court "had to balance his own trial

22

calendar and duties on the appellate court against the schedule of another judge as well as the interests of the original five defendants and their individual counsel" and it "had already yielded twice on his preferred choice of a trial date and had accommodated these factors as best he could in what was admittedly a difficult situation for all concerned").   Accordingly, the government respectfully requests that the Court deny any motion to adjourn the trial date based on scheduling conflicts.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully submits that the defendant's motion should be denied in its entirety.

Dated:      Brooklyn, New York
            September 21, 2023

                                          Respectfully submitted,

                                          BREON PEACE
                                          UNITED STATES ATTORNEY
                                          Eastern District of New York

                        By:      _____/s/_____
                                          Artie McConnell
                                          Mark E. Misorek
                                          Miranda Gonzalez
                                          Assistant United States Attorneys
                                          (718) 254-7000

cc:      Clerk of Court (LDH) (by ECF)
         All counsel of record (by ECF)

23