UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Government,

v.

KARL JORDAN, JR., RONALD WASHINGTON, and JAY BRYANT

                Defendants.

**MEMORANDUM AND ORDER**

20-CR-305 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

Karl Jordan, Jr., Ronald Washington, and Jay Bryant ("Defendants") are charged pursuant to a second superseding indictment (the "Indictment") with murder while engaged in narcotics trafficking and firearm related murder (Counts One and Two, respectively). (May 30, 2023 Indictment, ECF No. 151.)[1] Bryant moves pursuant to Rule 14 of the Federal Rules of Criminal Procedure to sever his trial on Counts One and Two from co-defendants Jordan and Washington.

**DISCUSSION**

Pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure, multiple defendants are properly joined "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Bryant does not contend—nor could he—that joinder is somehow improper as Bryant, Jordan, and Washington are together alleged to have caused the death of Jason Mizell while engaged in narcotics trafficking in 2002. (May 30, 2023 Indictment.) Of course, there is a presumption that

---

[1] Jordan is additionally charged with conspiracy to distribute and possess with intent to distribute cocaine and seven counts of cocaine distribution (Counts Three and Five through Eleven), and use of a firearm in connection with a drug trafficking crime (Count Four).

defendants should be tried together when joinder is proper, and that presumption is even stronger when "the crime charged involves a common scheme or plan." *United States v. Ramos*, 346 F. Supp. 2d 567, 569 (S.D.N.Y. 2004) (citation omitted). That said, even where joinder is proper, a court has discretion to sever a trial where "joinder of . . . defendants in an indictment . . . appears to prejudice a defendant[.]" Fed. R. Crim. P. 14(a). That is, severance may be granted when a defendant has demonstrated that a failure to sever would cause "substantial prejudice in the form of a miscarriage of justice." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (citation omitted).

Here, Bryant maintains that the Court should use its discretion to sever his trial because proceeding to trial as scheduled on January 29, 2024, would necessarily deprive him of effective assistance of counsel. (Def. Bryant's Mem. Supp. Mot. Sever at 8 ("Def.'s Mot. Sever"), ECF No. 177.) That is, Bryant's counsel is scheduled for two other trials on September 11, 2023[2], and December 18, 2023, in the Sothern District of New York and the Eastern District of New York, respectively. (*Id.* at 8–9.) Moreover, Bryant's counsel must prepare for a sentencing scheduled to take place in October 2023, and draft a "substantial" Rule 33 motion due December 15, 2023. (*Id.*) According to Bryant, "these matters make it impossible for [counsel] to dedicate the necessary time to adequately investigate this case and prepare for [] trial." (*Id.* at 9.) As such, according to Bryant, the appropriate remedy for these scheduling issues is a severance. (*Id.* at 8.) The Court disagrees.

Bryant was indicted on the superseding indictment on May 30, 2023. (May 30, 2023 Indictment.) The trial, therefore, is approximately eight months from that date. This is sufficient time to prepare for a trial of this sort. Admittedly, Bryant does not argue that an eight-month

---

[2] Following Mr. Bryant's submission, that trial proceeded and has since concluded.

period is per se insufficient. Rather he contends that the eight-month time period is insufficient in light of his counsel's other pressing matters. The scheduling concerns of Bryant's counsel are but one of a number of considerations this Court must balance in setting the trial date here. As the parties are fully aware, as a result of the backlog resulting from the pandemic, the Court is scheduled for no less than one trial per month for the next two years. Notably, the lion's share of these trials is criminal. There are three attorneys of record for Bryant, each of whom are able to assist in the effective preparation for his trial. Bryant's request for a severance on this ground is denied.

