NB:JAM/MEM/MG
F.#2017R00509

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                    Docket No. 20-CR-305 (S-2) (LDH)

KARL JORDAN, JR.,
    also known as "Little D"
    and "Noid,"
RONALD WASHINGTON,
    also known as "Tinard," and
JAY BRYANT,
    also known as "Bradshaw
    Dewitt," "Jason Robinson,"
    "Morgan Bryant," "Deshawn
    Sadler," "Jay Sadler" and
    "Big Jay,"

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION FOR A TWO-JURY TRIAL

                                               BREON PEACE
                                               United States Attorney
                                               Eastern District of New York
                                               271 Cadman Plaza East
                                               Brooklyn, New York 11201

Artie McConnell
Mark E. Misorek
Miranda Gonzalez
Assistant U.S. Attorneys
     (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 1

    I.     The Offense Conduct ................................................................................................ 1

    II.    Relevant Procedural History .................................................................................... 2

ARGUMENT .................................................................................................................................. 3

    I.     A Two-Jury Trial is Lawful and Within the Court's Discretion ............................. 4

    II.    Two Juries Allow the Court to Effectively Manage Any Issues Arising
         from the Third-Party Witness ................................................................................. 6

    III.   Two Juries Save Significant Resources and Prevent Other Issues Arising
         from Separate, Successive Trials ......................................................................... 13

CONCLUSION ............................................................................................................................. 17

i

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion for two juries. The three defendants, Karl Jordan, Jr., Ronald Washington and Jay Bryant, are charged with the narcotics-related murder of Jason Mizell, also known as "Jam Master Jay," as alleged in Counts One and Two of the second superseding indictment. On October 13, 2023, the defendant Bryant was severed from the indictment. See ECF No. 184.

As set forth below, a trial with two juries will address the Court's concerns regarding potential neutral third-party witnesses, result in no prejudice to any of the defendants and yield substantial savings of resources. Significantly, a dual-jury trial would maximize judicial economy by combining what would otherwise be nearly identical trials.

BACKGROUND

I. The Offense Conduct

The instant indictment arises from an investigation of Mizell's murder conducted by the New York City Police Department ("NYPD"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office for the Eastern District of New York. Mizell was a member of the influential hip hop group Run-D.M.C. Mizell, Washington and Jordan are all from Hollis, Queens. Bryant is from the adjacent neighborhood of Jamaica, Queens.

On Wednesday, October 30, 2002, Mizell was present at his recording studio located in 90-10 Merrick Boulevard in Hollis, Queens, New York. At approximately 7:30 p.m., Washington, Jordan and Bryant entered the building. Washington pointed a firearm at one of the individuals located inside the studio and demanded that the person lay on the floor. Jordan approached Mizell, pointed a firearm at him, and fired two shots at close range. One of those shots

hit Mizell in the head, killing him. The second shot struck another individual in the leg. All three defendants fled the crime scene.

Bryant was observed entering the building immediately before the shooting and an article of clothing left at the crime scene contained Bryant's DNA. He later admitted to participating in the murder, bragging to one associate that he was the shooter. However, the evidence contradicts Bryant's boastful statement that he was in fact the shooter—while the evidence will prove Bryant was present for and participated in the murder, witnesses have identified Washington and Jordan as the gunmen. Moreover, both Washington and Jordan have made statements to other witnesses about their respective participation in Mizell's murder.[1]

## II.      Relevant Procedural History

On August 13, 2020, a grand jury in the Eastern District of New York returned an indictment charging Jordan and Washington with one count of murder while engaged in narcotics trafficking, in violation of Title 21, United States Code, Section 848(e)(1)(A) (Count One), and one count of firearm-related murder, in violation of Title 18, United States Code, Sections 924(j)(1) (Count Two), for the October 30, 2002 murder of Mizell.

Jordan was also charged with one count of conspiracy to distribute cocaine and seven counts of cocaine distribution, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). On March 4, 2021, the grand jury returned a superseding indictment, which charged Jordan with one count of conspiracy to distribute 280 grams or more of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(iii), and one additional count of

---

[1] The Court rejected severance motions from defendants Jordan and Washington based on antagonistic defense arguments and under Bruton v. United States, 391 U.S. 123 (1968). See ECF No. 107. Additionally, Bryant's statement regarding his participation in the murder does not reference either of the other defendants and thus does not implicate Bruton.

use of firearms in connection with a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

On May 30, 2023, a grand jury returned a second superseding indictment to add Bryant as a defendant under Counts One and Two for Mizell's murder.

