**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | 20 CR. 305 (LDH) |
| KARL JORDAN JR., *ET AL.*, | |
| Defendants. | |

**JAY BRYANT'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR A TWO-JURY TRIAL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

RELEVANT FACTS .............................................................................................................1

ARGUMENT POINT I: THE GOVERNMENT'S DISGUISED MOTION FOR
RECONSIDERATION MUST BE DENIED BECAUSE IT SEEKS TO RELITIGATE
THE COURT'S GRANT OF SEVERANCE WITHOUT PROVIDING ANY FACTS OR
ARGUMENTS THAT WOULD SATISFY THE STANDARD GOVERNING
MOTIONS FOR RECONSIDERATION IN THIS CIRCUIT .........................................2

ARGUMENT POINT II: THE LIKELIHOOD OF A MISTRIAL NECESSITATING A
RETRIAL COMBINED WITH THE PREJUDICE TO MR. BRYANT RESULTING
FROM A TWO-JURY EXPERIMENT WOULD SUBSTANTIALLY OUTWEIGH
ANY POTENTIAL SAVING OF JUDICIAL RESOURCES.........................................6

CONCLUSION...................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012)..................................................................................................4

*Eisemann v. Greene,*
  204 F.3d 393 (2nd Cir. 2000).............................................................................................3

*People v. Feliciano*,
  189 A.D.3d 416, 136 N.Y.S.3d 268 (App. Div. 1st Dept.)..................................................9

*People v. Sergio,*
  2008 NY Slip Op 30411(U) (Sup. Ct.) ............................................................................8, 9

*Shamis v. Ambassador Factors Corp.*,
  187 F.R.D. 148 (S.D.N.Y. 1999) ........................................................................................3

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995)..............................................................................................3, 4

*State v. Corsi,*
  86 N.J. 172, 430 A.2d 210 (N.J. 1981) ...........................................................................8, 9

*United States v. Bin Laden*,
  109 F. Supp. 2d 211 (S.D.N.Y. 2000)..............................................................................7, 9

*United States v. Corbett,*
  No. 20 Cr. 213 (KAM), 2020 U.S. Dist. LEXIS 179457 (E.D.N.Y. Sep. 29,
  2020) ..................................................................................................................................3

*United States v. Fawwaz,*
  67 F. Supp. 3d 581 (S.D.N.Y. 2014)................................................................................7, 9

*United States v. Gray*,
  173 F. Supp. 2d 1 (D.D.C. 2001) ....................................................................................8, 9

*United States v. Gross,*
  No. 98 Cr. 0159 (SJ), 2002 U.S. Dist. LEXIS 28159 (E.D.N.Y. Dec. 5, 2002)............3, 4, 5, 6

*United States v. McVeigh,*
  169 F.R.D. 362 (D. Colo. 1996) .........................................................................7, 8, 10, 11

*United States v. Schulte*,
  No. 17 Cr. 548 (JMF), 2022 U.S. Dist. LEXIS 111611 (S.D.N.Y. June 22,
  2022) ..................................................................................................................................4

*United States v. Yannotti*,
    457 F. Supp. 2d 385 (S.D.N.Y. 2006)..............................................................................3, 4, 5

**Rules**

S&E D NY USDC Civil LR 6.3 .......................................................................................1, 3, 4, 5

**PRELIMINARY STATEMENT**

The Court should deny the government's motion for two-juries. First, the government's motion, labeled as a new motion *in limine* for a bifurcated trial, is really its attempt to relitigate an issue already decided by the Court. It does so because it is unable to satisfy the onerous standard for a motion for reconsideration under Local Civil Rule 6.3 and the cases applying the local rule to criminal cases. The government simply cannot accept that it must try Mr. Bryant separately and instead filed the instant motion which is ironically wasting the valuable judicial resources it purports to be saving. However, even if the Court were to reach the merits of the government's motion for reconsideration, it should still be denied because the likelihood of a mistrial necessitating a retrial combined with the prejudice to Mr. Bryant resulting from a two-jury trial substantially outweighs any potential saving of judicial resources or other purported benefits put forth by the government.

