# Mark S. DeMarco

Attorney At Law
52 Duane Street, 7th Floor
New York, New York 10007
718 239 7070
Fax 718-239-2141
MSDLaw@aol.com

January 11, 2024

Hon. LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**BY ECF & ELECTRONIC MAIL**

            Re: *United States v. Karl Jordan*
               20 Cr. 305 (LDH)

Your Honor:

  This letter is submitted in response to the Government's motion *in limine* dated January 11, 2024, seeking to limit the cross-examination of the majority of its witnesses. This Court should deny this motion in its entirety.

  At the outset, this motion should be denied as untimely since this Court, in an order dated February 17, 2022, established October 19, 2022, as the deadline for any motions *in limine*.

  In any event, almost 15 months later, during jury selection and roughly two-weeks before opening statements, the government seeks to limit the cross-examination of nearly twenty civilian witnesses, eight law enforcement witnesses and one fingerprint examiner. Since the evidence the government seeks to preclude is both relevant to the witnesses' credibility, bias, and in the case of the government's law enforcement witnesses, the integrity of their investigation here, there is simply no basis at this time to preclude cross examination of the government witnesses' prior transgressions and this Court should decline to do so.

**Lay Witnesses' Criminal Histories Are Admissible**

  The government spends most of its motion seeking to bar the defendants from cross-examining roughly 20 civilian witnesses regarding their criminal histories and past misconduct. According to the government, their witnesses' histories of misbehavior are irrelevant to their credibility and, thus, inadmissible. This motion must be denied.

  The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him." *U.S. Const. amend. VI.* The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. *Crawford v. Washington*, 541 U.S. 36, 61 (2004). It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. *Id*.

Hon. LaShann DeArcy Hall
January 11, 2024

Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. It is not necessary that the cross-examination would have been certain to affect the jury's assessment of the witness' reliability or credibility; rather, "it is sufficient that a jury 'might reasonably' have questioned the witness's reliability or credibility in light of the cross-examination." *Fowler v. Sacramento County Sheriff's Dep't,* 421 F.3d 1027, 2005 U.S. App. LEXIS 18840 (*citing Del. v. Van Arsdall,* 475 U.S. 673, 680 (1986), *Davis v. Alaska,* 415 U.S. 308, 319 (1974), and *Olden v. Kentucky*, 488 U.S. 227, 232 (1988)).

The right to cross-examine is not limitless. *Fowler*, 421 F.3d at 1036. Trial judges "retain wide latitude" to "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. "Rather significantly, however, these restrictions must be 'reasonable,' and 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Fowler*, 421 F.3d at 1037 (*quoting Van Arsdall*, 475 U.S. at 679).

*Federal Rule of Evidence 608(b)* permits inquiry into "specific instances of the conduct of a witness" where that conduct is "probative of truthfulness or untruthfulness" and where the questioning concerns "the witness' character for truthfulness or untruthfulness." *Fed. R. Evid. 608(b)*; see also *United States v. Bagaric*, 706 F.2d 42, 65 (2d Cir. 1983); *United States v. Nelson*, 365 F. Supp. 2d 381, 386-87 (S.D.N.Y. 2005). In accordance with this rule, courts in this Circuit have regularly permitted cross-examination regarding prior conduct that bears on a witness's character for truthfulness. See, e.g., *United States v. Schatzle*, 901 F.2d 252, 255-56 (2d Cir.1990) (permitting questions regarding omission of prior arrest from bar application).

As an initial matter, depending on their testimony, these witnesses' past crimes, arrests and "other misconduct" may become relevant for their impeachment. After all, determinations of relevance and admissibility are highly fact specific. *See, e.g., United States v. Klein*, No. 16-CR-442 (JMA), 2017 WL 839765, at *1 (E.D.N.Y. Mar. 1, 2017) (deferring ruling on evidentiary questions, "involve a fact-specific inquiry . . . until the issues arises during trial" as "[t]he admissibility of the challenged statements will turn on the manner in which the trial progresses").

Further, a witness's gang membership, drug dealing, numerous arrests, convictions and bad acts in a relatively brief period of time is relevant to this witness's capacity to live a law-abiding life. Evidence which demonstrates a relevant pattern of conduct by a witness, or his intent or absence of mistake based on similar past conduct, is clearly admissible and proper grounds for cross-examination. See, e.g., *Ismail v. Cohen*, 899 F.2d 183, 188-89 (2d Cir. 1990) (allowing cross-examination regarding police officer's prior assault and wrongful arrest).

