

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JAM/MEM/MG
F. #2017R00509

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 16, 2024

<u>By Email and ECF</u>

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Karl Jordan, Jr., et al.</u>
     <u>Criminal Docket No. 20-CR-305 (S-2) (LDH)</u>

Dear Judge DeArcy Hall:

  The government respectfully writes regarding the Court's decision on the motion <u>in</u> <u>limine</u>, specifically, to seek clarification on three rulings in order to ensure that the government properly advises witnesses to testify consistently with the Court's decisions and not inadvertently run afoul of the Court's rulings.

  The government also writes in support of its motion for discovery, <u>see</u> ECF No. 114, and specifically for the forthwith disclosure of Federal Rule of Criminal Procedure 16(b)(1)(A) and defense trial exhibits by January 19, 2024.

I. <u>Clarification Regarding the Decisions on Motions in Limine</u>[1]

  A. <u>Decision Number 3</u>

  The Court precluded testimony that "shortly before Mizell's murder, Washington returned to Hollis after serving a ten-year sentence in Baltimore, Maryland for narcotics trafficking."

---

[1] The government is redacting certain factual information that is from 18 U.S.C. § 3500 material (and therefore "Sensitive") or that was contained in ECF No. 134, which was filed under seal. ████████████████████████████████████████████████████████████████

The government writes to confirm that the preclusion applies to testimony that Washington served a prison sentence in Baltimore, Maryland and that the sentence was for narcotics trafficking—not that Washington previously sold narcotics ▌ in Baltimore, Maryland, or that Washington returned to Hollis from Baltimore shortly before Mizell's murder.



The government wants to ensure that witness testimony about ▌ does not conflict with the Court's ruling in Number 3.

B.  Decision Numbers 24-25

In Number 24, the Court permitted testimony, pursuant to Rule 404(b), that:

On February 3, 2003, during an argument with one of Washington's relatives, Jordan struck the relative in the face, produced a .40 caliber semi-automatic pistol, fired one shot into the air, and secreted the weapon inside his home. Responding police officers recovered a spent .40 caliber shell casing and additional 83 live .40 caliber rounds, along with two live shotgun rounds, from inside the residence. Witnesses on the scene identified Jordan as the shooter.

---

2 ▌

In Number 25, the Court precluded testimony that:

Jordan made a post-<u>Miranda</u> statement admitting striking Washington's Relative and was initially charged with a felony, but Washington's Relative refused to cooperate and failed to respond to a subpoena to testify before a grand jury. As a result, the grand jury indicted Jordan for possession of ammunition, a misdemeanor. Jordan eventually pleaded guilty to a disorderly conduct violation. The pistol Jordan used was eventually recovered from Jordan's friend.

During the aforementioned post-Miranda statement, Jordan admitted to the February 3, 2003 shooting, ████████████████████████████████████████

The government seeks to introduce witness testimony of Jordan's post-<u>Miranda</u> statement simply to prove Jordan's use/access of the .40 caliber pistol on that date, but it wishes to confirm that doing so does not violate the Court's ruling in Number 25. The government understands the Court's ruling in Number 25 to preclude the consequences of the shooting—i.e., Jordan being charged and his plea—but seeks confirmation that Jordan's statement may be admitted for the purposes listed in Number 24.

The government does not believe the fact that an arrest and subsequent post-<u>Miranda</u> statement are themselves more prejudicial than probative on this point, but if there is any concern, the government would set limitations on the testimony. For example, the government can refer to the post-<u>Miranda</u> statement as a statement occurring during an interview with law enforcement. Or the government can tailor its questions to only elicit the fact that ████ ████████████████████████████████████████████ without discussing the arrest.

C.   <u>Decision Numbers 28-29</u>

In Number 28, the Court permitted testimony, as direct evidence, that "Jordan threatened Witness 5 with a gun and stated in substance that he would kill Witness 5 like he had killed Mizell." ████████████████████████████████████████

---

3 ████████████████████████████████████████

In Number 29, the Court precluded testimony that:

In or about 2004, Jordan lived at a particular dwelling in Queens owned by Jordan's father. Witness 5 also lived at that residence during that period, frequently purchased narcotics from Jordan, assisted Jordan in trafficking narcotics, and observed Jordan carrying firearms at that location and elsewhere, with Jordan often using the aforementioned van in the driveway to secret narcotics and firearms.

