

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JAM/MEM/MG
F. #2017R00509

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 29, 2024

By ECF and Email

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Karl Jordan, Jr., et al.
              Criminal Docket No. 20-305 (S-2) (LDH)

Dear Judge DeArcy Hall:

As the government prepares for trial, it has become aware of witnesses who have expressed reluctance and hostility towards testifying at trial. Depending on how these witnesses testify at trial, the government may seek to treat its own witnesses as hostile, to impeach them, and to admit prior inconsistent statements as substantive evidence where applicable. Additionally, witnesses may attempt to assert their Fifth Amendment privilege against self-incrimination in an attempt to avoid having to testify at trial.

At the moment, the government expects that despite being compelled to testify, ███████ ███████████████████████████████████ will claim lack of memory or lie about statements they made to law enforcement and/or in the grand jury. ███████████████████████████████

The government writes to inform the Court of the hostility of these witnesses and raise these issues now in an effort to avoid delays at trial. Should ███████████████████ claim lack of memory or falsely testify, the government will move to treat them as hostile witnesses and ask leading questions pursuant to Rule 611(b), to impeach them pursuant to Rule 607, to introduce extrinsic impeachment evidence pursuant to Rule 613(b) and impeachment by contradiction, and to introduce as substantive evidence prior grand jury testimony, where applicable, pursuant to Rule 801(d)(1)(A).

A.      Treatment of Witnesses as Hostile

Should a witness become uncooperative, reluctant to testify candidly, or otherwise evasive or unclear, the government may seek the Court's permission to treat its own witnesses as hostile.  See, e.g., Trial Tr. 3286:1-21, United States v. Zottola, No. 18-CR-609 (HG) (E.D.N.Y. Sept. 15, 2022), ECF No. 527 (treating witness as hostile where witness testified that he did not want to be in court, did not want to testify, and that the FBI brought him to court); see also United States v. Mora-Higuera, 269 F.3d 905, 912 (8th Cir. 2001) (declining to overturn district court decision that a witness who became "evasive and unclear" was hostile); United States v. Eaton, 485 F.2d 102, 105 (10th Cir. 1973) (no abuse of discretion where trial judge ruled that witness was hostile after witness stated that she did not desire to testify and was evasive).

Where a party's witness has become hostile, Rule 611 permits the party to ask hostile witness leading questions on direct examination if "necessary to develop the witness's testimony."  Fed. R. Evid. 611(c)(2); see Bingham v. Zolt, 66 F.3d 553, 566 (2d Cir. 1995) (leading questions "entirely proper" where clear that witness had become hostile); see also United States v. Ienco, 92 F.3d 564, 568 (7th Cir. 1996) ("[T]he asking of leading questions is a standard technique of impeachment."); United States v. Brown, 603 F.2d 1022, 1025-26 (1st Cir. 1979) (leading questions permitted where witness was "evasive" and had "apparent lapses of memory"); Cf. United States v. Salameh, 152 F.3d 88, 128 (2d Cir. 1998) (holding that while leading questions are generally not permitted during direct examination, leading questions may be necessary to elicit testimony from a "nervous" witness).

B.      Impeachment of Witnesses

Depending on whether witnesses testify truthfully, the government may also seek to impeach its own witnesses and introduce their prior statements as impeachment evidence, pursuant to Rules 607, 608(b) and 613.

Rule 607 instructs that "any party, including the party that called the witness, may attack the witness's credibility."  Fed. R. Evid. 607.  Accordingly, the government may impeach its own witnesses for the purpose of aiding its case-in-chief under Rule 607.  See United States v. Eisen, 974 F.2d 246, 262 (2d Cir. 1992) ("The testimony of the hostile witnesses provided affirmative proof that was necessary to construct the Government's case, and thus the Government was entitled to question these witnesses and to invite the jury to disbelieve that portion of their accounts that contradicted the prosecution's theory of the case."); United States v. DeLillo, 620 F.2d 939, 946-47 (2d Cir. 1980) (explaining that Federal Rule of Evidence 607, without further restriction, abrogates the notion that the government may not call a hostile witness solely for the purpose of impeaching him).

