

# Diaz & Moskowitz, PLLC
Attorneys at Law

| **John A. Diaz, Esq.** | johnadiazlaw@gmail.com | www.dmlawny.com |
|---|---|---|
| Garden City Office: | | New York Office: |
| 1225 Franklin Avenue | | 225 Broadway |
| Suite 325 | | Suite 715 |
| Garden City, NY 11530 | | New York, NY 10007 |
| (516) 686-6444 | | (212) 227-8208 |
| (516) 686-6444 | | Fax (212) 566-8165 |

January 30, 2026

**VIA ECF**
The Honorable LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *United States v. Karl Jordan*, 20 Cr. 305 (S-2) (LDH)

Dear Judge DeArcy Hall:

    We represent Karl Jordan in the above-referenced. The Court has set aside the jury's verdict finding Mr. Jordan guilty of the murder of Jason Mizell, also known as "Jam Master J", which occurred in 2002 when Mr. Jordan was just eighteen years old. We respectfully move the Court for bail pursuant to 18 U.S.C. § 3142 and Rule 46 of the Federal Rules of Criminal Procedure under the conditions described below and based on the following reasons.

    Mr. Jordan has been detained at the MDC for over 65 months, since August 17, 2020. The Court ordered his continued detention after a bail hearing in 2022. On December 19, 2025, the Court granted Mr. Jordan's motion for judgment of acquittal regarding the murder of Mr. Mizell. The government has appealed that decision. Nevertheless, there are seismic changes in circumstances warranting Mr. Jordan's release. If released, Mr. Jordan would live with his girlfriend and their children in the Eastern District of New York.

    We propose a $1,000,000 bond, secured by 17 financially responsible suretors, who are family and friends of Mr. Jordan, and have available three pieces of property that could be assigned to the bond, to secure Mr. Jordan's release. Mr. Jordan presents no risk of flight. He is devoted to his loved ones and has the utmost respect for the Court.

Being at liberty will allow Mr. Jordan to more meaningfully participate in his defense, including a potential disposition on the outstanding charges and appeal. Should a future sentence be imposed, Mr. Jordan will voluntarily surrender.

After five and a half years in detention under extraordinarily inhumane and dangerous conditions and considering Mr. Jordan's strong personal connections to the Eastern District of New York and low risk of harm to the community, we respectfully request that he be released on bond. The proposed conditions of release will ensure Mr. Jordan's return to court and pose no risk of danger to the community.

### A. Introduction

Mr. Jordan is 42-years old, and is charged in an eleven-count indictment, for which he has been acquitted of the two most serious and only violent charges related to the 2002 murder of Jason Mizell: Firearm related Murder, in violation of 18 U.S.C. § 924(j) and Murder while Engaged in Narcotics Trafficking, in violation of 21 U.S.C. § 848(e)(1)(A). Outstanding charges against Mr. Jordan include Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(b)(1)(A) and (b)(1)(C); eight counts of Distribution of Cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(C); and Use of Firearms in Connection with a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c).

Mr. Jordan was arrested on August 17, 2020, and arraigned before Magistrate Judge Lois Bloom.  An Order of Detention was entered with leave to reapply to a Magistrate or to a District Court Judge. An additional bail hearing occurred before Your Honor on February 28, 2022, and continued on March 3, 2022. The Court denied Mr. Jordan's request for bail and ordered his continued detention.

Therefore, under both §3142(c) and (i), we respectfully propose that this Court release Mr. Jordan, under the suggested bail conditions, which include a surety bond secured by the signatures of 17 financially responsible people, and any other conditions the Court may deem appropriate. If released, Mr. Jordan will reside at a private residence in the Eastern District of New York with his two youngest daughters, aged 7 and 10, and their mother, who currently works as an Assistant Deputy Warden for the New York City Department of Corrections.

As discussed below, Mr. Jordan is not a flight risk, particularly because he is a lifelong resident of New York City and a father of four daughters.  Mr. Jordan does not possess a passport and has no contacts or resources outside the country.

### B. Prior Bail Determinations and Change of Circumstances

On February 15, 2022, we filed a bail motion proposing a $1,000,000 bond secured by 15 financially responsible persons, including properties owned by Mr. Jordan's father and grandmother. *See* ECF. No. 73. The government opposed. ECF No. 74. The Court held a bail hearing on February 28, 2022, which was continued on March 3, 2022.

