# Exhibit A

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,    :    20-CR-00305 (LDH)
                             :
                             :
    -against-                :    United States Courthouse
                             :    Brooklyn, New York
                             :
JAY BRYANT,                  :
                             :    April 27, 2026
         Defendant.          :    12:15 p.m.

- - - - - - - - - - - - - - X
        TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
     BEFORE THE HONORABLE PEGGY CROSS-GOLDENBERG
        UNITED STATES MAGISTRATE DISTRICT JUDGE

               A P P E A R A N C E S :

For the Government:       JOSEPH NOCELLA JR.
                          United States Attorney
                          Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

                          BY:  MARK E. MISOREK, ESQ.
                               MIRANDA GONZALEZ, ESQ.
                               Assistants United States Attorney


For the Defendant:        THE LAW FIRM OF CESAR de CASTRO, P.C.
                              111 Fulton Street
                              New York, New York 10038

                          BY:  CESAR DE CASTRO, ESQ.
                               SHANNON MICHAEL McMANUS, ESQ.



Court Reporter:
Jamie Ann Stanton, RMR, CRR, RPR
225 Cadman Plaza East
Brooklyn, New York 11201
(718) 613-2274
JamieStanton.edny@gmail.com

Proceedings recorded by computerized stenography.  Transcript produced by Computer-aided Transcription.

(In open court.)

THE COURTROOM DEPUTY:  Criminal cause for a pleading.  Docket number 20-CR-00305.  *USA versus Bryant*.

Will the parties please state their appearance for the record, starting with the Government.

MR. MISOREK:  Mark Misorek and Miranda Gonzalez for the United States.

Good afternoon.

THE COURT:  Good afternoon.

MR. DE CASTRO:  Good afternoon, Your Honor.

Cesar de Castro and Shannon McManus for Mr. Bryant who is seated between us.

THE COURT:  Good afternoon, Mr. de Castro.

Good afternoon, Mr. Bryant.

I understand there are a couple of things that you all might need to discuss and sign, so we can wait and just let us know when you are ready.

MR. DE CASTRO:  Absolutely.  It will be very quick.

(Pause in proceedings.)

THE COURT:  Okay.  I think we are ready to begin.

MR. DE CASTRO:  We are ready, Judge.

THE COURT:  Great.  Thank you, Mr. de Castro.

And I will just say for the parties, everyone can stay seated while we are speaking.  No need to stand.  I

Proceedings                                    3

guess I would just ask that you rearrange the microphones so the court reporter is able to hear.

And please, if you can't, just let us know and we will repeat.

MR. DE CASTRO:  We are ready.

THE COURT:  And that especially goes for you, Mr. Bryant.  If there is anything that I say that you can't hear or understand or that you need me to repeat, please just let me know.  And if you need any time to speak with your attorneys, please just let me know and we will take all the time that you need.

I am advised by your counsel that you wish to plead guilty to one of the charges in the superseding indictment that has been filed against you.

Is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  This is a very serious decision and I want to make sure that you understand all of your rights and the consequences of your guilty plea, so I am going to ask you a lot of questions and that will require that your answers be under oath.

Before I ask you any further questions, I am going to ask my deputy to please swear you in.

THE COURTROOM DEPUTY:  Please stand and raise your right hand.

Proceedings                                        4

(Defendant sworn.)

THE DEFENDANT:  Yes.

THE COURTROOM DEPUTY:  Please take a seat.

THE COURT:  Mr. Bryant, now that you have been sworn in, do you understand that your answers to my questions will subject you to penalties of perjury if you answer untruthfully?

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Thank you.

That means if you answer any of my questions falsely, the Government could prosecute you for perjury or making false statements and it can use any false statements that you make during that prosecution.

Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  The first document that I want to discuss with you is one that you just signed.  It is called The Consent to Have a Plea Taken Before a United States Magistrate Judge.

I am going to hold it up.  I can ask my courtroom deputy to walk it over to you if you can't see it, but do you recognize this form?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And is this your signature on this

Proceedings                                    5

form?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.

Mr. de Castro, is this your signature?

MR. DE CASTRO:  It is.

THE COURT:  And Mr. Misorek, is this your signature?

MR. MISOREK:  It is, Your Honor.

THE COURT:  Let me ask a couple of questions about this form.