Next, Bryant argues that his trial must be severed because Defendants advance mutually antagonistic defenses. Of course, it has now long been established that "[m]utually antagonistic defenses are not prejudicial per se." *Zafiro v. United States*, 506 U.S. 534, 538 (1993). And "mere finger pointing" between or among co-defendants does not require severance. *See United States v. Casamento*, 887 F. 2d 1141, 1154 (2d Cir. 1989) (internal quotation marks omitted). Nonetheless, the existence of antagonistic defenses may necessitate severance where a defendant shows "that the conflict is so irreconcilable that acceptance of one defendant's defense requires that the testimony offered on behalf of a codefendant be disbelieved." *See United States v. Tutino*, 883 F.2d 1125, 1130 (2d Cir. 1989); *see also United States v. Carpentier*, 689 F.2d 21, 28 (2d Cir. 1982) (describing mutually antagonistic defenses as occurring when "the jury, in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant."). Where the requisite prejudice is shown, it is in the court's sound discretion to determine whether to sever the trials or otherwise provide any relief. *Zafiro*, 506 U.S. at 538–39 (1993). That determination is "virtually

unreviewable." *United States v. Diaz*, 176 F.3d 52, 102 (2d Cir.1999) (internal quotation marks and citation omitted).

Here, Bryant argues that a severance is warranted because without it, a jury will hear "three irreconcilable theories of the case, one in which Mr. Bryant is innocent of any involvement in the murder, one in which he was the shooter and acted independently of Messrs. Jordan and Washington, and one in which he participated in the murder albeit not as the shooter." (Def.'s Mot. Sever at 6.) Moreover, according to Bryant, the defenses in this case "go beyond mere blame shifting" and in effect create an impermissible double prosecution of him by the Government and his co-defendants. (*Id*.) This is so because, as Bryant posits, "it is anticipated that one or more of Mr. Bryant's co-defendants will pursue the alternative perpetrator theory" relying, at least in part on an admission made by Bryant to a neutral third-party that he was the shooter. (Def. Bryant's Reply Mem. Supp. Mot. Sever at 1 ("Def.'s Reply"), ECF No. 183.) Critically, this theory is directly contrary to the one that will be advanced by the Government under which Jordan is alleged to be the lone shooter. (Gov't Mem. Opp'n Def. Bryant's Mot. Sever ("Gov't Opp'n") at 2, ECF No. 181.)

In opposition, the Government presses that Bryant's defense can be reconciled with that of his co-defendants.[3] In making its argument, the Government emphasizes that Jordan has proffered an alibi defense and any argument that Bryant was the shooter would be secondary. (Gov't Opp'n at 10.) As to Washington, the Government contends that he, too, will argue that he was not present at the crime scene as evidenced by his noticed expert on eyewitness identification. (*Id.*) And in any event, Washington is not alleged to be the shooter under the

---

[3] The Government makes much of the fact that Bryant does not articulate exactly what his defense will be. (Gov't Mem. Opp'n Mot. Sever at 8–9, ECF No. 181.) But given Bryant claims that he is innocent of the charge, then certainly, he will argue that he is not the shooter. By contrast, Bryant contends that his co-defendants will argue that Bryant was the lone perpetrator of the murder.

4

Government's theory. (*Id.*) Therefore, as the Government's argument goes, a jury could accept Jordan's defense that he was not present, or that he was not the shooter, without believing that Bryant committed the crime. (*Id.*) Accordingly, a jury could believe that Bryant is innocent, without believing that Jordan was the shooter. (*Id.*) Likewise, according to the Government, even if Jordan and Washington advance defenses that Bryant was the shooter and Bryant advanced the reverse argument, a jury is not required to find one defendant guilty in order to find the other innocent. (*Id.*)

At first blush, the Government's arguments are appealing. However, conspicuously absent from the Government's submission is any response as to what, if any, consequence the potential neutral third-party witness should have on the Court's analysis. On this issue, *United States v. Copeland* 336 F. Supp. 2d 223 (E.D.N.Y. 2004) and *United States v. Basciano*, No. 05-CR-060 (NGG), 2007 WL 3124622, at *8 (E.D.N.Y. Oct. 23, 2007) —each cited by Bryant—are instructive.