On October 13, 2023, the Court granted Bryant's motion for severance from Jordan and Washington, expressing concern over Bryant's admission to a "potential neutral third-party witness" (the "Third-Party Witness") that Bryant was the shooter. See ECF No. 184. Trial is currently scheduled for January 29, 2024 against Jordan and Washington. A trial date for Bryant has not yet been scheduled.

ARGUMENT

A single trial with two juries can address concerns regarding the Third-Party Witness while retaining the substantial benefits of a single proceeding. As explained in greater detail below, a single trial proceeding with two juries will allow the Court to, inter alia: limit the examinations of the Third-Party Witness to avoid any undue prejudice; similarly limit the testimony of other potential witnesses, including potentially the defendants, that may raise similar concerns as the Third-Party Witness; and sequence the parties' jury addresses to minimize any prejudice or confusion.

Doing so will also allow both cases to be resolved in a single proceeding, which offers substantial benefits to the Court, the witnesses, the parties and the public. While the parties are still in the process of developing their respective trial strategies, the government will likely call all of the same witnesses—approximately forty—in a trial of Jordan and Washington and in a trial of Bryant, including the Third-Party Witness. A single trial will avoid the need for the same witnesses to testify at two trials regarding the same subject matter, and therefore will yield

substantial savings in judicial resources by avoiding two lengthy, and nearly identical, trials. Several of the witnesses expected to testify reside out of state and have expressed fear for their safety. Others have expressed an unwillingness to testify and are expected to be uncooperative. The safety risks for witnesses, not to mention the inconvenience of testifying far from home, would be greatly increased by having to testify in two trials. Further, a joint trial will reduce claims at the second trial of jury contamination by media coverage of the first trial.

I.  A Two-Jury Trial is Lawful and Within the Court's Discretion

District courts have broad discretion to execute the rules of severance by ordering a two-jury trial. See United States v. Rowan, 518 F.2d 685, 689 (6th Cir. 1975) (trial court has wide authority to implement Rule 14 of the Federal Rules of Criminal Procedure regarding severance, including by ordering a dual jury trial); Fed. R. Crim. P. 14 ("If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.") (emphasis added); Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district.").

Although the government has not found an example in the district courts in this Circuit, the use of dual juries in criminal trials has been long accepted in the New York state system, and the government has found no appellate law, federal or New York state, finding their use improper. See People v. Ricardo B., 535 N.E.2d 1336, 1338-39 (1989) (holding that the defendant was not denied any constitutional or due process rights when he was tried with a co-defendant using two juries in Nassau County); see also infra at 9-11; People v. Singletary, 164 A.d.3d 1477, 1478 (2d Dep't 2018) (upholding the use of dual juries in Suffolk County and stating

4

that use of two separate juries, "was a provident exercise of the County Court's discretion"); Cf. People v. Ekwegbalu, 131 A.D.3d 982 (2d Dep't 2015) and People v. Calas, 134 A.D.3d 1043 (2d Dep't 2015) (upholding each defendant's conviction, rendered by dual juries, on independent grounds where neither defendant raised the use of dual juries in their respective appeals).[2]

In fact, every federal circuit to have considered the legality of dual juries has upheld their constitutionality. See United States v. Brown, 849 F.3d 87, 92 (3d Cir. 2017) ("Each circuit court that has addressed the use of dual juries has upheld the practice unless a defendant can 'show some specific, undue prejudice.'"); see also Brown v. Sirmons, 515 F.3d 1072, 1078 (10th Cir. 2008); United States v. Lebron-Gonzalez, 816 F.2d 823, 831 (1st Cir. 1987); United States v. Lewis, 716 F.2d 16, 19 (D.C. Cir. 1983); United States v. Hayes, 676 F.2d 1359, 1366-67 (11th Cir. 1982); United States v. Rimar, 558 F.2d 1271 (6th Cir. 1977), cert. denied, 435 U.S. 922 (1978); United States v. Sidman, 470 F.2d 1158, 1170 (9th Cir. 1972), cert. denied, 409 U.S. 1127 (1973); see also Hedlund v. Ryan, 854 F.3d 557, 571 (9th Cir. 2017) (noting the "Supreme Court has not spoken on the issue of dual juries"). Indeed, "there is simply no federal precedent holding that a joint trial before separate juries runs afoul of federal constitutional law." Vasquez v. Rock, No. 08-CV-1623 (ENV), 2010 WL 2399891, at *9 (E.D.N.Y. June 10, 2010); see also Glover v. Burge, 652 F. Supp. 2d 373, 376 (W.D.N.Y. 2009) (noting appellant "failed to cite, either on direct appeal or in support of his habeas petition, any federal authority standing for the proposition that the use of multiple juries is violative of his rights as guaranteed by the United States Constitution");