**RELEVANT FACTS**

On October 30, 2002, Jason Mizell, also known as "Jam Master Jay," was shot to death at a recording studio in Queens, New York. *See* ECF No. 152 at 2. On August 17, 2020, Karl Jordan, Jr. and Ronald Washington were charged with Mr. Mizell's narcotics-related murder as alleged in Counts One and Two of the Superseding Indictment. *See* ECF Nos. 1, 10. On May 30, 2023, the government filed a second superseding indictment joining Mr. Bryant to the charges against Messrs. Jordan and Washington with respect to Mr. Mizell's narcotics-related murder as alleged in Counts One and Two of the Superseding Indictment. *See* ECF No. 151.

On October 13, 2023, the Court issued an Order granting Mr. Bryant's motion to sever his trial from his co-defendants Jordan and Washington. *See* ECF No. 184. In granting the motion, the Court held that a limiting instruction could not cure the prejudice to Mr. Bryant

1

stemming from Jordan and/or Washington calling a neutral third-party witness to testify that contrary to the government's theory of the case, Mr. Bryant confessed to shooting Mr. Mizzell. *Id*. at 7. Messrs. Jordan and Washington are scheduled to proceed to trial on January 29, 2024. A trial date for Mr. Bryant has not yet been scheduled. The next status conference for Mr. Bryant is scheduled for November 8, 2023.

The government did not file a motion for reconsideration of the Court's decision to sever Mr. Bryant from his co-defendants. Instead, on October 24, 2023, the government filed a motion labeled as a motion for a bifurcated trial but really asking the Court to reconsider and reverse its decision granting severance to Mr. Bryant and have all three defendants tried together before two juries. *See* ECF No. 186. On October 25, 2023, Mr. Washington filed his opposition to the government's motion noting that despite labeling the motion as a motion *in limine* for a two-jury trial it was actually a motion for reconsideration of the Court's Order granting Mr. Bryant's severance motion, albeit one that failed to admit it was "asking for reconsideration" and failed to "even cit[e], no less meet[], the standard for reconsideration." ECF No. 187 at 1.

## ARGUMENT

### Point I

**The Government's Disguised Motion for Reconsideration Must Be Denied Because It Seeks To Relitigate The Court's Grant of Severance Without Providing Any Facts or Arguments That Would Satisfy the Standard Governing Motions for Reconsideration in this Circuit**

The government's motion is a disingenuous attempt to get a second bite at the apple on the severance motion it lost. What the government labels a motion for two-juries is, in reality, an improper motion for reconsideration of this Court's grant of severance. The government had its chance to make this argument in response to Mr. Bryant's severance motion or at the lengthy oral argument on the issue when the Court invited them to address the Court. It did not and,

2

thus, it desperately filed the instant motion for reconsideration packaged as a new motion *in limine* for a bifurcated trial.  The government chose not to label it as a motion for reconsideration because it clearly cannot meet the standard for reconsideration applied in this Circuit.  For this reason alone, the Court should deny the government's motion and not waste any more resources relitigating an issue already briefed by the parties and decided in a reasoned opinion by the Court.

Local Civil Rule 6.3 requires that a motion for reconsideration be accompanied by "a memorandum setting forth concisely the matters or controlling decisions which [a moving party] believes the court has overlooked."  Local R. 6.3; *see also Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000) ("To be entitled to reargument, a party 'must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.'" (quoting *Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999)).

Local Civil Rule 6.3 applies to criminal matters.  In this district and the Southern District of New York, in criminal cases, "district courts have applied the standard found in Rule 6.3." *United States v. Yannotti*, 457 F. Supp. 2d 385, 389 (S.D.N.Y. 2006); *see also United States v. Corbett*, No. 20 Cr. 213 (KAM), 2020 U.S. Dist. LEXIS 179457 (E.D.N.Y. Sep. 29, 2020); *United States v. Gross*, No. 98 Cr. 0159 (SJ), 2002 U.S. Dist. LEXIS 28159 (E.D.N.Y. Dec. 5, 2002).

The moving party has a heavy burden to overcome to be successful in its motion for reconsideration.  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Courts look to a number of factors when reviewing a motion for reconsideration, including: "(1) an intervening change of controlling law[;] (2) the availability of new evidence not previously available[;] and (3) the need to correct a clear error or prevent manifest injustice." *Gross*, 2002 U.S. Dist. LEXIS 28159, at *8-9. If the evidence was available to the moving party and not raised initially, raising it for reconsideration is improper. A motion for reconsideration cannot advance a new argument, as it is deemed waived, nor can such a motion be used as a vehicle to introduce new evidence "that should have been set forth during the pendency of the prior motion or could have been discovered in the exercise of due diligence." *Id.* at *10 (internal citations omitted).