Hon. LaShann DeArcy Hall
January 11, 2024

  Furthermore, cross-examination on person's acts of violence, misconduct and/or drug use will permit the jury to use this conduct to evaluate this witness's testimony. The jury may use this information to find them to be less credible (or not credible at all), based on this conduct.

  For example, to the extent that these witnesses misconduct, arrests or convictions were drug or alcohol related, that may have impacted their ability to accurately perceive the facts to which they are testifying – directly relevant to credibility

  Any concerns about issue confusion or undue prejudice is not sufficient to completely exclude this cross-examination, especially when the jury can be instructed about the proper use of the evidence. Indeed, if cross-examination about a witness's criminal past is thought as likely to be used for an improper purpose, that improper use could be avoided with pointed jury instructions especially where, as here, a jury might reasonably question the witness's credibility upon hearing it.

  Finally, the government also relies heavily on the age of its witness' convictions, arguing that convictions are inadmissible if they fall outside of the 10-year time restriction set forth in *Rule 609(b)*.[1] *Gov. Mot. at 9*. That, however, is not the rule. *FRE 609* is not a wholesale bar on admission of convictions more than 10 years old. Instead, such convictions are admissible if their "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." *Fed. R. Evid. 609(b)(1)*. Without knowing precisely the contours' of these government witnesses' testimony, the fact-intensive analysis that the rule requires is virtually impossible at this stage. The Court should deny the government's motion at this juncture on this basis as well.

  "[C]ourts in this Circuit have consistently admitted convictions over ten years of age when the prior crimes involved falsification and the credibility of the testifying witness was crucial to the outcome of the current case." *United States v. Chervin*, No. 10-cr-918, 2013 U.S. Dist. LEXIS 4012, at *15, 2013 WL 124270, at *5 (S.D.N.Y. Jan. 10, 2013) (citing *Zinman v. Black Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993); *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981)). In *Zinman*, 938 F.2d at 434, the Second Circuit affirmed the district court's admission of Zinman's 17-year old conviction for Medicare fraud. It observed that the district court's "on-the record determination" included findings that "making a false statement to a government agency is a crime akin to perjury, and that Zinman's conviction therefore bore heavily on his credibility," "the jury's assessment of Zinman's credibility was highly relevant to several disputed issues in the case," and "any resulting prejudice to Zinman was substantially outweighed by the probative value of the evidence." *Id.* The Second Circuit found "this determination was supported by the record and was well within the district court's discretion." *Id. See also United States v. Weichert*, 783 F.2d 23, 26 n.3 (2d Cir. 1986) ("Evidence of prior

---

[1] In this case, where the charged conduct occurred on October 30, 2002 – more than 20 years ago – the government seeks to preclude cross-examination about numerous arrests and convictions compiled by nearly all of its civilian witnesses simply because they are more than 10 years old. *Gov. Mot. at 5 -37*.

3

Hon. LaShann DeArcy Hall
January 11, 2024

bad acts not resulting in criminal convictions, each of which occurred more than 10 years ago, is admissible in racketeering trial of Congressman under Rule 608(b), where acts included accepting no-show job in daughter's name in 1968 and falsely asserting that he had not invoked Fifth Amendment when testifying before grand jury in 1973, because references in opening statement to Congressman's long career and fine public record put his character in issue generally."); and *Hardy v. Adams*, 654 F. Supp. 3d 159, 167 (N.D.N.Y. 2023) ("Therefore, having weighed the relevant factors, the Court finds evidence related to Plaintiff's conviction for criminal possession of a controlled substance admissible to impeach Plaintiff. But, as with Plaintiff's conspiracy conviction, Defendants may only inquire into the "the 'essential facts' of [the] convictions.") (internal citations omitted).

**Law Enforcement and Expert Witness Misconduct is Admissible[2]**

Without providing the defendants with any files, reports or documents and without specifying which witnesses were the subjects of these administrative, quasi-criminal and civil matters, the government next seeks to bar the defendants from cross-examining law enforcement witnesses regarding their past misconduct, civil lawsuits and substantiated and unsubstantiated CCRB complaints. According to the government, their histories of misconduct and misbehavior are irrelevant to their credibility and thus inadmissible. That argument misses the mark.