The government also moved to introduce testimony from Witness 5 that,



## II.  Motion for Disclosure of Defense Exhibits

In the government's discovery motion, ECF No. 114 (the "Discovery Motion"), the government requested, inter alia, a disclosure schedule of the defendants' Rule 16(b) discovery, trial exhibits and 26.2 material. At the January 13, 2023 status conference, the parties indicated they were optimistic they could come to an agreement. See Status Conf. Tr. at 25-27 (Jan. 13, 2023). The parties have reached agreement on the majority of issues, specifically, the government agreed to disclose 3500 material five weeks in advance of jury selection and 3500 material for certain witnesses two weeks in advance of jury selection. At that conference, defense counsel agreed to disclose Rule 26.2 material 48 hours in advance of their witness testimony. See id. The only outstanding matter is a disclosure schedule for Rule 16(b)(1)(A) and defense trial exhibits.[4]

Courts in this district have repeatedly held that the defense must produce in advance any "exhibit that will not be used solely for impeachment purposes," even if the defense intends to introduce such exhibit during cross-examination of a government witness. United States v. Smothers, No. 20-CR-213 (KAM), 2023 WL 348870, at *22 (E.D.N.Y. Jan. 20, 2023); see also United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) (holding that "Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government

---

[4] The government had initially moved for disclosure of Rule 16(b)(1)(A) material on February 3, 2023, when jury selection was scheduled to begin on February 20, 2023.

witness or a witness called by a Defendant"); United States v. Laquan Warren, No. 22-CR-231 (DLI), ECF Order (E.D.N.Y. Sept. 6, 2023).

That obligation extends to material produced by the government in discovery that the defense intends to use as an exhibit. See Smothers, 2023 WL 348870, at *22 (requiring advance production of defense exhibits "regardless of whether such an exhibit is in the defense's sole custody"). Numerous other district courts have interpreted Rule 16(b) similarly. See United States v. Swenson, 298 F.R.D. 474, 477 (D. Idaho 2014) ("Defendants have a duty to produce any exhibits they intend to use at trial during cross examination of a government witness other than for impeachment purposes."); United States v. Hsia, No. 98-CR-57 (PLF), 2000 WL 195067 (D.D.C. Jan. 21, 2000) (to "avoid surprise and gamesmanship . . . Defendant therefore is required to identify the documents she intends to use in her case-in-chief," including documents she plans to introduce during "cross-examination of government witnesses"); United States v. Holden, No. 13-CR-444, 2015 WL 1514569, at *4 (D. Or. Mar. 19, 2015) (holding, based on Swenson and Hsia, that a defendant must disclose non-impeachment substantive evidence that the defendant seeks to use in examination of government or defense witnesses); United States v. Larkin, No. 2:12-CR-319 (GWF), 2015 WL 4415506, at *5 (D. Nev. July 20, 2015) (stating that the approach adopted in Holden, Swenson, and Hsia is "consistent with the structure and integrity of Rule 16(b) as a whole"); United States v. Aiyaswamy, No. 15-CR-568 (LHK), 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017) (same); United States v. Huntress, No. 13-CV-199S, 2015 WL 631976, at *33 (W.D.N.Y. Feb. 13, 2015) (observing that "it is not clear that defendants' case-in-chief would be limited to any case they may present after the government rests").

To date, Washington has not disclosed any document he intends to introduce at trial, and Jordan has disclosed three videos in the context of stipulation discussions. As of January 9, 2024, counsel for defendant Washington have stated that they do not have any 16(b) material and will disclose any exhibits once they have something to disclose. Counsel for defendant Jordan has not responded to the government's request. However, to avoid gamesmanship and unfair surprise, the government respectfully requests that the Court order the defendants to identify any

5

exhibits they intend to introduce during the government's case (i.e., not those documents to be used for impeachment purposes only) or any defense case no later than January 19, 2024.

Respectfully submitted,

BREON PEACE  
United States Attorney

By:  _____/s/_____  
Artie McConnell  
Mark E. Misorek  
Miranda Gonzalez  
Assistant U.S. Attorneys  
(718) 254-7000

cc:   Clerk of Court (LDH) (by Email and ECF)  
      Defense counsel of record (by Email and ECF)

6