Rule 608(b) prohibits admission of extrinsic evidence to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  Fed. R. Evid. 608(b).  A party may be permitted to inquire about the instances of conduct, but that does not render the evidence itself admissible.  Id.  "Under the plain mandate of Rule 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness.  Because of this categorical bar on extrinsic evidence of prior instances of conduct, the cross-examiner may not introduce documents or other proof to contradict a witness who denies committing the prior

act or does not recall all or some of its details." United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 497606, at *3 (E.D.N.Y. Feb. 26, 2009) (citing Weinstein's Evid. Manual § 12.03[3][a]; United States v. Nelson, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005)). The court "has discretion to admit evidence [under Rule 608(b)] only if it is probative of truthfulness or untruthfulness, is not extrinsic, and is presented during examination of either the principal witness or a character witness." Id. (citing 28 Charles A. Wright & Victor James Gold, Fed. Prac. & Proc. § 6118 (2008)).

However, "an exception to that rule exists when evidence contradicts a witness's testimony. Impeachment by contradiction, as opposed to evidence of a witness's character for truthfulness or untruthfulness, is a permissible exception to the general proscription of Rule 608(b)." United States v. Rodriguez, 539 F. Supp. 2d 592, 595 (D. Conn. 2008); see United States v. Garcia, 900 F.2d 571, 575 (2d Cir. 1990) (within the trial court's discretion to permit the government to admit the defendant's arrest record after the defendant created a false impression that a prior arrest had not involved drugs). But "a witness may not be impeached by extrinsic evidence (contradiction by another witness or evidence) on a collateral issue." United States v. Watts, No. 10-CR-627 (KAM), 2013 WL 5423748, at *28 (E.D.N.Y. Sept. 26, 2013) (citing United States v. Tarantino, 846 F.2d 1384, 1409 (D.C. Cir. 1988); see also United States v. Perez–Perez, 72 F.3d 224, 227 (1st Cir. 1995) ("extrinsic evidence to impeach is only admissible for contradiction where the prior testimony being contradicted was itself material to the case at hand"); Rodriguez, 539 F. Supp. 2d at 595. "The determinative question in deciding whether extrinsic evidence contradicting a witness' testimony is admissible is . . . whether the assertions that the impeaching party seeks to contradict are . . . material or collateral." Rosario v. Kuhlman, 839 F.2d 918, 925-26 (2d Cir. 1988); see also Rosario v. Ercole, 582 F. Supp. 2d 541, 596 (S.D.N.Y. 2007). Furthermore, district courts have "wide discretion to impose limitations on the cross-examination of witnesses." United States v. Flaharty, 295 F.3d 182, 190–91 (2d Cir. 2002).

Despite the reference to "cross-examination," Rule 608(b), as well as impeachment by contradiction, may be utilized by the government during direct examination of its own hostile witnesses. See Fed. R. Evid. 608, Advisory Committee Note to 2011 Amendment ("The Committee is aware that the Rule's limitation of bad-act impeachment to 'cross-examination is trumped by Rule 607, which allows a party to impeach witnesses on direct examination. Courts have not relied on the term 'on cross-examination' to limit impeachment that would otherwise be permissible under Rules 607 and 608."); Garcia, 900 F.2d at 575.

Similarly, Rule 613(b) permits extrinsic evidence in the form of a witness's prior statement in order to impeach that witness's credibility "if (1) the statement is inconsistent with the witness's trial testimony, (2) the witness is afforded an opportunity to deny or explain the same, and (3) the opposing party is afforded the opportunity to cross-examine the witness thereon." Johnson v. Pacheco, No. 20-3758-CV, 2022 WL 102072, at *2 (2d Cir. Jan. 11, 2022) (quoting United States v. Strother, 49 F.3d 869, 874 (2d Cir. 1995)); see Santos v. Murdock, 243 F.3d 681, 684 (2d Cir. 2001) ("Prior inconsistent statements are generally admissible for impeachment purposes only and are inadmissible hearsay for substantive purposes unless they were made at 'a trial, hearing, or other proceeding, or in a deposition.'") (internal citations omitted); see, e.g., United States v. Mingoia, 424 F.2d 710, 712 (2d Cir. 1970) (government was permitted to treat own witness as hostile and impeach him with his prior statements); United States v. Escalera, 957 F.3d 122, 138 (2d Cir. 2020) (not error to admit phone call recordings as impeachment evidence).