At the March 2022 hearing, the Court decided to continue detention, finding that "… even if the defendant has rebutted the presumption with respect to flight, the defendant has failed to rebut the presumption with respect to dangerousness." Transcript of Bail Hearing, ECF No. 77, 15:13-18. The Court also stated: "if the defense rebutted the presumption, the factors set forth in

2

the Bail Reform Act counsel in favor of detention" *Id.*, 15:15-18. The factors have changed. On December 19, 2025, the Court granted Mr. Jordan's motion for a judgment of acquittal on the two charges related to the 2002 murder of Jason Mizell. The government has filed a notice of appeal.

Mr. Jordan now faces liability regarding the remaining counts. Count Three and Four are the most serious. Count Three, 21 U.S.C. 841(b)(1)(A)(iii), carries a mandatory minimum sentence of ten years, and Count Four, 18 U.S.C. 924(c)(1)(A)(i), carries a mandatory minimum sentence of five years. However, regarding both counts, the evidence relied upon by the government is substantially, if not solely, based on information obtained from a non-cooperative witness, who refused to testify against Mr. Jordan.[1] Without this critical testimony, there is no reliable evidence to support the weight of a 10-year mandatory minimum drug offense conviction or use of a firearm conviction. Notably, Mr. Jordan has complied with prison regulations and, indeed, was a victim of serious inmate assault requiring his hospitalization.

Mr. Jordan's continued detention is not necessary, and he should be released.

### C. Legal Standard

The Bail Reform Act allows for the Court to reopen a detention hearing if, before trial, the court "…finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B).

The Eighth Amendment of the United States Constitution provides that "[e]xcessive bail shall not be required." U.S. Const. amend VIII. The Bail Reform Act of 1984 ensures this principle through 18 U.S.C. § 3142(b), which requires the Court "to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *United States v. Sabhnani*, 493 F.3d 63, 74-75 (2d Cir. 2007) (quoting 18 U.S.C. § 3142(b)). Accordingly, the Bail Reform Act strongly favors pretrial release, and the Court should only detain a defendant in the absence of existing conditions, or a combination of conditions of release, that would reasonably assure the appearance of the defendant as required and prevent danger to the community. *See* 18 U.S.C. § 3142(c)(1). In determining whether such conditions exist, the Court must consider the factors set forth in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence…;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

---

[1] On September 23, 2025, Tashawn Burns was sentenced to 120 months by Judge Joanna Seybert, *United States v. Tashawn Burns*, 20 Cr. 537 (JS) (EDNY). At his sentencing hearing, Burn's unwillingness to testify was raised by government counsel, to which Burn's defense counsel affirmed that Burns was "…not inclined to testify at that trial in any circumstance." *See,* 20 Cr. 537 (JS) (EDNY), Sentencing Transcript, ECF No. 139, 26:3-4.

3

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and [ . . . ]
>
> (4) the nature and seriousness of the danger to any person that would be posed by the person's release.

Furthermore, if the Court finds that there is probable cause to believe the defendant has committed an offense under section 924(c) or 21 U.S.C. § 841(b)(1)(A), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the defendant and assure the safety of the community. *See* 18 U.S.C. § 3142(e)(3). However, when this rebuttable presumption is triggered, the defendant bears only a "limited burden of production – not a burden of persuasion – to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2011). In response, the defendant must only introduce "some evidence contrary to the presumed fact in order to rebut the presumption." *United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir. 1991). When the defendant proffers such evidence, the presumption should be "weighed along with other factors to be considered" in deciding whether to release the defendant. *Id.*

Notably, the Government "retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community," and "by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *Mercedes*, 254 F.3d at 436.

### D. Proposed Bail Package

Mr. Jordan submits the following bail proposal for Your Honor's consideration. These bail conditions should alleviate any concern the Court may have that Mr. Jordan poses a danger to the community or a flight risk.

1. A $1,000,000.00 bond secured by 17 financially responsible persons; properties owned by his father, his aunt, and another relative in Dillon County, South Carolina, and Chatham and Fulton Counties, Georgia, estimated valued at $75,000.00, $183,000.00, and $267,400.00, respectively;
2. An inspection of the proposed residence and approval of its suitability by Pretrial Services;
3. Electronic location monitoring; and
4. Mr. Jordan shall not have contact with his co-defendant, witnesses, or any alleged victims.

While it is Mr. Jordan's position that no additional conditions are necessary, should the Court find that they are needed, Mr. Jordan is prepared to comply, including a third-party custodian.

Counsel has received financial information from 17 individuals who are financially responsible people, as well as property records. Due to the sensitive and confidential nature of the financial documents received from these individuals, counsel has not included them in this publicly

4

filed submission. However, a copy can be provided to the Government for its review, and a copy is available to the Court upon request.