Mr. Bryant, you understand that Judge Dearcy Hall is the judge presiding over this case, correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And she is the judge who will sentence you and who will make the ultimate decision whether to accept your plea.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  If you wish, you have an absolute right to have this proceeding take place in front of her and there would be no prejudice to you, but if you wish, I will listen to your plea, the court reporter is making a transcript of this proceeding, and Judge Dearcy Hall will review that transcript and decide whether to accept your plea.

Proceedings                                    6

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you wish to give up your right to have Judge Dearcy Hall hear your plea and instead proceed before me?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you make this decision voluntarily and of your own free will?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And has anyone threatened you or have any promises been made to you to induce you to enter your plea before me?

THE DEFENDANT:  No, ma'am.

THE COURT:  So this form that we just confirmed that everyone has signed, I just want to make sure, prior to signing this form, did you have a sufficient opportunity to discuss it with your attorneys?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And you signed this form knowingly and voluntarily, correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  Then I am also going to sign this form and we can proceed.

Before accepting your plea, Mr. Bryant, there are a number of questions that I will be asking you to ensure

that your plea is valid.  As I said, if you don't understand a question or if you need me to repeat myself, please just say so and I will.

What is your full name?

THE DEFENDANT:  Jay Bryant.

THE COURT:  And how old are you, sir?

THE DEFENDANT:  52.

THE COURT:  What schooling or education have you had?

THE DEFENDANT:  G.E.D.

THE COURT:  You have your G.E.D., okay.

And are you able to speak and understand English?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I just like to confirm.

Are you under the care of a doctor or a psychiatrist for any reason?

THE DEFENDANT:  Yes.

THE COURT:  Could you tell me just a little bit about what you are being treated for?

THE DEFENDANT:  Cardiac failure, hypertension.

THE COURT:  Okay.  So you are under the care of a physician to help manage those conditions?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Is there anything about those conditions that impacts your ability to understand what's

Proceedings                                          8

taking place here today?

THE DEFENDANT:  No, ma'am.

THE COURT:  And is there anything about those conditions that impacts your ability to make the decision to enter this plea agreement and this plea of guilty today?

THE DEFENDANT:  No, ma'am.

THE COURT:  Do you take any medication as part of your management of those conditions?

THE DEFENDANT:  Yes.

THE COURT:  Can you tell me whether there is anything about your medication that interferes with your ability to understand what is taking place today?

THE DEFENDANT:  No, ma'am.

THE COURT:  And is there anything about your medication that impacts your ability to make the decision to go forward today?

THE DEFENDANT:  No, ma'am.

THE COURT:  Okay.

In the past 24 hours, have you taken any medication or pills or consumed any alcoholic beverages?

THE DEFENDANT:  I took my medication.

THE COURT:  And that's your medication for your heart conditions?

THE DEFENDANT:  Yes.

THE COURT:  And high blood pressure, correct?

Jamie Ann Stanton, RMR, CRR, RPR
Official Court Reporter

Proceedings                                          9

THE DEFENDANT:  Yes.

THE COURT:  Anything else?

THE DEFENDANT:  No, ma'am.

THE COURT:  I just want to make sure, first I will start with defense counsel.  Is there anything else you think I need to inquire in terms of the impact of his medical care on our proceeding today?

MR. DE CASTRO:  No, Your Honor.

THE COURT:  Counsel for the Government?

MR. MISOREK:  No, thank you, Your Honor.

THE COURT:  Thank you.

Mr. Bryant, have you ever been hospitalized or treated for drug addiction, alcoholism or a mental or emotional condition?

THE DEFENDANT:  No, ma'am.

THE COURT:  Is your mind clear today?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you understand what's going on here today?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand everything that I've asked you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.

I want to talk a little bit about some of the

rights that you have in this proceeding.

As a defendant in a criminal case, you have the right to be represented by an attorney at every stage of your criminal case, from when you were arrested through a plea or a trial, all the way to appeal. And if you can't afford an attorney, the Court will appoint an attorney to represent you.

Do you understand your right to counsel?

THE DEFENDANT: Yes, ma'am.

THE COURT: And Mr. de Castro and Mr. McManus, who are seated on either side of you, they are your attorneys in this case, correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: And as I mentioned, if at any point you want to consult with them, please just let me know, and I'll permit you to do that.

Do you understand?

THE DEFENDANT: Yes, ma'am. Thank you.

THE COURT: Have you had any difficulty communicating with your attorneys?

THE DEFENDANT: No, ma'am.

THE COURT: And have you had enough time to discuss your decision today with your attorneys?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you fully satisfied with the

representation and advice your attorneys have provided you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Defense counsel, have you discussed this matter with your client?