In *Copeland*, co-defendants Robertino Vasquez, Edward Copeland, and Virgil Rivers were scheduled to be jointly tried for robbing a bank. 336 F. Supp. 2d 223 (E.D.N.Y. 2004). Counsel for Vasquez indicated to the court that he intended to elicit testimony of at least one witness who identified Rivers and Copeland as the individual who robbed the bank. (*Id.*) In light of the third-party witness testimony, Copeland renewed an earlier motion to sever. (*Id.*) Although the court credited the Government's argument that finger-pointing alone is insufficient to warrant a severance, the court noted that the issue was "whether severance is warranted when a co-defendant offers, in contradiction of the government's theory, a neutral third party's exculpatory identification testimony implicating another codefendant." (*Id.* at 224–225.) Ultimately the court concluded that the case presented the rare circumstance where one

5

defendant has "averred specific facts that will be elicited by neutral witness testimony" and "the prejudice stemming from a neutral third party's identification testimony is far more prejudicial than mere self-serving finger-pointing testimony by co-defendants." (*Id.* at 225.) Accordingly, the court granted defendant Copeland's motion to sever. (*Id.*)

In *Basciano*, the court reached a similar conclusion. Although the defendants in *Basciano*, were unable to argue that their co-defendant expressly represented an intention to call a neutral third party to testify at trial, the court found that severance was warranted. *Basciano*, 2007 WL 3124622 at *8 (E.D.N.Y. Oct. 23, 2007). In so finding, the court emphasized that co-defendants had "no way of knowing with certainty whether Basciano's defense counsel will take this approach… [t]he defense strategy posited by the Codefendants, however, is more than bald conjecture…" (*Id.*) Relying on *Copeland*, the court reasoned that the "likelihood of antagonistic defenses" supported through the potential neutral third-party testimony, rose to the level of prejudice warranting severance. (*Id.* at 9.)

To be sure, unlike the defendant in *Copeland*, Bryant has not offered any express representation by his co-defendants as to whether they intend to call the neutral third-party witness. In fact, despite a full opportunity to weigh in on the subject both Jordan and Washington remained mum – as was their right. Nonetheless, Bryant argues that "there is no plausible scenario" in which his co-defendants do not turn to the third-party witness to buttress their claims of innocence. (Def.'s Reply at 1.) And at argument, Bryant invited the Court to "read the tea leaves" on this issue. I have.

Upon a searching review of the record, it is clear that at least Jordan has sufficiently telegraphed that he intends to call the third-party witness to whom Bryant made his alleged admission. In Jordan's November 9, 2022 opposition to the Government's October 19, 2022

6

motion in limine, Jordan argued that an alternative perpetrator argument is "crucial" to his "constitutional right to present a complete defense." (Def. Jordan's Mot. Limine at 24, ECF No. 121.) Ultimately, the Government conceded that Defendants "have a sufficient basis to argue that [Bryant] is the perpetrator." (Gov't Mot. Limine Reply at 8, ECF No. 125.) This was before Bryant was indicted and before the Government made its Brady disclosure concerning the identity of the third-party witness.

The day after the Government filed its superseding indictment, adding Bryant to Counts One and Two, the Court held a status conference as to Defendants Jordan and Washington. At the status conference, counsel for Jordan emphasized that importance of obtaining the identity of the third-party witness. According to Jordan's counsel: "There's an individual who the Government garnered [Bryant's admission] from, from Mr. Bryant. And so we don't have that name yet. . . That's information that's obviously dispositive - - not dispositive, but important to the defense." (June 1, 2023 Status Conference Tr.) Washington, too, has indicated the significance of an alternate perpetrator defense to his case. In his November 9, 2022 opposition to the Government's motion in limine Washington closed with these remarks: "Mr. Washington looks forward to a trial at which all parties are given a fair opportunity to present the facts available and favorable to them. In this case, a complete defense centers around the reasonable doubt, which can permissibly be created by the possibility of perpetrators other than Mr. Washington." (Washington Mot. Limine Opp'n at 16, ECF No. 123.)

So, while the Court cannot conclude with certitude that Jordan or Bryant will call the neutral third-party witness, it concludes that Bryant contention is "more than bald conjecture" and the potential prejudice that would result cannot be sufficiently cured through a limiting instruction. *See Basciano*, 2007 WL 3124622 at *5, *8 (finding "that a limiting instruction

7

would not suffice to cure the potential for prejudice"); *see also Copeland*, 336 F. Supp. 2d at 225 (E.D.N.Y. 2004) ("[a] limiting instruction cannot effectively mitigate such prejudice; severance is warranted"). Bryant's motion to sever is granted.

SO ORDERED.

Dated: Brooklyn, New York
      October 13, 2023

/s/ LDH
L<small>A</small>SHANN D<small>E</small>ARCY HALL
United States District Judge