---

[2] See also "Manhattan Supreme Court Sees First 'Dual Jury' Trial in Decades," New York Law Journal (Feb. 9, 2023) (describing the Velazquez trial as "the first multiple jury trial held in Manhattan Criminal Supreme Court since the so-called Carnegie Deli murder case in 2001" but that "multiple jury trials in Brooklyn Supreme Court are 'common'" and "routine"), available at https://www.law.com/newyorklawjournal/2023/02/09/manhattan-supreme-court-sees-first-dual-jury-trial-in-decades.

United States v. Al Fawwaz, 67 F. Supp. 3d 581, 588 (S.D.N.Y. 2014) (finding that "the use of a dual jury system may very well be a reasonable response to prejudicial joinder" but declining to impose dual juries where severance not warranted); Cf. In re High Fructose Corn Syrup Antitrust Litig., 361 F.3d 439, 441 (7th Cir. 2004) (recognizing that the dual-jury trial "procedure the able and experienced district judge wants to employ is orthodox in criminal cases").

II.     Two Juries Allow the Court to Effectively Manage Any Issues Arising from the Third-Party Witness

In granting severance, the Court noted the potential impact of testimony from the Third-Party Witness, who will testify that Bryant admitted to participating in the murder and claimed to be the shooter during a botched robbery. See ECF No. 184 at 5-6. Citing United States v. Copeland, 336 F. Supp. 2d 223, 225 (E.D.N.Y. 2004) and United States v. Basciano, No. 05-CR-060 (NGG), 2007 WL 3124622, at *8 (E.D.N.Y. Oct. 23, 2007), the Court held that Bryant's contention that Jordan or Washington will call the Third-Party Witness was "more than bald conjecture" that could not be sufficiently cured through a limiting instruction, as it would exculpate Jordan and Washington and inculpate Bryant at the same time. ECF No. 184 at 7-8.

In both trials, the government anticipates eliciting from the Third-Party Witness Bryant's full statement, which acknowledges Bryant's participation in the murder but exaggerates his role.[3] It is also likely that Jordan and Washington will seek to call the Third-Party Witness to buttress or supplement their defense strategies. Given these eventualities, a joint trial with two juries would provide the Court with maximum flexibility in dealing with any prejudice or jury confusion that could potentially arise. Specifically, the government could call the Third-Party

---

[3] The witness's testimony about Bryant's statement would be admissible as Bryant's statement against penal interest in the trial against Washington and Jordan, or as Bryant's party-opponent statement in the trial against Bryant. See Fed. Rules of Evid. 804(b)(3) and 801(d)(2)(A).

6

Witness and elicit Bryant's statement in front of both juries. Then, the cross-examination of the Third-Party Witness by Jordan and Washington and the government's redirect could be done in the presence of one jury, while the cross-examination by Bryant and the government's redirect could done in the presence of the second jury. Similarly, if the Third-Party Witness was called by Jordan or Washington, the direct and cross-examinations could be appropriately limited in front of each jury.

Beyond this, to the extent testimony about Bryant's DNA or eyewitness testimony about Bryant's presence at the scene—which the government will present as to all three defendants—are deemed to present the same concerns about antagonistic defenses as in Copeland and Basciano, the Court could excuse one of the two juries during the implicated portions of the examinations.[4] In addition, while there is no indication any of the defendants will choose to testify, or what their potential testimony might be, should Jordan, Washington or Bryant (or any combination thereof) elect to take the stand, the use of two juries will allow the Court to deal with any contingency while preserving the benefits of a single proceeding.