Additionally, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d at 257; *see also United States v. Schulte*, No. 17 Cr. 548 (JMF), 2022 U.S. Dist. LEXIS 111611, at *2 (S.D.N.Y. June 22, 2022) ("A motion for reconsideration 'is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'") (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)); *Yannotti*, 457 F. Supp. 2d at 389 ("The purpose of Local Rule 6.3 is to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'") (internal citations omitted).

In the government's instant motion it is asking the Court to reverse its decision granting Mr. Bryant severance and try all three co-defendants jointly but with two juries. An argument that it could have advanced in the motion practice on this issue. It did not and the law of this Circuit establishes that the proper procedure is to file a motion for reconsideration governed by

4

the standards underlying Local Rule 6.3. *See Yannotti*, 457 F. Supp. 2d at 389. The government chose not to file a motion for reconsideration because it recognized that it would not be able satisfy the very "strict" standard for which motions for reconsideration are assessed in this Circuit. Since the government filed its opposition to Mr. Bryant's severance motion there has been no intervening change of controlling law and there is no new evidence available to the government that was not available to it at the time it filed its original response in opposition. In its opposition to Mr. Bryant's motion for severance the government did not mention utilizing two juries as an alternative to severance. If the evidence was available to the moving party and not raised initially, raising it for reconsideration is improper. *See Gross*, 2002 U.S. Dist. LEXIS 28159, at *12-13 ("This argument essentially amounts to a claim that 'our original estimation of what was important was wrong, and now, knowing how the Court will decide, we want another attempt to make our case.' This is a luxury most parties before federal courts would want. As the caselaw makes clear, however, in the context of motions for reconsideration, it is inappropriate, both to the parties against whom the movant is advocating, and the efficient operations of the courts.") Critically, the government does not claim, because it knows such an argument would be frivolous, that the Court's grant of severance was clear error or resulted in manifest injustice. Accordingly, all the reconsideration factors weigh against the Court reversing its grant of severance.

      The Court granted Mr. Bryant's motion for severance because it recognized that severance was the only solution to prevent the potential and likely undue prejudice if Mr. Bryant was tried jointly with his co-defendants and that "the potential prejudice that would result [from a co-defendant calling the neutral third-party witness] cannot be sufficiently cured through a limiting instruction." In reaching its decision, the Court undoubtedly considered all reasonable

5

alternatives that would permit joinder while protecting Mr. Bryant from undue prejudice. We have no doubt that if the Court believed that trying the defendants jointly while utilizing two juries was the proper remedy it would have ordered it as an alternative to granting Mr. Bryant's motion for severance.

Regardless, a motion for reconsideration, however it is labeled, cannot advance a new argument, as it is deemed waived. Nor can such a motion be used as a vehicle to introduce new evidence "that should have been set forth during the pendency of the prior motion or could have been discovered in the exercise of due diligence." *Gross*, 2002 U.S. Dist. LEXIS 28159, at *10 (citations omitted). For this reason alone, the Court should the deny the motion without even addressing the merits of the government's claim that "[a] single trial with two juries can address concerns regarding the Third-Party Witness while retaining the substantial benefits of a single proceeding."

**Point II**

**The Likelihood of a Mistrial Necessitating a Retrial Combined With the Prejudice To Mr. Bryant Resulting From A Two-Jury Experiment Would Substantially Outweigh Any Potential Saving of Judicial Resources**

The government is asking this Court to be the first district court in this Circuit to experiment with empaneling two juries less than three months before the date the proposed trial would commence. In making this request the government casually glosses over the logistical concerns and other issues that would almost necessarily result in a mistrial necessitating a retrial and cause Mr. Bryant undue prejudice. It claims that it is worth it in the name of conservation of judicial resources and witness convenience. Its argument fails for two reasons. First, the prejudice to the defendants in being the first in this Circuit to be tried by two juries in a single criminal trial presenting antagonistic defenses between co-defendants with less than three

6

months to figure out all the complicated logistical concerns posed by such a proceeding substantially outweighs any purported benefit offered by the government. Second, any purported benefits offered by the government in support of this novel and experimental approach are undermined by the substantial possibility that a two-jury trial in this case will result in a mistrial necessitating retrial.