The Second Circuit has held that law enforcement agents' past misconduct may be highly relevant to their credibility – irrespective of the misconduct's age. *See United States v. Kiszewski*, 877 F.2d 210, 215-16 (2d Cir. 1989) (vacating conviction where defendant did not have opportunity to inspect and raise law enforcement witnesses' history of misconduct, dating back more than ten years, as "[i]mpeachment of a witness can make the difference between acquittal and conviction"); *accord United States v. Thoms*, No. 10-CR-069-JWS-JDR, 2013 WL 3448080, at *2 (D. Ala. July 9, 2013) ("reliable evidence of the law enforcement officer's misconduct in unrelated cases is admissible to impeach the officer's credibility"); *see also Milke v. Ryan*, 711 F.3d 998, 1016 (9th Cir. 2013) (granting habeas corpus relief for *Brady* violation in government's failure to disclose law enforcement "documented misconduct").[3]

---

[2] At this time, defendant has no intention of cross-examining Examiner Jessica Ortiz about her failure to print an electronically stored screen shot. *Gov. Mot. at 39.*

[3] It should also be noted that *Fed. R. Evid. 608(b)* expressly provides that specific instances of conduct may be inquired into on cross-examination "if they are probative of the character for truthfulness." *Fed. R. Evid. 608(b)*; *United States v. Cruz,* 894 F.2d 41, 43 (2d Cir. 1990); *United States v. Williams,* 605 Fed. Appx. 45, 46 (2d Cir. 2015) (summary order); *Jean-Laurent v. Wilkinson,* No. 05-CV-583 (VM), 2009 WL 666832, at *3 (S.D.N.Y. Mar. 13, 2009). "The scope and extent of cross-examination [pursuant to *Rule 608(b)* ] is within the trial court's sound discretion." *United States v. Laster,* S1 06 Cr. 1064(JFK), 2007 WL 2872678, at *2 (S.D.N.Y. Sept. 28, 2007), *citing United States v. Wilkerson,* 361 F.3d 717, 734 (2d Cir. 2004)

Hon. LaShann DeArcy Hall
January 11, 2024

The government's case will rely heavily on law enforcement witnesses' testimony. Accordingly, it is particularly important for the jury to assess the officers' credibility, which it cannot adequately do without a full view of their past malfeasance.

Moreover, the quality of the government's investigation is a live issue for trial. The government's law enforcement witnesses' documented history of shoddy investigation techniques and disciplinary infractions is thus relevant to assessing the integrity of the investigation here. *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 446 n.15 (1995) ("When ... the probative force of evidence depends on the circumstances in which it was obtained . . . indications of conscientious police work will enhance probative force and slovenly work will diminish it."); *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (vacating conviction where the court improperly instructed the jury "not to 'grade' the investigation," explaining: "[t]o tell the jury that it may assess the product of an investigation, but that it may not analyze the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information.").

In New York City, both the Civilian Complaint Review Board ("CCRB") and Police Department's Internal Affairs Bureau ("IAB") investigate allegations of police misconduct. IAB investigates police corruption, while CCRB investigates officers' conduct towards civilians. *See Lynch v. Guiliani,* 301 A.D.2d 351, 352–53 (1st Dep't 2003*)* (describing respective roles of CCRB and IAB).  Recently, Southern District of New York Judge Analisa Torres permitted cross-examination on substantiated CCRB findings and settled lawsuits "because they involve forms of dishonesty and bear on the witnesses' credibility." *United States v. Scott,* No. 21-CR-429 (AT), at *22-23 (S.D.N.Y. April 5, 2022).

The full scope of the law enforcement witnesses' disciplinary infractions is, accordingly, admissible on cross-examination and, for the reasons stated, the Government's motion should be denied in its entirety.

Thank you for your attention to this matter.

Respectfully submitted,

*Mark S. DeMarco*

Mark S. DeMarco
Michael Hueston
John A. Diaz
Emilee Sahli
Attorneys for Karl Jordan

cc:   Miranda Gonzalez, Esq.
Artie McConnell, Esq.
Mark Misorek, Esq.
Assistant United States Attorneys
By Electronic Mail