C.   Prior Inconsistent Statements as Substantive Evidence

Depending on witness testimony, the government may also move to admit prior inconsistent statements as substantive evidence, pursuant to Rule 801(d)(1)(A).  Specifically, the government may move to introduce grand jury testimony of witnesses who testify in a manner inconsistent with that testimony at trial.

Rule 801(d)(1)(A) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . ."  Fed. R. Evid. 801(d)(1)(A).

The Second Circuit has long held that a trial witness's inconsistent statements made before a grand jury are admissible as substantive evidence under Rule 801(d)(1)(A).  See United States v. Marchand, 564 F.2d 983, 998-99 (2d Cir. 1977) (recognizing "that previous identification or grand jury testimony of a trial witness could be used not simply for 'impeachment' but as substantive evidence a ruling which Congress has now translated into Federal Rule of Evidence 801(d)(1)(A) and (C)" and finding that prior inconsistent statements in grand jury testimony was admissible under Rule 801(d)(1)(A)); 5 Weinstein's Federal Evidence ¶ 801.21 (2d ed. 2004) (rule applies to grand jury testimony); see also United States v. Truman, 688 F.3d 129, 142 (2d Cir. 2012) (quoting Marchand, 564 F.2d at 999); United States v. Bliss, 188 F. App'x 13, 16 (2d Cir. 2006) (finding the district court did not err when it admitted witness' prior grand jury testimony as substantive evidence against the defendant); United States v. Melendez, No. 04 CR. 473 (GEL), 2006 WL 1379624, at *5 (S.D.N.Y. May 15, 2006) (finding all conditions set by Rule 801(d)(1)(A) "were clearly met" where witness "testified at trial, was subject to cross examination about the statement if the defense had chosen to inquire" and witness's grand jury testimony was inconsistent with trial testimony).

In addition, where a witness testifies at trial, and is therefore available for and subject to cross-examination, admission of grand jury testimony at trial pursuant to Rule 801(d)(1)(A) presents no Confrontation Clause violation.  See Bliss, 188 F. App'x at 16 (finding that "because [witness] was available for cross-examination at trial, there was no Confrontation Clause violation, notwithstanding [the witness]'s claim of loss of memory") (citing United States v. Owens, 484 U.S. 554, 557, 561–64 (1988); accord United States v. Milton, 8 F.3d 39, 46–47 (D.C. Cir. 1993); see generally Crawford v. Washington, 541 U.S. 36, 61 (2004))); United States v. Russell, 712 F.2d 1256, 1258 (8th Cir. 1983) (finding "the use of out-of-court statements does not violate the confrontation clause as long as the declarant is testifying as a witness and subject to full and effective cross-examination"); see also Melendez, 2006 WL 1379624, at *6 (finding that Crawford had "no application" where the defendant "had every opportunity to confront [the witness], who appeared at trial, testified under oath, and was available for and subject to cross-examination" and that "there was no conceivable violation of Melendez's confrontation rights" where "the witness "not only was available to qualify or contradict her grand jury testimony, [but] she actually offered testimony at trial inconsistent with her grand jury testimony").

Significantly, as the Second Circuit has made clear, a trial witness's statements at trial need not be directly inconsistent in order to be admissible as substantive evidence at trial.