### E. Mr. Jordan's Background, Characteristics, and Criminal History Demonstrate that He is Presents No Danger to the Community

Mr. Jordan is 42 years old and the oldest of three children born to Jacqueline Gonzalez and Karl Jordan, Sr. Despite the struggles throughout his life, Mr. Jordan has remained devoted to his family, most notably to his mother and his four daughters. In 2010, Mr. Jordan donated his kidney so his mother could receive a compatible kidney. She is currently alive and healthy, thanks to Mr. Jordan's compassion.

Despite the limitations over the past five and a half years, Mr. Jordan has done everything in his power to parent his four daughters and maintain a strong connection with his family. Prior to his detention, Mr. Jordan was a devoted and supportive father. For example, he would escort his oldest daughter to and from school every day when she was younger, and they share an extremely close relationship. Throughout her life, he has encouraged her to achieve and instilled her with confidence, despite his physical absence. Mr. Jordan's present incarceration has been traumatic for all of his loved ones, but especially his aging mother and young daughters.

Mr. Jordan's criminal history consists of one juvenile adjudication and one adult arrest in Queens County. He has no adult criminal convictions. Regarding his prison disciplinary record during his lengthy pretrial detention in this case, undersigned counsel is aware of a single incident on August 16, 2021, nearly four and a half years ago, involving a contraband cellphone discovered during a routine search. Since then, Mr. Jordan has incurred no additional serious infractions and has worked as an orderly.

Mr. Jordan is not a danger to the community. Any concerns about the community's safety will be eliminated with ankle monitoring, a $1,000,000.00 bond secured by 17 financially responsible people, and property offered as collateral.

### F. The Abhorrent Conditions at MDC are a Compelling Reason for Release

Since his incarceration on August 17, 2020, Mr. Jordan has been subjected to the most restrictive and dehumanizing conditions of pretrial detention. Even under the best of circumstances, the movements of incarcerated individuals are severely restricted at all times, and they have little opportunity to participate in social programs, limited access to personal development programs, exercise, physical training, or recreation, and almost no opportunities to be outdoors.

Over the past five and a half years, the conditions have been among the worst. The COVID-19 crisis hit prisons and jails throughout the country disproportionately compared to the rest of the country. In response, the BOP imposed draconian restrictions on the incarcerated individuals. Beginning in March 2020, the BOP implemented phase 2 of the pandemic response. Social and legal visits were suspended, and inmate movement was restricted.

Since that time, additional lockdowns have occurred due to a lack of staffing and violence. The facility continues to be plagued by ongoing violence and safety issues, inadequate medical care, food not fit for human consumption, and an inconsistent ability to purchase items from the commissary, as well as decrepit facilities with inadequate heating and cooling, mold, and other health hazards such as rodents and cockroaches.

Over the past five and a half years, there have been multiple violent attacks at the MDC Brooklyn, some of which resulted in inmate deaths. These deaths have a deleterious impact on the mental health of all those incarcerated at the MDC, increasing their fear for their own safety. On June 7, 2024, Uriel Whyte, an inmate at the MDC, was stabbed and died from his wounds. Afterwards, the entire facility was placed on extended lockdown. Weeks later, on July 17, 2024, Edwin Cordero was murdered at the MDC. Another facility-wide lockdown occurred thereafter. Judge Gary Brown, in *United States v. Colucci*, detailed the "chaotic, unremedied lawlessness" at the MDC. *Colucci*, 2024 US Dist. LEXIS 138497 at *4. For parties outside the facilities to come to these conclusions is significant.

Most notably, Mr. Jordan has personally suffered from the horrific outcomes of rampant violence at the MDC. On February 22, 2025, Mr. Jordan was stabbed 18 times and nearly died. Several others were also wounded in the assault. While he has survived and, for the most part, physically recovered from his injuries, he will live with the physical, mental, and emotional scars of this brutal attack for the rest of his life.

## CONCLUSION

For the aforementioned reasons, the Government has failed to show by clear and convincing evidence that Mr. Jordan poses a danger to the community. He has rebutted the presumption in favor of detention, as there are available conditions of release that will assure Mr. Jordan's continued appearance before this Court and safeguard the community. Accordingly, the Court should release Mr. Jordan pending appeal and resolution of the outstanding charges. The Court's time and consideration of this request are greatly appreciated.

Respectfully submitted,

/s/

John A. Diaz, Esq.
Michael Hueston, Esq.
Mark DeMarco, Esq.
Emilee A. Sahli, Esq.

*cc:* All Counsel (*via ECF*)