MR. DE CASTRO:  We have.

THE COURT:  And have you had any difficulty in communicating with Mr. Bryant?

MR. DE CASTRO:  Not at all.

THE COURT:  Are you satisfied that he understands the rights he is waiving by pleading guilty?

MR. DE CASTRO:  I am.

THE COURT:  And is he capable of understanding the nature of these proceedings?

MR. DE CASTRO:  He is.

THE COURT:  Do you have any doubt at all about his competence to plead at this time?

MR. DE CASTRO:  No doubts.

THE COURT:  Have you advised him of the maximum and minimum sentences and fine that could be imposed on him?

MR. DE CASTRO:  We have.

THE COURT:  Have you discussed with him the impact that his plea agreement has on the operation of the Sentencing Guidelines and how those guidelines could apply in his case?

MR. DE CASTRO:  Yes.

THE COURT:  In particular, have you discussed with him that as a result of his particular plea agreement, the Sentencing Guidelines will not be the basis for calculating the incarceratory portion of his sentence?

MR. DE CASTRO:  We have.

THE COURT:  Have you discussed with him any potential immigration consequences?

MR. DE CASTRO:  Yes.  He is a U.S. citizen, but we've -- there shouldn't be any.

THE COURT:  Okay.

MR. DE CASTRO:  Emphasis on "shouldn't."

THE COURT:  I'm sorry?

MR. DE CASTRO:  Emphasis on "shouldn't."  Sorry to make commentary.

THE COURT:  No, no, it's okay.  I mean, at this stage, it's always potential, right, so I don't want to make any assumptions and leave Mr. Bryant without advice on a particular issue.

I will ask him down the road whether he has questions that he wants to discuss with you regarding potential immigration consequences, including denaturalization or deportation, if those might be possibilities.

But I will ask you, Mr. de Castro, are you satisfied that Mr. Bryant has understood your advice and

Proceedings                                                    13

your discussions?

MR. DE CASTRO:  Yes.

THE COURT:  Do you think he understands the rights that he will be waiving by pleading guilty?

MR. DE CASTRO:  I do.

THE COURT:  Then, Mr. Bryant, I want to talk to you a little about the indictment in this case.  And later we'll talk about the other indictment, which I will call the first indictment.

So this second indictment, the one that you intend to enter a plea on today, you are charged in this superseding indictment with 11 counts.  And I understand that you are prepared to plead guilty to Count Two of this superseding indictment.

Is that correct?

THE DEFENDANT:  Yes, ma'am.

MR. MISOREK:  Your Honor, I apologize.  I believe he's only charged with two counts.

THE COURT:  Oh, the eleven -- sorry.  The superseding indictment charges eleven counts.  You are charged in two of those counts.

Is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And of those two counts, you are going to plead guilty to one of them, which is labeled Count Two

Proceedings                                     14

in the superseding indictment.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Sorry about that confusion.

Have you reviewed a copy of this indictment?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And have you had the opportunity to discuss it with your attorneys?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you believe you understand the basic nature of the charges against you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I want to focus on Count Two, the count that I understand you intend to plead guilty to.

Have you read Count Two and discussed it with your attorneys?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.

I am going to highlight for you what the Government would have to prove if this case went to trial.

In order for the Government to convict you of Count Two, the firearms-related murder, it would have to prove several elements beyond a reasonable doubt.

First, the Government would have to prove that you committed the underlying drug trafficking crime.  In other words, that you, together with others, knowingly and

intentionally agreed to distribute five or more kilograms of cocaine in the Eastern District of New York and elsewhere.

That's the first element.

The second element that the Government would have to prove is that on or about October 30, 2002, you knowingly and intentionally used a firearm during, and in relation to, the commission of the drug trafficking crime, or aided and abetted another person in doing so.

The third element that the Government would have to prove is that you knowingly and intentionally caused, or aided and abetted another to cause, the death of Jason Mizell by use of that firearm.

And fourth, the Government would have to prove that the death of Jason Mizell qualifies as a murder.  In other words, that his death constituted the unlawful killing of a human being with malice aforethought.

Before I turn to you, Mr. Bryant, let me ask counsel for the Government.

Have I correctly summarized the charge and the elements that the Government would have to prove beyond a reasonable doubt?

MR. MISOREK:  You have, Your Honor.

THE COURT:  And Mr. de Castro, same question to you?

MR. DE CASTRO:  You have.

Proceedings                                                    16

THE COURT:  Thank you.