Accordingly, while the actual mechanics of such a proceeding will be determined closer to, and during, the trial, the government respectfully submits that a trial with two juries (Jury #1 for the trial of Jordan and Washington and Jury #2 for the trial of Bryant) can proceed as

---

[4] As described infra at 14, this testimony would not constitute "exculpatory identification testimony implicating another codefendant" requiring presentation to separate juries. ECF No. 184 at 5 (quoting Copeland, 336 F. Supp. 2d at 224-225). Nevertheless, the parties could "diffuse any conflict of interest [] encountered by informing the judge when [their] questions might lead to answers that would not be admissible in the codefendant's trial." Brown, 515 F.3d at 1079.

follows:[5]

| | |
|---|---|
| Jury Selection | Two juries empaneled from one pool. |
| Openings | • Government opens to Jury #1.<br>• Jordan and Washington open to Jury #1.<br>• Government opens to Jury #2<br>• Bryant opens to Jury #2. |
| Government's Case | • Direct examinations of approximately 40 witnesses presented once to both juries.<br>• Cross-examinations and redirects of all witnesses presented once to both juries, except:<br>  ○ Cross-examinations of the Third-Party Witness by Jordan and Washington and the government's redirect presented to Jury #1.<br>  ○ Cross-examination of the Third-Party Witness by Bryant and the government's redirect presented to Jury #2. |
| Jordan's Case | • Directs, cross-examinations and redirects presented to Jury #1. |
| Washington's Case | • Directs, cross-examinations and redirects presented to Jury #1. |
| Summations/Rebuttals for Jordan and Washington | • Government closes to Jury #1.<br>• Jordan and Washington close to Jury #1.<br>• Government rebuts to Jury #1.<br>• Jury charge is given to Jury #1. |
| Bryant's Case | • Directs, cross-examinations and redirects presented to Jury #2. |
| Summations/Rebuttals for Bryant | • Government closes to Jury #2.<br>• Bryant closes to Jury #2.<br>• Government rebuts to Jury #2.<br>• Jury charge is given to Jury #2. |

---

[5] See Mack v. Peters, 80 F.3d 230, 235 (7th Cir. 1996) ("Severance of codefendants does not create a right to a particular trial sequence. To provide otherwise would afford to defendants indicted together a right not held by defendants indicted separately."); Quaye v. Lee, No. 19-CV-3097 (AMD), 2022 WL 1556496, at *10 (E.D.N.Y. May 17, 2022) (in dual-jury state court trial, the defendant's rights were not violated when he left the courtroom, which was not required, as his co-defendant's jury heard evidence).

As one district court explained, the following procedure can be used in a two-jury trial:

> Each jury would be instructed to consider only the evidence relevant to the particular defendant(s) whom they would be trying and to not speculate about, or be influenced by, the fact that two juries have been empaneled. Each panel will be kept in separate jury rooms. Each will be instructed against co-mingling. Each will be assigned their own court security officer who shall be instructed to maintain the separation of the two juries. The two juries shall hear the same evidence presented by the Government as against all defendants, unless specifically ordered otherwise by the court. Separate verdict forms shall be entered by each jury on the guilt phase, although both juries will instructed together with a single set of instructions.

United States v. Aiken, 76 F. Supp. 2d 1346, 1358 n.11 (S.D. Fla. 1999); see Ricardo B., 535 N.E.2d at 1337-38 (both juries heard "evidence common to the charges against both defendants but with one jury excused from the courtroom during presentation of evidence which was admissible only before the other" and otherwise "[e]ach defendant was given the option of withdrawing his jury during presentation of the other's defense. Neither did so"); People v. Bruno, 111 A.D.3d 488, 489 (1st Dep't 2013) (affirming dual-jury trial procedure where "court excused defendant's jury during certain portions of the trial pertaining specifically to the codefendant, which minimized any potential prejudice resulting from the two defendants' antagonistic defenses").[6] The government would also prepare and mark two sets of exhibit lists, witness lists, and stipulations (if any), which it anticipates would be identical for each jury.