There are no reported cases of district courts in this Circuit empaneling two juries for one criminal trial. *See* ECF No. 186 at 6. Moreover, the only two district court cases in this Circuit from this century considering a motion for two juries in a criminal case, each of which was made by the defense not the government, were denied. *See United States v. Fawwaz*, 67 F. Supp. 3d 581, 588 (S.D.N.Y. 2014) (denying defendant's motion to empanel multiple juries); *United States v. Bin Laden*, 109 F. Supp. 2d 211, 215 n.8 (S.D.N.Y. 2000) (denying defendant's motion to empanel multiple juries and noting that "[a]lthough most appellate courts, it seems, have found the procedure to be constitutionally permissible, many have expressed reservations about its use.").

The reason this Circuit has never utilized two juries in a criminal trial is likely because it "is a procedure fraught with complications." *Fawwaz*, 67 F. Supp. 3d at 588. These complications include the "risk of injecting confusion and uncertainty into the proceedings, interrupt[ting] the flow of trial, and requir[ing] counsel to guard against prejudicial evidence that might be entered against another defendant, drawing the lawyer's attention away from his own client." *Id*. Critically, at least one district court has recognized that while dual juries might be a viable solution to cure a *Bruton* problem "[i]t would not relieve the prejudice to each of the defendants from their antagonistic defenses requiring different tactics and strategies during the trial proceedings." *United States v. McVeigh*, 169 F.R.D. 362, 371 (D. Colo. 1996).

7

The most compelling reason to avoid multiple juries is that it "exponentially increase[s] the possibility for reversible error or prejudice to defendants." *United States v. Gray*, 173 F. Supp. 2d 1, 7 (D.D.C. 2001). Any potential benefits resulting from the ability to maintain a single proceeding are offset by the increased potential for a retrial due to a mistrial. *See People v. Sergio*, No. 2008 NY Slip Op 30411(U), ¶ 7 (Sup. Ct.) (denying the government's motion for a dual-jury trial noting that "[a] great potential for prejudicial error exists if both juries hear evidence or argument properly intended only for one defendant, and hence, the potential for mistrial necessitating retrial is significant."); *State v. Corsi*, 86 N.J. 172, 430 A.2d 210 (N.J. 1981) ("There are too many opportunities for reversible error to take place [when conducting a two-jury trial] . . . If it is to be used at all, it should be used in relatively uncomplicated situations").

The government advances two primary arguments in support of its motion for a two-jury trial, both of which collapse when scrutinized rationally. The government first argues that two juries would allow the Court to manage any issues arising from the neutral third-party witness. But the flaw in its argument is that it fails to recognize that there is a remedy, in fact one that the Court has already employed (severance) that will avoid the undue prejudice relating to the third-party witness. Severance is the remedy that will prevent undue prejudice against Mr. Bryant without exposing the proceedings to a myriad of problems that utilizing the experimental and novel approach would, not a "bifurcated trial." This novel approach has never been employed in this Circuit for good reason despite the rationales advanced by the government. *See McVeigh*, 169 F.R.D. at 371 (separate juries while a "[c]onceptually [] convenient solution" is "[lo]gistically [] impracticable" and "would not relieve the prejudice to each of the defendants from their antagonistic defenses[.]")