4

Where a "witness has testified to . . . facts before a grand jury and <u>forgets or denies them</u> at trial, his grand jury testimony or any fair representation of it falls squarely within Rule 801(d)(1)(A)." <u>Marchand</u>, 564 F.2d at 999 (emphasis added); <u>see</u> <u>Truman</u>, 688 F.3d at 142 (overturning district court's finding of judgment in favor of acquittal and finding witness's refusal to answer questions at trial presents an inconsistency with prior testimony under Rule 801(d)(1)(A); citing cases in sister circuits regarding findings that trial testimony need not be directly inconsistent with prior testimony); <u>see also</u> <u>United States v. Matlock</u>, 109 F.3d 1313, 1319 (8th Cir. 1997) ("In applying Rule 801(d)(1)(A), 'inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position'"); <u>Russell</u>, 712 F.2d at 1258 (finding that the district court has considerable discretion in determining whether prior statements are inconsistent with trial testimony); <u>United States v. Iglesias</u>, 535 F.3d 150, 159 (3d Cir. 2008) ("The district court should have considerable discretion to determine whether evasive answers are inconsistent with statements previously given.") (quoting <u>United States v. Thompson</u>, 708 F.2d 1294, 1302 (8th Cir. 1983)).  In so doing, the Second Circuit reasoned that such finding "coheres with a principal purpose of Rule 801(d)(1)(A), which is to protect against the 'turncoat witness who changes his story on the stand and deprives the party calling him of evidence essential to his case.'"  <u>Truman</u>, 688 F.3d at 142 (citing Fed. R. Evid. 801(d)(1)(A), Advisory Committee Notes to 1972 Proposed Rules).

Short of finding a witness in contempt, if the witness has previously testified in the grand jury on the same subject, claims of ignorance or lack of memory can be treated as inconsistent with the prior testimony under Rule 801(d)(1)(A).  <u>See</u> <u>Owens</u>, 484 U.S. at 563 ("It would seem strange, for example, to assert that a witness can avoid introduction of testimony from a prior proceeding that is inconsistent with his trial testimony, <u>see</u> Rule 801(d)(1)(A), by simply asserting lack of memory of the facts to which the prior testimony related."); <u>Truman</u>, 688 F.3d at 142 ("[I]f a witness has testified to facts before a grand jury and forgets or denies them at trial, his grand jury testimony falls squarely within Rule 801(d)(1)(A)") (quoting <u>Marchand</u>, 564 F.2d at 999).

Accordingly, the admissible nature of prior inconsistent statements is particularly apparent under Rule 801(d)(1)(A) where, during testimony at trial, a witness, through his answers or demeanor, demonstrates a reluctance to testify consistently with his prior sworn testimony.  <u>See, e.g.</u>, <u>Truman</u>, 688 F.3d at 142 (citing cases of "sister circuits" admitting prior testimony under Rule 801(d)(1)(A) where witness attempted to minimize defendant's role in offense, provide vague and evasive answers or otherwise gave less inculpatory responses at trial); <u>see also</u> <u>Iglesias</u>, 535 F.3d at 159 (finding refusal to testify with more than "one word admissions, evasive and rambling responses, and equivocations" inconsistent with "clear and straightforward" prior testimony was a basis to admit prior testimony under Rule 801(d)(1)(A)); <u>Matlock</u>, 109 F.3d at 1319 (finding district court did not err in admitting prior plea hearing testimony pursuant to Rule 801(d)(1)(A) where trial testimony "attempted to minimize" defendant's role and "was far less incriminating and therefore far less helpful to the government" inconsistent with prior testimony); <u>United States v. Williams</u>, 737 F.2d 594, 608 (7th Cir. 1984) ("limited, vague, and not inculpatory" testimony inconsistent with prior testimony and "a purported change in memory can produce 'inconsistent' answers . . . . [p]articularly in a case of manifest reluctance to testify"); <u>Russell</u>, 712 F.2d at 1258 (holding that "[the witness's] statement on the stand that he could not recall having any contact with [the defendant] around the time he cashed the forged postal money orders is sufficiently inconsistent with his grand jury testimony for the trial court to admit the previous testimony [under

Rule 801(d)(1)(A)]"); Thompson, 708 F.2d at 1302 (holding that "the court did not abuse its discretion in admitting the witness's prior testimony in view of [the witness's] recalcitrance" and argumentative testimony, during which he acknowledged making particular statements during prior statements but not the thrust of said statements).

D.     The Fifth Amendment Privilege

At this time, the government does not presently believe there to be a valid basis for any witness invoking his or her Fifth Amendment privilege against self-incrimination. Nonetheless, a witness may assert the privilege to avoid testifying at trial.  If the Court questions the witness outside of the presence of the jury, and ultimately holds that the privilege applies such that the witness is rendered unavailable for purposes of Rule 804(a)(1), the government may seek to admit certain of his or her statements through a hearsay exception under Rule 804(b).