Mr. Bryant, do you understand the charge contained in Count Two and what the Government would have to prove to convict you of that charge?

THE DEFENDANT:  Yes.

THE COURT:  I want to go over the rights that you would have if the case went to trial.  And these are rights that you would give up if you plead guilty.

First of all, you have the right to plead not guilty.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  That means that even if you are guilty, you have a choice.  It's up to you to decide what to do; not to your lawyer, not to anyone else.  You may withdraw your previously-entered plea of not guilty and plead guilty, as I'm told you wish to do, or you may choose to go to trial simply by persisting in your plea of not guilty.

Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  If you plead not guilty to the charges, then you would have the right, under the Constitution and Laws of the United States, to a speedy and public trial before a jury with the assistance of your

attorneys on the two charges against you contained in the indictment.

Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  At any trial, you would be presumed innocent.  You would not have to prove that you were innocent.  Under our legal system, it's the Government that has to prove beyond a reasonable doubt that you are guilty of the crimes charged.  If, at any trial, the Government failed to meet that burden of proof beyond a reasonable doubt on any of those four elements that I listed earlier, the jury would have to find you not guilty.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And that's why sometimes juries return verdicts of not guilty even if the jurors believe that the person on trial probably committed the crimes charged, right?  They're not necessarily saying they believe the defendant is innocent; just that they are not convinced beyond a reasonable doubt that the defendant is guilty.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  In the course of the trial, witnesses for the Government would have to come into Court and testify in your presence.  Your lawyers would have the right to

cross-examine each witness, to object to evidence offered by the Government, and they could offer evidence on your behalf.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Your lawyer would also have the right to subpoena or compel witnesses to come to court to testify.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  At trial, you would have the right to testify on your own behalf if you wanted to.  On the other hand, you cannot be forced to testify if you did not want to.

Under the Constitution and Laws of the United States, no person can be forced to be a witness against himself.  And if you had a trial and you did not testify, Judge Dearcy Hall would instruct the jury that they could not hold that against you.

Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  If, instead of going to trial, you plead guilty to Count Two as charged, and if Judge Dearcy Hall accepts your guilty plea, you will be giving up your constitutional right to trial and the others rights that I have just discussed.  There will be no trial in this case.

The Court will simply enter a judgment of guilty based upon your plea.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  If you do plead guilty, I will have to ask you questions about the facts about what you did in order to satisfy myself and Judge Dearcy Hall that you are guilty of the crime charged.  You are going to have to answer my questions and acknowledge your guilt, which means you will be giving up the right not to testify against yourself.

Do you understand this?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Also, if you enter a plea of guilty today and you admit the criminal conduct alleged in Count Two of the indictment and if Judge Dearcy Hall accepts your plea, you cannot appeal to a higher court on the question of whether you committed this crime.  That question will be answered by your plea today.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Are you willing to give up your right to trial and the other rights that I have just discussed?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I now want to turn to the plea

Proceedings                              20

agreement that you have entered into with the Government.

Mr. de Castro, do you have a copy at counsel table?

MR. DE CASTRO:  Yes.  It's in front of Mr. Bryant.

THE COURT:  Great.

I have been handed a written plea agreement.  Let me just turn to the back page, which is page 8.  It's dated today, April 27th.

Mr. Misorek, is this your signature on page 8?

MR. MISOREK:  It is, Your Honor.

THE COURT:  And it was, I guess, approved by one of your chiefs?

MR. MISOREK:  Yes.

THE COURT:  Mr. de Castro, this is your signature on page 8?

MR. DE CASTRO:  Yes.

THE COURT:  And Mr. Bryant, is this your signature?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I am going to ask that this be marked Court Exhibit 1.  I am just going to put it on here.

And then I am going to ask some questions about this agreement.

Mr. Bryant, did you read this agreement carefully before you signed it?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And did you review this agreement with counsel before you signed it?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You discussed it with your attorneys.

And do you understand this agreement?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Counsel for the Government, does the Government represent that this written plea agreement contains the entirety of any understanding the U.S. Attorney's Office has reached with Mr. Bryant?

MR. MISOREK:  We do.

THE COURT:  And Mr. de Castro, have you read and reviewed the plea agreement with Mr. Bryant?

MR. DE CASTRO:  Yes, we have.

THE COURT:  And does the plea agreement that has been marked Government Exhibit 1 contain the entire agreement your client has entered into with the Government?

MR. DE CASTRO:  Yes.

THE COURT:  Mr. Bryant, is there anything in this agreement that is not clear or that you would like explained in further detail?