---

[6] See also Trial Tr. 252:17-22, People v. Ana Velazquez, et al. (No. 1986/2019) (during voir dire in New York County trial, instructing the jury pool that there will be two juries selected where one "jury will be assigned to hear the evidence and make a decision as it relates to [one defendant], and the other jury will make a determination as to [the second defendant]. You are not to speculate as to why that is"); id. at 1281:16-22 (before the commencement of openings, instructing jury: "In order to be fair to each defendant, there may be days or portions of the day when only one jury is present in the courtroom. Should that take place, the absent jury should not speculate on the reason for that separation or about what may have taken place in its absence. . . Each jury must evaluate the evidence as it applies to the defendant for whom that jury is assigned to render a verdict").

9

This use of dual-jury trials is an accepted practice in New York state courts, particularly those involving violent conspiracies, where the risks to the witnesses are the greatest and the public and parties have an interest in an efficient and timely resolution of the case. For example, a dual-jury trial was held in the 2018 trial of People v. Micah Alleyne, et al. (No. 4634/2016) for the gang-related murder of Carey Gabay, a former aide to former Governor Andrew Cuomo. During a street festival, Carey Gabay was fatally struck by a stray bullet during a shootout between rival gangs. Rather than conduct two separate trials, the Kings County trial court empaneled two juries, one for three defendants and one jury for the fourth defendant, who if he had testified, would have inculpated one of his co-defendants. Both juries sat for the entire presentation of the government's evidence and the defendants' cases because the defendant did not ultimately testify; if he had, one of the juries would have been removed solely during his testimony. The government gave one opening statement and two summations, one for each set of defendants.

Similarly, in the 2022 trial of People v. Ana Velazquez, et al. (No. 1986/2019), the New York County trial court empaneled two juries for two defendants charged with committing felony-murder during a home invasion robbery with a third person; the third participant ultimately cooperated and testified for the government. Two juries were needed because one of the defendants was expected to testify that, although she participated in the robbery, she acted under duress from the cooperating witness. She was also expected to inculpate her co-defendant, who claimed to have had nothing to do with the crime. The government examined the cooperating witness in the presence of both juries. Then, in the presence of only one jury, the first defendant cross-examined that witness and the government conducted a redirect examination. The juries were then switched, and the second defendant cross-examined that witness and the government

10

redirected the witness in the presence of the second jury. The government opened once to both juries, while the defendants opened to their respective juries. After the first defendant rested in front of the first jury, the government and defendant closed in front of that jury and the court gave the jury charge. Then the second defendant rested, the government gave a second summation and the defendant closed to the second jury, and the court gave the jury charge. The first jury returned a verdict during summations in front of the second jury.

In a recent federal trial in the Middle District of Florida, the district court tried a murder and drug conspiracy before two juries to avoid a Bruton issue. See United States v. Chappell Fey, et al., No. 5:20-CR-59 (JA) (M.D. Fla. 2021).[7] A woman had agreed to cooperate with law enforcement and conduct a controlled drug purchase from a couple—the defendants—that routinely distributed drugs. The defendants discovered that the victim was helping authorities and murdered her with a fatal dose of fentanyl and methamphetamine to prevent her from acting as a future witness against them. At trial, the government expected to introduce one defendant's statements to several witnesses implicating himself and his co-defendant; that defendant planned to shift blame for the murder to his co-defendant and present his own witness; and the second defendant planned to deny any involvement. During the eight-day trial, the government presented 24 witnesses to both juries, except for: (1) one witness who testified in front of one jury only, see id., ECF No. 309 (Trial Tr. 5-40); (2) two witnesses whose cross-examinations and redirects were presented to separate juries, see id., ECF Nos. 307 (Trial Tr. 69-140), 309 (Trial Tr. 16-62); and (3) four witnesses whose direct examinations were split between the juries and cross-examinations and redirects were presented to separate juries, see id., ECF Nos. 308 (Trial Tr. 104-133), 309

---

[7] The convictions are currently pending appeal before the Eleventh Circuit. See United States v. Chappell Fey, et al., No. 22-11373 (11th Cir.).

11

(Trial Tr. 41-100), 310 (Trial Tr. 16-62, 159-229). Defense counsel also signaled during cross-examinations when they planned to ask questions that might warrant switching the juries. See id., ECF No. 307 (Trial Tr. 116:19-117:25, 120:23-124:6). The court conducted separate voir dire for each jury, and the government presented two opening statements, one after each voir dire, and two summations.