8

The government's second argument that two juries would save significant judicial resources and prevent other issues arising from separate successive trials is specious. Any conservation of resources would be offset by the significant possibility of a mistrial necessitating a retrial. *See People v. Feliciano*, 2020 NY Slip Op 07145, ¶¶ 3-4, 189 A.D.3d 416, 419, 136 N.Y.S.3d 268, 272 (App. Div. 1st Dept.) (granting new trial to defendant based on finding that "there is a reasonable possibility that the outcome of a separate trial against [defendant] would have differed from that of the two-jury trial he actually had."). Furthermore, cases examining the issue of two juries in criminal matters universally recognize that it "is a is a procedure fraught with complications." *Fawwaz*, 67 F. Supp. 3d at 588; *see also Bin Laden*, 109 F. Supp. 2d at 215 n.8; *Gray*, 173 F. Supp. 2d at 7 ("Although courts in this Circuit have recognized that a two-jury trial may comport with the requirements of due process, there are also recognized risks and dangers that attend a two-jury trial.") (internal citations omitted); *People v. Sergio*, 2008 NY Slip Op 30411(U), ¶ 7 ("A great potential for prejudicial error exists if both juries hear evidence or argument properly intended only for one defendant, and hence, the potential for mistrial necessitating retrial is significant. Thus, this court declines to order a dual trial herein."); *State v. Corsi*, 86 N.J. 172 ("There are too many opportunities for reversible error to take place [when conducting a two-jury trial] . . . If it is to be used at all, it should be used in relatively uncomplicated situations").

The government is seeking to have this experimental and novel approach utilized for the first time in a district court in this Circuit less than three months before the trial is scheduled to commence. The government anticipates calling 40 witnesses. *See* ECF. No. 186 at 8. This, an over 20-year-old murder case, is not a "relatively uncomplicated situation." While we believe that there is no way to ensure that a two-jury trial in this matter would be free from error and

9

prejudice to Mr. Bryant, assuming *arguendo* that it would be possible, more than three months would be necessary to figure out the myriad logistical concerns presented by this approach.

Moreover, the government's primary justification for why empaneling two juries would conserve judicial resources and not be logistically cumbersome is based on its repeated claim that the jury would only need to be separated for one witness, *i.e.*, the neutral third-party witness, but the government cannot even commit to that. The government acknowledges, albeit in two footnotes, the distinct possibility that there may be other witnesses who "present similar antagonistic defenses requiring severance[.]" ECF No. 186 at 14 n.8. It notes that it is possible that the two juries would need to hear the testimony of such witnesses separately as well. *Id*. at 16 n.9. Of course, each witness who is required to testify separately before each of the juries will lengthen the duration of the trial and exponentially increase the opportunities for error and prejudice to the defendants. *See McVeigh*, 169 F.R.D. at 371 (granting severance and rejecting use of dual juries for defendants with antagonistic defenses based on the finding that "[i]t is reasonable to anticipate a need for extensive hearings outside the presence of the jury to consider conflicting defense objections and requests for cautionary instructions during the presentation of the evidence, including arguments about whether both juries can hear particular testimony or see certain exhibits. The resulting delays would interrupt the rhythm and flow of the proceedings and risk unforeseeable adverse consequences.").

Aside from conservation of resources, the government also argues that a single trial with two juries is necessary for witness convenience. The government fails to cite, because it does not exist, any authority to support its position that witness convenience outweighs the substantial likelihood of undue prejudice to Mr. Bryant that will result from attempting to employ this experimental and novel approach. Of course, this argument also fails given the significant

10

possibility that a single trial with two juries would result in a mistrial necessitating a retrial, which would require the witnesses to appear in two or more proceedings.

Lastly, the government's claim regarding jury contamination is flawed as it fails to acknowledge the protective measures that will be employed and ignores the glaring reality that "[t]he chances of obtaining fair and impartial juries in two separate trials would certainly be better than attempting to seat a jury after a mistrial or reversal and new trial as a result of prejudicial joinder." *McVeigh*, 169 F.R.D. at 371.

## CONCLUSION

For these reasons we respectfully submit that the Court should deny the government's motion for two-juries and refuse to address the merits of the disguised motion for reconsideration as a disingenuous attempt to relitigate an issue that has already been decided by the Court and for which it is unable to satisfy the standard for reconsideration. However, if the Court is inclined to address the merits of the motion, it should be denied because the likelihood of a mistrial necessitating a retrial combined with the prejudice to Mr. Bryant resulting from a two-jury trial substantially outweigh any potential savings of judicial resources or other purported benefit put forth by the government.

Dated: November 3, 2023

                                            _____
César de Castro
Valerie Gotlib
Shannon McManus
The Law Firm of César de Castro P.C.
111 Fulton Street – 602
New York, NY 10038
(631) 460-3951
cdecastro@cdecastrolaw.com
vgotlib@cdecastrolaw.com
smcmanus@cdecastrolaw.com
*Attorneys for Defendant Jay Bryant*

12