When a witness asserts the privilege, rather than "simply accept [a defendant's] blanket assertion of the [F]ifth [A]mendment privilege in respect to all questions asked of him," a district court must "undertake a particularized inquiry to determine whether the assertion was founded on a reasonable fear of prosecution as to each of the posed questions."  United States v. Zappola, 646 F.2d 48, 53 (2d Cir. 1981); see Roberts v. United States, 445 U.S. 552, 560 n. 7 (1980) (citations omitted) ("[I]t is the duty of a court to determine the legitimacy of a witness's reliance upon the Fifth Amendment.  A witness may not employ the privilege to avoid giving testimony that he simply would prefer not to give.").  Furthermore, "[a]s to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination."  Rogers v. United States, 340 U.S. 367, 374 (1951); see also United States v. Zappola, 646 F.2d 48, 53 (2d Cir. 1981) ("[D]istrict court simply accepted [ ] [declarant's] blanket assertion of the fifth amendment privilege . . . and did not undertake a particularized inquiry to determine whether the assertion was founded on a reasonable fear of prosecution as to each of the posed questions. This was error.").

The privilege against self-incrimination is waived if it is not invoked.  See Rogers v. United States, 340 U.S. 367, 371 (1951) (citations omitted).  Moreover, "[a] witness who fails to invoke the Fifth Amendment against questions as to which he could have claimed it is deemed to have waived his privilege respecting all questions on the same subject matter."  United States v. O'Henry's Film Works, Inc., 598 F.2d 313, 317 (2d Cir. 1979); see United States v. Basciano, 430 F. Supp. 2d 87, 94 (E.D.N.Y. 2006), adhered to, 2006 WL 1027154 (E.D.N.Y. Apr. 19, 2006); see also State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., Inc., 2005 WL 2736558, at *5 (E.D.N.Y. Oct. 24, 2005) (stating same); In re Donald Sheldon & Co., Inc., 93 F. Supp. 2d 503, 505 (S.D.N.Y. 2000) (stating same).

A witness is said to have waived the right if (1) the witness's prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination.  See Basciano, 430 F. Supp. 2d at 94-95 (citing Klein v. Harris, 667 F.2d 274, 287 (2d Cir. 1981)); see also Morgan Art Found. Ltd. v. McKenzie, 2021 WL 5919133, at *4 (S.D.N.Y. Dec. 15, 2021) (discussing two-pronged Klein test in this Circuit for inferring a testimonial waiver).  The second

prong requires that the prior statement be testimonial and incriminating.  Id. at 95 (citing Klein, 667 F.3d at 288).

 A witness's waiver of privilege may be inferred from his or her course of conduct or prior statements concerning the subject matter of the case, without inquiring into whether or not the witness was aware of the privilege and chose to waive it consciously.  Klein, 667 F.2d at 287 (2d Cir. 1981); see Basciano, 430 F. Supp. 2d at 93-94 (holding witness who testified in grand jury could not assert Fifth Amendment privilege at trial, but court would conduct in camera review about questions on matters outside the scope of the grand jury testimony).

 "[W]here the witness's prior testimony results in a testimonial waiver of the witness' fifth amendment privilege, the trial judge must, if the witness is subsequently recalled to the stand, direct the witness to testify, if necessary under penalty of contempt."  Klein, 667 F.2d at 289 (citing Brown v. United States, 356 U.S. 148, 154-57 (1958)).

 When a witness "properly invokes his Fifth Amendment right against self-incrimination, he is unavailable for the purposes of Rule 804(a)."  United States v. Miller, 954 F.3d 551, 561 (2d Cir. 2020); see also United States v. Williams, 927 F.2d 95, 99 (2d Cir. 1991) (stating same).  The fact that the government could grant the witness immunity does not preclude a finding of unavailability or permit a later claim of prosecutorial misconduct.  See United States v. Lang, 589 F.2d 92, 95-96 (2d Cir. 1978) ("[T]he law appears to be well settled that the power of the Executive Branch to grant immunity to a witness is discretionary and no obligation exists on the part of the United States Attorney to seek such immunity."); see also United States v. Rivera, 971 F.2d 876, 887 (2d Cir. 1992) ("Defense witness immunity is required only upon a showing that '(1) the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; and (2) the witness' testimony will be material, exculpatory and not cumulative and is not obtainable from any other source.'").