THE DEFENDANT:  No, ma'am.

THE COURT:  Other than the promises that are contained in this written agreement, has anyone made any

other promises to you that have caused you to plead guilty?

THE DEFENDANT:  No, ma'am.

THE COURT:  I am now going to go over what I think of as the worst-case scenario part of the proceeding.  I just want to make sure that you understand the maximum penalties that you could be facing based on your plea of guilty.  And these are contained in the plea agreements, so I will sort of go through in order.

The statute that you are accused of violating in Count Two that I understand you intend to plead guilty to today carries a maximum sentence of life in prison.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  There is no mandatory minimum sentence on this count.  If you are sentenced to a term of incarceration, supervised release will likely follow.  The maximum term of supervised release is five years.  And that term would follow any term of imprisonment.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  We will talk a little bit more about supervised release in a minute, but if a condition of release is violated, you could be sentenced to, on this offense, under this statute, up to the maximum term of supervised release that was imposed without credit for time

Proceedings                                          23

previously served on supervised release.

So let me break that down a little bit.

If Judge Dearcy Hall sentences you to a five-year term of supervised release and later finds that you violated the conditions of that supervised release, she could then sentence you to up to five years in jail without any credit for the time that you were on supervision.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And supervised release is essentially like being on probation or parole.  You will have a probation officer that you report to.  There will be a lot of rules that you have to follow.  You will have to report to Probation.  And like I said, you could go back to jail for the full term of your supervised release if the judge finds that you violate it.

Going back to Count Two, then.  There is a maximum fine of up to $250,000 on this count.

And let me just ask counsel for the Government to confirm that restitution is not applicable on this count?

MR. MISOREK:  That's accurate, Your Honor.

THE COURT:  The Court must impose a $100 special assessment for each count of conviction.

Do you understand that, Mr. Bryant?

THE DEFENDANT:  Yes, ma'am.

Proceedings                                    24

THE COURT:  I understand that you have previously pled guilty to four counts in the other indictment against you, the indictment in case number 22-CR-415, and you are still awaiting sentencing on those four counts.

Is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I want to just review the possible penalties on those counts so I can be sure you understand how all the possibilities relate to each other, including the one for your guilty plea today.

Count One that you pled guilty to in that case carries a mandatory minimum sentence of ten years; a maximum sentence of life; a mandatory minimum term of supervised release of five years; and a maximum term of life; a maximum fine of up to $10 million; and that $100 special assessment that I mentioned.

Do you understand those to be the penalties that go along with Count One in the other indictment?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And on Count Two of the first indictment, that count carries a sentence with a mandatory minimum of five years; and a maximum penalty of life; a maximum term of supervised release of five years; a maximum fine of $250,000; and that $100 special assessment.

That mandatory minimum term of five years must be

Proceedings                                                                25

imposed consecutively to any other sentence.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Count Three of the first indictment has no mandatory minimum sentence.  It carries a maximum sentence of 20 years; a maximum term of supervised release of three years; a maximum fine of $1 million; plus the $100 special assessment.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And finally, Count Four of the first indictment carries a mandatory minimum sentence of imprisonment of five years; a maximum term of imprisonment of 40 years; a mandatory minimum term of supervised release of five years; a maximum term of supervised release of life; a maximum fine of $5 million; plus the $100 special assessment.

Do you understand all of that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Now, the sentences imposed on Counts One, Three, and Four of that first indictment may be imposed to run consecutively with the sentence you receive on the charge in Count Two of today's indictment.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

Proceedings                                    26

THE COURT:  I am going to talk a little bit about the sentencing range that you and the Government agreed to in the plea agreement and then we can come back to the question of consecutive sentences or how exactly that sentence will break down if you have further questions.

THE DEFENDANT:  Thank you.

THE COURT:  Because I know it is a little confusing and the sentencing procedure that we are going to get into today is different than the one that the judge discussed with you when you entered your plea to the first indictment.  Okay?  So we'll come back to that.

I asked your counsel if he had an opportunity to discuss possible immigration consequences with you, and he indicated that he had, to the extent that those conversations were necessary.

Have you had an opportunity to discuss any possible immigration consequences with your attorneys?

THE DEFENDANT:  I have none.

THE COURT:  I'm sorry, you have not?

THE DEFENDANT:  I have none.

THE COURT:  No possible consequences.

THE DEFENDANT:  Yes.

THE COURT:  Were you born in this country, Mr. Bryant?