In seeking a two-jury trial, the government is cognizant of the fact that such a trial could pose logistical challenges. See United States v. Bin Laden, 109 F. Supp. 2d 211, 215 n.8 (S.D.N.Y. 2000) (rejecting dual juries, expressing reservations about risks); United States v. McVeigh, 169 F.R.D. 362, 371 (D. Col. 1996) (rejecting dual juries for logistical reasons).[8] Therefore, before filing this motion, the government sought the views of the Clerk of Court and was informed that any such challenges could be addressed and that there is nothing about the courthouse's facilities or practices that would make a two-jury trial infeasible. In light of this, as well as the fact that two separate trials would be a tremendous burden on the Court, witnesses and the parties, the government respectfully submits that an efficient, two-jury trial should be given serious consideration. See State v. Hernandez, 394 A.2d 883, 885 (Sup. Ct. N.J. 1978) (upholding use of three-jury trial employed to accommodate defendants' Bruton concerns and an elderly

---

[8] It bears noting that a primary difficulty with dual juries, which are often employed to address Bruton problems, is the risk that there will be inevitable confusion from shuttling the two juries in and out of the courtroom depending on which confession is being offered or which evidence is being introduced. There is no Bruton issue in this case. Moreover, the government understands that the case was severed based on the potential testimony of one witness, which the government would likely call in both the trial of Jordan and Washington and the trial of Bryant and elicit the same testimony in each. Thus, while the juries will need to be rotated at certain times, it would likely be only during the jury addresses, the cross-examinations and redirects of that one witness, and the respective defense cases. In the event other witnesses would present similar antagonistic defenses requiring severance, that testimony would be flagged by the parties in advance and could be separated.

victim who had "come from Puerto Rico to testify against all three defendants," thus "saving everyone's time and expense").

The government acknowledges that conducting a dual-jury trial will require coordination and patience that may demand the parties to "be more prepared, anticipating the impact of certain lines of questioning." Brown, 515 F.3d at 1079; see Rimar, 558 F.2d at 1273 (affirming use of dual-jury despite claim of "continuing confusion" because court "moved cautiously in areas where the rights of particular defendants were or could have been involved" and "promptly corrected . . . and instructed the jury accordingly" as to any "misstatements of the judge or defense counsel in referring to the attorneys or their clients by the wrong names, or confusing momentarily which jury was sitting in which case"). But in light of the circumstances of the instant case, particularly the large number of common witnesses that will be called as to each defendant, judicial economy dictates that a dual-jury trial be held. A dual-jury trial here would abide by the Court's severance ruling by avoiding prejudice to the defendants, while also benefitting the resources of the Court and witnesses and accounting for witness safety concerns that come with testifying in two murder trials.

III.   Two Juries Save Significant Resources and Prevent Other Issues Arising from Separate, Successive Trials

Severance does not impact the presentation of government's direct case, which will be nearly identical as to each defendant. Indeed, the government plans to submit the same evidence and witness testimony at the trial against Jordan and Washington as it will at the trial against Bryant. At present, the government expects to call approximately forty witnesses, all of whom will testify about the same subject matter. A dual trial will alleviate the burden of these witnesses having to testify twice.

13

Evidence of the drug trafficking conspiracy underlying Counts One and Two is admissible at both trials. There would not be any undue prejudice to any of the defendants because a drug trafficking conspiracy is the underlying activity that forms the basis for the murder charges in Counts One and Two. Under these circumstances, witness testimony regarding Jordan and Washington's roles in the drug trafficking conspiracy is admissible against Bryant, and Bryant's role in the drug trafficking conspiracy is admissible against Jordan and Washington.

The government also will present as to all three defendants the same evidence about the murder itself—the testimony and evidence proving the presence of three perpetrators at Mizell's murder, including the evidence of Bryant's DNA. This evidence is relevant at both trials to prove the co-conspirators' roles and actions during the murder. The Court's severance decision does not affect the eyewitness testimony that the government will elicit, in both trials, identifying Jordan and Washington as the gunmen. Similarly, the government anticipates eliciting in both trials eyewitness testimony describing Bryant inside 90-10 Merrick Boulevard at the time of the murder, as well as the presence of his DNA. Such evidence is relevant in Bryant's trial to prove Bryant's involvement in the murder, and in the case of Jordan and Washington's trial, to prove their co-conspirator's role and actions during the murder. Severance similarly does not impact the cross-examinations and redirects of any government witnesses, other than potentially the Third-Party Witness, as described above.[9] In sum, all of the aforementioned testimony is consistent with the government's case—that Jordan and Washington were the gunmen and Bryant participated in the murder but not as the gunman—and none is "<u>exculpatory</u> identification

---

[9] As described supra at 7, should the Court find that this testimony could lead to similar issues regarding antagonistic defenses, the juries could be separated during the cross-examinations and redirects of these particular witnesses.