 Statements from the unavailable witness may be admissible through a hearsay exception under Rule 804(b).  For example, Rule 804(b)(3) (statement against interest) permits the admission of a hearsay statement from an unavailable witness where the statement is one that (1) "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency . . . to expose the declarant to civil or criminal liability; and" (2) "is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."  Fed. R. Evid. 804(b)(3); see, e.g., ECF Nos. 113 at 2-4; 134 at 4-5 (government's motions in limine regarding statement against penal interest). [1]

 Circumstances indicating trustworthiness include: (1) "the statement was made to a person whom the declarant believes is an ally," United States v. Saget, 377 F.3d 223, 230 (2d

---

[1]  The court may consider all evidence, whether admissible or not, in making such preliminary findings.  See Fed. R. Evid. 104(a) (in deciding a "preliminary question about whether . . . evidence is admissible," "the court is not bound by evidence rules").

Cir. 2004), rather than "to curry favor with authorities," United States v. Williams, 506 F.3d 151, 155 (2d Cir. 2007); (2) details contained in the statement are corroborated by independent evidence, see, e.g., United States v. Gupta, 747 F.3d 111, 128-29 (2d Cir. 2014) (corroboration included proof that declarant received call as described in statement); United States v. Wexler, 522 F.3d 194, 203 (2d Cir. 2008) (corroboration included others' testimony and documentary evidence); and (3) the statement does not reflect an effort by the declarant to shift blame onto the defendant, but rather describes actions the declarant and the defendant "jointly omitted," Saget, 377 F.3d at 230. See also United States v. Pastore, No. 18-2482, 2022 WL 2068434, at *4 (2d Cir. June 8, 2022) (defendant's statement that he was an "enforcer" made to "friend and fellow inmate" rendered the statements trustworthy) (citation omitted); United States v. Taylor, 802 F. App'x 604, 607-08 (2d Cir. 2020) (admitting confessions by co-defendant, who had pled guilty, made in MDC recording where he "had no self-interested motive in confessing to the murder, other than perhaps to brag about his criminal past to increase his clout in prison").[2]

  E.  Contempt

    Finally, the government respectfully provides the Court with relevant authority regarding the Court's options to respond to a refusal to testify by a witness a claim by the witness that he does not recall or know the answer to a question to which he has previously testified in the grand jury, aside from Rule 801(d)(1)(A).

    A court may hold a witness in either civil or criminal contempt if the witness refuses to answer a question after the court has directed him to do so.

    Civil contempt is intended to be "coercive — to compel obedience to a lawful court order." In re Grand Jury Witness, 835 F.2d 437, 440 (2d Cir. 1987). Pursuant to 28 U.S.C. § 1826, if a witness "refuses without just cause shown to comply with an order of the court to testify," a court may hold the witness in civil contempt and "summarily order his confinement" until the witness testifies. 28 U.S.C. § 1826(a);[3] In re Weiss, 703 F.2d 653, 662 (2d Cir. 1983) ("when the witness has refused to answer questions, he may be adjudged in civil contempt and ordered to answer"). A witness is entitled to notice and an opportunity to defend himself before civil contempt can be imposed. See Matter of Kitchen, 706 F.2d 1266, 1272 (2d Cir. 1983). In addition, civil contempt cannot exceed "the life of . . . the court proceeding." 28 U.S.C. § 1826(a)(1). Civil contempt may therefore be of limited utility in a trial, as the process of imposing civil contempt

---

[2]  See United States v. Stratton, 779 F.2d 820, 828 (2d Cir. 1985) (noting that a declarant was "unavailable" when he "was a defendant" and "could not be called by the Government as a witness").