THE DEFENDANT:  Yes, ma'am.

Proceedings                                              27

THE COURT:  Then I am going to skip those other specific immigration-related questions.

In light of the maximum penalties that I have just gone over, do you still wish to plead guilty today?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Let's talk a little bit about the sentencing procedures that are going to happen in this case.

As you may remember from your plea on the first indictment, in most cases, the sentencing judge is guided by the Advisory Sentencing Guidelines in determining what sentence to impose.

And when you pled guilty to those other four charges, the judge asked you a lot of questions to make sure you understood how the guidelines are calculated and how they will apply in your case.

Do you recall that?

THE DEFENDANT:  Not really.

MR. DE CASTRO:  He doesn't have clarity on going over the guidelines.  I can say that we have discussed the guidelines in connection with that plea, which was quite a bit of time ago.  And then of course this plea doesn't relate to the guidelines, but we have discussed the guidelines.

THE COURT:  Understood.

I guess I will ask you some detailed questions,

Proceedings                                                    28

but the important thing I want to make sure you understand is that in your last plea, you were asked if you understood that the Court will come up with the guideline range that it thinks applies to your case and will decide what sentence to impose, and you were told that even if you disagree with that guideline range, you could not get your guilty plea back.

Do you remember that concept?

THE DEFENDANT:  I guess, I guess, yeah.

THE COURT:  And today it's different, right? Today you and the Government have agreed to a specific range that if the judge accepts your plea, she will also be bound by that range.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And unlike your last plea, if the judge decides that she does not agree with that range, you will have the opportunity to get your plea back.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And, similarly, if she does not agree with the range that the parties have agreed to, the Government can ask that your plea be vacated.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I want to make sure you understand that difference.

In this case, you and the Government have decided, you have agreed, that the sentence of imprisonment, the term of imprisonment that Judge Dearcy Hall imposes, will not be based on the Sentencing Guidelines.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And you and the Government have agreed to that specific sentencing range of 180 to 240 months with a maximum term of supervised release of ten years to cover both your sentence on this case, Count Two that you are pleading guilty to today, and those other four counts to which you've already plead guilty in the first indictment.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  So this sentencing range of 180 to 240 months is not based on the Sentencing Guidelines.

And in the event that that range of 180 to 240 months is either above or below the Sentencing Guideline range that would otherwise have been calculated by the guidelines, both you and the Government agree that Judge Dearcy Hall can adjust your sentencing range to fall within that 180- to 240-month range.

Do you understand that?

Proceedings                                        30

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And you and the Government have agreed that there is no departure from that range that is warranted under the federal sentencing statute 18 U.S.C. 3553(a).

That's correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  As I said a moment ago, if Judge Dearcy Hall rejects this plea agreement that you have entered into with the Government, you will have the opportunity to vacate your guilty plea to Count Two in this case.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And if she rejects the plea agreement, the Government will have the same opportunity to request that your plea is vacated.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Now, unlike your sentence of imprisonment, which is going to be determined by this range that you and the Government have agreed to, the term of supervised release that Judge Dearcy Hall decides to impose will be informed by the sentencing guidelines.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And you and the Government have agreed to a maximum term of supervised release of ten years.

Is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  That means that if Judge Dearcy Hall imposes a ten-year term of supervised release and you violate the terms of supervised release, you can be sentenced to up to ten years in prison without credit for the time you spent on supervised release.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Prior to your sentencing, the Government will inform the Probation Department and Judge Dearcy Hall of the information that it thinks is relevant to your sentence.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And before your sentencing, you and your attorneys will have the chance to inform Probation and Judge Dearcy Hall of the information that you think is relevant to your sentencing.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Although your plea in this case is different than your plea in the last case because of that

agreed-upon sentencing range, it does remain the case that until the date of your sentencing, until Judge Dearcy Hall imposes sentence, you can't know for certain exactly what sentence the Court will impose.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And you will not be able to get your plea back if she sentences you somewhere within that range of 180 to 240 months just because it's higher or different than what you were hoping for.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Prior to your sentencing hearing, Judge Dearcy Hall will receive a Presentence Report from the Probation Department which will recommend a sentence.  Your counsel will have the opportunity to review the Presentence Report and to challenge any facts that you and your counsel think are incorrect.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And in your plea agreement -- and, again, this is what makes this situation a little bit different, so I want to make sure you understand it.

In this plea agreement, you and the Government have agreed that the range of 180 to 240 months is the

Proceedings                                    33

specific sentencing range in your case.  And if she agrees to accept your plea, that range will be binding on Judge Dearcy Hall as well.

You understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.

Although you and the Government have agreed to this range of 180 to 240 months, and if she accepts your plea agreement, Judge Dearcy Hall will be bound by that range, she will consider all the facts and circumstances of your case and of you as an individual when she decides where within that range she imposes sentence.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Finally, under the federal sentencing system, there is no parole board or parole commission, so that means that, practically speaking, whatever sentence you receive from Judge Dearcy Hall is pretty close to the actual amount of time you will spend in prison because there is no parole board that you can apply to for early release.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I want to go over some of the waivers that are contained in the plea agreement.

If you look at page 5 of the plea agreement, the

paragraph that starts with number 3, you have agreed that you will not file an appeal, or otherwise challenge the conviction, the incarceration portion of your sentence, in the event that the Court imposes a term of imprisonment of 240 months or less.

You will not challenge the duration of supervised release if it is less than or equal to the statutory maximum.

And you will not challenge any condition of supervised release about which you have notice prior to sentencing and have the opportunity to object.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  So this provision means that if Judge Dearcy Hall sentences you to any term of imprisonment of 240 months or less or to a supervised release term that is life or less or to certain conditions of supervised release, as long as you and your counsel have notice and the chance to object to them, you cannot challenge whether that sentence is permissible.

Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Is this appeal waiver voluntary?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  No one forced you to sign it, correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I do want to make sure you understand that there is nothing in this waiver that prevents you from raising a claim of ineffective assistance of counsel in the appropriate forum.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  As part of this written plea agreement, the Government agrees -- and now I am turning to page 6, to the next paragraph that begins with number 4. The Government agrees not to bring any additional charges related to the charges in this indictment and in the first indictment.  And the Government also agrees that it will move to dismiss the remaining counts against you in the second indictment.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Counsel for the Government, is that correct?

MR. MISOREK:  It is, Your Honor.

THE COURT:  The Government will move at the time of sentencing to dismiss the open counts against Mr. Bryant.

MR. MISOREK:  All open counts, yes.

THE COURT:  Thank you.

Mr. de Castro, that's your understanding, as well?

MR. DE CASTRO:  Yes.

THE COURT:  Mr. Bryant, we are coming to an end of this very long proceeding.

Let me just ask you if there is anything that I have asked that you want further clarification on or that you want a chance to talk with your counsel?

THE DEFENDANT:  No, ma'am.

THE COURT:  Mr. de Castro, do you know of any reason why your client should not enter a plea of guilty to Count Two?

MR. DE CASTRO:  No, Your Honor.

THE COURT:  Are you aware of any legal defense to that charge?

MR. DE CASTRO:  No, Your Honor.

THE COURT:  Mr. Bryant, are you satisfied with your legal representation up to this point?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And are you ready to enter a plea of guilty?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Are you making this plea voluntarily and of your own free will?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Has anyone forced you or pressured you to plead guilty?

Proceedings                                        37

THE DEFENDANT:  No, ma'am.

THE COURT:  Other than this written plea agreement, has anyone made any promises to you that have caused you to plead guilty?

THE DEFENDANT:  No, ma'am.

THE COURT:  And has anyone promised you what sentence you will receive from Judge Dearcy Hall if you plead guilty?

THE DEFENDANT:  No, ma'am.

THE COURT:  So how do you plead to Count Two of the indictment; guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Mr. Bryant, I need to ask you about the factual basis for this plea, so can you tell me in your own words what you did in connection with Count Two?

MR. DE CASTRO:  Your Honor, just for the record, he is going to be reading from a statement that we prepared, the three of us prepared, together.  And so if you want to ask him if he adopts those words, that's fine, but we prepared it together.

THE COURT:  Great.  Thank you for that, Mr. de Castro.

It's absolutely fine to read a prepared statement. I appreciate the time and effort that you and your counsel have put into this case in crafting this statement and

preparing for this day.

I will ask you to read it slowly so the court reporter can get everything down because the details are important.

And before you read it, let me just confirm, the reason you have the right to counsel is so that you can get their advice in preparing a statement like this, but I just need to know that these words are your words and that what you are telling me is true.

Is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Thank you, Mr. Bryant.

Why don't you go ahead.  And then I may have some follow-up questions.

THE DEFENDANT:  In 2002, in Queens, New York, I agreed with others who were known drug dealers and involved in a drug deal with Jason Mizell, to possess and distribute more than five kilos of cocaine.