14

testimony implicating another codefendant" that would be a basis for severance or need to be submitted to separate juries. ECF No. 184 at 5 (quoting Copeland, 336 F. Supp. 2d at 224-225) (emphasis added).

Witness safety and convenience strongly militate in favor of a two-jury trial. Several government witnesses have expressed concern for their safety if they cooperate with the government or reluctance in testifying at trial. See, e.g., ECF Nos. 113 at 26-32; 141 at 9-12; 174. The government may be forced to locate certain witnesses and apply for material witness warrants should witnesses refuse to comply with a trial subpoena. Other witnesses reside far outside of New York and would be required to travel twice.

Significantly, there are inherent safety concerns present after a witness testifies in a trial involving violent conduct.[10] Their names and testimony become public, and they may feel threatened—whether real or perceived—after testifying against individuals charged with murder. Even if any real threats received are retaliatory and unrelated to the second trial, fear from such threats may discourage such witnesses from willingly testifying at trial for a second time. The

---

[10] See, e.g., "Members of Brooklyn-Based 'Ninedee Gang' Indicted for Racketeering and the Murder of a Former Federal Witness," United States Attorney's Office (Aug. 9, 2021) (gang members prosecuted for murdering victim-witness who testified one year earlier in federal Brooklyn trial), available at https://www.justice.gov/usao-edny/pr/members-brooklyn-based-ninedee-gang-indicted-racketeering-and-murder-former-federal; "Brooklyn Man Sentenced to 33 Months' Imprisonment for Witness Retaliation," United States Attorney's Office (Jan. 20, 2021) (during a relative's federal robbery trial in Brooklyn, the defendant "began making gestures with his hand to mimic the shape of a gun and pointed it to his head and then to his chin in an upward movement to threaten the witness"), available at https://www.justice.gov/usao-edny/pr/brooklyn-man-sentenced-33-months-imprisonment-witness-retaliation; see also "Three Individuals Arrested for Separate Schemes to Harass, Threaten, Intimidate and Bribe Alleged R. Kelly Victims," United States Attorney's Office (Aug. 12, 2020) (relatives and friends of R. Kelly, including his publicist's relative, prosecuted for harassing victims to prevent their cooperation at trial), available at https://www.justice.gov/usao-edny/pr/three-individuals-arrested-separate-schemes-harass-threaten-intimidate-and-bribe.

government will be prejudiced should it need to locate (and possibly arrest) the same witnesses for a second trial.

A joint trial with two juries will also eliminate any claims of jury contamination by media coverage of the first trial. To date, this case has garnered substantial media coverage in newspapers, magazines, television, the internet and radio. It is anticipated that both trials would receive similar media coverage. Bryant will undoubtedly argue that after the trial of Jordan and Washington, the "negative publicity [against the defendants] has so permeated the community with prejudice as to create a reasonable [and avoidable] likelihood of compromising [his] right to a fair and impartial jury" in a second, subsequent trial. United States v. Washington, 48 F.3d 73, 78 (2d Cir. 1995) (internal citation and quotation marks omitted). This will be especially so after Jordan and Washington cross-examine the Third-Party Witness and possibly target Bryant as the alternative perpetrator. A double jury trial will eliminate this potential for prejudice and area of litigation.

CONCLUSION

For the foregoing reasons, the government respectfully submits that the government's motion for a two-jury trial should be granted.

Dated:   Brooklyn, New York
         October 24, 2023

                                        Respectfully submitted,

                                        BREON PEACE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York


                                By:          /s/
                                        Artie McConnell
                                        Mark E. Misorek
                                        Miranda Gonzalez
                                        Assistant United States Attorneys
                                        (718) 254-7000

cc:   Clerk of Court (LDH) (by ECF)
      All counsel of record (by ECF)

17