[3]  A witness's fear for his own or his family's safety is not "just cause" to refuse to testify. See Piemonte v. United States, 367 U.S. 556, 559 n.2 (1961) ("Neither before the Court of Appeals nor here was fear for himself or his family urged by Piemonte as a valid excuse from testifying. Nor would this be a legal excuse. Every citizen of course owes to his society the duty of giving testimony to aid in the enforcement of the law."); accord Simkin v. United States, 715 F.2d 34, 37 (2d Cir. 1983).

may delay the trial and because confinement during the length of the trial alone may not adequately coerce compliance.

"[C]riminal contempt is imposed to punish the contemnor for an offense against the public and to vindicate the authority of the court." In re Grand Jury Witness, 835 F.2d at 440. If the contempt occurs in the court's presence and "the judge saw or heard the contemptuous conduct and so certifies," the court may summarily punish the witness for criminal contempt. Fed. R. Crim. P. 42(b). The Supreme Court and Second Circuit have recognized that such summary procedures are particularly appropriate where a trial witness refuses to testify. See United States v. Wilson, 421 U.S. 309, 319 (1975) ("In an ongoing trial, with the judge, jurors, counsel, and witnesses all waiting, Rule 42(a) [since renumbered to 42(b)] provides an appropriate remedial tool to discourage witnesses from contumacious refusals to comply with lawful orders essential to prevent a breakdown of the proceedings."); United States v. Giovanelli, 897 F.2d 1227, 1231 (2d Cir. 1990) ("When the contumacious conduct occurs in open court during an ongoing trial, summary disposition under Rule 42(a) [now Rule 42(b)] is appropriate.").

The maximum sentence a court can impose summarily for criminal contempt is six months. See United States v. Marshall, 371 F.3d 42, 44, 48-49 (2d Cir. 2004). But a court may impose consecutive sentences for separate contumacious acts that combine to more than six months, as long as each sentence is imposed separately and contemporaneously with the contumacious conduct and not in a consolidated proceeding. See Codispoti v. Pennsylvania, 418 U.S. 506, 514 (1974) ("Nor does the judge exhaust his power to convict and punish summarily whenever the punishment imposed for separate contemptuous acts during trial exceeds six months."); United States v. Cohen, 510 F.3d 1114, 1121 (9th Cir. 2007) (15 consecutive sentences for summary criminal contempt adding up to 11 months imprisonment permissible where court "convicted and punished [contemnor] immediately as each act of contempt occurred").

A witness who refuses to testify can also be charged with criminal contempt in a non-summary proceeding either by the court under Fed. R. Crim. P. 42(a) or by the government through an indictment under 18 U.S.C. § 401. In either situation, the witness is entitled to a jury trial to determine whether the witness in fact willfully disobeyed the court's order. There is no maximum sentence for criminal contempt, but any sentence imposed is subject to review by the court of appeals for proportionality. See United States v. Gracia, 755 F.2d 984, 989 (2d Cir. 1985).

If a witness does not outright refuse to answer a question but instead feigns ignorance or lack of knowledge, a court can treat that response as a refusal to answer and hold the witness in civil or criminal contempt. See In re Weiss, 703 F.2d 653, 663 (2d Cir. 1983) ("It has long been the practice of courts viewing such testimony as false and intentionally evasive, and as a sham or subterfuge that purposely avoids giving responsive answers, to ignore the form of the response and treat the witness as having refused to answer."); United States v. Posr, No. 04-CR-1033 (LAK), 2006 WL 3025957, at *2 (S.D.N.Y. Oct. 25, 2006) (it is "beyond serious question .

. . that evasive and unresponsive testimony is tantamount to a refusal to answer and punishable as criminal contempt of court"), aff'd, 300 F. App'x 43 (2d Cir. 2008).

<div style="margin-left: 40%;">

Respectfully submitted,

BREON PEACE
United States Attorney

</div>

By:      <u>     /s/      </u>
                  Artie McConnell
                  Mark E. Misorek
                  Miranda Gonzalez
                  Assistant U.S. Attorneys
                  (718) 254-7000

cc:    Clerk of Court (LDH) (by ECF and Email)
        All Counsel of Record (by ECF and Email)