On October 30th, 2002, in Queens, New York, I helped them kill Jason Mizell by helping gain entry into the recording studio.

I knew a gun was going to be used to shoot Jason Mizell.

I knew what I was doing was wrong and a crime.

THE COURT:  Thank you for that, Mr. Bryant.

Proceedings                                          39

I just want to clarify a couple of those elements.

When you say you agreed with others regarding the distribution of cocaine in Queens, New York, did you do that knowingly and intentionally?

THE DEFENDANT:  Yes.

THE COURT:  And I believe you said you knew that a firearm was going to be used, correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And that this was something that you knew before gaining access to the recording studio; is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And that recording studio, you said, was in Queens, New York?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And that was on or about October 30, 2002?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Let me ask Mr. Misorek.

Counsel, is there anything else that I need to ask with respect to Count Two?

MR. MISOREK:  I would just respectfully ask counsel to stipulate that the fourth element that this all qualified as a murder, legally.

MR. DE CASTRO:  Absolutely.

Proceedings                                40

THE COURT:  So can you tell me how the Government would intend to prove that.

MR. MISOREK:  Yes, Your Honor.

The Government would call numerous witnesses.  We would also present physical evidence, including DNA evidence.

THE COURT:  That it qualified as the unlawful killing with malice aforethought.

MR. MISOREK:  That is how we would prove our entire case as well as malice aforethought.

THE COURT:  Thank you.

Mr. de Castro, any objection or challenge to that?

MR. DE CASTRO:  No objection.  We would stipulate to that element.

THE COURT:  Thank you.

And is there anything else that you would like me to ask your client or that you believe I need to inquire on for there to be a sufficient factual basis for the plea?

MR. DE CASTRO:  No, Your Honor.

THE COURT:  And just to confirm, nothing else from the Government on that?

MR. MISOREK:  No, Your Honor.

THE COURT:  Thank you, Mr. Bryant.

I want to ask a broader question of both lawyers before I make some findings.

Proceedings                                          41

I understand that the factual portion of the allocution is sufficient in the eyes of both counsel.

Is there anything else that you think I need to ask with respect to Rule 11?

Mr. de Castro?

MR. DE CASTRO:  No, Your Honor.

THE COURT:  And Mr. Misorek?

MR. MISOREK:  No, Your Honor, thank you.

THE COURT:  Based on the information I have before me, including my observations of Mr. Bryant, the attention to which he has paid my questions, and the answers that he has given me, I find that Mr. Bryant is acting voluntarily; that he fully understands the charges against him; he fully understands his rights; and he fully understands the consequences of his plea of guilty to Count Two of the second indictment.

Based on his words and the representation by the Government and the stipulation of counsel, I find that there is a factual basis for a plea of guilty to Count Two, and that this plea was made voluntarily, that there was no force, threat, or undisclosed promise that went into the plea, it is my recommendation to Judge Dearcy Hall that she accept Mr. Bryant's guilty plea on Count Two, and that she accept the plea agreement between the parties with the stipulated sentencing range of 180 to 240 months.

Proceedings                                        42

Government, will you please order the transcript and have it sent to Judge Dearcy Hall?

MR. MISOREK:  We will.

THE COURT:  Is there a date for sentencing?

MR. MISOREK:  Not yet, Your Honor.  We will put in a joint letter if that's okay with the Court.

THE COURT:  Okay.

And do I need to order the Presentence Report now, or do you want to wait and have Judge Dearcy Hall do that at the time?

MR. DE CASTRO:  He had a Presentence Report already done, so it's going to be an updated one, so perhaps -- maybe we will reach out to Judge Dearcy Hall's Chambers and find out what to do there.

THE COURT:  Great.

So why don't you talk and discuss and you could probably reach out to the probation officer who prepared the report as well.

Counsel for the Government, is there anything else?

MR. MISOREK:  No, Your Honor, thank you.

THE COURT:  Counsel for defense?

MR. DE CASTRO:  No, Your Honor, thanks.

THE COURT:  If there is nothing else, we are adjourned.

Proceedings                                                    43

Thank you, everyone, for their work today.

Good luck to you, Mr. Bryant.

MR. DE CASTRO:  Thank you.

MR. MISOREK:  Thank you.

(Matter adjourned.)

*    *    *    *    *


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


/s/ Jamie Ann Stanton                April 27, 2026
_____    _____
  JAMIE ANN STANTON                         DATE

Jamie Ann Stanton, RMR, CRR, RPR
Official Court Reporter